## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

---------------------------------------------------------- x
In re:                                                     :  Chapter 11
                                                           :
MLCJR LLC, *et al.*,[1]                                    :  Case No. 23-90324 (CML)
                                                           :
         Debtors.                                      :  (Jointly Administered)
                                                           :
---------------------------------------------------------- x

### DEBTORS' **EMERGENCY** MOTION FOR ENTRY OF AN ORDER APPOINTING A MEDIATOR AND APPROVING MEDIATION PROCEDURES

> **Emergency relief has been requested. Relief is requested not later than October 3, 2023 at 9:00 a.m. (prevailing Central Time).**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") respectfully state the following in support of this motion (the "***Motion***"):

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

US-DOCS\145132641.12

**Preliminary Statement**

1. Since the Debtors commenced their chapter 11 cases over four months ago on May 14, 2023, they have been primarily focused on consummating one or more asset sales to maximize the value of their estates for the benefit of all creditors. The Debtors conducted their auction on August 16, 2023, and announced their successful and backup bidders for six different asset packages on August 18, 2023 [Docket No. 833] for a total aggregate consideration of $133.7 million. The asset packages to be sold to W&T Offshore, Inc. ("**W&T**") for $88.5 million (such sale, the "*W&T Sale*") represent nearly 70% of the cash that will inure to the Debtors' estate as a result of the auction and asset sales.

2. Over the last five weeks, the Debtors have engaged in significant efforts to negotiate and finalize purchase and sale agreements ("*PSAs*") with the applicable successful bidders, most notably the purchase and sale agreement with W&T (the "*W&T PSA*"). On September 26, 2023, the Debtors filed the executed W&T PSA [Docket No. 934] and are seeking to schedule a sale hearing for no later than October 13, 2023.

3. The signing of the W&T PSA was a critical step in the Debtors' restructuring efforts and the resolution of these chapter 11 cases for the benefit of the Debtors' creditors. The Debtors are facing significant liquidity constraints, having borrowed the full amount of their $75 million new-money DIP loans, and do not have a backup bidder for the W&T Sale which, as noted above, represents a substantial portion of the cash that will inure to the Debtors' estate from the auction. Obtaining access to the liquidity provided by the W&T Sale will provide the Debtors with a critical liquidity injection that the Debtors are unable to obtain from any other party on any practical timeline. Put simply, the failure to close the W&T Sale will result in a disastrous outcome for the Debtors' creditors.

4. And the Debtors now need the help of this Court with respect to closing the W&T Sale because several post-auction disputes have arisen with certain of the Debtors' contract counterparties (the "*Specified Third Parties*"). Due to the limited number of service providers, as well as limited and capital-intensive transportation infrastructure in the Gulf of Mexico where the assets contemplated by the W&T PSA are located, W&T is forced to contract with the Specified Third Parties for their services. For some of the properties W&T is purchasing, a Specified Third Party is the only service provider that can provide the services necessary to utilize the purchased asset. Further, because many of the Debtors' contracts apply across a broader universe of assets than just those to be sold under the W&T PSA, and because W&T is not purchasing the entirety of the Debtors' business, W&T will need to enter into amended agreements with some or all of the Specified Third Parties to specifically contract for services for the purchased assets. W&T and the Debtors have expended significant time and effort to reach a consensual (and commercially reasonable) resolution with the Specified Third Parties, but those efforts have been unsuccessful to date. Certain of the Specified Third Parties have asserted cure amounts that, in the aggregate, far exceed what is available to be achieved from the sale. Others have threatened a Hobson's choice by indicating that W&T has the choice to either enter into new agreements, but only on non-commercial terms and/or after payment of substantial consent fees, or step into litigation immediately after closing that W&T will have to defend. Still others have asserted their claims and refused to engage with W&T and the Debtors on an amendment altogether. Without consensual resolutions quickly, the Debtors will not be able to consummate the W&T Sale.

5. As shown in Sections 10.9 and 11.7 of the W&T PSA, W&T has conditioned closing on a net purchase price of no less than $75,000,000 and no more than $88,500,000, after

taking into account customary economic adjustments with respect to the assets, as well as any amounts paid by W&T to reach a mutually agreeable resolution with the Specified Third Parties (the "**Purchase Price Condition**"). The parties have "walk rights" at each end of the purchase price range after taking into consideration purchase price adjustments, including on account of the Specified Third Parties' contracts—W&T can terminate the PSA if the total aggregate consideration required to close the W&T Sale is greater than $88.5 million, while the Debtors can terminate the PSA if the requisite consideration is less than $75 million. The W&T PSA is structured to bind W&T to the bid that was selected as the winning bid at the auction and provide for an expedient path towards closing the W&T Sale. Resolution of the issues with the Specified Third Parties is also a closing condition to the W&T PSA. As those efforts have been unsuccessful to date, the Debtors now seek the help of this Court to resolve these outstanding issues (the "**Mediation Topics**") through mediation (the "**Mediation**"). The Debtors and W&T are supportive of the Mediation and believe that it represents the best path forward for the resolution of outstanding issues with the Specified Third Parties and closing a significant and much-needed liquidity injection for the Debtors.

6. Time is of the essence. Prior to filing this Motion, the Debtors contacted each Specified Third Party or their respective counsel regarding the requested mediation. The Debtors have neither the liquidity nor the flexibility under the W&T PSA to engage in a months-long process with the Specified Third Parties, and each passing week has brought new obstacles to closing the W&T Sale. Failing to close the W&T Sale will lead to a value-destructive outcome for the Debtors' cases. Accordingly, the Debtors seek to resolve those issues through a court-supervised and expedited Mediation.

**Relief Requested**

7. The Debtors seek entry of an order, substantially in the form of the attached proposed order (the "*Proposed Order*"), appointing a mediator and approving mediation procedures.

**Jurisdiction and Venue**

8. The United States Bankruptcy Court for the Southern District of Texas (this "*Court*") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

9. The bases for the relief requested herein are section 105(a) of title 11 of the Bankruptcy Code (the "*Bankruptcy Code*"), rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "*Local Rules*"), and paragraph S of the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "*Complex Case Procedures*"). Additionally, the Local Rules of the District Court, as incorporated by this Court's Local Rules, authorizes the Court to order the parties before it to participate in alternative dispute resolution, including the sort of non-binding mediation requested herein. *See* BLR 1001-1(b) (incorporating the Local Rules of the District Court by reference); LR 16.4 (authorizing the use of Alternative Dispute Resolution methods "in civil cases pending before . . . bankruptcy judges"); LR 16.4.C (allowing "[a] judge . . . [to] refer any civil case to ADR on motion of any party").

**Background**

10. On May 14, 2023 (the "*Petition Date*"), the Debtors (collectively with their non-debtor affiliates, the "*Company*") filed voluntary petitions in this Court commencing cases for

5

relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Ryan Omohundro, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 34] (the "**First Day Declaration**"),[2] which is fully incorporated herein by reference.

11.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On May 26, 2023, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "**U.S. Trustee**") appointed an Official Committee of Unsecured Creditors [Docket No. 230] (the "**Committee**"). No trustee or examiner has been requested in these Chapter 11 Cases.

## The W&T PSA

12.     The W&T PSA contemplates the sale of over two-thirds of the Debtors' production. This production, however, is produced from seven fields only, specifically Eugene Island 024, Eugene Island 064, Main Pass 061, Mobile Bay 904, Mobile Bay 916, South Pass 049, and West Delta 073 (the "**Acquired Locations**"). The Debtors' contracts with various third parties, such as their pipeline agreements, gathering agreements, transportation agreements, and agreements governing production payments, are not limited solely to the purchased assets, but also include other locations and fields not being acquired by W&T. This, in turn, means that the applicable contracts cannot be assumed and assigned to W&T in their current form, but must instead be amended with the consent of the counterparty to provide for terms and conditions

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

commensurate with the purchased assets.  While many such contracts exist, the Specified Third Parties below represent the most critical counterparties:

|  | **Counterparty** | **Contracts** <br> **(as amended from time to time)** |
|---|---|---|
| 1. | American Panther | 1. Amendment No. 1 to Gas Processing Agreement by and between Enlink EIG Liquids, LLC and American Panther, LLC, Dated August 1, 2022 <br><br> 2. Amendment to Interruptible Natural Gas Gathering Agreement by and between Cox Operating, LLC and American Midstream LP, Dated February 1, 2018 <br><br> 3. Amendment to Interruptible Natural Gas Gathering Agreement by and between Cox Operating, LLC and American Panther, LLC, Dated February 1, 2018 <br><br> 4. Gas Gathering Agreement by and between Cox Operating, LLC and American Midstream Offshore (Seacrest) LP, Dated May 1, 2017 <br><br> 5. Interruptible Natural Gas Gathering Agreement by and between Cox Operating, LLC and American Panther, LLC, Dated May 1, 2009 <br><br> 6. Mezzanine Gas Processing Agreement by and between Cox Operating, LLC and American Midstream Offshore (Seacrest) LP and American Panther, LLC, Dated January 1, 2018 |
| 2. | Chevron U.S.A. Inc. & Union Oil Company of California | 1. Asset Sale and Purchase Agreement by and between Cox Oil Offshore, LLC and Chevron U.S.A. INC. and Union Oil Company of California, Dated August 1, 2015 <br><br> 2. Escrow Agreement by and between Cox Oil Offshore, LLC and Chevron U.S.A. INC. and Union Oil Company of California, Dated April 15, 2016 |
| 3. | Crescent Midstream | 1. Dedication & Transportation Agreement by and between Cox Operating, LLC and Crescent Midstream, LLC, Dated February 2, 2021 <br><br> 2. Multi Platform Connection & Access Agreement by and between Energy XXI GOM, LLC , Cox Operating, LLC and Crescent Midstream, LLC, Dated February 23, 2021 |

| | **Counterparty** | **Contracts** <br> **(as amended from time to time)** |
|---|---|---|
| | | 3. Offshore Connection Agreement by and between Cox Operating, LLC and Crescent Midstream, LLC, Dated July 28, 2022 <br><br> 4. Offshore Connection Agreement by and between Energy XXI GOM LLC, EPL Oil & Gas LLC, Cox Operating LLC and Crescent Midstream, LLC, Dated July 18, 2022 <br><br> 5. Shared Services Agreement by and between Cox Operating, LLC and Crescent Midstream, LLC, Dated February 2, 2021 |
| 4. | DCP Mobile Bay Processing | 1. Natural Gas Gathering Agreement by and between Tenneco Gas Inc. and Union Oil Company of California, Dated December 1, 1997 <br><br> 2. Reserve Commitment Agreement by and between Dauphin Island Gathering Partners and Bechtel Energy Partners, LTD., Dated November 24, 1997 <br><br> 3. Transportation Services Agreement by and between Dauphin Island Gathering Partners and Union Oil Company of California, Dated November 24, 1997 <br><br> 4. Gas Processing Agreement <br><br> 5. Plant Bypass Agreement |
| 5. | Flint River VPP II & EP Northern Investments | Conveyance of Term Overriding Royalty Interest by and between Cox Oil Offshore LLC, Energy XXI GOM LLC, EPL Oil & Gas LLC, M21K LLC and Flint River VPP II LLC, EP Northern Investments LLC, Dated October 1, 2018 |

13. The Debtors understand that negotiating contractual amendments and/or consent fees is normally done between the parties privately without the intervention of the Court or a mediator. But because of the complexity of the Debtors' contractual arrangements, the number of Specified Third Parties, and the lack of viable alternatives in the Gulf of Mexico, the Debtors fear that such process could easily take months to complete or prevent closing entirely. The Debtors do not have the funding or time to continue in these chapter 11 cases for an extended

US-DOCS\145132641.12

period of time, and with no backup bidder or viable alternative for the sale of the affected assets, closing the W&T is imperative.  The Debtors only have a few weeks to determine whether the W&T PSA can be consummated.  If the W&T Sale cannot close, the Debtors will be forced to abandon their sale processes to the detriment of all their creditors.  Given these dire circumstances, the Debtors believe the use of a mediator with the Specified Third Parties is the best (and only realistic) way to reach consensual resolutions with W&T, the DIP Lenders, and Specified Third Parties.

14. The Debtors also believe that participating in the mediation in good faith and attempting to reach consensual resolutions regarding amended contracts is in the best interest of the Specified Third Parties.  Specifically, without consensual resolutions and the resulting termination of the W&T PSA, the Specified Third Parties will have administrative expenses that cannot be paid and will not have any source of near-term revenue from the properties acquired by W&T.  While the Debtors understand that each Specified Third Party can act in its own best interest, the entire estate (including the Specified Third Parties) will suffer the consequences if consensual arrangements are not reached quickly.  The Debtors believe that Mediation is the only forum where all parties can attempt to come together to make economic decisions that maximize the value of the estates.

### The Mediation Procedures

15. In addition to appointing a mediator (the "*Mediator*"), the Debtors request the approval of the mediation procedures set forth below:

> (a) The Mediation shall commence as soon as reasonably practicable after entry of the Proposed Order and continue on such additional dates and times as may be scheduled by the Mediator.

9

(b) The Mediation shall commence at the offices of Latham & Watkins LLP, 811 Main Street, Suite 3700, Houston, TX 77002.

(c) The following parties are hereby denoted "**Key Participants**", and each shall use best efforts to attend the Mediation in-person, *via* an authorized representative (the "**Key Participant Representative**"):

   i. The Debtors (which shall be via the Chief Restructuring Officer);

   ii. The DIP Lenders;

   iii. The Committee;

   iv. W&T Offshore, Inc.;

   v. American Panther, LLC (or such other entity that can bind the parties defined as "AmPan" in Docket No. 646);

   vi. Chevron U.S.A. Inc. & Union Oil Company of California;

   vii. Crescent Midstream, LLC;

   viii. Dauphin Island Gathering Partners and DCP Mobile Bay Processing, LLC (or such other entity that can bind the parties defined as "DCP" in proof of claim number 20); and

   ix. Flint River VPP II, LLC & EP Northern Investments, LLC.

(d) The Key Participant Representatives shall have settlement authority (if additional authority is needed at the Mediation, the applicable Key Participant Representative may obtain such additional authority).

(e) Additional Key Participants and their counsel may appear at the Mediation in-person or *via* Zoom (virtual details will be circulated by the host facility to such parties and their counsel).

(f) The Mediator is authorized to mediate any issues and disputes concerning the Mediation Topics.

(g) The Mediation is subject to the Procedures for Complex Cases in the Southern District of Texas (Effective January 1, 2023).

(h) Within three (3) calendar days of entry of the Proposed Order, the Debtors shall provide the Mediator with the W&T PSA and any other background materials requested by the Mediator.

(i) Each of the Key Participants may share a confidential summary document, not to exceed five (5) pages (exclusive of exhibits) expressing their respective views and arguments on the Mediation Topics (each, a "***Summary Report***"), by the date specified in the Proposed Order. Each Summary Report shall only be provided to the Mediator and shall not be shared with the other parties to the Mediation.

(j) The terms of the *Order (I) Approving Confidentiality Agreement and Proposed Stipulated Protective Order Form and (II) Requiring Other Parties-In-Interest to Opt Into the Same Order to Receive Discovery Materials* [Docket No. 755] shall control the exchange and treatment of Confidential Material or Highly Confidential Material (both as defined in such order) in relation to the Mediation.

(k) Any party to the Mediation (i) may communicate with any other party to the Mediation and with the Mediator and (ii) shall not be obligated to disclose the substance of such communications to any other party to the Mediation or the Mediator, as applicable.

(l) The results of the Mediation are non-binding upon the parties to the Mediation, except to the extent that a party agrees in writing to be bound by a settlement reached at Mediation.

(m) The Mediator shall be authorized to report to the Court on whether a settlement is reached and/or whether the parties to the Mediation participated in good faith.

## Basis for Relief

16. Section 105(a) of the Bankruptcy Code authorizes this Court "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Additionally, Rule 16.4 of the District Court's Local Rules, as incorporated by this Court's Local Rules (BLR 1001-(b)), authorizes this Court to refer a civil case to mediation upon the motion of any party. In light of the risks applicable to the Debtors' operations, the complexity of the W&T PSA, and the critical need for the Debtors to consummate the W&T PSA prior to the Outside Closing Deadline, entry of this Order is proper

and in accordance with section 105(a) of the Bankruptcy Code, as well as the Bankruptcy and District Court Local Rules.

**Emergency Relief Requested**

17.     Pursuant to Local Rule 9013-1 and paragraph G17 of this Court's *Procedures for Complex Cases in the Southern District of Texas*, the Debtors request emergency consideration of this Motion on September [29], 2023 so that the Debtors can attempt to gain certainty on the path forward while minimizing the administrative expenses of accruing unnecessary costs relating to the W&T PSA if closing is not practicable or even possible by the Outside Closing Deadline of October 13, 2023.

**Notice**

18.     Notice of this Motion will be given to the Specified Third Parties and their known counsel, which includes (a) American Panther, LLC; (b) Crescent Midstream, LLC; (c) Chevron U.S.A. Inc. & Union Oil Company of California; (d) Dauphin Island Gathering Partners & DCP Mobile Bay Processing, LLC; and (e) Flint River VPP II, LLC & EP Northern Investments, LLC, as well as to (a) the Office of the U.S. Trustee; (b) the parties included on the Debtors' consolidated list of the holders of the thirty (30) largest unsecured claims against the Debtors; (c) counsel to the DIP Lenders, (i) Haynes and Boone, LLP and (ii) Kelly Hart Pitre; (d) counsel to the Committee, White & Case LLP; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (i) the state attorneys general for states in which the Debtors conduct business; and (j) all parties that have requested or that are required to receive

notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required or needed under the circumstances.

19. A copy of this Motion is available on (a) this Court's website, www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/ MLCJR.

WHEREFORE, the Debtors request that the Court enter the Proposed Order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

| | |
|---|---|
| Signed:  September 26, 2023<br>Houston, Texas | Respectfully Submitted,<br><br>*/s/  Rebecca Blake Chaikin*<br>Matthew D. Cavenaugh (TX Bar No. 24062656)<br>J. Scott Rose (TX Bar No. 172528000)<br>Rebecca Blake Chaikin (TX Bar No. 24133055)<br>Emily F. Meraia (TX Bar No. 24129307)<br><br>**JACKSON WALKER LLP**<br>1401 McKinney St., Suite 1900<br>Houston, Texas 77010<br>Tel:   713-752-4200<br>Fax:   713-752-4221<br>Email:  srose@jw.com<br>            rchaikin@jw.com<br>            emeraia@jw.com<br><br>-and-<br><br>Keith A. Simon (admitted *pro hac vice*)<br>Misha E. Ross (admitted *pro hac vice*)<br>Alexandra M. Zablocki (admitted *pro hac vice*)<br>Thomas Fafara (admitted *pro hac vice*)<br><br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Tel:   212-906-1200<br>Fax:   212-751-4864<br>Email:  keith.simon@lw.com<br>            misha.ross@lw.com<br>            alexandra.zablocki@lw.com<br>            thomas.fafara@lw.com<br><br>*Counsel for the Debtors and Debtors in Possession* |

## Certificate of Accuracy

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Rebecca Blake Chaikin*
Rebecca Blake Chaikin

## Certificate of Service

I certify that on September 26 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Rebecca Blake Chaikin*
Rebecca Blake Chaikin