**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| MLCJR LLC, *et al.*,[1] | : | Case No. 23-90324 (CML) |
| Debtors. | : | (Jointly Administered) |

**DEBTORS' FIRST MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 365(a) AND 554 AUTHORIZING OMNIBUS REJECTION OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS RELATED TO THE DEBTORS' SPECIFIED PROPERTIES, AND ABANDONMENT OF ANY INTERESTS RELATED THERETO**

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txsb.uscourts.gov within twenty-one days from the date this motion was filed. If you do not have electronic privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the Court may treat the motion as unopposed and grant the relief requested.**

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***") respectfully state the following in support of this motion (this "***Motion***"):

## RELIEF REQUESTED

1. The Debtors seek entry of an order, substantially in the form of the attached proposed order (the "***Proposed Order***"), authorizing the Debtors to (a) reject the oil and gas leases that are listed on Exhibit A to the Proposed Order (the "***Specified Leases***") and any executory contracts and/or unexpired leases related to the Specified Properties (as defined below) that are

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

listed on Exhibit B to the Proposed Order (collectively with the Specified Leases, the "***Specified Agreements***"); and (b) abandon any and all interests that the Debtors or their estates have, or may have, with respect to the Specified Agreements and the Specified Properties, including, without limitation, the Debtors' infrastructure, wells, fixtures, and/or equipment located on or at the Specified Properties. In support of their Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (this "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a), 365(a), 554, 1107(a), and 1108 of title 11 of the Bankruptcy Code (the "***Bankruptcy Code***"), rules 6006, 6007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rules 1075-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Local Rules***"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "***Complex Case Procedures***").

## BACKGROUND

4. On May 14, 2023 (the "***Petition Date***"), the Debtors (collectively with their non-debtor affiliates, the "***Company***") filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Ryan Omohundro, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions*

*and First Day Pleadings* [Docket No. 34] (the "***First Day Declaration***"),[2] which is fully incorporated herein by reference.

5. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On May 26, 2023, the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "***U.S. Trustee***") appointed an Official Committee of Unsecured Creditors [Docket No. 230] (the "***Committee***"). No trustee or examiner has been requested in these Chapter 11 Cases.

## THE SPECIFIED AGREEMENTS AND PROPERTIES

6. The Debtors are party to the various Specified Leases, which cover the offshore blocks listed on Exhibit A to the Proposed Order (the "***Specified Blocks***", together with the Debtors' infrastructure, wells, fixtures, and/or equipment located on such leased blocks, whether located above or below the surface waters or seabed, the "***Specified Properties***"). Beginning in May 2023, the Debtors engaged in a robust sale process to market substantially all of their assets. This process culminated in the Debtors' receipt of multiple bids at their auction for certain of their assets as detailed in that certain *Notice of Auction Results and Identity of Successful Bidders and Backup Bidders for Certain Assets of the Debtors* [Docket No. 833].

7. With respect to the Specified Agreements and Specified Properties, either no bidder expressed an interest in acquiring such agreements or properties in connection with the auction or a non-binding proposal was submitted that the Debtors have determined, in consultation with their DIP Lenders, is not actionable. Each of the Specified Properties has either ceased commercial production, produces only intermittently, or is operated by the Debtors' working interest partners.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

Moreover, any production revenues from the producing properties is not material and the Debtors have determined that the burden of continued performance under the related Specified Agreements outweighs any benefit to the estates. Simply put, the Debtors, having borrowed the full amount of their $75 million new-money DIP loans, do not have sufficient resources available to continue to fund the ongoing expenses related to the Specified Properties. As a result, the Debtors seek relief to reject and/or abandon any interest they might have with respect thereto.

8. The Debtors' estates cannot continue to be saddled by properties and agreements that are uneconomical to operate or retain any longer. The Debtors do not have sufficient funding or liquidity to continue performance under the Specified Agreements and seek this relief to allow them to reject the Specified Agreements and abandon the Specified Properties to preserve value for the Debtors and their estates.

9. Prior to filing this Motion, the Debtors discussed the proposed rejection and abandonment with the United States Department of the Interior Bureau of Safety and Environmental Enforcement ("***BSEE***") and certain co-lessees, non-debtor operators, and certain predecessors to the Specified Leases as may be appropriate. While the rights and objections of all parties are reserved, the Debtors will continue to work with these parties prior to the hearing on the Motion to hopefully resolve any remaining disputed issues (if any).

## BASIS FOR RELIEF

### A. REJECTION

10. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession may, subject to the court's approval, "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996). Section 365(a) "allows a [debtor] to relieve

the bankruptcy estate of burdensome agreements which have not been completely performed." *Id.* (quoting *In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994)).

11. Whether an executory contract should be assumed or rejected is a question left to a debtor's business judgment. *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985); *see also, Lifemark Hospitals, Inc. v. Liljeberg Enters., Inc. (Matter of Liljeberg Enters., Inc.)*, 304 F.3d 410, 438 (5th Cir. 2002). Indeed, courts regularly hold that the business judgment standard applies to a debtor's request for authority to reject oil and gas leases, and in applying this standard, courts show great deference to the debtor's decision. *See, e.g., GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005) (noting "great judicial deference" is given to the debtor's exercise of its business judgment); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (absent extraordinary circumstances, court approval of a debtor's decision to reject an executory contract "should be granted as a matter of course"). In short, so long as a debtor reasonably believes in the exercise of its discretion that rejection will likely benefit the debtor's estate, the court will defer to the debtor's assessment. *See, e.g., In re Balco Equities, Inc*., 323 B.R. 85, 99 (Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business discretion, the court for the most part must only determine that the rejection will likely benefit the estate."); *see also In re Trans World Airlines, Inc*., 261 B.R. 103, 121 (Bankr. D. Del. 2001) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of bad faith, or whim or caprice.") (internal citations omitted).

12. Here, in the exercise of their sound and considered business judgment, the Debtors have determined that the Specified Agreements are not necessary to the Debtors' continued business operations and would materially burden the estates with unnecessary administrative

expenses. As noted above, the Specified Leases are no longer producing in sufficient quantities to generate sufficient profits for the Debtors' estates. Similarly, the Specified Agreements impose burdens on the Debtors' estates, but provide insufficient concomitant benefits. The Debtors respectfully submit that rejection of the Specified Agreements is in the best interests of the Debtors and their estates.

**B. ABANDONMENT**

13. To the extent it is necessary to effectuate the substantive relief sought by the Debtors in their request for authority to reject the Specified Agreements, the Debtors concurrently request authority pursuant to Section 554 of the Bankruptcy Code to abandon any property, right or interest they have in the Specified Properties.

14. Section 554 of the Bankruptcy Code allows a debtor, after notice and a hearing, to "abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554. As described above, the expenses related to the Specified Properties are "burdensome to the estate." The burden of infrastructure costs and other costs related to the Specified Properties contribute to making the Specified Properties and the Specified Agreements uneconomical to operate or retain as property of the estate given either (i) their shut-in state or (ii) to the extent they are currently producing, provide minimal benefit to the estates and any such benefit is outweighed by the burden of performance under the Specified Agreements. The continued operation and/or maintenance of the Specified Properties provides burdens to the estates without a sufficient and concomitant benefit.

15. As is common in abandonment motions, the Debtors are aware of the relevant standards established in *Midlantic*. *See Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot.*, 474 U.S. 494 (1986). Under *Midlantic*, "a trustee may not abandon property in contravention of a

state statute or regulation that is reasonably designed to protect the public health or safety from *identified hazards*." *Id.* at 507 (emphasis added). This exception to the abandonment power vested in a trustee, however, is narrow and it "does not encompass a speculative or indeterminate future violation of such laws that may stem from abandonment." *Id*. at 507 n. 9; *see also In re St. Lawrence Corp*., 239 B.R. 720, 724 (Bankr. D.N.J. 1999), aff'd, 248 B.R. 734 (D.N.J. 2000) (noting that "risk of explosion, fire, injury, and further contamination" constituted imminent harm in *Midlantic* and finding no "proof of contamination constituting 'imminent and identifiable harm' within the meaning of *Midlantic* so as to raise an exception to the abandonment power."); *In re McCrory Corp*., 188 B.R. 763, 769 (Bankr. S.D.N.Y. 1995) ("If any required clean-up could be deferred, this is hardly the type of "imminent" harm to public health or safety that was envisioned by the Supreme Court when it restricted the trustee's power to abandon burdensome estate property."); *In re Smith-Douglass, Inc*., 856 F.2d 12, 16 (4th Cir. 1988) (noting that imminent harm does not include hazards that are "speculative or may await appropriate action by an environmental agency."); *In re ATP Oil & Gas Corp.*, No. 12-36187, 2013 WL 3157567, at *2 (Bankr. S.D. Tex. June 19, 2013) (noting the principle underlying *Midlantic* and stating that "it did not hold that property posing a risk to public health and safety may never be abandoned.").

16. The Debtors acknowledge that operations for the Specified Properties are complex and that an orderly process to transfer responsibility for maintenance and monitoring and ultimate decommissioning to a responsible entity is required to mitigate against identifiable hazards. As such, upon filing this Motion, the Debtors will (to the extent not previously done) (i) promptly provide applicable co-lessees or predecessors to the Specified Leases with all relevant files, documents, analyses, and related materials in their possession, custody, or control that such co-lessee or predecessor may reasonably request to support an orderly transfer of maintenance,

monitoring, and decommissioning to such co-lessee or predecessor, (ii) promptly make available during normal business hours all relevant personnel of the Debtors as reasonably requested by such co-lessee or predecessor to answer questions and to provide information as reasonably requested by such co-lessee or predecessor, (iii) promptly provide to such co-lessee or predecessor and its contractors reasonable access to the facilities of the Specified Properties so that such co-lessee or predecessor is prepared to manage the maintenance, monitoring, and ultimate decommissioning as soon as practicable after entry of the Proposed Order, and (iv) promptly execute any documentation reasonably requested by such co-lessee or predecessor to facilitate its agreement to commence maintenance, monitoring, and ultimate decommissioning of the Specified Properties and to satisfy the regulatory process, in each case for carrying out the purposes of the Proposed Order.

17. Based on the above, the Debtors do not believe that any of their properties to be abandoned by this Motion create imminent and identifiable hazards that are in violation of the *Midlantic* standard and that an orderly process to manage ongoing responsibilities for the Specified Properties has been identified. Accordingly, because the Specified Agreements and Specified Properties are burdensome to the estates and abandonment does not pose an immediate and identifiable hazard, the Debtors respectfully request authority to abandon any and all continuing interests they have or may have in the Specified Agreements and the Specified Properties.

## **Notice**

18. Notice of this Motion will be given to: (a) the Office of the U.S. Trustee; (b) the parties included on the Debtors' consolidated list of the holders of the thirty (30) largest unsecured claims against the Debtors; (c) counsel to the DIP Lenders, (i) Haynes and Boone, LLP and (ii) Kelly Hart Pitre; (d) counsel to the Committee, White & Case LLP; (e) the United States Attorney's Office for the Southern District of Texas; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Environmental Protection Agency and similar state environmental

agencies for states in which the Debtors conduct business; (i) the state attorneys general for states in which the Debtors conduct business; (j) known co-lessees, non-debtor operators, and select predecessors to the Specified Leases listed in Exhibit A to the Proposed Order; (k) the counterparties to the Specified Agreements listed in Exhibit B to the Proposed Order; (l) the Department of the Interior; (m) BSEE; and (n) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is required or needed under the circumstances.

19. A copy of this Motion is available on (a) this Court's website, www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Claims and Noticing Agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/MLCJR.

WHEREFORE, the Debtors request that the Court enter an order granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Signed: December 12, 2023
Houston, Texas

Respectfully Submitted,

*/s/ Keith A. Simon*

Keith A. Simon (admitted *pro hac vice*)
Misha E. Ross (admitted *pro hac vice*)
Alexandra M. Zablocki (admitted *pro hac vice*)
Thomas Fafara (admitted *pro hac vice*)

**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Tel: 212-906-1200
Fax: 212-751-4864
Email: keith.simon@lw.com
misha.ross@lw.com
alexandra.zablocki@lw.com
thomas.fafara@lw.com

*Counsel for the Debtors and Debtors in Possession*

**Certificate of Service**

I certify that on December 12, 2023, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Rebecca Blake Chaikin*
Rebecca Blake Chaikin