**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **MLCJR LLC, *et al.*[1]** | § | **CASE NO. 23-90324 (CML)** |
| | § | |
| **Debtors** | § | **(Jointly Administered)** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CHEVRON U.S.A. INC.; UNION OIL COMPANY OF CALIFORNIA; NOBLE ENERGY, INC.; CHEVRON PIPE LINE COMPANY; UNOCAL PIPELINE COMPANY; AND THEIR AFFILIATES TO THE DEBTORS' FIRST MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C.§365(a) AND 554 AUTHORIZING OMNIBUS REJECTION OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS RELATED TO THE DEBTORS' SPECIFIED PROPERTIES, AND ABANDONMENT OF ANY INTERESTS RELATED THERETO**

[Relates to Dkt. No. 1183]

Chevron U.S.A. Inc.; Union Oil Company of California; Noble Energy, Inc.; Chevron Pipe Line Company; Unocal Pipeline Company; and each of their respective affiliates (collectively "Chevron"), creditors in the above-styled case, pursuant to Bankruptcy Code sections 365 and 554 and Federal Rules of Bankruptcy Procedure 6006 and 6007, file this Limited Objection and Reservation of Rights to the Debtors' First Motion for Entry of Order Pursuant to 11 U.S.C. §365(a) and 554 Authorizing Omnibus Rejection of Certain Unexpired Leases and Executory Contracts Related to the Debtors' Specified Properties, and Abandonment of any Interests Thereto [Dkt. No. 1183] (the "First Abandonment Motion") and, in support thereof, would respectfully state as follows:

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

## I.
## SUMMARY OF LIMITED OBJECTION AND RESERVATION OF RIGHTS

1. The abandonment of offshore oil and gas leases, contracts, and related assets must comply with federal law and occur in an orderly manner. Chevron objects to Debtors' abandonment of any such assets with unresolved Incidents of Non-Compliance ("INCs") and any assets that do not have a proper, fully funded plan for transition to an applicable predecessor party for decommissioning.[2]

2. First, as the Court is aware, the U.S. Government has previously filed a motion asserting that Debtors are in violation of federal environmental and safety law based on Debtors' failure to remedy hundreds of INCs, many of which involve Debtors' failure to comply with their health, environmental, and safety ("HES") obligations. (Dkt. No. 835). The U.S. Government sought to compel Debtors to remediate these INCs "to avoid continued actual and threatened harm to human health, safety, and the environment." (Dkt. No. 835 at ¶ 34). Debtors did not dispute that they must remedy these INCs to ensure that all HES issues are addressed. (Dkt. No. 875). This Court agreed and subsequently ordered Debtors to perform or cause to be performed all work required by federal law to remediate the INCs. (Dkt. No. 893) The U.S. Government's original list of 518 INCs, which was current through June 2023, has grown in the past six months based on inspections by its Bureau of Safety and Environmental Enforcement ("BSEE") and, based on information provided by the government, an additional 300 INCs have been issued. This includes 20 "red" INCs, which pose "the greatest threatened imminent harm level to human health, safety,

[2] The Debtors created and distributed a schedule of predecessor parties to the oil and gas leases identified in Exhibit A to the First Abandonment Motion but Debtors' designation of "predecessor" parties in that schedule, at least as it relates to Chevron, is inaccurate and Chevron expressly preserves and reserves all of its rights related to any connections to assets proposed by Debtors for abandonment, including but not limited to its right to object to any such predecessor designation by the Debtors.

or the environment" (Dkt. 835 at ¶ 53), on leases subject to the First Abandonment Motion. Debtors' continuing violation of federal environmental and safety laws preclude the abandonment of these leases at this time, and any abandonment should be expressly conditioned upon the Debtors remediating these INCs in accordance with federal environmental and safety laws.

3. Second, any Court-approved abandonment should also be conditioned on the adoption and implementation of a safe, defined transition plan for each of the assets to be abandoned. Chevron does not have adequate information as to the current condition of the assets to be abandoned. Nor does Chevron have adequate information as to how Debtors plan to implement and fully fund a transition that ensures safety at the facilities, including the safety of predecessor representatives that may be later required to access such assets.

4. Lastly, Debtors included unrelated and inappropriate relief in paragraph 10 of their proposed order; Chevron objects to this language, which should be removed in its entirety. The proposed language appears to try to limit third parties from exercising rights or legal remedies they may have in connection with financial security that third parties may hold or have access to. The language is vague, ambiguous, and overly broad. Importantly, the relief is unnecessary and unrelated to the rejection and abandonment sought. Also, Debtors have provided no notice in the First Abandonment Motion that they are seeking any such limitations, as Debtors' motion fails to address or discuss this language or cite any legal basis for it. As more fully discussed below, paragraph 10 of the proposed form of order should not be included in any order approved by the Court.

## II.
## FACTUAL BACKGROUND

5. On May 14, 2023 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code and continue to operate as debtors in possession pursuant to

Bankruptcy Code sections 1107 and 1108.

6. The cases are being jointly administered and an official committee of unsecured creditors has been appointed and retained counsel.

7. On August 21, 2023, the U.S. Government filed its Emergency Motion for Entry of an Order Directing the Debtors to Company with Federal Environmental Safety Law. (Dkt. No. 835). The Debtors did not substantively oppose the motion. (Dkt. No. 875). The Court granted the motion on September 1, 2023. (Dkt. No. 893).

8. Of the original 518 INCs identified by BSEE, 53 INCs posed "the greatest threatened imminent harm level to human health, safety, or the environment." (Dkt. 835 at ¶ 30). As of December 14, 2023, the Debtors still had not remediated 195 INCs, including 27 of the INCs that posed "the greatest threatened imminent harm level to human health, safety or the environment." (Dkt. No. 1189 at p. 6). This does not include the status of any of the approximately 300 new INCs issued by BSEE after June 2023.

9. On December 12, 2023, Debtors filed the First Abandonment Motion. Pursuant to the First Abandonment Motion, Debtors seek to (i) reject certain oil and gas leases and a list of agreements (to the extent any of them are actually executory and fall within the purview of Section 365) and (ii) abandon any interests related to either the oil and gas leases or the agreements (it is unclear, and Debtors fail to address, what "interests" could be abandoned pursuant to Section 554 for a rejected executory contract).

10. Chevron previously owned certain of the assets currently owned and/or operated by certain of the Debtors. There have been a number of sales transactions between Chevron and one or more of the Debtors, Debtors acquired a company that purchased properties from Chevron, and/or Debtors acquired properties previously sold by Chevron to a third party. The result is that

a number of properties currently owned and/or operated by one or more of the Debtors were previously owned and/or operated by Chevron, including several properties that are listed in Exhibit A to the First Abandonment Motion.

11. Exhibit B to the First Abandonment Motion, the schedule of agreements to be rejected, contains approximately 72 agreements listed with "Chevron" (the "Chevron Agreements"). Unfortunately, similar to previous schedules prepared and filed by Debtors, the descriptions and/or references to the Chevron Agreements are incomplete, unclear, and/or too generic to provide adequate notice to Chevron of the particular agreements Debtors intend to reference. As such, it is not clear based on the limited, vague, and incomplete information provided which Chevron Agreements the Debtors actually seek to reject. Moreover, based on the limited information in Exhibit B, certain of the Chevron Agreements listed do not appear to be current contracts in which a Chevron entity and a Debtor entity are contract counterparties and, as such, there would be no legal basis to reject such agreement (for example, it is possible that Chevron's rights and/or a Debtor's rights in or to a particular contract were assigned pre-petition).

## III.
## BASIS FOR LIMITED OBJECTION

*A. Debtors Cannot Abandon Property Without Remediating All Associated INCs.*

12. BSEE is the federal agency tasked with HES oversight of federal offshore leases. Many of the oil and gas leases listed in Exhibit A to the First Abandonment Motion are designated as federal leases. As noted above, BSEE has issued a significant number of HES-related INCs on the Debtors' properties and/or operations. The U.S. Government has previously addressed in its filings and at status conferences before this Court the importance of Debtors' compliance with the HES-related regulatory obligations and the reasons that Debtors' remediation of all INCs is critical. (Dkt. No. 835). The U.S. Government's motion, which Debtors did not contest, discusses

the importance of HES-related regulatory compliance and further highlights the applicable case law requiring Debtors to comply with regulatory obligations, especially HES-related obligations.

13. The U.S. Supreme Court's seminal decision in *Midlantic* limits a debtor's (or trustee's) ability to abandon assets when there are imminent HES risks. *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.,* 474 U.S. 494, 502 (1986) ("Congress has repeatedly expressed its legislative determination that the [bankruptcy] trustee is not to have *carte blanche* to ignore non-bankruptcy law.") Indeed, the U.S. Government relied on *Midlantic* to obtain this Court's order requiring Debtors to comply with federal environmental and safety law. (Dkt. No. 835 at ¶ 15). The Fifth Circuit has affirmed the holding that a bankruptcy estate may not operate in violation of applicable environmental or safety laws, both state and federal. *In re H.L.S. Energy Co.*, 151 F.3d 434, 438 (5th Cir. 1998). Further, courts in this district have applied *Midlantic* and *H.L.S. Energy*, holding that bankruptcy estates are not exempt from compliance with applicable environmental laws and regulations. *See, e.g., In re Northstar Offshore Group, LLC*, 2020 Bankr. LEXIS 1811 (Bankr. S.D. Tex. July 10, 2020); *In re ATP Oil & Gas Corp*, 2014 Bankr. LEXIS 1050 *21 (Bankr. S.D. Tex. March 18, 2014); and *In re American Coastal Energy*, 399 B.R. 805, 816 (Bankr. S.D. Tex. 2009).

14. This Court previously agreed with the U.S. Government that Debtors were in violation of federal environmental and safety law and ordered that Debtors take such actions to comply with those requirements. (Dkt. No. 893). ***It is undisputed that the Debtors still have not fully complied and are presently in violation of federal environmental and safety laws.*** (Dkt. No. 1189). Consistent with this Court's prior order, the clear case authority, and undisputed facts of noncompliance, any abandonment should be conditioned on Debtors remediating all the HES-related INCs issued by BSEE.

15. Permitting the abandonment of leases with unremedied INCs will only further delay the ultimate decommissioning of these assets. The regulations require predecessors like Chevron to satisfy decommissioning obligations that accrue during their period of ownership. The regulations, however, do not address BSEE's authority to order a predecessor to remediate INCs that are issued after their period of ownership. *See* 30 C.F.R. § 556.710. The net proceeds from Court-approved sales of Debtors' assets should be escrowed and/or set aside to ensure Debtors' compliance with federal environmental and safety law.

*B. Debtors Cannot Abandon Property Without Having Proper, Fully Funded Transition Plans in Place for Each Property.*

16. Debtors recognized in paragraph 16 of the First Abandonment Motion that any abandoned assets would be "transitioned" to applicable predecessors, if any. A proper, safe transition is a complex, months-long process that requires, among other things, fulsome, accurate information from Debtors on the current status of any applicable asset. This is particularly important in the current situation, where Chevron and many other predecessors have not owned and/or operated the assets proposed for abandonment for many years. A proper transition also requires that Debtors, at a minimum, maintain and monitor the assets in full compliance with applicable law during the transition period. Ultimately, Debtors must put forth a well-defined transition process that is fully funded by Debtors. Debtors have failed to do this. Any approved abandonment should be conditioned on a proper, and fully funded transition process to ensure compliance with HES regulations.

*C. Debtors' Proposed Form of Order Improperly Seeks to Include Unrelated Relief that Affects Third Party Rights.*

17. In addition to the substantive issues addressed above, Chevron notes a separate, significant problem with the proposed form of order submitted by the Debtors with the First Abandonment Motion (Dkt. 1183-1]. Paragraph 10 of the proposed form of order states as follows:

> 10. Consistent with the limitations imposed by Section 362 of the Bankruptcy Code, if the Debtors have deposited monies with a counterparty to a Specified Agreement as a security deposit or pursuant to another similar arrangement, such counterparty is prohibited from setting off or otherwise using the monies from such deposit or other arrangement without further order of the Court (with rights, objections, and defenses of all parties reserved).

Inclusion of this relief is strange and unmerited for at least three independent reasons. First, it is outside the scope of the rejection and abandonment provisions of the Bankruptcy Code. Second, there is no notice, discussion, or citation to any authority in the First Abandonment Motion itself for such unusual and unrelated relief. Third, it is unclear what is meant or covered by "deposited monies" or "similar arrangement." For example, Chevron has interests in certain monies in escrow which are clearly not property of Debtors' estate, but they have been "deposited" by Debtors. Chevron objects to any attempt by Debtors to impair Chevron's rights to these escrowed monies and Chevron's associated rights and remedies under the applicable contracts. What about other financial assurance provided for or arranged by Debtors with sureties or others? Do any such financial assurances or third-party security constitute "deposits" or "other arrangements" the Debtors seek to include? Parties may well have any variety of rights including but not limited to recoupment which is, by well-established Fifth Circuit authority, not subject to the automatic stay. *See, In re Holford,* 896 F.2d 176 (5th Cir. 1990). This proposed order language could arguably override that authority or impermissibly expand the Debtors' rights and limit rights of third parties. Chevron therefore objects to this language in full. A generic "reservation of rights" at the end does not correct these fundamental problems. Presuming the Debtors are able to carry their burden of

proof under Sections 365 and 554 and are entitled to any of the relief otherwise sought in the First Abandonment Motion, paragraph 10 should be stricken and omitted in full from any form of order signed by the Court.

## V.

## RESERVATION OF RIGHTS

18. Chevron expressly reserves and preserves all of its rights, claims, and objections to the First Abandonment Motion, including but not limited to its rights, claims, and objections related to any related documents and filings.

## VI.

## CONCLUSION

WHEREFORE, Chevron U.S.A. Inc., Union Oil Company of California, Noble Energy, Inc., Chevron Pipe Line Company, Unocal Pipeline Company, and each of their respective affiliates respectfully request that their limited objections to the Debtors' First Abandonment Motion be sustained and respectfully request that this Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**ANDREWS MYERS, P.C.**

*/s/ Edward L. Ripley*
EDWARD L. RIPLEY
Texas Bar No. 16935950
T. JOSH JUDD
Texas Bar No. 24036866
1885 St. James Place, 15th Floor
Houston, Texas 77056
713-850-4200 – Telephone
713-850-4211 – Facsimile
eripley@andrewsmyers.com
jjudd@andrewsmyers.com

**KING & SPALDING LLP**

MATT WARREN
Texas Bar No.: 24119154
ANDREW STAKELUM
Texas Bar No.: 24072362
1100 Louisiana, Suite 4100
Houston, Texas 77002
713-751-3200 – Telephone
mwarren@kslaw.com
astakelum@kslaw.com

**ATTORNEYS FOR CHEVRON U.S.A. INC.; UNION OIL COMPANY OF CALIFORNIA; NOBLE ENERGY, INC.; CHEVRON PIPE LINE COMPANY; UNOCAL PIEPLINE COMPANY AND THEIR RESPECTIVE AFFILIATES**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 5, 2024, a true and correct copy of the foregoing Limited Objection and Reservation of Rights was served via the Court's Electronic Notification System on all parties entitled to such notice.

*/s/ Edward L. Ripley*
EDWARD L. RIPLEY