**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Chapter 11** |
| | § | |
| **MLCJR LLC, *et al.*[1]** | § | **CASE NO. 23-90324 (CML)** |
| | § | |
| **Debtors** | § | **(Jointly Administered)** |

**SUPPLEMENTAL OBJECTION AND RESERVATION OF RIGHTS OF CHEVRON U.S.A. INC.; UNION OIL COMPANY OF CALIFORNIA; NOBLE ENERGY, INC.; CHEVRON PIPE LINE COMPANY; UNOCAL PIPELINE COMPANY; AND THEIR AFFILIATES TO THE DEBTORS' FIRST MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C.§365(A) AND 554 AUTHORIZING OMNIBUS REJECTION OF CERTAIN UNEXPIRED LEASES AND EXECUTORY CONTRACTS RELATED TO THE DEBTORS' SPECIFIED PROPERTIES, AND ABANDONMENT OF ANY INTERESTS RELATED THERETO**

[Relates to Dkt. No. 1183 & 1280]

Chevron U.S.A. Inc.; Union Oil Company of California; Noble Energy, Inc.; Chevron Pipe Line Company; Unocal Pipeline Company; and each of their respective affiliates (collectively "Chevron"), creditors in the above-styled case, pursuant to Bankruptcy Code sections 365 and 554 and Federal Rules of Bankruptcy Procedure 6006 and 6007, file this Supplemental Objection and Reservation of Rights to the Debtors' First Motion for Entry of Order Pursuant to 11 U.S.C. §365(a) and 554 Authorizing Omnibus Rejection of Certain Unexpired Leases and Executory Contracts Related to the Debtors' Specified Properties, and Abandonment of any Interests Thereto [Dkt. No. 1183] (the "First Abandonment Motion"), as a supplement to Chevron's Limited Objection [Dkt. No. 1280] and, in support thereof, would respectfully state as follows:

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

## I.

## SUPPLEMENTAL OBJECTION

1. The U.S. Government has previously invoked *Midlantic Nat'l Bank v. N.J. Dep't of Env't Prot.,* 474 U.S. 494 (1986) in response to the Debtors' continuing failure to comply with federal health, safety, and environmental laws, including the Debtors' failure to resolve hundreds of Incidents of Non-Compliance ("INCs") related to their wells and platforms. Any abandonment should be conditioned Debtors remediating these INCs, including many that the U.S. Government contend pose "the greatest threatened imminent harm level to human health, safety or the environment." [Dkt. No. 835 at ¶30]. If the Court permits the abandonment of assets without this essential condition, it is even more critical that any abandonment require the Debtors to monitor and maintain the assets for a minimum 90-day transition period post abandonment.

2. The need for Debtors to facilitate an orderly transition for a period of time is not disputed. ***"The Debtors acknowledge that operations for the Specified Properties are complex and that an orderly process to transfer responsibility for maintenance and monitoring and ultimate decommissioning to a responsible entity is required to mitigate against identifiable hazards."*** First Abandonment Motion [Dkt. No. 1183 at ¶ 16]. Wells, platforms, and their associated production and safety equipment require frequent monitoring and inspections at intervals dictated by federal law. Federal law requires the Debtors, like all offshore oil and gas operators, to monitor and maintain the assets included in the First Abandonment Motion. A transition plan ensures the assets remain in compliance with federal law as the parties that will perform the decommissioning receive and review the asset-specific information and puts in place the necessary arrangements to assume responsibilities for monitoring and maintaining the asset.

3. The safe and orderly transition of assets takes time and is an essential component of nearly every transfer of interests. As part of the recent Court-approved sale, W&T Offshore,

Inc. ("W&T") negotiated for and obtained a **90-day transition period** during which Debtors would continue to operate and maintain the assets as W&T performs necessary preparations to take possession. As W&T recently stated to this Court, "[t]hese services are essential to W&T's ability to take over operation of the acquired assets and comply with the applicable rules and regulations that W&T must comply with as the new owner and operator of the acquired assets." W&T's Statement [Dkt No. 1397 at ¶2]. As part of the Debtors' proposed sale of assets to Natural Resources Worldwide, LLC ("NRW"), Debtors have agreed to provide a similar **90-day transition period** for the assets that NRW seeks to acquire. [Dkt. No. 1336 at pp. 216-233]. These assets include numerous wells and platforms that, like those at issue in the First Abandonment Motion, are shut-in, no longer producing, and/or subject to Decommissioning Orders and Idle Iron notices.

4. Other bankruptcy cases have required even longer transition periods when offshore oil and gas leases are abandoned pursuant to Section 554 of the Bankruptcy Code. Notably, the Chapter 11 Plan of Reorganization for the various debtors in the Fieldwood Energy bankruptcy cases required a **nine-month transition period** for oil and gas leases that were abandoned as part of the bankruptcy process. This was required to "maintain periodic and regular monitoring of the condition of wells and infrastructure … to identify any condition that develops during the Transition Period that could threaten public health, safety or the environment." *See*, Plan of Reorganization [Case No. 20-33948, Dkt. 2008] at Sec. 5.13(b).

5. Chevron and other predecessors do not know the true condition of the wells, platforms, and other facilities on leases sought to be abandoned in the First Abandonment Motion. This information cannot be ascertained from dated and incomplete records. Chevron and other predecessors cannot immediately begin monitoring and maintaining these assets before first conducting their own assessment of whether it is even safe for their personnel to board a particular

platform.

6. As set forth in its initial Limited Objection to the First Abandonment Motion [Dkt. No. 1280], Chevron requests that any order permitting the abandonment of offshore oil and gas leases requires the Debtors to perform those services for, at a minimum, the same **90-day transition period** which Debtors have already agreed to provide for assets included in the approved sale to W&T, and in the proposed sale to NRW. These services are set out in Exhibit A to the NRW Purchase and Sale Agreement's Transition Services Agreement [Dkt. No. 1336 at p. 231-232] and attached as Exhibit A to this Supplemental Objection. These important transition services include, among others, "[c]omply[ing] with regulatory and compliance requirements" and "[p]rovid[ing] substantially the same health, safety and environmental services, including regulatory management and compliance, related to the Assets as were being provided immediately prior to the Closing Date."

7. The failure of Debtors to provide these basic services during a reasonable transition period will cause the assets to be in further violation of federal law and increase the risk that "significant human health, safety, and environmental harms are likely to occur." [Dkt. No. 835 at ¶ 32]. This will also result in significant prejudice to Chevron and similarly situated predecessors if they are subjected to unwarranted regulatory enforcement actions, through no fault of their own, because the condition of the assets are either unknown or preclude the safe boarding by required personnel and, as a result, their ability to commence maintenance and monitoring activities is delayed.

## II.

## RESERVATION OF RIGHTS

8. Chevron expressly reserves and preserves all of its rights, claims, and objections to the First Abandonment Motion, including but not limited to its rights, claims, and objections related to any related documents and filings.

## III.

## CONCLUSION

WHEREFORE, Chevron U.S.A. Inc., Union Oil Company of California, Noble Energy, Inc., Chevron Pipe Line Company, Unocal Pipeline Company, and each of their respective affiliates respectfully request that their objections to the Debtors' First Abandonment Motion be sustained and respectfully request that this Court grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**ANDREWS MYERS, P.C.**

*/s/ Edward L. Ripley*
EDWARD L. RIPLEY
Texas Bar No. 16935950
T. JOSH JUDD
Texas Bar No. 24036866
1885 St. James Place, 15th Floor
Houston, Texas 77056
713-850-4200 – Telephone
713-850-4211 – Facsimile
eripley@andrewsmyers.com
jjudd@andrewsmyers.com

**KING & SPALDING LLP**

MATT WARREN
Texas Bar No.: 24119154
ANDREW STAKELUM
Texas Bar No.: 24072362
1100 Louisiana, Suite 4100
Houston, Texas 77002
713-751-3200 – Telephone
mwarren@kslaw.com
astakelum@kslaw.com

**ATTORNEYS FOR CHEVRON U.S.A. INC.; UNION OIL COMPANY OF CALIFORNIA; NOBLE ENERGY, INC.; CHEVRON PIPE LINE COMPANY; UNOCAL PIEPLINE COMPANY AND THEIR RESPECTIVE AFFILIATES**

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, a true and correct copy of the foregoing Limited Objection and Reservation of Rights was served via the Court's Electronic Notification System on all parties entitled to such notice.

*/s/ Edward L. Ripley*
EDWARD L. RIPLEY