United States Bankruptcy Court
Southern District of Texas

**ENTERED**
April 10, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 |
| **MLCJR LLC**, *et al.*,[1] | Case No. 23-90324 (CML) |
| **Debtors.** | **(Jointly Administered)** |

**STIPULATION AND AGREED ORDER BY AND AMONG THE DIP
SECURED PARTIES, THE PREPETITION SECURED PARTIES,
AND CERTAIN LIEN CREDITORS REGARDING SALE PROCEEDS
RESERVES AND LIEN DETERMINATION PROCESS**
**[Relates to Docket Nos. 556, 1472, and 1714]**

The DIP Secured Parties and the Prepetition Secured Parties (each in their capacity as such and as defined below) and All Coast, LLC, Gulfstream Services, Inc., Keystone Chemical, LLC, Offshore Liftboats, LLC, Piranha Rentals, LLC, Premier Offshore Catering, Inc., Prime Energy Resources, LLC, Quality Energy Services, Inc., R&R Boats, Inc., Sparrows Offshore, LLC, Swivel Rental & Supply, LLC, Tobias, Inc., Total Production Supply, LLC, Linear Controls, Inc., and Vision Production Chemicals LLC (collectively, the "**Lien Creditors**") (each a "**Party**" and collectively, the "**Parties**") hereby enter into this *Stipulation and Agreed Order by and among the DIP Secured Parties, the Prepetition Secured Parties, and Certain Lien Creditors Regarding Sale Proceeds Reserves and Lien Determination Process* (this "**Stipulation and Agreed Order**"), and agree as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

1

A.  **General Background**

**WHEREAS**, on May 14, 2023 (the "**Petition Date**"), MLCJR LLC and its debtor affiliates (collectively, the "**Debtors**") filed voluntary petitions commencing cases (the "**Chapter 11 Cases**") for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas (the "**Court**").

**WHEREAS**, on July 19, 2023, the Court entered the *Stipulation and Agreed Order Resolving Cardinal Coil Tubing, LLC's and Cardinal Slickline, LLC's Emergency Motion to Appoint Official Committee of Statutory Lien Creditors*, which permitted formation of an ad hoc committee (the "**Lien Creditors Committee**") "on behalf of those creditors whose claims are alleged to be secured by statutory liens under applicable non-bankruptcy law." Docket No. 643 ¶ 3.

B.  **The DIP Facility**

**WHEREAS**, on June 13, 2023, the Court entered the *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Docket No. 434] (the "**Final DIP Order**").[2]  Among other things, the Final DIP Order approved (on a final basis) the Debtors' entry into the DIP Facility among (i) Debtor MLCJR LLC, as Borrower, (ii) BP Energy Company ("**bpec**"), (iii) Amarillo National Bank ("**ANB**," and together with bpec, the "**DIP Lenders**"), and (iv) ANB, as

---

[2] Capitalized terms used herein but not otherwise defined have the meanings given to such terms in the Final DIP Order.

administrative agent and collateral agent (in such capacities, the "**DIP Agent**"; the DIP Agent together with the DIP Lenders, the "**DIP Secured Parties**").

**WHEREAS**, the Maturity Date and the Termination Date under the DIP Facility occurred on November 30, 2023, which the DIP Agent noticed to the Debtors on December 1, 2023.

**WHEREAS**, on January 17, 2024, the DIP Agent delivered the *Notice of DIP Agent's Withdrawal of Consent to the Debtors' Use of Cash Collateral; Carve-Out Trigger Notice* (the "**Cash Collateral Termination Notice**"), which was filed with the Court at docket number 1384. Pursuant to the Cash Collateral Termination Notice, the DIP Agent informed the Debtors of its withdrawal of consent to the Debtors' use of Cash Collateral and the invocation of the Post Carve-Out-Trigger Notice Cap.

**WHEREAS**, on January 29, 2024, the Court entered the *Order Regarding DIP Agent's Emergency Motion for Relief from the Automatic Stay to Enforce Rights under the DIP Documents and Use of Cash Collateral* [Docket No. 1472] (the "**First Lift Stay Order**"), which permitted the Debtors to use certain limited amounts of Cash Collateral and granted the DIP Agent relief from the automatic stay with respect to $47,494,240 of the W&T Sale Proceeds (as defined below) (the "**Net W&T Sale Proceeds**"), with the Net W&T Sale Proceeds remaining subject to any Permitted Prior Liens thereon.

C.   **The Debtors' Asset Sales**

**WHEREAS**, on June 20, 2023, the Court entered an order approving bidding procedures to allow the Debtors to consummate potential transactions, including potential sales of their assets [Docket No. 471] (the "**Bid Procedures Order**").

**WHEREAS**, on January 12, 2024, the Court approved the Debtors' entry into a purchase and sale agreement with W&T Offshore, Inc. ("**W&T**"). *See* Docket No. 1357 (the "**W&T Sale**

3

Order" and the "**W&T Sale**"). Pursuant to the W&T Sale Order, the Debtors sold certain of their assets to W&T for a purchase price of $72,000,000 (the "**W&T Sale Proceeds**").

WHEREAS, on February 10, 2024, the Court approved the Debtors' sale of certain additional assets to Natural Resources Worldwide LLC [Docket No. 1626] (the "**NRW Sale Order**" and the "**NRW Sale**")[3] for a purchase price of $20.25 million (the "**NRW Sale Proceeds**").[4]

### D. The Lien Identification Motion

WHEREAS, in addition to the DIP Liens, certain creditors asserting statutory liens against the Debtors' assets have asserted that their liens constitute Permitted Prior Liens against the Sale Proceeds.

WHEREAS, on July 3, 2023, the Debtors filed the *Debtors' Motion for Entry of an Order Approving Lien Identification Procedure and Other Related Relief* [Docket No. 556] (the "**Lien Identification Motion**").  In the Lien Identification Motion, the Debtors requested entry of an order establishing certain procedures for obtaining information related to statutory liens asserted against the Debtors' properties.  As of the date of this Stipulation and Agreed Order, no order has yet been entered on the Lien Identification Motion.

### E. The Conversion Motion and Second Lift Stay Order

WHEREAS, on February 20, 2024, the Debtors filed the *Debtors' Emergency Motion (I) to Convert Chapter 11 Cases to Cases Under Chapter 7; (II) to Shorten Notice Related Thereto; and (III) for Related Relief* [Docket No. 1661] (the "**Conversion Motion**").

---

[3] The W&T Sale and the NRW Sale are collectively referred to herein as the "**Asset Sales**."
[4] The Net W&T Sale Proceeds and the Net NRW Sale Proceeds (as defined below) are collectively referred to herein as the "**Sale Proceeds**."

4

**WHEREAS**, in connection with the Conversion Motion, the Debtors, the DIP Secured Parties, and the Official Committee of Unsecured Creditors agreed to the terms of the *Stipulation and Second Order Regarding DIP Agent's Emergency Motion for Relief from the Automatic Stay to Enforce Rights Under the DIP Documents and Use Cash Collateral* [Docket No. 1679], which the parties subsequently modified and the Court approved on February 28, 2024 [Docket No. 1714] (the "**Second Lift Stay Order**," and together with the First Lift Stay Order, the "**Lift Stay Order**s").

**WHEREAS**, the Second Lift Stay Order provided, among other things, for the Chapter 7 trustee's authority to use certain Cash Collateral in the Operating Reserve and the Litigation Reserve (each as defined in the Second Lift Stay Order) following conversion of the Chapter 11 Cases to cases under Chapter 7.  The Second Lift Stay Order also provided that other than funding certain amounts authorized under the Lift Stay Orders, "the net cash proceeds from the NRW Sale and the W&T Offshore Sale will remain in the segregated accounts established to hold those proceeds until further order of the Court."  Second Lift Stay Order, ¶ 11.

**WHEREAS**, on February 28, 2024, the Court entered an order granting the Conversion Motion and converting the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code (the "**Chapter 7 Cases**").

**WHEREAS**, the Parties desire to establish procedures for the determination of the validity, priority, and amount of any Permitted Prior Liens against the Sale Proceeds, establish certain reserves out of the Sale Proceeds to pay claims determined to be secured by Permitted Prior Liens, and otherwise address the distribution of the Sale Proceeds.

**NOW, THEREFORE**, the Parties stipulate and agree, and the Court ORDERS, as follows:

1. The Bankruptcy Court has jurisdiction to consider this Stipulation and Agreed Order and the relief requested herein pursuant to 28 U.S.C. § 1334; consideration of this Stipulation and Agreed Order and the relief requested herein is a core proceeding pursuant to 28 U.S.C. § 157(b); and venue is proper before the Bankruptcy Court pursuant 28 U.S.C. §§ 1408 & 1409.

2. **NRW Senior Claims Reserve**. The DIP Agent will escrow $3.1 Million (the "**NRW Senior Claims Reserve**") of the NRW Sale Proceeds (net of any reserves, reimbursements, or other payments authorized under the NRW Sale Order or the Lift Stay Orders) (the "**Net NRW Sale Proceeds**"). Permitted Prior Liens against the NRW Sale Proceeds shall attach to the NRW Senior Claims Reserve in the same priority as existed at the time of establishment of the NRW Senior Claims Reserve, with all parties' rights and defenses reserved. The establishment of the NRW Senior Claims Reserve shall not affect any party's right to assert a different allocation of the Net NRW Sale Proceeds among the properties that were the subject of the NRW Sale (the "**NRW Sold Properties**"), and all such rights are expressly reserved.

3. **Senior Claims Resolution Process**. The following procedures (the "**Senior Claims Resolution Process**") will govern the determination of the extent, validity, priority, and amount of Permitted Prior Liens against the Sale Proceeds, for purposes of payment from the NRW Senior Claims Reserve or by the DIP Secured Parties as set forth herein:

   a. On or before May 6, 2024, any claimant alleging to hold a Permitted Prior Lien (a "**Prior Lien Claimant**") must file a statement with the Court ("**Permitted Prior Lien Statement**") setting forth: (i) the amount of its claim secured by a Permitted Prior Lien (a "**Prior Lien Claim**"), including a breakdown of the prepetition amount and any postpetition amount of the claim, together with any interest, attorneys' fees, and/or costs, as permitted by applicable law, (ii) the lease to which such Permitted Prior Lien attaches (and if multiple leases, the portion of such claim that purports to attach to each such lease), (iii) the legal and factual basis for the Permitted Prior Lien, (iv) the date on which the Permitted Prior Lien first arose, and (v) a summary of the evidence that the Prior Lien Claimant would submit to establish that its lien claim is in fact a Permitted Prior Lien, including

6

    evidence supporting the asserted date that the Permitted Prior Lien arose ("**Evidence Summary**"). For the avoidance of doubt, if any Prior Lien Claimant intends to rely upon any prior filing, including, but not limited to, a proof of claim, Section 546 notice, adversary complaint, or other filing ("**Prior Filing**"), the contents of such Prior Filing may be incorporated by reference into and as a part of the Permitted Prior Lien Statement by the Prior Lien Claimant.

b. Each Prior Lien Claimant will provide all source documentation supporting its asserted Permitted Prior Lien(s) on or before May 24, 2024. Such source documentation must be submitted by electronic mail to counsel for the DIP Secured Parties: for ANB, Louis M. Phillips (louis.phillips@kellyhart.com) and Erin K. Arnold (erin.arnold@kellyhart.com); for bpec, Kelli S. Norfleet (kelli.norfleet@haynesboone.com) and Garrett S. Martin (garrett.martin@haynesboone.com) (collectively, the "**DIP Addressees**"). The deadline for a Prior Lien Claimant to provide supporting documentation may be extended by agreement of the Prior Lien Claimant and the DIP Secured Parties. Prior Lien Claimants may not use or seek to submit or admit any source documentation not mentioned in the Evidence Summary or not provided to the DIP Secured Parties except to the extent that such documentation or information is first obtained by a Prior Lien Claimant during the course of discovery in the Adversary Proceeding (as defined below) or in the Chapter 11 Cases; provided, however, that a Prior Lien Claimant can seek relief from the foregoing restriction for cause.

c. The DIP Secured Parties and the Prior Lien Claimants will work in good faith to attempt to resolve any disputes regarding the validity, extent, priority, and amount of asserted Prior Lien Claims and any disputes regarding the allocation of Sale Proceeds among the properties sold pursuant to the Asset Sales (each, a "**Sold Property**," and collectively, the "**Sold Properties**").

d. Subject to paragraph 3(k) below, to the extent that (i) the total amount of Permitted Prior Liens asserted against any of the Sold Properties generating the W&T Sale Proceeds under these procedures is less than the agreed amount of Net W&T Sale Proceeds allocated to such Sold Property, and (ii) the DIP Secured Parties, upon review of the Evidence Summary and supporting documentation, determine that one or more Prior Lien Claimants have sufficiently evidenced the validity, amount and priority of a Permitted Prior Lien thereupon, the DIP Secured Parties shall promptly distribute to such Prior Lien Claimant(s) an amount equal to the total amount of each such Permitted Prior Lien.

g. On or before June 28, 2024, the DIP Secured Parties shall file with the Court an adversary proceeding to determine (i) the validity, extent, priority and amount of any Prior Lien Claim that has not been resolved by agreement of the DIP Secured Parties and the applicable Prior Lien Claimant and (ii) any

        outstanding disputes relating to the valuation of the Sold Properties that are not resolved among the Prior Lien Claimants and the DIP Secured Parties as of this deadline (the "**Adversary Proceeding**").

h. Any counsel representing a Prior Lien Claimant within these bankruptcy cases who represents any Prior Lien Claimant within the process set forth herein shall accept service on behalf of such counsel's clients, which service may be made by email delivered by the DIP Secured Parties to such counsel. Such service shall be made within three (3) business days after the filing of the Adversary Proceeding.

i. The Adversary Proceeding shall be stayed for a period of fifty-five (55) days after the date of the last service, while the parties attempt to agree upon a mediator to mediate resolution of the Adversary Proceeding, and a date and time for mediation. If the parties cannot agree to both a mediator and a mediation date within this time frame, the DIP Secured Parties shall file a notice within the Adversary Proceeding that the stay is dissolved, and defendants shall file responses to the complaint initiating the Adversary Proceeding within ten (10) days after the date of such notice.

j. The DIP Secured Parties and any defendant in the Adversary Proceeding that intends to retain an expert and present expert opinion testimony shall exchange expert reports on or before 40 days after service of the Adversary Proceeding summons and complaint upon such defendant; and the parties shall exchange expert rebuttal reports within 15 days after service of the initial expert reports. No party shall submit expert opinion evidence unless such party has complied with the deadlines established in this subsection.

k. Prior Lien Claims determined to constitute Permitted Prior Liens (the "**Allowed Lien Claims**"), including pursuant to paragraph 3(d) hereof, either by settlement agreed to by the applicable Prior Lien Claimant and the DIP Secured Parties ("**Settlement**") or final order of the Court that is no longer subject to appeal, unless the final order is not stayed ("**Final Order**") shall be paid either in full or ratably from the NRW Senior Claims Reserve or the DIP Secured Parties, as applicable, in accordance with the following:

    i. Allowed Lien Claims shall be paid in full up to the amount of Sale Proceeds allocated to the Sold Properties to which such Allowed Lien Claims attach. To the extent that the total amount of Allowed Lien Claims on a particular Sold Property exceeds the amount of Sale Proceeds allocated to such Sold Property, the Allowed Lien Claims against such Sold Property shall be paid ratably from the Sale Proceeds of such Sold Property.

    ii. As it relates to the properties sold pursuant to the W&T Sale Order (the "**W&T Sold Properties**"), upon the allowance of an Allowed Lien Claim by Settlement or Final Order, each of the DIP Lenders

8

shall pay to the DIP Agent such DIP Lender's Sale Proceeds Share (as defined below) of the Net W&T Sale Proceeds for the W&T Sold Property to which the Allowed Lien Claim attaches up to the amount of the Allowed Lien Claim. Each DIP Lender shall not be obligated to pay any amount in excess of its Sale Proceeds Share of the Net W&T Sale Proceeds for the W&T Sold Properties.

iii. If the amount of Prior Lien Claims asserted against a Sold Property is less than the Sale Proceeds attributable to such Sold Property, the DIP Agent shall pay any Allowed Lien Claims against such Sold Property promptly following their allowance.

iv. If the amount of Prior Lien Claims asserted against a Sold Property is greater than the Sale Proceeds attributable to such Sold Property, upon determination of the Allowed Lien Claims against such Sold Property by Settlement or Final Order, the DIP Agent shall promptly distribute the Sale Proceeds attributable to such Sold Property ratably to the holders of Allowed Lien Claims against such Sold Property.

v. In the event that the amount of Allowed Lien Claims against the NRW Sold Properties is determined by Settlement or Final Order to be more than the NRW Senior Claims Reserve, each of the DIP Lenders shall pay to the DIP Agent an amount from such DIP Lender's Sale Proceeds Share equal to the positive difference of (x) the total amount of Allowed Lien Claims against the NRW Sold Properties up to the amount of the Net NRW Proceeds attributable to the NRW Sold Properties above (y) the amount of the NRW Senior Claims Reserve.

vi. In no event shall the DIP Lenders have any obligation to pay or remit any amount above their respective Sale Proceeds Shares of the Sale Proceeds for any particular Sold Property. Further, Sale Proceeds attributable to one Sold Property may not be used to pay Allowed Lien Claims on any other Sold Property.

vii. As used herein, "**Sale Proceeds Share**" means the pro rata share of the Distributed Sale Proceeds (as defined below) that each DIP Lender receives pursuant to paragraph 4 hereof.

4. **Distribution of Distributed Sale Proceeds Subject to Continuing Payment Obligation**. After escrowing the NRW Senior Claims Reserves from the Sale Proceeds, the DIP Agent is authorized to distribute the remaining Sale Proceeds (the "**Distributed Sale Proceeds**") to the DIP Lenders in partial satisfaction of the DIP Obligations, and such distributions shall be

9

free and clear of any claim, charge, assessment or other liability as set forth in paragraph 16 of the Final DIP Order subject to the obligations of paragraph 3(k) of this Stipulation and Agreed Order.

5. A Prior Lien Claimant's filing of a Permitted Prior Lien Statement shall be deemed to satisfy any requirement under applicable state law to commence a suit against the Debtors to enforce the Prior Lien Claimant's Prior Lien Claim.

6. Nothing in this Stipulation and Agreed Order shall be deemed to alter, limit, or impair the terms and conditions of the bar date order entered by this Court on June 22, 2023 [Docket No. 492].

7. Nothing in this Stipulation and Agreed Order shall, or shall be deemed to, prejudice any party's right to object to any claim or alleged Permitted Prior Lien on any ground, or to dispute, or to assert offsets against or defenses to, any claim or alleged Permitted Prior Lien as to validity, priority, extent, amount, liability, classification, or otherwise.

8. Any Federal Rule of Bankruptcy Procedure or local rule that might otherwise delay the effectiveness of this Stipulation and Agreed Order is waived to permit the effect of this Stipulation and Agreed Order to be effective immediately.

9. This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of this Stipulation and Agreed Order in all respects and further to hear and determine all matters arising from the construction and implementation of this Stipulation and Agreed Order.

10. As soon as reasonably practicable, but not later than two business (2) days following entry of this Stipulation and Agreed Order, the DIP Agent will serve a copy of this Stipulation and Agreed Order on the following parties (the "**Notice Parties**"):  (i) the parties listed on the most recent pre-conversion Master Service List, filed at Docket Number 1267; (ii) the parties listed on the Schedule DEF Service List (as defined in the motion requesting approval of

this Stipulation and Agreed Order); (iii) the parties listed on the mailing matrix contemplated in the *Order Granting Trustee's Emergency Motion to Limit Notice* [Docket No. 1794]; and (iv) all parties who have requested notice in these cases (as of the date of entry of this Stipulation and Agreed Order). The DIP Agent shall serve the Notice Parties either by CM/ECF to Notice Parties authorized to receive electronic notices in these cases, electronic email notice (where available), or by First Class mail, as applicable. No further notice is required.

Signed: April 10, 2024

_____
Christopher Lopez
United States Bankruptcy Judge

Dated:  April 8, 2024

Stipulated and Agreed to by:

| | |
|---|---|
| */s/  Louis M. Phillips* | */s/  Kelli S. Norfleet* |
| Louis M. Phillips (LA #10505) | Kelli S. Norfleet |
| **KELLY HART PITRE** | Texas State Bar No. 24070678 |
| One American Place | **HAYNES AND BOONE, LLP** |
| 301 Main Street, Suite 1600 | 1221 McKinney, Suite 4000 |
| Baton Rouge, LA 70801-1916 | Houston, TX  77010 |
| Telephone: (225) 381-9643 | Telephone: (713) 547-2000 |
| Facsimile: (225) 336-9763 | Facsimile: (713) 547-2600 |
| Email: louis.phillips@kellyhart.com | Email: kelli.norfleet@haynesboone.com |
| | |
| *Counsel for Amarillo National Bank* | *Counsel for BP Energy Company* |

| | |
|---|---|
| */s/  Benjamin W. Kadden* | */s/  Rick M. Shelby* |
| Benjamin W. Kadden (TX Bar 24077542) | Patrick "Rick" M. Shelby (TXBN 24129040) |
| **LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD** | **PHELPS DUNBAR LLP** |
| 601 Poydras Street, Suite 2775 | 365 Canal Street, Suite 2000 |
| New Orleans, LA 70130 | New Orleans, Louisiana 70130-6534 |
| Telephone: (504) 568-1990 | Telephone: (504) 566-1311 |
| Facsimile: (504) 310-9195 | Telecopier: (504) 568-9130 |
| Email: bkadden@lawla.com | rick.shelby@phelps.com |
| | |
| *Counsel for All Coast, LLC, Gulfstream Services, Inc., Keystone Chemical, LLC, Offshore Liftboats, LLC, Piranha Rentals, LLC, Premier Offshore Catering, Inc., Prime Energy Resources, LLC, Quality Energy Services, Inc., R&R Boats, Inc., Sparrows Offshore, LLC, Swivel Rental & Supply, LLC, Tobias, Inc., and Total Production Supply, LLC* | *Counsel for Linear Controls, Inc. and Vision Production Chemicals LLC* |