IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| MLCJR LLC, *et al.*,[1] | § § | Case No. 23-90324 (CML) |
| | § § | (Jointly Administered) |
| Debtors. | § | |

**EXXON MOBIL CORPORATION'S OBJECTION TO THE TRUSTEE'S EMERGENCY MOTION FOR AUTHORITY TO (A) RELINQUISH CERTAIN FEDERAL LEASES; (B) ABANDON THE REMAINING TITLE TO CERTAIN FEDERAL LEASES; AND (C) FOR RELATED RELIEF**
[Relates to Doc. No. 2341]

Exxon Mobil Corporation ("ExxonMobil") files this limited objection (the "Objection") in response to Michael D. Warner's (the "Trustee") *Emergency Motion for Authority to (A) Relinquish Certain Federal Leases; (B) Abandon the Remaining Title to Certain Federal Leases; and (C) for Related Relief* [Docket No. 2341] (the "Abandonment Motion"), and respectfully states as follows:

**INTRODUCTION**

1. By the Motion,[2] the Trustee seeks to abandon Federal Leases that have generated $88 million in gross revenue in the last ten months. While the Federal Leases may be at the center of several disputes, the proceeds generated by them alone demonstrates that they are not of inconsequential value or inconsequential benefit to the estate. Indeed, even after accounting for the United States' alleged $12 million administrative claim for unpaid, post-closing royalties, the

---

[1] The Debtors in these cases along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

[2] Capitalized terms in the Introduction carry the meanings ascribed to them in the remainder of this Objection.

1

17050342

Federal Leases still generated more than $75 million in revenue—which precludes a finding that the Federal Leases are of inconsequential value or are burdensome to the Estates.

2.  But rather than (a) waiting for NRW to obtain regulatory approval, (b) seeking to claw back the proceeds generated by the Federal Leases, or (c) unwinding the NRW Sale Order and finding an alternative buyer, the Trustee seeks to simply walk away from the Federal Leases on an emergency basis which would likely result in decommissioning orders being issued to predecessors such as ExxonMobil.  In the objection recently filed by the United States, there was no allegation that it is impossible for NRW to obtain regulatory approval.  Therefore, more time may provide the easiest path forward which would be for NRW to fully consummate the sale and obtain regulatory approval.

3.  If the Court determines that NRW will never be able to fully consummate the sale, there are options than relinquishment of the Federal Leases.  The Court will recall that NRW was declared the winning bidder after a lengthy, in-court auction.  The other bidder at that auction likely still has an interest in acquiring the Federal Leases if NRW cannot obtain regulatory approval of the assignments.  With additional time, other parties may also have an interest in acquiring the Federal Leases.  Rather than exploring these alternatives, however, the Trustee seeks to abandon the Federal Leases on an expedited basis.

4.  This Court should deny the Abandonment Motion without prejudice and allow the various stakeholders additional time to resolve the issue of the Federal Leases in a manner that will bring greater benefit to the Estates while protecting stakeholders like ExxonMobil from the cascading effects of abandonment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     The 2018 Agreement**

5.     ExxonMobil and Debtor EXXI GOM, LLC ("EXXI GOM") are parties to numerous purchase and sale agreements and assignments, the most significant of which is dated December 1, 2010 (the "2010 PSA").  Pursuant to the 2010 PSA, ExxonMobil sold its rights in a large number of oil and gas interests in the Gulf of Mexico to EXXI GOM, primarily consisting of working interests in offshore oil and gas leases with the federal government as well as several states along with certain associated infrastructure.  Among others, ExxonMobil's conveyances pursuant to the 2010 PSA included interests in the West Delta 30 Field (OCS-G01447, OCS-00026, and OCS-00016) (collectively, the "Interests"), which are part of the Federal Leases that the Trustee is seeking to relinquish.

6.     On April 14, 2016, EXXI GOM and various affiliates filed Chapter 11 proceedings, jointly administered as Case No. 16-31928 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.  Thereafter, Debtor Cox Operating, L.L.C. ("Cox"), through Debtor MLCJR, LLC ("MLCJR"), acquired all of the stock in the sole member of EXXI GOM.

7.     EXXI GOM, MLCJR, and ExxonMobil then entered into an Amendment of the 2010 PSA, effective December 20, 2018 (the "2018 Amendment" and together with the 2010 PSA, the "2018 Agreement").  In light of its acquisition of EXXI GOM's sole parent, MLCJR expressly agreed in the 2018 Amendment to assume all of EXXI GOM's obligations under the 2010 PSA.[3]

---

[3] *See* 2018 Amendment at Recital D ("Cox has acquired all of the stock in Energy XXI Gulf Coast, Inc., the sole member of EXXI, and Cox therefore has agreed to assume all of EXXI's obligations as Buyer under the Agreement . . . .").

3

17050342

Indeed, the 2018 Amendment clarifies that the terms of the 2010 PSA "remained unchanged and in full force and effect" except to the extent modified in the 2018 Amendment.[4]

8. Under the 2018 Agreement, EXXI GOM expressly assumed all obligations and costs with respect to the disposal, salvage, plugging and abandonment, decommissioning, and other remediation or asset retirement work related to the Interests (collectively, the "P&A Obligations"):

> 9.08. Plugging and Abandoning Wells; Remediation. Buyer recognizes, and will either perform or assure that performance is accomplished properly and in accordance with applicable law and the Related Agreements, all obligations to abandon, restore, and remediate the Interests and Property, whether arising before or after the Effective Time, including obligations, as applicable, to:
>
> (a) obtain plugging exceptions in Operator's name for each Well with a current plugging exception, or permanently plug and abandon the Well;
>
> (b) plug, abandon, and if necessary, re-abandon each Well;
>
> (c) remove all equipment and facilities, including flowlines, pipelines, and platforms;
>
> (d) close all pits; and
>
> (e) restore and remediate the surface, subsurface, and offshore sites associated with the Interests or Property.
>
> Buyer will pay all costs and expenses associated with the obligations assumed under this Section 9.08.

9. In the 2010 PSA, EXXI GOM agreed to indemnify, defend, and hold Claimant harmless with respect to "each Claim and Liability relating to the Interests, Property, or this transaction, regardless of when or how the Claim or Liability arose or arises or whether the Claim or Liability is foreseeable or unforeseeable." See 2010 PSA § 16.03. In the 2018 Amendment,

---

[4] See 2018 Amendment art. V.

MLCJR expressly agreed to assume all of EXXI GOM's obligations under the 2010 PSA. *See* 2018 Amendment at Recital D. The Debtors' indemnification obligations include, but are not limited to, environmental, reclamation, restoration, remediation, decommissioning, plugging and abandonment, end of lease obligations, operational and regulatory requirements.

**II.    The NRW Sale and the Abandonment Motion**

10.    On February 9, 2024, the Court held an auction between NRW and several entities known collectively as Spectrum. The auction was productive and included many rounds of bidding. The Court began the auction with Spectrum's bid of $7 million, and the auction ended with NRW's bid of $20.25 million. *See* Doc. No. 1643.

11.    On February 10, 2024, the Court entered the *Order (A) Approving the Purchase and Sale Agreement with Natural Resources Worldwide, LLC, (B) Authorizing the Sale of Certain Assets of the Debtors Free and Clear of Liens, Claims, Encumbrances and Interests, (C) Authorizing the Assumption and Assignment of Certain Contracts and Leases, and (D) Granting Related Relief* [Doc. No. 1626] (the "NRW Sale Order"). Among other things, the NRW Sale Order approved the Purchase and Sale Agreement between the Debtors and Natural Resources Worldwide, LLC ("NRW") for the sale of certain assets, include a number of the Debtors' federal oil and gas leases (the "Federal Leases").

12.    In the NRW Sale Order, the Court provided that "any assumption, assignment, and/or transfer of any real rights and interests in the [Federal Leases] . . . will be ineffective absent the consent of the requisite regulatory authority." *See* NRW Sale Order ¶ 57(i).

13.    To date, the relevant regulatory agencies of the United States (collectively, the "United States") have withheld consent to the transfer of the Federal Leases notwithstanding that "closing" has occurred within the meaning of the NRW Sale Order. Although NRW has received

5

roughly $88 million in gross proceeds in connection with the Federal Leases, the United States alleges that it has not paid all post-closing royalties.

14.     This has led to a series of disputes and related motions. *See Natural Resources Worldwide, LLC's Motion Pursuant to Stipulation and Agreed Order* [Docket No. 2274]; *Trustee's Objection to Motion of Natural Resources Worldwide, LLC's Motion Pursuant to Stipulation and Agreed Order* [Docket No. 2295]; *United States' Request for Payment of Administrative Expenses for Unpaid Federal Royalties Arising Since February 28, 2024* [Docket No. 2312]; *Trustee's Objection to the United States' Request for Payment of Administrative Expenses for Unpaid Federal Royalties Arising Since February 28, 2024* [Docket No. 2330]; *Objection to the United States' Request for Payment of Administrative Expenses for Unpaid Federal Royalties Arising Since February 28, 2024* [Docket No. 2341].

15.     On January 8, 2025, the Trustee filed the Abandonment Motion, which seeks to bring an end to the disputes with NRW by abandoning and relinquishing the Federal Leases.

16.     The Abandonment Motion states that "[i]t is time for the Federal Leases to be addressed by the United States, and as the United States deems appropriate with predecessors-in-title that have the financial ability to properly address these issues." Doc. No. 2341 at ¶ 50. The Trustee's proposed relinquishment would tie the hands of both the United States and the predecessors such as ExxonMobil and destroy value. If the first path of NRW receiving regulatory approval is shut down, there are alternatives to these assets boomeranging to predecessors which can be explored by the United States and predecessors. However, these alternatives will be foreclosed if the Trustee is permitted to relinquish the Federal Leases.

6

17050342

**OBJECTION**

I.  **Abandonment Under Section 554 Is Inappropriate Given the Substantial Revenue Generated by the Federal Leases**

17. Abandonment under section 554 is appropriate only where the property to be abandoned is either (1) the property is burdensome to the estate or (2) both of inconsequential value and inconsequential benefit to the estate. *See In re Howard*, 533 B.R. 532, 547 (Bankr. S.D. Miss. 2015). Parties in interest are entitled to raise an objection to an attempt to abandon estate property, which then requires the court to set a hearing. *See* FED. R. BANKR. P. 6007. When tasked with determining whether a trustee may abandon property, a bankruptcy court must "(1) identify the legal definition of the terms 'burdensome' and 'inconsequential,' (2) make findings of fact about the contested asset, (3) determine whether its findings of fact satisfy the legal test for whether an asset is 'burdensome' or 'inconsequential,' and, finally, (4) if it concludes that the property is burdensome or inconsequential, determine if the trustee abused its discretion ('may abandon') by choosing to abandon the asset." *In re EuroGas, Inc.*, 755 F. App'x 825, 831 (10th Cir. 2019).

18. Property is "burdensome" when "the expected cost of administering the asset would exceed the expected benefit." *Id.*; *see also In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987) ("Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so."). Alternatively, property may be abandoned if it is both of "inconsequential value" *and* "inconsequential benefit," which are not synonymous terms. *In re Garcia*, 521 B.R. 680, 685–86 (Bankr. D. Idaho 2014). Like the term "burdensome," the Bankruptcy Code does not define "inconsequential," but consistent with the ordinary rules of interpreting statutes, courts have looked to the *Merriam Webster Dictionary*, which defines "inconsequential" as irrelevant," "of no significance" or "unimportant," and the *Cambridge English Dictionary*'s definition of "inconsequential" as something "able to be ignored." *In re VP*

*Williams Trans, LLC*, 2020 WL 5806507, at *3 (Bankr. S.D.N.Y. Sept. 29, 2020). Generally, an asset is of inconsequential value or benefit to the estate if it is "not expected to sell for a price sufficiently in excess of encumbrances to offset the costs of administration." *In re Laredo*, 334 B.R. 401, 414 (Bankr. N.D. Ill. 2005) (quotation omitted). The heart of this inquiry is "whether there is any 'potential value' the estate may derive from administration of the property." *Id.*

19. The Federal Leases fail both the burdensome and inconsequential value and benefit prongs of section 554. The Abandonment Motion itself admits that in just ten months, the Federal Leases have generated approximately $88 million in gross Lease Proceeds. *See* Abandonment Motion ¶ 12. Even taking into account the royalties claimed by the United States (an amount which the parties contest), the Federal Leases still have generated tens of millions of dollars of revenue—amounts along with future revenue which the estate could ostensibly claw back rather than simply abandoning the Federal Leases altogether.

20. Spectrum may still have interest in acquiring the Federal Leases if NRW is unable to do so. It is not clear whether the Trustee has pursued this potential back-up plan. It is possible that other parties may have an interest in the Federal Leases, but are currently being deterred by the uncertainty surrounding whether NRW will ever obtain approval of the assignments and what will happen to the assets if it does not.

21. In these circumstances, the Federal Leases are not sufficiently burdensome or of inconsequential value or benefit to the estate for purposes of section 554, and abandonment should be denied so that a more favorable disposition of the Federal Leases can be achieved.

22. There is no immediate need for the Federal Leases to be relinquished. There are no allegations that the Federal Leases are not currently being operated safely.

23. This Court should deny the Abandonment Motion without prejudice. If the additional time afforded to NRW does not result in regulatory approval, the Trustee should have time to negotiate with third parties, such as Spectrum, who may be interested in acquiring the Federal Leases. This outcome would benefit the estates and all stakeholders and prevent the needless relinquishment of assets that are clearly capable of producing tens of millions of dollars of revenue a year, which is also consistent with the government's directive to "prevent damage to or waste of any natural resource, property or the environment." 30 CFR § 250.106(c).

## RESERVATION OF RIGHTS

24. ExxonMobil and its affiliates expressly reserve all rights under their agreements with the Debtors as well as the Bankruptcy Code, including, without limitation, the right to supplement or amend this Objection and assert any further objections. ExxonMobil further reserves all rights with respect to any other agreements related to ExxonMobil or its affiliates identified on any amended list of contracts and leases proposed to be assumed and/or assigned, or identified on any list of contracts and leases proposed to be rejected. Further, ExxonMobil reserves the right to join any other parties' objections to the Abandonment Motion.

25. ExxonMobil hereby reserves and preserves and does not waive any rights at law or in equity or any rights or causes of action that it has or may have against any person(s), including, but not limited to, the Debtors and their affiliates, or any non-Debtor party, or any assignee of agreements between ExxonMobil and the Debtors. The filing of this Objection is not intended to be, and shall not be construed as: (i) an election of remedies; (ii) a waiver of any defaults; or (iii) a waiver or limitation of any rights, remedies, claims, or interests of ExxonMobil.

## CONCLUSION

WHEREFORE, ExxonMobil requests that the Court sustain this Objection and grant such other and further relief as is just.

17050342

Dated: January 27, 2025

Respectfully submitted,

**PORTER HEDGES LLP**

By: */s/ Aaron J. Power*
    Aaron J. Power
    State Bar No. 24058058
    Jordan T. Stevens
    State Bar No. 24106467
    1000 Main Street, 36th Floor
    Houston, Texas 77002
    Telephone: (713) 226-6000
    Facsimile: (713) 226-6295
    E-Mail: apower@porterhedges.com
             jstevens@porterhedges.com

*Counsel for Exxon Mobil Corporation and its affiliated entities*

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument was duly served by electronic transmission to all registered ECF users appearing in the case on January 27, 2025.

                          */s/ Aaron J. Power*
                          Aaron J. Power

17050342