# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **MLCJR LLC, *et al.*,**[1] | ) | **Case No. 23-90324 (CML)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | |

### ORDER (I) APPROVING THE TRUSTEE'S ENTRY INTO THE PURCHASE AGREEMENT, (II) AUTHORIZING THE SALE OF ESTATE PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (III) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, AND (IV) GRANTING RELATED RELIEF

### *(Relates to Docket No. 2383)*

Upon the *Trustee's Emergency Motion for the Entry of an Order (I) Approving the Trustee's Entry into the Purchase Agreement, (II) Authorizing the Sale of Estate Property Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Executory Contracts, and (IV) Granting Related Relief* [Docket No. 2383] (the "Motion")[2] filed by Michael D. Warner, solely in his capacity as the duly elected chapter 7 trustee (the "Trustee") of the bankruptcy estates (the "Estates") of the Debtors; and the Court having conducted and concluded a hearing (the "Hearing") on the Motion to consider approval of the Sale of the Property; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale and upon the record of the Hearing to consider the

---

[1]   The debtors in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).  The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

Motion; and the Court having determined that the legal and factual bases set forth in the Motion and on the record of the Hearing establish just cause for the relief granted herein; and all objections to the Motion (if any) having been withdrawn or overruled; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

It is hereby **FOUND, CONCLUDED, AND DETERMINED THAT**:[3]

A.      The Court has jurisdiction over the matters raised in the Motion and the transactions contemplated by the *Purchase and Sale Agreement* attached to this Order as **Exhibit 1** (the "Purchase Agreement") under 28 U.S.C. § 1334, and that these matters constitute a core proceeding under 28 U.S.C. § 157(b), of which this Court may enter a final order in accordance with Article III of the United States Constitution.  Venue of this proceeding and the Motion is properly in this District under 28 U.S.C. §§ 1408 and 1409.

B.      This order (this "Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay, and expressly directs entry of order as set forth herein.

C.      The Motion was properly noticed in accordance with Federal Rules of Civil Procedure, as incorporated by the Bankruptcy Rules, the Local Bankruptcy Rules, and that certain

---

[3]   Paragraphs (A) through (O) herein shall constitute this Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, as incorporated by Bankruptcy Rule 9014.  The Court's findings shall also include any oral findings of fact and conclusions of law made by the Court during or at the conclusion of the Hearing.  To the extent that any findings of fact made herein are conclusions of law, such shall be considered as conclusions of law, and to the extent that any conclusions of law stated herein are findings of fact, such shall be considered as findings of fact.

*Order Granting Trustee's Emergency Motion to Limit Notice* [Docket No. 1794].  The Trustee's notice of the Motion and the Sale was sufficient, appropriate under the circumstances, and reasonably calculated to provide all interested parties with timely and proper notice.  As such, no other notice needs to be provided for the Motion.

D.      The legal and factual bases articulated in the Motion establish just cause for the relief granted in this order.  The Trustee has articulated good, compelling, sufficient and sound business justifications and therefore has satisfied the business judgment standard.  The Trustee has acted in good faith and the Purchase Agreement was negotiated at arms-length.

E.      The Trustee has satisfied section 363(f) of the Bankruptcy Code to sell the Property free and clear of all Liens (defined below), claims, and interests, other than as expressly contemplated by the Purchase Agreement.  W&T Offshore, Inc. (the "Purchaser") would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to the Purchaser and the assumption of any Assumed Liabilities by the Purchaser were not free and clear of all Liens, claims, encumbrances, liabilities, and interests (any and all such liens, claims, encumbrances, liabilities, and interests, the "Encumbrances"), other than the Assumed Liabilities.  The Trustee may sell the Property free and clear of any Liens, claims and Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Each entity with a Lien, claim, Encumbrance, or interest in the Property to be transferred on the Closing Date, (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Lien, claim, Encumbrance, or interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Liens, claims,

Encumbrances, or interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Liens, claims, Encumbrances, or interests are adequately protected by having their Liens, claims, Encumbrances, or interests attach to the cash proceeds received by the Trustee that are ultimately attributable to the property against or in which such Liens, claims, Encumbrances, or interests are asserted, subject to the terms of such Liens, claims, Encumbrances, or interests with the same validity, force, and effect, and in the same order of priority, which such Liens, claims, Encumbrances, or interests now have against the Property or their proceeds, if any, subject to any rights, claims, and defenses of the Debtors, their Estates, the Trustee, or any other party in interest, as applicable, may possess with respect thereto.

      F.      The Purchase Agreement was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and as a result of arm's length bargaining positions and is substantially and procedurally fair to all parties.  The Purchase Agreement, including the consideration provided by the Purchaser and pursuant to this Order, constitutes the highest or otherwise best offer for the Property and will provide a greater recovery for the Estates than would be provided by any other available alternative.  No other person or entity or group of entities has offered to purchase the Property for greater economic value to the Estates than the Purchaser.  The Purchaser is not an insider of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Trustee nor the Purchaser has engaged in any conduct that could cause the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any other party.  The Purchaser is purchasing the Property in accordance with the Purchase Agreement, in good faith, and is a good faith purchaser

within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to all the protections afforded by such provision and otherwise has proceeded in good faith in all respects in connection with the Trustee.

G.     Good and sufficient reasons for approval of the Purchase Agreement and the transactions to be consummated in connection therewith have been articulated by the Trustee, and the relief requested in the Motion is in the best interests of the Debtors, their Estates, their creditors and other parties in interest.  The Trustee has demonstrated both (i) good, sufficient, and sound business purposes and justifications and (ii) compelling circumstances for the Sale outside of the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to maximize the value of the Debtors' assets.  The Trustee's decision to enter into the Purchase Agreement and pursue and consummate the Sale constitutes a proper exercise of the fiduciary duties of the Trustee.

H.     The consideration provided by the Purchaser pursuant to the Purchase Agreement and this Order constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, the District of Columbia, or any other applicable jurisdiction with laws substantially similar to the foregoing.  The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors, as provided under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, the District of Columbia, or any other applicable jurisdiction

with laws substantially similar to the foregoing.  Neither the Trustee nor the Purchaser is entering

into the transactions contemplated by the Purchase Agreement fraudulently.

I.       The assumption and assignment of the executory contracts and unexpired leases

listed on **Exhibit 2**  (the "Assigned Contracts") pursuant to the terms of this Order is integral to

the Purchase Agreement and is in the best interests of the Debtors and their Estates, their creditors,

and all other parties-in-interest; is integral to the Sale and the transactions contemplated pursuant

to the Purchase Agreement; and represents a reasonable exercise of sound and prudent business

judgment by the Trustee.  Payment of the cure costs set forth on **Exhibit 2** by the Purchaser shall

(i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of

sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary,

provide compensation or adequate assurance of compensation to any party for any actual pecuniary

loss to such party resulting from a default prior to the Petition Date with respect to the Assigned

Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.

The Purchaser's financial wherewithal to consummate the transactions contemplated by the

Purchase Agreement and the evidence presented at the Hearing demonstrating the Purchaser's

ability to perform the obligations under the Assigned Contracts after the Closing Date shall

constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C),

365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

J.       To maximize the value of the Property, it is essential that the Sale, including the

assumption and assignment of the Assigned Contracts, occur as set forth in this Order, the Purchase

Agreement, and other documents submitted herewith, including within the time constraints set

forth herein and therein.  Time is of the essence in consummating the transactions contemplated

by the Purchase Agreement, including, without limitation, the Sale and the assumption and

assignment of the Assigned Contracts.  Unless the Sale and the other transactions contemplated by the Purchase Agreement are concluded expeditiously, as provided for pursuant to the Purchase Agreement, consideration for creditors will be diminished, and the Purchaser is unwilling to proceed with the Sale otherwise.

K.      The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

L.      The transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors and/or the Estates; there is not substantial continuity between the Purchaser and the Debtors or their Estates; there is no continuity of enterprise between the Debtors or their Estates and the Purchaser; the Purchaser is not a mere continuation of the Debtors or their Estates; and the Purchaser is not a successor or assignee of the Debtors or their Estates for any purpose.  Except for the Assumed Liabilities, the (i) transfer of the Property to the Purchaser and (ii) assumption and assignment to the Purchaser of the Assigned Contracts do not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

M.      Nothing in the Purchase Agreement creates any third-party beneficiary rights in any person or entity that is not a party to the Purchase Agreement.

N.      Performance under the Purchase Agreement, and consummation of the transactions contemplated pursuant thereto, reflects the Trustee's exercise of sound business judgment and are in the best interests of the Estates.

O.      Performance under the Purchase Agreement and the private sale of the Property is appropriate under the circumstances.  No auction was necessary with respect to the Property.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is **GRANTED** as set forth herein.

2.      Any and all objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or by representation by the Trustee in a separate pleading, and all reservations of rights included therein, if any, are hereby denied and overruled on the merits with prejudice.

3.      The Purchase Agreement is **APPROVED** and its terms are expressly incorporated in this Order.  The Trustee is authorized, but not directed, to perform under the Purchase Agreement, consummate the Sale, and enter into, execute and deliver, and perform under any additional instruments, documents, and agreements that may be reasonably necessary or desirable in order to implement, or otherwise in connection with, the Purchase Agreement or the Sale (the "Transaction Documents"), and to take all further actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser the Property, or as may be necessary or appropriate to the performance of their obligations as contemplated under the Purchase Agreement.

4.      This Order shall be binding in all respects upon the Debtors, the Estates, the Trustee all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, claims, Encumbrances, or other interests in, against, or on all or any portion of the Property (whether known or unknown), the Purchaser, and all successors and assigns of the Purchaser.  This Order and the Purchase Agreement shall inure to the benefit of the Debtors, the Estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

5.      The Sale of the Property to the Purchaser is approved free and clear of any and all Liens, claims, interests or other Encumbrances, with such Liens, claims, interests or other Encumbrances attaching to the proceeds of the Sale with the same validity, force, and effect, and in the same order of priority, which such Liens, claims, Encumbrances, or other interests now have against the Property or their proceeds, if any, subject to any rights, claims, and defenses that the Debtors, the Estates, or any other party in interest may possess with respect thereto.

6.      The Trustee shall hold the proceeds of the Sale of the Property pending further order of this Court.

7.      All persons and entities that are in possession of some or all of the Property on the Closing Date are directed to surrender possession of such Property to the Purchaser in accordance with the Purchase Agreement on the Closing Date or at such time thereafter as the Purchaser may reasonably request.  On the Closing Date, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its applicable Liens, claims, Encumbrances, or other interests on, against, or in the Property, if any, as such Liens, claims, Encumbrances, or other interests may have been recorded or may otherwise exist.

8.      If any person or entity that has filed statements or other documents or agreements evidencing Liens, claims, Encumbrances, or other interests on, against, or in, all or any portion of

the Property (other than statements or documents with respect to the Assumed Liabilities) shall not have delivered to the Trustee prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all applicable Liens, claims, Encumbrances, or other interests that the person or entity has or may assert with respect to all or any portion of the Property, the Trustee is hereby authorized, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Property.

9.        On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Purchaser of the Estates' interests in the Property.  This Order is and shall be effective as a determination that, on the Closing Date, all Liens, claims, Encumbrances, or other interests of any kind or nature whatsoever existing as to the Property prior to the Closing Date, other than the Assumed Liabilities, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Order shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions

contemplated by the Purchase Agreement.  A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens, claims, Encumbrances, or other interests of record except those assumed as Assumed Liabilities.  For the avoidance of doubt, the Sale authorized herein shall be of full force and effect, regardless of whether the Debtors lack good standing in any jurisdiction in which such entity is formed or is authorized to transact business.

10.     As to the Purchaser, the Estates (and for the avoidance of doubt, the Trustee) shall have no further liabilities or obligations with respect to any liabilities associated with the Property, which, for the avoidance of doubt, shall expressly include all obligations to plug, abandon, clean up or remediate same in accordance with the applicable laws regardless of when such obligations arose.

11.     Except for the Assumed Liabilities, the Purchaser shall not have any liability or other obligation of the Debtors, their Estates, or the Trustee arising under or related to any of the Property or Excluded Liabilities expressly identified in the Purchase Agreement, including, but not limited to, any liability for any Liens, claims, Encumbrances, or other interests, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors.  The sale of the Property to the Purchaser is expressly free and clear of all pending or threatened litigation between the Debtors or their Estates and any party, and the Purchaser shall not be, or become, a defendant in any such litigation or participate in such litigation.

12.     Except with respect to the Assumed Liabilities, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, claims,

Encumbrances, or other interests of any kind or nature whatsoever against or in all or any portion of the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Property, the operation of the Debtors' businesses prior to the Closing Date, or the transfer of the Property to the Purchaser in accordance with the Purchase Agreement, are hereby forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its successors or assigns, its property or the Property, such persons' or entities' Encumbrances in and to the Property, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Purchaser, its successors, assets, or properties; (b) enforcing, attaching, collecting, or recovering, in any manner, any judgment, award, decree, or order against the Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Encumbrance, lien, claim, or interest against the Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Property or conduct any of the businesses operated with the Property.

13.     Notice of the Motion, the Hearing, and the Sale was fair and equitable under the circumstances and complied in all respects with sections 102(1), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 9006, 9007, and 9014.

14.     The Purchaser and the Trustee shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of their rights or remedies under the Purchase Agreement or any other Transaction Document.  The automatic stay provisions under section 362(a) of the Bankruptcy Code, to the extent applicable, are hereby vacated and modified solely to permit the Trustee and the Purchaser to (a) consummate the transactions contemplated in the Purchase Agreement, any Transaction Document, or this Order, (b) enforce their respective rights, powers, claims, or entitlements under the Purchase Agreement and any Transaction Document, and (c) take any other actions thereunder or with respect thereto, *provided* that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

15.     The Sale of the Property, upon closing (i) shall be a legal, valid and effective transfer of the Estates' right, title and interest in the Property, and (ii) shall vest the Purchaser with all right, title, and interest of the Estates in and to such property free and clear of (a) all mortgages, security interests, notes, security agreements, privileges, conditional sale or other title retention agreements, pledges, liens (including without limitation any statutory lien on real and personal property and any and all "liens" as that term is defined and used in the Bankruptcy Code), licenses, deeds of trust, equity interests, rights of first refusal, consent rights, judgments, demands, Encumbrances, easements, restrictions or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (the foregoing collectively referred to in this Order as "Liens"), and (b) all debts arising in any way in connection with any acts of the Debtors, claims, as that term is defined in the Bankruptcy Code, interests, obligations, demands, guaranties, options, rights, contractual commitments, executory contracts, unexpired leases, employment agreements, any other

employee, workers' compensation, occupational diseases or unemployment or temporary disability related claims, restrictions, rights of lesion beyond moiety, tort claims, product liability claims, environmental rights and claims, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of this case, and whether imposed by agreement, understanding, law, equity or otherwise, including, without limitation, "bulk sale" rules (or similar laws) and theories of successor or successor-in-interest liability regardless of whether such theory, rule, or law would purport to provide for the Purchaser's direct liability.

16.     To the greatest extent available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Property to the extent transferred in the Purchase Agreement, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Purchaser as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Property sold, transferred, assigned, or conveyed to the Purchaser on account of the filing or pendency of these Bankruptcy Cases or the consummation of the Sale.

17.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee and the Estates to sell and transfer the Property to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

18.     The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization

provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts) to the Purchaser, unless such authorization is duly stayed before consummation pending such appeal.  The Purchaser is a good faith purchaser of the Property and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

19.     The Purchaser has given substantial consideration under the Purchase Agreement and this Order for the benefit of the Debtors, the Estates, and their creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Encumbrances or Liens against, interests in, or claims against any of the Estates or any of the Property, other than the Assumed Liabilities.  The consideration provided by the Purchaser for the Property under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

20.     All transactions and instruments contemplated under the terms of the Purchase Agreement shall be specifically enforceable against and binding upon, and not subject to rejection or avoidance by the Debtors, creditors of the Estates, any other parties-in-interest, and/or any successors of the Estates.

21.     The consideration provided by the Purchaser for the Property pursuant to the Purchase Agreement shall constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

22.     All defaults or other obligations of the Debtors or the Trustee under the Assigned Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration

clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as reasonably practicable by payment of the cure amounts by the Purchaser.

23.    The Trustee is hereby authorized, in accordance with section 365 of the Bankruptcy Code, to (a) assume and assign to the Purchaser, in accordance with the Purchase Agreement, effective upon the Closing Date, the Assigned Contracts, free and clear of all Liens, Encumbrances, and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser deems may be reasonably necessary to assign and transfer the Assigned Contracts to the Purchaser in accordance with the Purchase Agreement.

24.    With respect to the Assigned Contracts: (a) each Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Trustee may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Trustee may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to the Purchaser of each Assigned Contract, in accordance with the Purchase Agreement, have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of the Purchaser in

accordance with the Purchase Agreement, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Estates shall be relieved from any further liability with respect to the Assigned Contracts after such assignment to and assumption by the Purchaser in accordance with the Purchase Agreement; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

25.     The Trustee is authorized to amend the Purchase Agreement and any Transaction Document pursuant to a writing executed between the applicable parties to such documentation in accordance with the terms thereof, without the need for further Court approval; *provided* that Court approval shall be required for any amendments that materially and adversely affect the economic terms of the Purchase Agreement.

26.     The failure to specifically include any particular provisions of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; *provided* that this Order shall govern if there is any inconsistency between the Purchase Agreement (including the Transaction Documents) and this Order.  Likewise, all of the provisions of this Order are non-severable and mutually dependent.  To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion in these Bankruptcy Cases, the terms of this Order shall control.

27.     Notwithstanding anything to the contrary in the Purchase Agreement or this Order, (i) Cox Operating LLC's Master License Agreement (as amended or supplemented, the

"TGS MLA") with TGS-NOPEC Geophysical Company ASA (together with any of its affiliates, "TGS") is not one of the Assigned Contracts; (ii) any Material (as defined in the TGS MLA) licensed by TGS to any of the Debtors or their affiliates, whether under the TGS MLA or otherwise, is an Excluded Asset (as defined in the Purchase Agreement) and is not being sold to the Purchaser; and (iii) TGS reserves all rights and claims against any party relating to the confidentiality of or restrictions on the Use (as defined in the TGS MLA), transfer, and disclosure of any Material.  For the avoidance of doubt, unless the Purchaser obtains unauthorized access or possession of any Material or violates any confidentiality or other restrictions on the Use, transfer, or disclosure of any Material, the Purchaser shall have no obligation, monetary or otherwise, to TGS in connection with the Sale.

28.     Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), this Order shall not be stayed for fourteen (14) days after the entry hereof but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Trustees and the Purchaser intend to close the Sale as soon as practicable.

29.     Notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

30.     The Trustee is authorized and empowered to take all actions necessary and appropriate to implement the relief granted in this Order.

31.     Nothing in this Order shall affect any of rights of the Estates, the Trustee, the Debtors, or the Purchaser except as specifically set forth herein.

32.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to this Order and the Sale contemplated herein, and any other documents executed and delivered in connection with the Sale and this Order.

33.    The Trustee is authorized, pursuant to Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 362, and 365, (i) to execute and deliver, to perform under, and to consummate and implement the terms of the Sale, pursuant to the terms of the Motion, together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale, (ii) to take all further actions as may reasonably be requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring the Property as may be necessary or appropriate to the performance of the obligations contemplated by the Sale, and (iii) to execute any and all documents on behalf of the Estates to effectuate the terms and conditions of the Sale.

34.    The provisions of this Order, including any related findings of fact and conclusions of law, and the Liens granted pursuant to this order against the Sale proceeds of the Property held by the Trustee l, shall be binding upon all parties in interest in the cases, including without limitation, the Trustee and his respective successors and assigns and will continue in full force and effect notwithstanding the dismissal of these cases or their conversion to a different chapter of the Bankruptcy Code.

DATE: _____, 2025

_____
HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

Order respectfully submitted by:

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:    _/s/ William S. Robbins_____
Paul Douglas Stewart, Jr. (La. Bar # 24661)
_Admitted to Southern District of Texas_

(SDTX Federal No. 432642)
dstewart@stewartrobbins.com
William S. Robbins (Tx. Bar # 24100894)
wrobbins@stewartrobbins.com
Brandon A. Brown (Tx. Bar # 24104237)
bbrown@stewartrobbins.com
301 Main Street, Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

***Counsel for Michael D. Warner, Chapter 7 Trustee***

# PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT (the **"Agreement"**) is entered into on or as of this 25th day of February, 2025 by and between Michael D. Warner (**"Seller"** or **"Trustee"**), solely in his official capacity as Chapter 7 Trustee for the bankruptcy estates of MLCJR LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, and M21K, LLC (the "**Estates**"), Bankruptcy Case No. 23-90324 pending before the United States Bankruptcy Court for the Southern District of Texas ("**Bankruptcy Court**"), and W & T Offshore, Inc., a Texas corporation (**"Purchaser"**). Purchaser and Seller may be referred to collectively as the **"Parties"** or individually as a **"Party."**

**RECITALS:**

WHEREAS, Seller desires to sell, transfer and convey to Purchaser, and Purchaser desires to Purchase and pay for, all of the Estates' right, title, and interest in and to the Property[1] in accordance with the terms and conditions of this Agreement and the Final Order; and

NOW THEREFORE, for and in consideration of the mutual agreements herein contained, the benefits to be derived by each Party, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**TRANSFER OF PROPERTY RIGHTS**:

(i)    The Property. Seller agrees to sell, assign, transfer, and convey, and Purchaser agrees to purchase and pay for, all of the Estate's right, title, and interest in (if any) the following (the "**Property**"):

      a. That certain structure identified as Grand Isle, Block 18A, for current use as 4 pile pipeline manifold platform located at 29 degrees 10 minutes 2.15 seconds North and 90 degrees 1 minute 54.71 seconds West in the Grand Isle Area, Block 18 of State Offshore Waters, Jefferson Parish, Louisiana (the "**GI 18A Manifold**";

      b. Those certain pipelines described as PSN 18141, ROW OCS-G 29020 and PSN 18891, ROW OCS-G 28673, further described in **Exhibit A** hereto.

      c. To the extent that they may be assigned, transferred, or re-issued, any and all of the easements, rights-of-way, surface fee interests, surface leases, surface use agreements, other use agreements, and other surface usage rights existing as of the Effective Time to the extent used in connection with the ownership or operation of the Property (the "**Usage Rights**"), including those set forth on **Exhibit B**;

      d. To the extent that they may be assigned, transferred, or re-issued, any permit, license, registration, consent, order, approval, variance, exemption, waiver, franchise, right, or other authorization (in each case) of any governmental authority, save for the Bankruptcy Court (the "**Permits**") relating to the ownership or operation of the Property.

(ii)    Excluded Assets.  The Property shall not include, and Seller shall reserve and retain, on behalf of the Estates (collectively, with the Estate, the "**Estates**") of the debtors identified in footnote 1 hereof, all of the following assets (the "**Excluded Assets**"):

      a. all of the Estates' money, currency, or a credit balance in a deposit account at a financial institution and any cash on hand held by the Estates and the Seller;

      b. all of the Estates' corporate minute books and corporate tax or financial records that relate to the Estates' businesses generally (including the ownership and operation of the Property);

---

[1]  Capitalized terms used herein are as defined  below or in the Motion.

EXHIBIT 1

c.  all trade credits, all accounts receivable, tax refunds, tax attributes, if any, and all other proceeds, income, or revenues attributable to the Property with respect to any period of time prior to the Closing Date;

d.  all claims, causes of action, manufacturers' and contractors' warranties, and other rights of the Estates arising under or with respect to (i) any Property that are attributable to periods of time prior to the Closing Date, and (ii) any other Excluded Assets;

e.  The Estates' area-wide bonds, supplemental bonds, bonds delivered by the Estates to any third person, including United States Department of the Interior, Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement or any other governmental authority in connection with the Property or any other properties, permits, licenses, or authorizations used in the conduct of the Estates' businesses;

f.  all rights and interests of the Estates (i) under any policy or agreement of insurance or indemnity, (ii) under any bond or (iii) to any insurance or condemnation proceeds or awards arising, in each case, from acts, omissions or events, or damage to or destruction of property, including the Property (prior to the Closing Date);

g.  all United States Department of the Interior, Bureau of Ocean Energy Management operator numbers;

h.  all documents and instruments and other data or information of Seller and/or the Estates that are protected by an attorney-client privilege;

i.  all documents and instruments and other data or information that cannot be disclosed to Purchaser as a result of confidentiality arrangements under agreements with third parties;

j.  all engagements and similar letters and agreements with Seller's and the Estates' legal advisors, it being agreed that Purchaser shall have no right to claim, own, or waive any attorney-client or similar privilege in favor of Seller, the Estates or any of their affiliates with respect to the ownership or operation of the Property;

k.  all of Seller's and the Estates' rights, interests, and properties that are not included in the definition of "Property", including the assets, properties, and interests specifically listed in **Exhibit C**; and

l.  any assets or properties otherwise identified as Excluded Assets herein.

(iii)   Assumed Liabilities.  Purchaser shall assume and hereby agrees to fulfill, perform, pay, and discharge (or cause to be fulfilled, performed, paid, or discharged) any and all obligations and any and all claims, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, taxes, interest obligations, deficiencies, debts, obligations, costs and expenses, and other liabilities (whether absolute, accrued, contingent, fixed, or otherwise, or whether known or unknown, or due or to become due or otherwise), including any amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal, or other expenses incurred in connection therewith (collectively, "**Liabilities**"), known or unknown, to the extent arising from, based upon or attributable to the Property arising on or after the Closing Date.  Notwithstanding the foregoing, the Liabilities shall expressly include all obligations to plug, abandon, clean up or remediate the Property in accordance with the applicable laws regardless of when such obligations arose, including, as addressed in the Decommissioning Orders (as defined in the Motion), as may be supplemented and/or amended. All of the foregoing obligations and Liabilities shall be referred to herein as the "**Assumed Liabilities**").

(iv)   Excluded Liabilities.  Notwithstanding anything herein to the contrary, Purchaser is assuming only the Assumed Liabilities and is not assuming any other Liability, claim against or obligation

2

of Seller, the Estates or their affiliates or any other person of whatever nature, whether presently in existence or arising hereafter, and Purchaser will not assume and will not be responsible to pay, perform or discharge any Liabilities of Seller, the Estates or any of their affiliates or relating to the Property of any kind or nature whatsoever other than the Assumed Liabilities. All such other Liabilities, claims, and obligations, whether known or unknown, direct or contingent, in litigation or threatened, or not yet asserted, shall be retained by and remain obligations and Liabilities of Seller, the Estates or any of their affiliates (such Liabilities, collectively, the **"Excluded Liabilities"**), provided that, for purposes of clarity and notwithstanding anything to the contrary, Excluded Liabilities shall include each of the following Liabilities: (a) all Liabilities relating to any Excluded Assets; and (b) all Liabilities and obligations arising out of the transportation, disposal, or arrangement therefor of any hazardous materials off the premises of the Property to the Closing Date.

**PURCHASE PRICE:** The purchase price for the Property is $250,000.00 (the "**Purchase Price**").   The Purchase Price shall be paid by wire transfer to account designated in writing by Seller prior to Closing Date, at Closing.

**DEPOSIT:** Upon execution of this agreement by Purchaser, Purchaser shall deposit with Seller the sum of $10,000 ("**the Deposit**"), which shall be payable by wire transfer of funds to an account designated in writing by Seller.  Purchaser acknowledges and agrees that it has previously received an amount of $5,000 as a deposit (the "**Previous Deposit**") with respect to that certain purchase and sale agreement, dated as of December 11, 2024 (the "**Previous Purchase Agreement**"), by and between Seller and Purchaser, which was mutually terminated as of the date hereof. Seller and Purchaser agree that the amount of the Previous Deposit will not be returned to Purchaser pursuant to the Previous Purchase Agreement and instead will be applied to the amount of the Deposit. The Deposit is to be non-interest bearing and may be placed into an account at any banking or savings and loan institution, without any responsibility on the part of Seller in case of failure or suspension of any such bank or savings and loan institution.  The Deposit shall be applied to the Purchase Price at Closing, or otherwise dealt with as provided in the DEFAULT AND REMEDIES Section below.  The Deposit shall not be considered earnest money.

**APPROVAL OF BANKRUPTCY COURT; OVERBIDS:** This Agreement, and the sale contemplated herein ("**Sale**"), is contingent upon approval by the Bankruptcy Court.  Promptly following the execution hereof, but in any event within two (2) business days of the execution of this Agreement, Seller shall seek Bankruptcy Court approval for the Sale contemplated herein through the filing of an emergency motion ("**Motion**") requesting the entry of an order approving the Trustee's entry into this Agreement, among other things. It is understood that a copy of this Agreement shall be filed in association therewith. It is further understood that the approval of the Sale may be subject to objections, and possible overbids. In the event of an overbid, Purchaser shall be provided with an opportunity to make one or more additional bids in Purchaser's discretion, pursuant to terms proposed by the Seller and as may be approved by the Bankruptcy Court.  In the event Purchaser is outbid or is otherwise not selected as the highest and best bidder, then this Agreement shall be terminated, the Deposit shall be returned to Purchaser, with no further rights or obligations of the Parties hereunder.

**CLOSING OF ACT OF CASH SALE:** The closing of the Sale ("**Closing**") shall take place through the offices of the counsel for Seller, no later than the earlier of three (3) business days following the date the  order approving this Sale, becomes a final order[2] (the "**Final Order**"), or at such other location and date as may be agreed upon by the parties hereto in writing.  The actual date of Closing is referred to herein as the "**Closing Date.**"  Time shall be of the essence with respect to the Closing Date.

**CLOSING OBLIGATIONS:** At the Closing, the following documents shall be delivered and the following events shall occur, the execution of each document and the occurrence of each event being a condition precedent to the others and each being deemed to have occurred simultaneously with the others:

(i)        Seller shall:

---

[2] For purposes herein, "Final Order" means an Order or judgment of the Bankruptcy Court as determined by the Bankruptcy Court to be a final order within the meaning of 28 U.S.C. Section 158(a).

a. execute, acknowledge, and deliver to Purchaser the documents reasonably necessary to convey the Property from Seller to Purchaser pursuant to the terms of the Final Order, and, in sufficient counterparts, including all information and formatting required to be accepted by the appropriate governmental authorities ("**Transfer Documents**");

b. deliver either (A) a non-foreign affidavit dated as of the Closing Date, sworn under penalty of perjury and in form and substance required under the Treasury Regulations issued pursuant to Code §1445, stating that Seller (or, if Seller is disregarded for U.S. federal income tax purposes, its regarded owner) is not a "foreign person" as defined therein or (B) a validly executed IRS Form W-9 from Seller (or, if Seller is disregarded for U.S. federal income tax purposes, its regarded owner);

c. execute and deliver to Purchaser the State of Louisiana transfer forms for the surface lease and right of way grants set forth in **Exhibit B** hereto;

d. execute a counterpart of the Assignment reflecting the terms and conditions set forth herein, substantially in the form as that attached hereto as **Exhibit D** (the **"Assignment"**);

e. execute and deliver to Purchaser any other agreements, instruments, and documents that are expressly required by other terms of this Agreement to be executed or delivered at or prior to the Closing.

(ii) Purchaser shall:

a. execute, acknowledge, and deliver the Transfer Documents reasonably necessary to convey the Property from Seller to Purchaser pursuant to the terms hereof, and, in sufficient counterparts, including all information and formatting required to be accepted by the appropriate Governmental Authorities;

b. deliver to Seller, to the account(s) designated by Seller by direct bank or wire transfer in same day funds, the Purchase Price; and

c. execute a counterpart of the Assignment.

**TERMS OF SALE:**  The Property will be sold for cash in accordance with, and subject to, the terms and provisions of this Agreement and the Final Order, conveying merchantable title solely as provided in the Final Order, but no other warranty whatsoever, express or implied, not even as to the return of all or any part of the Purchase Price.

**CONDUCT OF BUSINESS:** During the period between the execution of this Agreement and the Closing, Seller will:

(i) give written notice to Purchaser as soon as is reasonably practicable of any material damage or casualty to or destruction or condemnation of any of the Property of which Seller has actual knowledge.

During the period between the execution of this Agreement and the Closing, Seller will not, without the reasonable consent of Purchaser (in the event that Seller breaches this obligation, Purchaser's sole remedy shall be termination of this Agreement and return of its Deposit):

(i) transfer, sell, mortgage, or pledge any of the Property;

(ii) settle any material suit or litigation or waive any material claims, in each case, attributable to the Property and affecting the period after the Execution Date;

(iii) complete and/or consummate any proposal to abandon or decommission the Property or any material part thereof with any regulatory authority, including BOEM or BSEE;

(iv) voluntarily relinquish Seller's position as operator with respect to any Property operated by Seller; or

(v) request or make application to any governmental authority for any variation to or cancellation of any material Usage Right or Permit or participate in or acquiesce to any variation or cancellation of the same.

**FURTHER ASSURANCES:** After Closing, Seller and Purchaser shall use commercially reasonable efforts to execute, acknowledge and deliver or cause to be executed, acknowledged and delivered to each other such instruments, and shall take such other action as may be necessary or advisable to carry out their obligations under this Agreement and under any document, certificate or other instrument delivered pursuant hereto.

**NO WARRANTY:** Purchaser hereby acknowledges and agrees that Seller will transfer the Estates' right, title and interest in and to the Property without any warranty or recourse whatsoever, express or implied, not even as to the return of all or any part of the Purchase Price, and with the sole peril and risk of eviction being assumed by Purchaser, but with full substitution and subrogation in and to all of the rights and actions of warranty which Seller or the Estates has or may have against all preceding owners or vendors.  Without limiting the foregoing, the Purchaser acknowledges and agrees that the Property will be sold AS IS, WHERE IS, with all faults, and without any warranties, express or implied, including but not limited to warranties of condition, fitness for a particular purpose or habitability.   Purchaser acknowledges and agrees to the following:

(a)      (I) SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY, OR IMPLIED, AND (II) SELLER EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT, OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO PURCHASER OR ANY PURCHASER REPRESENTATIVE (INCLUDING ANY OPINION, INFORMATION, PROJECTION, OR ADVICE THAT MAY HAVE BEEN PROVIDED TO PURCHASER BY SELLER), AND PURCHASER ACKNOWLEDGES THAT IT HAS NOT RELIED ON ANY SUCH REPRESENTATION OR WARRANTY.

(b)      SELLER EXPRESSLY DISCLAIMS, AND PURCHASER ACKNOWLEDGES THAT IT HAS NOT RELIED ON, ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY, OR IMPLIED BY SELLER, AS TO (I) TITLE TO ANY OF THE PROPERTY, (II) THE CONTENTS, CHARACTER, OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL, OR SEISMIC DATA, OR INTERPRETATION, RELATING TO THE PROPERTY, (III) THE QUANTITY, QUALITY, OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE PROPERTY, (IV) ANY ESTIMATES OF THE VALUE OF THE PROPERTY OR FUTURE REVENUES GENERATED BY THE PROPERTY, (V) THE PRODUCTION OF HYDROCARBONS FROM THE PROPERTY, (VI) THE MAINTENANCE, REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN, OR MARKETABILITY OF THE PROPERTY, (VII) THE CONTENT, CHARACTER, OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS, OR STATEMENTS PREPARED BY OR ON BEHALF OF SELLER OR THIRD PARTIES WITH RESPECT TO THE PROPERTY, (VIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO PURCHASER OR ANY PURCHASER REPRESENTATIVE IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO AND (IX) ANY IMPLIED OR EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT.   SELLER FURTHER DISCLAIMS, AND PURCHASER ACKNOWLEDGES THAT IT HAS NOT RELIED UPON, ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY, OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM REDHIBITORY OR LATENT VICES OR DEFECTS, FITNESS FOR A PARTICULAR PURPOSE, CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY PROPERTY, RIGHTS OF A PURCHASER UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION, OR RETURN OF THE CONSIDERATION, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT PURCHASER SHALL BE DEEMED TO BE ACQUIRING THE PROPERTY IN THEIR PRESENT STATUS, CONDITION, AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ALL FAULTS OR DEFECTS (KNOWN OR UNKNOWN, LATENT, DISCOVERABLE, OR UNDISCOVERABLE), AND THAT PURCHASER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS PURCHASER DEEMS APPROPRIATE.  PURCHASER HEREBY SPECIFICALLY WAIVES ALL LAWS OF REDHIBITION AND THE IMPLIED WARRANTIES PROVIDED FOR BY LOUISIANA LAW OR OTHERWISE, INCLUDING ANY AND ALL WARRANTIES CREATED BY AFFIRMATION OF FACT OR PROMISE OR BY ANY DESCRIPTION OF THE PROPERTY OR BY ANY AMPLE OR MODEL AND ANY OTHER WARRANTIES CONTAINED IN OR CREATED BY THE LOUISIANA UNIFORM COMMERCIAL CODE OR ANY OTHER STATE OR FEDERAL LAW.

(c)      SELLER HAS NOT AND DOES NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, THE RELEASE OF

HAZARDOUS MATERIALS OR OTHER MATERIALS INTO THE ENVIRONMENT, OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE PROPERTY, AND NOTHING IN THIS AGREEMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY, AND PURCHASER ACKNOWLEDGES THAT IT HAS NOT RELIED UPON ANY SUCH REPRESENTATION OR WARRANTY AND PURCHASER SHALL BE DEEMED TO BE ACQUIRING THE PROPERTY "AS IS" AND "WHERE IS" WITH ALL FAULTS FOR PURPOSES OF THEIR ENVIRONMENTAL CONDITION AND THAT PURCHASER HAS MADE OR CAUSED TO BE MADE SUCH ENVIRONMENTAL INSPECTIONS AS PURCHASER DEEMS APPROPRIATE.

(d)     SELLER AND PURCHASER AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE EFFECTIVE, THE DISCLAIMERS OF CERTAIN REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS SECTION (OR THAT ARE OTHERWISE IN ALL CAPS OR BOLD IN THIS AGREEMENT) ARE CONSPICUOUS DISCLAIMERS FOR THE PURPOSE OF ANY APPLICABLE LAW.

The above will be contained in the Assignment executed at Closing.

**PAYMENT OF COSTS:**  Except as otherwise specifically provided in this Agreement, all fees, costs and expenses incurred by the Parties in negotiating this Agreement or in consummating the transactions contemplated by this Agreement shall be paid by the Party incurring the same, including legal and accounting fees, costs, and expenses. All transfer taxes and all required documentary, filing and recording fees, and expenses in connection with the filing and recording of the assignments, conveyances, or other instruments required to convey title to the Property to Purchaser, and all costs and expenses related to the Suspension and Regulatory Approval (as such terms are defined below) shall be borne by Purchaser.

**PROPERTY TAXES:**  *Ad valorem* and other taxes attributable to the Property whether attributable to the current year or any prior year or any period after the Closing, shall be  paid by Purchaser when due.

**POSSESSION AND RISK OF LOSS:**  Possession and occupancy of the Property and any keys for the Property in the possession of Seller will be delivered by Seller to Purchaser on or before the close of business on the Closing Date, unless otherwise agreed to in writing. Effective as of the time of the Closing, beneficial ownership, and the risk of loss, of the Property will pass from Seller to Purchaser. In the event of a material casualty or condemnation of the Property prior to the Closing Date, Purchaser shall have the right, as its sole and exclusive remedy, to terminate this Agreement and Seller shall be obligated to return the Deposit.

**INSPECTIONS, PERMITS AND APPROVALS:**  Purchaser acknowledges that it has had the opportunity to conduct (i) inspections of the Property deemed necessary; and (ii) discussions with applicable regulatory authorities regarding necessary permits and approvals, and that Purchaser is satisfied with the results of same.   Purchaser acknowledges that its obligation to purchase the Property is not conditioned upon any further inspections or approvals, and that its obligation to purchase the Property hereunder is contingent only upon the Final Order approving the Sale; provided, however, that neither Party shall be under any obligation to close if an order or other law shall have been issued, entered, enacted or promulgated, prior to Final Order, by any governmental authority (with appropriate jurisdiction), and shall be in effect, that restrains, prohibits, enjoins, or makes illegal the transactions contemplated by this Agreement.

REGULATORY APPROVAL FOR SALE AND ASSIGNMENT:  Purchaser acknowledges that ROW OCS G28673 and ROW OCS G29020 were relinquished by the Estates on March 12, 2024, and that such relinquishment will become final on March 12, 2025, unless suspended ("**Suspension**") by the United States Department of Interior, Bureau of Safety and Environmental Enforcement ("**BSEE**").  Purchaser agrees and acknowledges that the occurrence of the Closing Date is a precondition to Purchaser's right to pursue Suspension, and to Seller's execution of documents in support of Suspension.  Purchaser acknowledges that pursuing Suspension is the sole responsibility and cost of Purchaser. Notwithstanding the foregoing, following the Closing the Seller shall execute and deliver to Purchaser any documents reasonably requested or reasonably required by Purchaser to facilitate the Suspension.

Further, Purchaser acknowledges and agrees that the occurrence of the Closing Date for the sale of the Property must occur prior to obtaining required approval or consent from the United States Bureau of Ocean Energy Management ("**BOEM**"), BSEE or any other federal or state regulators as to the sale and transfer of the Property ("**Regulatory Approval**"). Notwithstanding the foregoing, following the Closing Date the Seller shall execute and deliver to Purchaser any documents reasonably requested or reasonably required by Purchaser to facilitate the Regulatory Approval.

Provided that Seller has complied with its obligations to execute and deliver to Purchaser documents reasonably requested or reasonably required by Purchaser to facilitate the Suspension and Regulatory Approval, Purchaser agrees that failure to obtain Suspension or Regulatory Approval (i) shall not be a condition to Closing or affect in any way Purchaser's obligation to close herein; and (ii) shall not give rise to any claims against Seller hereunder or otherwise as to the Property, including without limitation claims for breach of contract or claims to recission of the sale of the Property contemplated herein.

In the event that Suspension and/or Regulatory Approval are not obtained by the ninetieth (90th) day following the Closing, then Trustee may, at his sole discretion, file one or more a notice(s) of abandonment in accordance with the terms of the Abandonment Order, of any or all of the Property, with the Bankruptcy Court, and the Purchaser shall have no right to object to same (other than on the grounds that such notice does not comply with the Abandonment Order), and such notice(s) of abandonment shall not give rise to any claims against Seller hereunder or otherwise as to the Property, including without limitation claims for breach of contract or claims to recission of the sale of the Property contemplated herein.

**DEFAULT AND REMEDIES:**  Except as set forth in a Final Order; Overbids, and Possession and Risk of Loss, Inspections, Permits and Approvals and in Closing Obligations above, Purchaser's obligations hereunder are absolute, and are not contingent upon any conditions or contingencies, other than Seller proceeding to Closing on the sale of the Property.

(i)     In the event that the Bankruptcy Court approval is not obtained on or before March 10, 2025, then either party may terminate this Agreement in writing, in which case, the Deposit will be returned to Purchaser as Purchaser's sole and exclusive remedy.

(ii)    If Seller fails to close on the sale of the Property following the Final Order, then Purchaser may make written demand for performance.  If Seller fails to comply with such written demand within twenty (20) days after receipt thereof, Purchaser's sole remedy shall be to terminate this Agreement, in which case, the Deposit will be returned to Purchaser as Purchaser's sole and exclusive remedy for termination.

(iii)   In no event shall either party be liable to the other party for any actual, punitive, speculative or consequential damages, or damages for loss of opportunity or lost profit.

(iv)    If Purchaser fails to comply with its obligations hereunder, then Seller shall make written demand for performance.  If Purchaser fails to comply with such written demand within twenty (20) days after receipt thereof, Seller will have the option to waive such default, to institute proceedings for specific performance by Purchaser of Purchaser's obligations under this Agreement, or to terminate this Agreement.  In the event Seller elects to terminate, Seller will be entitled to retain the Deposit as liquidated damages arising from such default. The parties hereby agree that the amount of actual damages which Seller would suffer as a result of Purchaser's default would be extremely difficult to determine and have agreed, after specific negotiation relating thereto, that the amount of the Deposit is a reasonable estimate of Seller's damages and is intended to constitute a fixed amount of liquidated damages in lieu of other remedies available to Seller and is not intended to constitute a penalty.  On termination and return of the Deposit to Purchaser or retention of the Deposit by Seller as liquidated damages, the parties will be discharged from any further obligations and liabilities under this agreement.

**MISCELLANEOUS:**  It is further agreed as follows:

**Time**:  Time is of the essence as to each provision of this Agreement.

**Financing:**  This Agreement is not subject to or conditioned upon Purchaser qualifying for or obtaining financing.

**Notices:**  Any notice, demand or communication required or permitted to be given by any provision of this Agreement shall be in writing and will be deemed to have been given when actually delivered (by whatever means including email to the party designated to receive such notice, or on the next business day following the day sent by overnight courier, or on the third (3rd) business day after the same is sent by certified United States mail, postage and charges prepaid, directed to the addresses noted below, or to such other or additional address as any party might designate by written notice to the other party, whichever is earlier.

| | |
|---|---|
| ***If To Purchaser***: | W&T Offshore, Inc. |
| | 5718 Westheimer Road, Suite 700 |
| | Houston, Texas 77057 |
| | slackey@wtoffshore.com |
| | |
| ***If to Seller:*** | Michael D. Warner, Esq. |
| | Chapter 7 Trustee |
| | 700 Louisiana Street, Suite 4500 |
| | Houston, TX 77002 |
| | mwarner@pszjlaw.com |
| | |
| **With a copy to:** | William S. Robbins, Esq. |
| | Stewart Robbins Brown & Altazan, LLC |
| | 301 Main Street, Suite 1640 |
| | Baton Rouge, LA  70801 |
| | wrobbins@stewartrobbins.com |

**Governing Law:**  EXCEPT TO THE EXTENT THE MANDATORY PROVISIONS OF THE BANKRUPTCY CODE APPLY, THIS AGREEMENT AND THE LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF LOUISIANA EXCLUDING ANY CONFLICTS OF LAW RULE OR PRINCIPLE THAT MIGHT REFER CONSTRUCTION OF SUCH PROVISIONS TO THE LAWS OF ANOTHER JURISDICTION.

**Venue and Jurisdiction:**  Each Party hereto agrees that venue and jurisdiction for any action or proceeding in respect of any claim arising out of or related to the Property, this Agreement, or the auction or overbid procedures, if any, sale or any transactions relating thereto, shall be exclusively in the Bankruptcy Court, and solely in connection with claims and disputes arising under this Agreement or any other transaction document or transactions related to this Agreement (i) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court, (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto, and (iv) agrees that service of process upon such Party in any such action or proceeding shall be effective if notice is given in accordance herewith. IF THE BANKRUPTCY COURT ABSTAINS FROM JURISDICTION, THEN VENUE SHALL BE IN THE UNITED STATES FEDERAL DISTRICT COURTS LOCATED IN HOUSTON, HARRIS COUNTY, TEXAS (AND ALL APPELLATE COURTS HAVING JURISDICTION THEREOVER) OR IF THE FEDERAL DISTRICT COURTS DO NOT HAVE JURISDICTION, THEN THE STATE COURTS IN HOUSTON, HARRIS COUNTY, TEXAS (AND ALL APPELLATE COURTS HAVING JURISDICTION THEREOVER).  EACH PARTY WAIVES ANY OBJECTION TO LAYING VENUE IN ANY SUCH ACTION, SUIT OR PROCEEDING IN SUCH COURTS AND WAIVE ANY OBJECTION THAT SUCH COURTS ARE AN INCONVENIENT FORUM OR DO NOT HAVE JURISDICTION OVER SUCH PARTY.  EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.  **Waiver of Jury Trial:** EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING

OUT OF OR RELATED TO THE PROPERTY, THIS AGREEMENT, OR THE AUCTION OR OVERBID PROCEDURES, IF ANY, SALE OR ANY TRANSACTIONS RELATING THERETO.

**Assignment:** Neither Party may assign its rights or obligations under this Agreement in whole or in part without the prior written consent of the other Party, which consent shall not be unreasonably withheld; provided, however that Purchaser may assign its rights to a wholly-owned subsidiary of Purchaser without the prior written consent of Seller; provided further, however, that in the event of such assignment Purchaser shall remain liable for all obligations herein.

**Amendment:** Neither this Agreement nor any of the provisions hereof can be changed, waived, discharged or terminated except by an instrument in writing signed by both Seller and Purchaser.

**Execution:** This Agreement may (but need not) be executed in multiple counterparts, each of which will be deemed an original document, but all of which, when taken together, will constitute a single document. This Agreement will not be binding on, or constitute evidence of a contract between, the Parties until such time as this Agreement or multiple counterparts of this Agreement have been executed by each party and a copy thereof delivered to the other Party(ies) to this Agreement. It is further agreed that fax and electronically mailed (emailed) signatures shall be considered valid as originals.

**Severability:** If any clause or provision of this Agreement is held to be illegal, invalid or unenforceable under any present or future law, the remainder of this Agreement will not be affected thereby. It is the intention of the Parties that, if any such provision is held to be illegal, invalid or unenforceable, there will be substituted in lieu thereof a provision as similar in terms to such provision as is possible which is legal, valid and enforceable.

**Entire Agreement:** This Agreement constitutes the entire Agreement between Purchaser and Seller relating to the sale of the Property. This Agreement supersedes, in all respects, all prior written or oral Agreements, if any, between the parties relating to the sale of the Property. **There are no Agreements or understandings between Seller and Purchaser, and Seller has made no warranties or representations, except as set forth herein.**

**Binding Effect:** This Agreement will inure to the benefit of and bind the respective successors and permitted assigns of the Parties hereto.

**Survival:** All disclaimers, waivers and representations contained herein shall survive the execution of this agreement and the Act of Cash Sale contemplated hereby.

**Realtor/Broker:** Each party hereto represents to the other that it has not incurred, directly or indirectly, any liability on behalf of the other Party for the payment of any real estate brokerage commissions, finder's fees or other compensation to any agents, brokers, salesmen, or finders by reason of the consummation of the transactions contemplated by this Agreement. Brokers are not intended to be third party beneficiaries of this Agreement. Each Party hereto shall indemnify, defend and hold the other harmless from and against any claim, liability or expense for any brokerage commissions, finder's fees or other compensation claimed to be due and owing by reason of its activities in entering or consummating the transactions contemplated by this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their respective duly authorized corporate officers (in counterparts as necessary) as of the date(s) set forth below.

**PURCHASER:**
**W & T Offshore, Inc.**
**By:** _____
**Name: George Hittner**
**Title: Executive Vice President, General Counsel and Corporate Secretary**
**Date:** 02/25/2025

**–Continued Signature Page from Purchase and Sale Agreement–**

**TRUSTEE:**

_____

Michael D. Warner, solely in his capacity as Chapter 7 Trustee
for the bankruptcy estates of MLCJR LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI
GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, and M21K, LLC

**Date:** FEBRUARY 25, 2025

10

**EXHIBIT A**

1) That certain 6-inch oil pipeline, identified as pipeline segment number 18141, Right-of-Way Number G29020, running between and originating at Main Pass Block 141 6-inch SSTI, Outer Continental Shelf Lease G32245, and terminating at Main Pass Block 146 12-inch SSTI, Outer Continental Shelf Lease (Unleased), totaling in length 23,639 feet.

2) That certain 12-inch gas pipeline, identified as pipeline segment number 18891, Right-of-Way number G28673, extending from the VR 214 "A" platform to a 12" x 30" sub-sea tap into a 30" Tennessee Gas pipeline located at VR 247 approximately, totaling in length approximately 51,144 feet, or 9.69 miles.

**EXHIBIT B**

**SURFACE LEASE AND STATE PIPELINE RIGHT-OF-WAY GRANTS**

- The following Surface Lease and/or State Pipeline Right-of-Way grants:
  - LA State Surface Lease 3161 (Grand Isle Area, Block 18 "A" Platform)
    - Description: Surface Lease Agreement (LA No. 3161) dated January 17, 2013, from the State of Louisiana to Energy XXI GOM, LLC for a described 1.01 acre tract in Grand Isle Block 18, recorded in COB 3309, PG 993, Jefferson Parish, Louisiana.
  - LA State R/W 0.318
    - Description: Right-of-Way (LA R/W No. 0.318) dated April 21,1954 from State of Louisiana to Humble Oil & Refining Company covering a 10" pipeline in the Grand Isle Area, from the south shore of Grand Isle southeast through Block 6, recorded at COB 357, PG 298, Jefferson Parish, Louisiana.
  - LA State R/W 2158
    - Description: Right-of-Way (LA R/W No. 2158) dated February 18, 1983 from State of Louisiana to Exxon Corporation covering a 10" pipeline from Grand Isle 18 Platform "A" located in Grand Isle 18 to the north boundary of Grand Isle 18, recorded at COB 1042, PG 225, Jefferson Parish, Louisiana, as renewed by unrecorded Pipeline Right-of-Way Grant Renewal dated February 18, 2023 from State of Louisiana to Energy XXI GOM, LLC.
  - LA State R/W 2159
    - Description: Right-of-Way (LA R/W No. 2159) dated February 18, 1983 from State of Louisiana to Exxon Corporation covering a 12" pipeline from Grand Isle 18 Platform "A" located in Grand Isle 18 to the east boundary of Grand Isle 18, recorded at COB 1042, PG 223, Jefferson Parish, Louisiana, as renewed by unrecorded Pipeline Right-of-Way Grant Renewal dated February 18, 2023 from State of Louisiana to Energy XXI GOM, LLC.
  - LA State R/W 2186
    - Description: Right-of-Way (LA R/W No. 2186) dated June 17, 1983 from State of Louisiana to Exxon Corporation covering a 6" pipeline from the 1975 Federal/State boundary located in Grand Isle 18 to the shoreline of Grand Isle, recorded at COB 1052, PG 639, Jefferson Parish, Louisiana, as renewed by unrecorded Pipeline Right-of-Way Grant Renewal dated June 17, 2023 from State of Louisiana to Energy XXI GOM, LLC.

- The following described portion of a Pipeline Right-of-Way and Servitude from Exxon Mobil Corp. To Energy XXI GOM, LLC
  - Description: Pipeline Right-of-Way and Servitude ("Servitude") dated December 17, 2010 from Exxon Mobil Corporation to Energy XXI GOM, LLC, recorded at CO 3274, PG 469, Jefferson Parish, Louisiana, INSOFAR AND ONLY INSOFAR as the Servitude pertains to Tracts 1 and 4 as described therein.

12

**EXHIBIT C**

**EXCLUDED ASSETS**

1) That certain 3" gas lift pipeline running between the **GI 18A Manifold** and a structure referred to as Grand Isle 9M located in the Grand Isle Area, Block 9 of State Offshore Waters, Jefferson Parish Louisiana.

2) That certain 10" oil and gas pipeline running between the **GI 18A Manifold** and Grand Isle Area, Block 22, and being more specifically described PSN 790, ROW OCS-G 1506C.

3) That certain 6" oil and gas pipeline running between a structure referred to as Grand Isle 17S in the Grand Isle Area, Block 17 of State Offshore Waters, Jefferson Parish, Louisiana, and a point on the **GI 18A Manifold**, and being more specifically described in the State of Louisiana Right-of-Way Grant number 1022 E.

4) That certain 4" oil and gas pipeline running between a structure referred to as Grand Isle 9M in the Grand Isle Area, Block 9 of State Offshore Waters, Jefferson Parish, Louisiana, and a point on the **GI 18A Manifold**, and being more specifically described in the State of Louisiana Right-of-Way Grant number 2521.

5) That certain 4" oil and gas pipeline running between a point in Grand Isle Area, Block 19 and the **GI 18A Manifold**, being more specifically described as PSN 6292, ROW OCS-G 29472.

6) That certain 4" oil pipeline running between a structure referred to as Grand Isle 19-A in Grand Isle Area, Block 19 and the **GI 18A Manifold**.

7) That certain 4" gas pipeline running between a structure referred to as Grand Isle 19-A in Grand Isle Area, Block 19 and the **GI 18A Manifold**.

8) That certain 12" gas pipeline running between WD 73 A to the **GI 18A Manifold** (PSN 759, OCS-G 13504; LA ROW No. 2159), flowing up and over the **GI 18A Manifold**, and continuing on as a 10" gas pipeline (LA ROW No. 2158), to the beach of Grand Isle, Louisiana.

9) That certain 6" gas pipeline running between WD 73 to the beach of Grand Isle, Louisiana and also associated with Federal ROW PSN 6759, OCS-G 05264 and LA ROW No. 2186.

10) That certain 3" gas supply pipeline running from 6" SSTI in Grand Isle Block 18 to Grand Isle Block 19 #03 Caisson and the **GI 18A Manifold**.

11) That certain 4" oil pipeline running between a structure #003 well head in Grand Isle Block 18 of Louisiana State Waters to the **GI 18A Manifold** structure.

12) That certain 4" gas pipeline running between a structure #003 well head in Grand Isle Block 18 of Louisiana State Waters to the **GI 18A Manifold** structure.

**4**

**EXHIBIT D**

**ASSIGNMENT AND BILL OF SALE**

[Attached.]

STATE OF [ ● ]             §
                                         §
[COUNTY] // [PARISH] OF [ ● ]     §

## ASSIGNMENT AND BILL OF SALE

This Assignment and Bill of Sale (this "**Assignment**") from Michael D. Warner, solely in his official capacity as Chapter 7 Trustee ("**Assignor**") for the bankruptcy estates of MLCJR LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, and M21K, LLC (the "**Estates**"), Bankruptcy Case No. 23-90324 pending before the United States Bankruptcy Court for the Southern District of Texas ("**Bankruptcy Court**"), to W&T Offshore, Inc., a Texas corporation ("**Assignee**", with Assignor and Assignee sometimes referred to collectively as the "**Parties**" or individually as a "**Party**"), is executed on the dates set forth opposite the signatures of the Parties below, but effective for all purposes as of 12:01 am (Central Time) on _____, 2025 (the "**Effective Time**").

## RECITALS

WHEREAS, the Estates own certain undivided interests in and to the Assets (as defined below); and

WHEREAS, Assignor desires to sell, transfer and convey to Assignee all of the Estates' right, title, and interest in and to the Assets; and

WHEREAS, per the *Trustee's Emergency Motion for the Entry of an Order (I) Approving the Trustee's Entry Into the Purchase Agreement, (II) Authorizing the Sale of Estate Property Free and Clear of All Liens, Claims, Interests, and Encumbrances, (III) Authorizing the Assumption and Assignment of Executory Contracts, and (IV) Granting Related Relief* filed in the Bankruptcy Case on _____, 2025 [Docket No. ____] ("**Sale Motion**"), the Bankruptcy Court approved the assignment contemplated herein on _____, 2025 [Docket No. ____] ("**Sale Order**").

## ASSIGNMENT

**Section 1.**      *Assignment*.  NOW THEREFORE, Assignor, for and in consideration of the sum of Ten Dollars cash in hand paid and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby GRANT, BARGAINS, SELLS, CONVEYS, ASSIGNS, TRANSFERS, SETS OVER, AND DELIVERS, and by these presents has GRANTED, BARGAINED, SOLD, CONVEYED, ASSIGNED, TRANSFERRED, SET OVER, AND DELIVERED unto Assignee all right, title, and interest of the Estates in and to the following assets (such right, title, and interest collectively referred to herein as the "**Assets**") free and clear of all liens, mortgages, security interests, pledges, charges, collateral assignments, deeds of trust, options or similar encumbrances:

         (a)      That certain structure identified as Grand Isle, Block 18A, for current use as 4 pile pipeline manifold platform located at 29 degrees 10 minutes 2.15 seconds North and 90 degrees 1 minute 54.71 seconds West in the Grand Isle Area, Block 18 of State Offshore Waters, Jefferson Parish, Louisiana (the "**GI 18A Manifold**");

Page 1

(b)     b.     Those certain pipelines described as PSN 18141, ROW OCS-G 29020 and PSN 18891, ROW OCS-G 28673, further described in **Exhibit A** hereto.

(c)     To the extent that they may be assigned, transferred, or re-issued, any and all of the easements, rights-of-way, surface fee interests, surface leases, surface use agreements, other use agreements, and other surface usage rights existing as of the Effective Time to the extent used in connection with the ownership or operation of the Assets, including those set forth on **Exhibit B**; and

(d)     To the extent that they may be assigned, transferred, or re-issued, any permit, license, registration, consent, order, approval, variance, exemption, waiver, franchise, right, or other authorization (in each case) of any governmental authority, save for the Bankruptcy Court, relating to the ownership or operation of the Assets.

TO HAVE AND TO HOLD the Assets unto Assignee, its successors and assigns, forever, subject, however, to the terms and conditions of this Assignment.

**Section 2.**     ***Excluded Assets***.  The Assets shall not include, and Assignor shall reserve and retain, on behalf of the Estates, all of the following assets (the "**Excluded Assets**"):

(a)     all of the Estates' money, currency, or a credit balance in a deposit account at a financial institution and any cash on hand held by the Estates and the Assignor;

(b)     all of the Estates' corporate minute books and corporate tax or financial records that relate to the Estates' businesses generally (including the ownership and operation of the Assets);

(c)     all trade credits, all accounts receivable, tax refunds, tax attributes, if any, and all other proceeds, income, or revenues attributable to the Assets with respect to any period of time prior to the Effective Time;

(d)     all claims, causes of action, manufacturers' and contractors' warranties, and other rights of the Estates arising under or with respect to (i) any Assets that are attributable to periods of time prior to the Effective Time, and (ii) any other Excluded Assets;

(e)     The Estates' area-wide bonds, supplemental bonds, bonds delivered by the Estates to any third person, including United States Department of the Interior, Bureau of Ocean Energy Management and Bureau of Safety and Environmental Enforcement or any other governmental authority in connection with the Assets or any other properties, permits, licenses, or authorizations used in the conduct of the Estates' businesses;

(f)     all rights and interests of the Estates (i) under any policy or agreement of insurance or indemnity, (ii) under any bond or (iii) to any insurance or condemnation proceeds or awards arising, in each case, from acts, omissions or events, or damage to or destruction of property, including the Assets (prior to the Effective Time);

(g)     all United States Department of the Interior, Bureau of Ocean Energy Management operator numbers;

(h)      all documents and instruments and other data or information of Assignor and/or the Estates that are protected by an attorney-client privilege;

(i)      all documents and instruments and other data or information that cannot be disclosed to Assignee as a result of confidentiality arrangements under agreements with third parties;

(j)      all engagements and similar letters and agreements with Assignor's and the Estates' legal advisors, it being agreed that Assignee shall have no right to claim, own, or waive any attorney-client or similar privilege in favor of Assignor, the Estates or any of their affiliates with respect to the ownership or operation of the Assets;

(k)      all of Assignor's and the Estates' rights, interests, and properties that are not included in the definition of "Assets", including the assets, properties, and interests specifically listed in **Exhibit C**; and

(l)      any assets or properties otherwise identified as Excluded Assets herein.

**Section 2.**      *Disclaimers.*

(a)      (I) ASSIGNOR MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS, STATUTORY, OR IMPLIED, AND (II) ASSIGNOR EXPRESSLY DISCLAIMS ALL LIABILITY AND RESPONSIBILITY FOR ANY REPRESENTATION, WARRANTY, STATEMENT, OR INFORMATION MADE OR COMMUNICATED (ORALLY OR IN WRITING) TO ASSIGNEE OR ANY ASSIGNEE REPRESENTATIVE (INCLUDING ANY OPINION, INFORMATION, PROJECTION, OR ADVICE THAT MAY HAVE BEEN PROVIDED TO ASSIGNEE BY ASSIGNOR), AND ASSIGNEE ACKNOWLEDGES THAT IT HAS NOT RELIED ON ANY SUCH REPRESENTATION OR WARRANTY.

(b)      ASSIGNOR EXPRESSLY DISCLAIMS, AND ASSIGNEE ACKNOWLEDGES THAT IT HAS NOT RELIED ON, ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY, OR IMPLIED BY ASSIGNOR, AS TO (I) TITLE TO ANY OF THE ASSETS, (II) THE CONTENTS, CHARACTER, OR NATURE OF ANY REPORT OF ANY PETROLEUM ENGINEERING CONSULTANT, OR ANY ENGINEERING, GEOLOGICAL, OR SEISMIC DATA, OR INTERPRETATION, RELATING TO THE ASSETS, (III) THE QUANTITY, QUALITY, OR RECOVERABILITY OF HYDROCARBONS IN OR FROM THE ASSETS, (IV) ANY ESTIMATES OF THE VALUE OF THE ASSETS OR FUTURE REVENUES GENERATED BY THE ASSETS, (V) THE PRODUCTION OF HYDROCARBONS FROM THE ASSETS, (VI) THE MAINTENANCE, REPAIR, CONDITION, QUALITY, SUITABILITY, DESIGN, OR MARKETABILITY OF THE ASSETS, (VII) THE CONTENT, CHARACTER, OR NATURE OF ANY INFORMATION MEMORANDUM, REPORTS, BROCHURES, CHARTS, OR STATEMENTS PREPARED BY OR ON BEHALF OF ASSIGNOR OR THIRD PARTIES WITH RESPECT TO THE ASSETS, (VIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE TO ASSIGNEE OR ANY ASSIGNEE REPRESENTATIVE IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS ASSIGNMENT OR ANY DISCUSSION OR PRESENTATION RELATING THERETO AND (IX) ANY IMPLIED OR

EXPRESS WARRANTY OF FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT. ASSIGNOR FURTHER DISCLAIMS, AND ASSIGNEE ACKNOWLEDGES THAT IT HAS NOT RELIED UPON, ANY REPRESENTATION OR WARRANTY, EXPRESS, STATUTORY, OR IMPLIED, OF MERCHANTABILITY, FREEDOM FROM REDHIBITORY OR LATENT VICES OR DEFECTS, FITNESS FOR A PARTICULAR PURPOSE, CONFORMITY TO MODELS OR SAMPLES OF MATERIALS OF ANY ASSETS, RIGHTS OF A PURCHASER UNDER APPROPRIATE STATUTES TO CLAIM DIMINUTION OF CONSIDERATION, OR RETURN OF THE CONSIDERATION, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT ASSIGNEE SHALL BE DEEMED TO BE ACQUIRING THE ASSETS IN THEIR PRESENT STATUS, CONDITION, AND STATE OF REPAIR, "AS IS" AND "WHERE IS" WITH ALL FAULTS OR DEFECTS (KNOWN OR UNKNOWN, LATENT, DISCOVERABLE, OR UNDISCOVERABLE), AND THAT ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS ASSIGNEE DEEMS APPROPRIATE. ASSIGNEE HEREBY SPECIFICALLY WAIVES ALL LAWS OF REDHIBITION AND THE IMPLIED WARRANTIES PROVIDED FOR BY LOUISIANA LAW OR OTHERWISE, INCLUDING ANY AND ALL WARRANTIES CREATED BY AFFIRMATION OF FACT OR PROMISE OR BY ANY DESCRIPTION OF THE ASSETS OR BY ANY AMPLE OR MODEL AND ANY OTHER WARRANTIES CONTAINED IN OR CREATED BY THE LOUISIANA UNIFORM COMMERCIAL CODE OR ANY OTHER STATE OR FEDERAL LAW.

(c) ASSIGNOR HAS NOT AND DOES NOT MAKE ANY REPRESENTATION OR WARRANTY REGARDING ANY MATTER OR CIRCUMSTANCE RELATING TO ENVIRONMENTAL LAWS, THE RELEASE OF HAZARDOUS MATERIALS OR OTHER MATERIALS INTO THE ENVIRONMENT, OR THE PROTECTION OF HUMAN HEALTH, SAFETY, NATURAL RESOURCES OR THE ENVIRONMENT, OR ANY OTHER ENVIRONMENTAL CONDITION OF THE ASSETS, AND NOTHING IN THIS ASSIGNMENT OR OTHERWISE SHALL BE CONSTRUED AS SUCH A REPRESENTATION OR WARRANTY, AND ASSIGNEE ACKNOWLEDGES THAT IT HAS NOT RELIED UPON ANY SUCH REPRESENTATION OR WARRANTY AND ASSIGNEE SHALL BE DEEMED TO BE ACQUIRING THE ASSETS "AS IS" AND "WHERE IS" WITH ALL FAULTS FOR PURPOSES OF THEIR ENVIRONMENTAL CONDITION AND THAT ASSIGNEE HAS MADE OR CAUSED TO BE MADE SUCH ENVIRONMENTAL INSPECTIONS AS ASSIGNEE DEEMS APPROPRIATE.

(d) ASSIGNOR AND ASSIGNEE AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE EFFECTIVE, THE DISCLAIMERS OF CERTAIN REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS SECTION 2 (OR THAT ARE OTHERWISE IN ALL CAPS OR BOLD IN THIS ASSIGNMENT) ARE CONSPICUOUS DISCLAIMERS FOR THE PURPOSE OF ANY APPLICABLE LAW.

Section 3.    *Assumed Liabilities.*  Assignee shall assume and hereby agrees to fulfill, perform, pay, and discharge (or cause to be fulfilled, performed, paid, or discharged) any and all obligations and any and all claims, causes of actions, payments, charges, judgments, assessments, losses, monetary damages, penalties, fines, fees, taxes, interest obligations, deficiencies, debts, obligations, costs and expenses, and other liabilities (whether absolute, accrued, contingent, fixed, or otherwise, or whether known or unknown, or due or to become due or otherwise), including any

amounts paid in settlement, interest, court costs, costs of investigators, attorneys' fees, legal, or other expenses incurred in connection therewith (collectively, "**Liabilities**"), known or unknown, to the extent arising from, based upon or attributable to the Assets arising on or after the Effective Time. Notwithstanding the foregoing, the Liabilities shall expressly include all obligations to plug, abandon, clean up or remediate the Assets in accordance with the applicable laws regardless of when such obligations arose, including as addressed in the Decommissioning Orders (as defined in the Sale Motion), as may be supplemented and/or amended. All of the foregoing obligations and Liabilities shall be referred to herein as the "**Assumed Liabilities**").

Section 4. *Excluded Liabilities*. Notwithstanding anything herein to the contrary, Assignee is assuming only the Assumed Liabilities and is not assuming any other Liability, claim against or obligation of Assignor or the Estates or their affiliates or any other person of whatever nature, whether presently in existence or arising hereafter, and Assignee will not assume and will not be responsible to pay, perform or discharge any Liabilities of Assignors, the Estates or any of their affiliates or relating to the Assets of any kind or nature whatsoever other than the Assumed Liabilities. All such other Liabilities, claims, and obligations, whether known or unknown, direct or contingent, in litigation or threatened, or not yet asserted, shall be retained by and remain obligations and Liabilities of Assignors, the Estates or any of their affiliates (such Liabilities, collectively, the "**Excluded Liabilities**"), provided that, for purposes of clarity and notwithstanding anything to the contrary, Excluded Liabilities shall include each of the following Liabilities: (a) all Liabilities relating to any Excluded Assets; and (b) all Liabilities and obligations arising out of the transportation, disposal, or arrangement therefor of any hazardous materials off the premises of the Assets prior to the Effective Time .

Section 5. *Further Assurances*. From and after the Effective Time, Assignor, without further consideration, will use its reasonable good faith efforts to execute, acknowledge, deliver, and (if applicable) file or record, or cause to be executed, acknowledged, delivered, and filed or recorded, such good and sufficient instruments of assignment, conveyance, and transfer, and take such other action as may be reasonably required of Assignor to effectively vest in Assignee beneficial and legal title to the Assets conveyed pursuant hereto and, if applicable, to put Assignee in actual possession of such Assets and carrying out the purposes of this Assignment. After the date of this Assignment, Assignor and Assignee shall, without further consideration, execute, acknowledge, deliver and (if applicable) file or record, or cause to be executed, acknowledged, delivered, and filed or recorded, all instruments, and take such actions, as may be reasonably required of Assignor or Assignee to accomplish the assignment, conveyance, and transfer of the Assets, any change in operator, and otherwise consummate the transactions contemplated by this Assignment, and shall send all required notices with respect to the Assets.

Section 6. *Successors and Assigns*. This Assignment shall bind and inure to the benefit of the Parties and their respective successors and assigns.

Section 7. *Titles and Captions*. All article or section titles or captions in this Assignment are for convenience only, shall not be deemed part of this Assignment and in no way define, limit, extend, or describe the scope or intent of any provisions hereof.

Section 8. *Governing Law*. EXCEPT TO THE EXTENT THE MANDATORY PROVISIONS OF THE BANKRUPTCY CODE APPLY, THIS ASSIGNMENT AND THE

LEGAL RELATIONS BETWEEN THE PARTIES SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF LOUISIANA EXCLUDING ANY CONFLICTS OF LAW RULE OR PRINCIPLE THAT MIGHT REFER CONSTRUCTION OF SUCH PROVISIONS TO THE LAWS OF ANOTHER JURISDICTION.

**Section 9.** *Venue and Jurisdiction.* Each Party hereto agrees that venue and jurisdiction for any action or proceeding in respect of any claim arising out of or related to the Assets, this Assignment, or the auction or overbid procedures, if any, sale or any transactions relating thereto, shall be exclusively in the Bankruptcy Court, and solely in connection with claims and disputes arising under this Assignment or any other transaction document or any transaction related to this Assignment (i) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court, (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto, and (iv) agrees that service of process upon such Party in any such action or proceeding shall be effective if notice is given in accordance herewith. IF THE BANKRUPTCY COURT ABSTAINS FROM JURISDICTION, THEN VENUE SHALL BE IN THE UNITED STATES FEDERAL DISTRICT COURTS LOCATED IN HOUSTON, HARRIS COUNTY, TEXAS (AND ALL APPELLATE COURTS HAVING JURISDICTION THEREOVER) OR IF THE FEDERAL DISTRICT COURTS DO NOT HAVE JURISDICTION, THEN THE STATE COURTS IN HOUSTON, HARRIS COUNTY, TEXAS (AND ALL APPELLATE COURTS HAVING JURISDICTION THEREOVER). EACH PARTY WAIVES ANY OBJECTION TO LAYING VENUE IN ANY SUCH ACTION, SUIT OR PROCEEDING IN SUCH COURTS AND WAIVE ANY OBJECTION THAT SUCH COURTS ARE AN INCONVENIENT FORUM OR DO NOT HAVE JURISDICTION OVER SUCH PARTY. EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS ASSIGNMENT OR ANY TRANSACTION CONTEMPLATED HEREBY. EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATED TO THE ASSETS, THIS ASSIGNMENT, OR THE AUCTION OR OVERBID PROCEDURES, IF ANY, SALE OR ANY TRANSACTIONS RELATING THERETO.

**Section 10.** *Severability.* If any term or other provision of this Assignment is invalid, illegal, or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Assignment shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any adverse manner to any Party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Assignment

so as to effect the original intent of the Parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible.

        **Section 11.**     *Sale Order*.  This Assignment is executed in conformity with the Sale Order, and to the extent any terms of this Assignment are inconsistent with the Sale Order, the terms of the Sale Order shall control.

        **Section 12.**     *Counterparts*.  This Assignment may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument, but all of such counterparts shall constitute for all purposes one agreement. To facilitate recordation, there are omitted from the Exhibits to this Assignment, in certain counterparts, descriptions of property located in recording jurisdictions other than the jurisdiction in which the particular counterpart is to be filed or recorded.

        [REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

EXECUTED as of the dates set forth in the notary certifications below, but effective for all purposes as of the Effective Time.

**ASSIGNOR**:


By: _____
Michael D. Warner, solely in his capacity as Chapter 7 Trustee for the bankruptcy estates of MLCJR LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, and M21K, LLC


**Acknowledgement**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF TARRAN** | § |

**Before me**, the undersigned notary public, duly commissioned and qualified in and for the county/parish and state aforesaid, personally came and appeared Michael D. Warner, to me personally known to be the Chapter 7 Trustee for the bankruptcy estates of MLCJR LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, and M21K, LLC (the "**Estates**"), who declared and acknowledged that he executed the foregoing instrument on behalf of the Estates and he acknowledged that the foregoing instrument is the free act and deed of the Estates.

**Thus done and signed** on this ____ day of _____, 2025, before me, the undersigned notary public.


_____
Name:_____
Notary Public in and for the State of _____.
Notary No. _____

*[Signature and Acknowledgment Page to Assignment and Bill of Sale]*

**ASSIGNEE:**

**W & T OFFSHORE, INC.**

By: _____
Name: George Hittner
Title: Executive Vice President,
General Counsel and Corporate Secretary

## Acknowledgement

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF HARRIS** | § |

     **Before me**, the undersigned notary public, duly commissioned and qualified in and for the county/parish and state aforesaid, personally came and appeared George Hittner, to me personally known to be the Executive Vice President, General Counsel and Corporate Secretary of **W&T Offshore, Inc.**, a Texas corporation, who declared and acknowledged that he executed the foregoing instrument on behalf of the corporation and he acknowledged that the foregoing instrument is the free act and deed of the corporation.

     **Thus done and signed** on this _____ day of _____, 2025, before me, the undersigned notary public.


_____
Name:_____
Notary Public in and for the State of _____.
Notary No. _____


_____

*[Signature and Acknowledgment Page to Assignment and Bill of Sale]*

**EXHIBIT A**

1)   That certain 6-inch oil pipeline, identified as pipeline segment number 18141, Right-of-Way Number G29020, running between and originating at Main Pass Block 141 6-inch SSTI, Outer Continental Shelf Lease G32245, and terminating at Main Pass Block 146 12-inch SSTI, Outer Continental Shelf Lease (Unleased), totaling in length 23,639 feet.

2)   That certain 12-inch gas pipeline, identified as pipeline segment number 18891, Right-of-Way number G28673, extending from the VR 214 "A" platform to a 12" x 30" sub-sea tap into a 30" Tennessee Gas pipeline located at VR 247 approximately, totaling in length approximately 51,144 feet, or 9.69 miles.

**EXHIBIT B**

**SURFACE LEASE AND STATE PIPELINE RIGHT-OF-WAY GRANTS**

- The following Surface Lease and/or State Pipeline Right-of-Way grants:
  - LA State Surface Lease 3161 (Grand Isle Area, Block 18 "A" Platform)
    - Description: Surface Lease Agreement (LA No. 3161) dated January 17, 2013, from the State of Louisiana to Energy XXI GOM, LLC for a described 1.01 acre tract in Grand Isle Block 18, recorded in COB 3309, PG 993, Jefferson Parish, Louisiana.
  - LA State R/W 0.318
    - Description: Right-of-Way (LA R/W No. 0.318) dated April 21,1954 from State of Louisiana to Humble Oil & Refining Company covering a 10" pipeline in the Grand Isle Area, from the south shore of Grand Isle southeast through Block 6, recorded at COB 357, PG 298, Jefferson Parish, Louisiana.
  - LA State R/W 2158
    - Description: Right-of-Way (LA R/W No. 2158) dated February 18, 1983 from State of Louisiana to Exxon Corporation covering a 10" pipeline from Grand Isle 18 Platform "A" located in Grand Isle 18 to the north boundary of Grand Isle 18, recorded at COB 1042, PG 225, Jefferson Parish, Louisiana, as renewed by unrecorded Pipeline Right-of-Way Grant Renewal dated February 18, 2023 from State of Louisiana to Energy XXI GOM, LLC.
  - LA State R/W 2159
    - Description: Right-of-Way (LA R/W No. 2159) dated February 18, 1983 from State of Louisiana to Exxon Corporation covering a 12" pipeline from Grand Isle 18 Platform "A" located in Grand Isle 18 to the east boundary of Grand Isle 18, recorded at COB 1042, PG 223, Jefferson Parish, Louisiana, as renewed by unrecorded Pipeline Right-of-Way Grant Renewal dated February 18, 2023 from State of Louisiana to Energy XXI GOM, LLC.
  - LA State R/W 2186
    - Description: Right-of-Way (LA R/W No. 2186) dated June 17, 1983 from State of Louisiana to Exxon Corporation covering a 6" pipeline from the 1975 Federal/State boundary located in Grand Isle 18 to the shoreline of Grand Isle, recorded at COB 1052, PG 639, Jefferson Parish, Louisiana, as renewed by unrecorded Pipeline Right-of-Way Grant Renewal dated June 17, 2023 from State of Louisiana to Energy XXI GOM, LLC.

- The following described portion of a Pipeline Right-of-Way and Servitude from Exxon Mobil Corp. To Energy XXI GOM, LLC
  - Description: Pipeline Right-of-Way and Servitude ("Servitude") dated December 17, 2010 from Exxon Mobil Corporation to Energy XXI GOM, LLC, recorded at CO 3274, PG 469, Jefferson Parish, Louisiana, INSOFAR AND ONLY INSOFAR as the Servitude pertains to Tracts 1 and 4 as described therein.

**EXHIBIT C**

**EXCLUDED ASSETS**

1) That certain 3" gas lift pipeline running between the GI 18A Manifold and a structure referred to as Grand Isle 9M located in the Grand Isle Area, Block 9 of State Offshore Waters, Jefferson Parish Louisiana.

2) That certain 10" oil and gas pipeline running between the GI 18A Manifold and Grand Isle Area, Block 22, and being more specifically described PSN 790, ROW OCS-G 1506C.

3) That certain 6" oil and gas pipeline running between a structure referred to as Grand Isle 17S in the Grand Isle Area, Block 17 of State Offshore Waters, Jefferson Parish, Louisiana, and a point on the GI 18A Manifold, and being more specifically described in the State of Louisiana Right-of-Way Grant number 1022 E.

4) That certain 4" oil and gas pipeline running between a structure referred to as Grand Isle 9M in the Grand Isle Area, Block 9 of State Offshore Waters, Jefferson Parish, Louisiana, and a point on the GI 18A Manifold, and being more specifically described in the State of Louisiana Right-of-Way Grant number 2521.

5) That certain 4" oil and gas pipeline running between a point in Grand Isle Area, Block 19 and the GI 18A Manifold, being more specifically described as PSN 6292, ROW OCS-G 29472.

6) That certain 4" oil pipeline running between a structure referred to as Grand Isle 19-A in Grand Isle Area, Block 19 and the GI 18A Manifold.

7) That certain 4" gas pipeline running between a structure referred to as Grand Isle 19-A in Grand Isle Area, Block 19 and the GI 18A Manifold.

8) That certain 12" gas pipeline running between WD 73 A to the GI 18A Manifold (PSN 759, OCS-G 13504; LA ROW No. 2159), flowing up and over the GI 18A Manifold, and continuing on as a 10" gas pipeline (LA ROW No. 2158), to the beach of Grand Isle, Louisiana.

9) That certain 6" gas pipeline running between WD 73 to the beach of Grand Isle, Louisiana and also associated with Federal ROW PSN 6759, OCS-G 05264 and LA ROW No. 2186.

10) That certain 3" gas supply pipeline running from 6" SSTI in Grand Isle Block 18 to Grand Isle Block 19 #03 Caisson and the GI 18A Manifold.

11) That certain 4" oil pipeline running between a structure #003 well head in Grand Isle Block 18 of Louisiana State Waters to the GI 18A Manifold structure.

12) That certain 4" gas pipeline running between a structure #003 well head in Grand Isle Block 18 of Louisiana State Waters to the GI 18A Manifold structure.

[*Exhibit C*]

**Schedule of Executory Contracts and Unexpired Leases to be Assumed and Assigned**

| Counterparty | Debtor | Field | Title | Effective Date | Cure Costs |
|---|---|---|---|---|---|
| W&T Offshore, Inc. & Greyhound Energy, LLC | Cox Oil Offshore, Inc. | Vermilion 247 | Chevron/Dynamic et al Vermilion Gas Pipeline Ownership and Operating Agreement | 6/28/2012 | $0.00 |

EXHIBIT 2