## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re | Chapter 7 |
| **MLCJR LLC, *et al.*,**[1] | Case No. 23-90324 |
| **Debtors** | (Jointly Administered) |

**TRUSTEE'S MOTION PURSUANT TO BANKRUPTCY CODE SECTION 363 AND BANKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENT WITH THE HEDRON PARTIES & UNDERWRITERS; AUTHORIZING THE DISTRIBUTION OF THE PROCEEDS FROM THE SETTLEMENT AND THE RETENTION OF FUNDS BY THE ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; APPROVAL OF CONTINGENCY FEE AND EXPENSES OF FISHMAN HAYGOOD LLP ON A FINAL BASIS; AND FOR RELATED RELIEF**

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**NOW INTO COURT**, through undersigned counsel, comes Michael D. Warner, acting solely in his official capacity as the duly elected, qualified and acting Chapter 7 Trustee (the "**Trustee**") of the administratively consolidated Debtors MLCJR, LLC, Cox Oil Offshore, L.L.C., Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas,

---

[1] The "Debtors" in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The debtors' address is 4541 Cole Ave, Suite 1175, Dallas, Texas 75205.

LLC, and M21K, LLC (collectively, the "**Debtors**"), who files this motion (the "**Motion**") seeking

a final order, substantially in the form filed contemporaneously herewith (such order once Final,[2]

the "**Settlement Order**"):

(i)     approving the Trustee's entry into the Settlement Agreement (the "**Settlement Agreement**"),[3] a copy of which attached hereto and made a part hereof as **Exhibit "1"** to the Settlement Order**,** by and among the Trustee on behalf of the Debtors and the Cox Affiliates, the Underwriters, and the Hedron Parties, under Bankruptcy Code Section 363 and Bankruptcy Rule 9019;

(ii)    authorizing the Trustee to dismiss, with prejudice, the litigation styled *Michael D. Warner, solely in his official capacity as Chapter 7 Trustee of Cox Operating, LLC, MLCJR, LLC, Cox Oil Offshore, LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil and Gas, LLC and M21K, LLC v. Miller Insurance Services, et al.,* Adversary Proceeding No. 24-03266 (hereinafter, the "**Adversary Proceeding**") and the Debtors' claims asserted in *In re Hedron Holdings, LLC, as Owner, and Triton Diving Services, LLC, as Bareboat Charterer and Owner Pro Hac Vice of D/B Epic Hedron Petitioning for Exoneration from and/or Limitation of Liability*, Case No. 22-205 c/w 21-2295 (the "**Hedron Litigation**");

(iii)   authorizing the Trustee to fully perform his various obligations under the Settlement Agreement including, without limitation, granting various releases;

(iv)    authorizing the distributions of the proceeds of the Settlement Agreement;

(v)     authorizing the retention of $1.3 million of the Settlement Funds by the Debtors' Estates, free and clear of all liens, claims and encumbrances, including those of the DIP Lenders; and

(vi)    approving the Trustee's payment of a final award to Fishman Haygood of reimbursable expenses and the Contingency Fee Entitlement relating to the Cox Hedron Claims.

---

[2] Capitalized terms that are not defined in this Motion are as defined in the Settlement Agreement.

[3] To the extent there exists any conflict between the discussion of the terms of the Settlement Agreement, the Settlement Agreement shall control. It should go without saying that the allegations of the Debtors and the Trustee are disputed by the Hedron Parties and the Underwriters. Notwithstanding the disputes regarding such allegations, such allegations are provided in this Motion to demonstrate, *inter alia*, the Trustee's bases for proposing the Settlement Agreement. Further, the Trustee disputes the allegations of the Hedron Parties and the Underwriters. This Motion will not repeat, hereinafter, all of the Debtors', the Trustee's, the Hedron Parties' and the Underwriters' allegations and statements, nor that the same are disputed by one another, nevertheless, it should be assumed that such allegations and statements are disputed, and thus form the basis for the Settlement Agreement. Finally, the Trustee reserves all rights to modify, adjust or contradict positions and allegations herein, and is not bound by such positions and allegations, without explanation, in the event that the Settlement Order approving this Motion does not become a Final Order (as defined in the Settlement Agreement), and the parties proceed to litigation, or otherwise.

In support of this Motion, the Trustee respectfully represents as follows:

**Preliminary Statement**

1.     On or about August 29, 2021, the derrick barge EPIC HEDRON (the "**HEDRON**"), owned and/or operated by various entities (defined in the Settlement Agreement as the "**Hedron Parties**"), broke free from its storm anchors and moorings in Fourchon, Louisiana, and drifted into Louisiana territorial waters and the Gulf of America.  Subject to the high winds and rough seas created by the officially named Category 4 hurricane – Hurricane Ida **("Hurricane Ida"),** the HEDRON ultimately came to rest in the South Timbalier Block ("**ST Block**") and in particular Field 21 ("**ST 21**").[4]

2.     Prior to filing of the Debtors' Chapter 11 Cases, three of the Debtors, Cox Operating, L.L.C., Energy XXI GOM, LLC, and EPL Oil & Gas, LLC (defined in the Settlement Agreement as the "**Cox Claimants**" – a subset of the Debtors), asserted claims against the HEDRON and the Hedron Parties (defined in the Settlement Agreement as the "**Cox Hedron Claims**"), for damage to their assets, and ultimately filed claims in litigation (defined in the Settlement Agreement as the "**Hedron Litigation**"). Following the Trustee's appointment, the Trustee continued to pursue the Cox Hedron Claims, including discovery, analysis and, as ultimately addressed herein, settlement *via* mediation.

3.     Prior to filing of the Debtors' Chapter 11 Cases various entities (defined in the Settlement Agreement as the "**Underwriters**") subscribed to an insurance policy issued by Lloyd's

---

[4] A *Block* is a designated area in a body of water for mineral exploration. The Gulf of America is divided into named Blocks. Block sizes are never more than 5760 acres. Within a Block, including the ST Block, are *Fields*, identified by number (by way of example, and as more fully addressed below, the Cox Claimants (as defined below) owned leases, including in ST 21 [South Timbalier Block, Field 21]). Fields within Blocks may be leased to third parties to explore and develop mineral reserves.

of London, *to wit*: Policy number B0621EMSCO000121 (defined in the Settlement Agreement as the "**Policy**"), pursuant to which, the Debtors' assets were insured.

4.       Prior to the filing of the Debtors' Chapter 11 Cases, the Underwriters asserted claims against the HEDRON and the Hedron Parties in the Hedron Litigation, based, *inter alia*, upon asserted subrogation rights as against the Debtors under the Policy (defined in the Settlement Agreement as the "**Underwriters' Subrogation Claims**").  In response to the Underwriters' Subrogation Claims, the Trustee filed the Adversary Proceeding against the Underwriters, seeking, *inter alia*, to determine what, if any, rights the Underwriters have to assert the Underwriters' Subrogation Claims.

5.       On April 4, 2024, the Interim Trustee moved to employ Fishman Haygood LLP ("**Fishman Haygood**")  pursuant to sections 327(e) and 328 of the Bankruptcy Code as special litigation counsel under a contingency fee agreement providing for a twenty-five percent (without suit) and thirty-five percent (with suit) (25-35%) contingency fee (the "**Contingency Fee Entitlement**") and reimbursement of expenses and costs.[5] The Court authorized Fishman Haygood's employment on April 30, 2024.[6] Fishman Haygood has represented the Trustee in the Hedron Litigation, including in the various mediation efforts, as discussed below.

6.       Following extensive negotiations on multiple days, with the assistance of both a United States Magistrate Judge for the Eastern District of Louisiana and a private mediator, the Trustee, the Hedron Parties and the Underwriters reached the Settlement Agreement.

7.       The Settlement Agreement provides for resolution of all issues between the Hedron Parties and the Trustee and the Underwriters, in exchange for a payment by the Hedron Parties to

[5] Docket No. 1813.
[6] Docket No. 1862.

the Trustee in the amount of $11,000,000 (defined in the Settlement Agreement as the "**Settlement Funds**") from which the Trustee shall pay to the Underwriters $2,833,334 (defined in the Settlement Agreement as the "**Subrogation Funds**").

8. Pursuant to the Final DIP Order,[7] the Debtors' DIP Lenders[8] hold liens against, *inter alia*, the Settlement Funds as the proceeds of the Cox Hedron Claims. The DIP Lenders have consented to the Settlement Agreement, as evident by their execution of the Settlement Order, which consent includes the release of liens against the Settlement Funds and the approval of various distributions from the Settlement Funds, including the Subrogation Funds.

9. The Settlement Agreement resolves all issues between the Parties relating to the Cox Hedron Claims and the Underwriters' Subrogation Claims, thereby avoiding costly and time-consuming litigation, which if not resolved by agreement of the parties could continue for a matter of years. As provided *infra*, the Hedron Litigation is expected to continue for potentially two separate protracted trials among the Hedron Parties and other third parties, and thus by the Trustee's settlement with the Hedron Parties and the Underwriters, the Trustee and the Debtors' Estates will be extracted from the remaining, time consuming, uncertain and expensive litigation.

10. In the Trustee's reasoned judgment, the Settlement Agreement is fair, equitable and in the best interests of the Debtors' Estates', and accordingly, the Trustee respectfully asks that the Court grant this Motion and enter the Settlement Order and authorizing the Trustee to perform his obligations thereunder.

---

[7] *Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Doc. No 434] entered by the Court on June 13, 2023 (the "**Final DIP Order**").

[8] BP Energy Company ("**bpec**") and (ii) Amarillo National Bank ("**ANB**," and together with bpec, the "**DIP Lenders**"), and ANB, as administrative agent and collateral agent.

**Relief Requested**

I.    **Approval of Hedron Settlement under Bankruptcy Code § 363 and Bankruptcy Rule 9019**

11.    Pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Trustee requests entry of the Settlement Order approving the Settlement Agreement and granting related relief.

**Jurisdiction and Venue**

12.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference of Bankruptcy Matters entered by the United States District Court for the Southern District of Texas. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

13.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

14.    On or about August 29, 2021, the HEDRON, broke free from its moorings in Fourchon, Louisiana, and drifted into the Gulf of America. Subject to the high winds and rough seas created by Hurricane Ida, the HEDRON ultimately came to rest in ST 21.

15.    After receiving multiple claims of damage allegedly caused by the HEDRON's unintended voyage during Hurricane Ida, on January 28, 2022, the Hedron Parties filed a Verified Complaint for Exoneration from and/or Limitation of Liability (defined in the Settlement Agreement as the "**Limitation Complaint**") in the District Court for the Eastern District of Louisiana (the "**District Court**") pursuant to 46 U.S.C. § 30501, *et seq*., and Supplemental Admiralty Rule 9(h) of the Federal Rules of Civil Procedure in the matter captioned, *In re Hedron Holdings, LLC, as Owner, and Triton Diving Services, LLC, as Bareboat Charterer and Owner*

*Pro Hac Vice of D/B Epic Hedron Petitioning for Exoneration from and/or Limitation of Liability*, Case No. 22-205 c/w 21-2295 (the "**Hedron Litigation**").

16.    In the Limitation Complaint, the Hedron Parties denied any negligence or fault related to the breakaway of the HEDRON during Hurricane Ida and alternatively assert that, to the extent the Hedron Parties are found negligent or at fault with respect to the damage caused by the HEDRON, their liability should be limited to the value of the HEDRON and its pending freight, or $32,991,779, because the negligence or fault was not within the privity or knowledge of the Hedron Parties.

17.    On June 7, 2022, Debtors Energy XXI GOM, LLC, and EPL Oil and Gas, LLC filed an Answer and Claim in the Hedron Litigation.  On June 21, 2022, Debtor Cox Operating, L.L.C. was added as a party to the Hedron Litigation by the Cox Claimants' First Supplemental and Amended Answer and Amended Claim (the "**Cox Claimants' Amended Answer and Claim**").

18.    The Cox Claimants' Amended Answer and Claim alleged, *inter alia*, that, because of the negligence and fault of the Hedron Parties, the HEDRON broke from its moorings during Hurricane Ida, became adrift, and allowed one or more of its anchors to drag, catch, and snag multiple pipelines and related infrastructure of the Cox Claimants, causing both physical damages to the pipelines and causing the Cox Claimants to suffer loss of oil and gas production from the Fields in which those damaged pipelines were previously secured.

19.    On June 28, 2022, Underwriters moved to intervene or alternatively file an answer and claim in the Hedron Litigation as partial subrogees of the Cox Claimants. In their motion, Underwriters allege that they "are currently in the process of paying amounts owed under the policy to the Cox [Claimants] for the damage to Cox's offshore pipelines, vesting the

Underwriters' partial subrogation interests in Cox's claim filed in this proceeding. The Underwriters' subrogated claims mirror those of the Cox [Claimants] to the extent insurance payments have been made to Cox."

20.     Underwriters' motion was granted without opposition, and Underwriters' Answer to Complaint in Limitation and Claim in the Hedron Litigation was filed in the Hedron Litigation on September 16, 2022.

21.     The Trustee has disputed that Underwriters have a valid claim of subrogation in the Hedron Litigation, and this dispute is the subject of the Adversary Proceeding.

22.     Since the filing of the Limitation Complaint, at least 20 claimants (in addition to the Cox Claimants and the Underwriters) have appeared in the Hedron Litigation to oppose the Hedron Parties' demand for exoneration and/or limitation of liability and to assert claims for damages against the Hedron Parties for personal injuries and/or property damage caused by the HEDRON's breakaway during Hurricane Ida. The Settlement Agreement does not address the other claimants' claims against the Hedron Parties, and as noted such claims will continue to be litigated.

23.     On September 29, 2023, the District Court granted several claimants' motion to bifurcate the issues of exoneration and limitation of liability from the issue of damages. The District Court then issued an Order establishing that the Court "will try the issues of liability, limitation, and apportionment of fault in a bench trial, and will bifurcate the issues of damages."

24.     The bench trial on the issue of the Hedron Parties' liability, ability to limit their liability to the value of the vessel, and apportionment of fault is set to begin on July 28, 2025. Pending the results of the initial bench trial as to liability, limitation and apportionment of fault, a separate trial or trials on claimants' damages will be set for a later date. Both the initial bench trial

as to liability, limitation and apportionment of fault and a subsequent trial or trials on damages could, however, be subject to additional delays depending on the number of motions filed by the numerous claimants in this matter and whether there are additional requests for a continuance in light of outstanding facts, expert discovery, and the number of claimants.

25.     In the more than three years since the Hedron Litigation was filed, the parties have taken over 20 depositions, including the depositions of the Superintendent of the HEDRON in command of the HEDRON during the incident, several crewmembers on board during the incident, one of the divers on the HEDRON's anchor, and the corporate representative of Triton Diving Services, LLC.

26.     Expert reports in the Hedron Litigation have not yet been exchanged, but the Trustee, through counsel, has consulted with several experts, including experts who have offered opinions as to the path of the HEDRON during Hurricane Ida and the extent of the Cox Claimants' pipeline damages, including the related lost production.

27.     On July 30, 2024, the Magistrate Judge presiding over the Hedron Litigation, Magistrate Judge van Meerveld, held a status conference, in which the  Magistrate Judge gauged the Hedron Parties and the Trustee's willingness to resolve the matter through settlement. Each party indicated a willingness to engage in settlement discussions.

28.     At the request of the Hedron Parties and the Trustee, on November 25, 2024, Judge van Meerveld participated in a settlement conference during which the parties reached an agreement as it pertains to the settlement of the Cox Hedron Claims against the Hedron Parties.

29.     On January 15, 2024, the Trustee, the Hedron Parties, the Underwriters, and their respective counsel participated in additional negotiations, focused on the Underwriters' Subrogation Claims, with an experienced mediator. While the parties made some progress to a

global resolution, they did not reach an agreement. On January 21, 2025, Judge van Meerveld conducted another settlement conference involving the Trustee, the Hedron Parties, and the Underwriters. At the conclusion of that conference, the Parties did reach an agreement for resolution of the various issues with respect to, *inter alia*, the Cox Hedron Claims and the Underwriters' Subrogation Claims.

### The Proposed Settlement Agreement - Generally

30.     The proposed Settlement Agreement generally provides:

    a.     The Hedron Parties will pay the Trustee the Settlement Funds of $11,000,000;

    b.     From the Settlement Funds, the Trustee will pay to the Underwriters the Subrogation Funds of $2,833,334;

    c.     As agreed to by the DIP Lenders, the DIP Lenders:

        i.     release any and all liens, claims and encumbrances they may assert against the Cox Hedron Claims and the Settlement Fund;

        ii.     authorize the Trustee's distributions from the Settlement Funds, to:

            a.     The Underwriters of the Subrogation Funds of $2,833,334;

            b.     The Trustee's Litigation Counsel, Fishman Haygood, for costs and expenses in the amount of $50,000, and the Contingency Fee Entitlement in connection with the Hedron Litigation in the reduced amount of $3,500,000;[9]

            c.     The Debtors' Estates of $1,300,000, as and for a carve-out; and

            d.     The balance of the Settlement Funds of $3,316,666, to the DIP Lenders, and

---

[9] As noted, *supra*, pursuant to the Order of the Court approving Fishman Haygood's retention, Fishman Haygood would otherwise be entitled to 35% of the Settlement Funds, *to wit*: $3,850,000; however, solely with respect to the Hedron Litigation and the Settlement Agreement, Fishman Haygood has agreed with the Trustee to a reduced Contingency Fee Entitlement.

d.    The Trustee's release of the Cox Hedron Claims against the Hedron Parties in the Hedron Litigation;

e.    The Underwriters' release of the Underwriters' Subrogation Claims against the Hedron Parties in the Hedron Litigation;

f.    Various releases will be exchanged among the Trustee and the Underwriters and among the Trustee and the Hedron Parties;

g.    Various releases will be exchanged among the Hedron Parties and the Underwriters;

h.    The Trustee's dismissal, with prejudice, of the Adversary Proceeding against the Underwriters; and

i.    As a condition of the Settlement Agreement, the Trustee shall file the instant Motion under Rule 9019 of the Bankruptcy Rules and seek the Settlement Order from this Court.

**This description of the Settlement Agreement is qualified in all respects by the Settlement Agreement itself. The Settlement Agreement shall control over this motion.**

31.    In addition to the Debtors, the parties to the Settlement Agreement additionally include three non-debtor wholly owned subsidiaries of the Debtors, EPL Pipeline, L.L.C., Energy XXI Pipeline, LLC, and Energy XXI Pipeline II, LLC, which are defined in the Settlement Agreement as the "Cox Affiliates." The Trustee, pursuant to authority provided in that certain *Emergency Motion for Order Authorizing the Trustee to Exercise Corporate Authority over Wholly-Owned, Non-Debtor Subsidiaries and Granting Related Relief* [Docket No. 2234], approved by the Court on October 23, 2024 [Docket No. 2269], has now become the Authorized Member to act on behalf of the Cox Affiliates. The Cox Affiliates are included in the Settlement Agreement, as prior to the Trustee's election and qualification, the Debtors suggested that certain pipelines in which the Cox Affiliates may have had an interest had been damaged by the HEDRON.  It is the Trustee's understanding that the Debtors, and in particular Debtor Cox Operating, L.L.C., managed the affairs of the Debtors' subsidiaries, including the Cox Affiliates.

The Trustee has determined, *via* discovery and analysis, that these pipelines were not damaged by the HEDRON. Nevertheless the Hedron Parties have required a release from the Cox Affiliates.

32.     Having evaluated (i) all aspects of the Hedron Parties' potential liability and exposure in the Hedron Litigation, (ii) the likelihood of recovery of the damages asserted in the Hedron Litigation, and (iii) the validity and amount of the Underwriters' Subrogation Claims, the Trustee has concluded based on his reasonable business judgment, that the Settlement Agreement, as described above and specifically provided for in the Settlement Agreement is fair, equitable, and in the best interest of the Debtors' Estates.

## Legal Standard

33.     Pursuant to Bankruptcy Rule 9019(a), a Bankruptcy Court may, after appropriate notice and a hearing, approve a settlement as long as the proposed settlement is fair, equitable, and in the best interest of the estate. *In re Age Refin. Inc.*, 801 F.3d 530, 540 (5th Cir. 2015) (citing *In re Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995)).

34.     In assessing whether a settlement is fair and equitable, courts evaluate (1) the probability of success in litigating the claim subject to settlement, with consideration for the uncertainties in fact and law; (2) the complexity and likely duration of litigation and attendant expense, inconvenience and delay; and (3) all other factors bearing on the wisdom of compromise. *Id*. (citing *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980); *see also DeepRock Venture Partners LP v. Beach*, No. 3:16-CV-1552, 2017 WL 1293090, at *5-6 (N.D. Tex. April 4, 2017) (affirming Bankruptcy Court's order to approve settlement).

35.     Other factors courts consider include the best interests of the creditors and the extent to which the settlement is the product of arms-length bargaining, and not of fraud or collusion. *Id*.

36.     Generally, the role of the Bankruptcy Court is not to decide the merits of claims subject to a settlement but determine whether the settlement is fair and equitable as a whole. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993) (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

37.     The Trustee bears the burden of establishing that the balance of the above factors leads to a fair and equitable compromise. *In re Allied Properties*, No. 60-33754, 2007 WL 1849017, at *4 (Bankr. S.D. Tex. June 25, 2007). This is not a high burden, and the "Trustee need only show that his decision falls within the 'range of reasonable litigation alternatives.'" *Id*. (citations omitted).

38.     Moreover, settlements are considered a "normal part of the process of [bankruptcy proceedings]" and "desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted). Judicial deference is given to a trustee's exercise of business judgment. *In re Royal Alice Properties*, 637 B.R. 465, 477 (Bankr. E.D. La 2021) (citing *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (N.D. Tex. 2005)).

39.     When a compromise results in the disposition of estate property (e.g., claims against third parties), courts have required the estate to comply with 11 U.S.C. 363(b)[10], which authorizes a debtor in possession (after notice and a hearing), to use, sell, or lease property of the estate outside the ordinary course of business.[11] The debtor in possession or trustee can "satisfy its fiduciary duty

---

[10] *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263-66 (5th Cir. 2010) (requiring the court to scrutinize a proposed compromise of a claim under Bankruptcy Code § 363 and Bankruptcy Rule 6004 where a higher offer was made for that claim); *Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys.)*, 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003) (stating that "any compromise of a cause of action that is property of the estate is a transfer of that asset that must comply with § 363(b)(1) to be enforceable").

[11] *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing 11 U.S.C. § 363(b)).

to the debtor, creditors and equity holders" under § 363(b) by establishing an articulated business justification.[12]

40.     The Fifth Circuit has recognized that this standard is both "flexible and encourages discretion"[13] and its sufficiency "depends on the case."[14] "[T]he bankruptcy judge 'should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.'"[15]

<u>Argument</u>

**A. The Settlement Agreement appropriately accounts for the uncertainty of the Hedron Litigation, including the Cox Hedron Claims and the Trustee's ability to recover the asserted damages. The Settlement Agreement also reasonably values the Underwriters' Subrogation Claims.**

41.     Because the Hedron Litigation is a proceeding governed by the Shipowner's Limitation of Liability Act, 46 U.S.C. § 30501*, et. seq.,* there are risks attendant to a trial of claims in such litigation, and in this matter additional to those presented in a typical civil action for property damages.

42.     Specifically, if the Hedron Parties prevail in proving that they are entitled to limit their liability to the value of the HEDRON, the funds available to all claimants in the Hedron Litigation are alleged to be limited to $32,991,779, which amount is to be disbursed *pro rata*

---

[12] *ASARCO, Inc. v. Elliot Mgmt.* (*In re Asarco, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) (quoting *Cont'l Air Lines*, 780 F.2d at 1226)). *See also Moore*, 608 F.3d at 263 ("A sale of assets under § 363…is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons.").

[13] *Asarco*, 650 F.3d at 601.

[14] *Cont'l Air Lines*, 780 F.2d at 1226.

[15] *Cont'l Air Lines*, 780 F.2d at 1226 (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). *See also*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1309 (5th Cir. 1985) (considering business judgment in the context of § 365 and stating "'As long [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision…should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code…'" (quoting *Allied Technology, Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982))) (alterations to original).

among the claimants "in proportion to the amounts of their respective claims, duly proved, saving, however, to all parties any priority to which they may be legally entitled." *See* FED. R. CIV. PROC., SUPP. ADM. R. (F).

43.     Notably, among the many claimants in the Hedron Litigation are personal injury claimants who have each claimed substantial damages arising from physical and mental injuries they sustained while on board the HEDRON during its breakaway in Hurricane Ida. In addition to the Cox Claimants and the Underwriters, two other claimants in the Hedron Litigation have asserted substantial claims for damages to their pipelines caused by the HEDRON. Thus, given the structure of the Hedron Litigation, absent approval of the Settlement Agreement, resulting in the elimination of the Trustee and the Underwriters from the Hedron Litigation, the Trustee, and all other parties to the Hedron Litigation will potentially be subject to a limited fund available to satisfy judgements, if any. Further, it is the Trustee's belief that a settlement solely among the Trustee and the Hedron Parties (leaving the Underwriters' Subrogation Claims in the Hedron Litigation to be litigated), was not feasible, as further addressed below.

44.     The Settlement Agreement is thus reasonable because of the possibility that the Trustee's recovery could be substantially less than the agreed-to Settlement Funds in the event the Hedron Parties are entitled to limit their liability at trial.

45.     In light of the risks set forth above, the Trustee believes that the Settlement Funds adequately compensates the Debtors' Estates for those damages that are most likely to be proven at trial.

**B.  The Settlement Agreement is reasonable in that it avoids further protracted and costly litigation.**

46.     As set forth above, to recover the claimed damages, the Trustee must prove the claims in two trials: (1) one trial to determine the Hedron Parties' fault and ability to limit their

liability; and (2) a second trial to determine whether the Trustee is entitled to recover the claimed damages. Further, should the Hedron Litigation result in a limitation (trial number 1, noted above) the Trustee could be in the position of having to *share* a limited fund among multiple claimants.

47.     Although the Hedron Litigation has been pending for more than three years and over twenty depositions have been taken, additional discovery remains outstanding—largely due to the significant number of parties in the Hedron Litigation. Further, as expert reports have not yet been exchanged, expert discovery in the matter still has yet to begin.

48.     Thus, without settlement, the Trustee will be required to incur significant costs associated with further discovery, the prosecution of two trials, and the retention of experts to separately testify at each of the two trials. Moreover, the Trustee's recovery of the claimed damages is unlikely to occur until late 2025 or early 2026—at the soonest.

49.     The Debtors and the Trustee have already participated in extensive discovery, consultation with experts, and settlement negotiations. The Trustee is confident that the proposed Settlement Agreement is a just and efficient resolution to the claims that has the added benefit of foregoing another year, at least, of costly and uncertain litigation. While the Settlement Agreement will be subject to certain conditions, which if not met, may render the Settlement Agreement null and void and return the Parties to litigation, the Trustee believes that those conditions will be met and that the Debtors' Estates will receive the benefits of the Settlement Agreement.

**C.  The Settlement Agreement is in the best interest of the creditors.**

50.     The Settlement Agreement secures a swift, just, and significant recovery for the Debtors' Estates, providing much needed funds to alleviate the substantial obligations of the Debtors and lead toward potentially addressing the claims of the creditors in these Cases.

**D.  The Settlement Agreement is a result of good faith negotiations.**

51.    The Settlement Agreement was the result of lengthy, good faith, and arms-length negotiations among the Trustee, the Underwriters, and the Hedron Parties.

52.    After years of discovery and case evaluation and months of settlement negotiations, the Trustee and the Hedron Parties reached the Settlement Agreement at a November 25, 2024 in-person settlement conference mediated by Magistrate Judge van Meerveld—the Magistrate Judge who has presided over the Hedron Litigation since its inception and who has a deep familiarity with the key issues in the case—and which took place at the United States District Court for the Eastern District of Louisiana.

53.    Both the Hedron Parties and the Trustee were represented at the November 25, 2024 settlement conference by capable counsel who were imminently familiar with the factual and legal strengths and weaknesses of each party's case and who had participated in the months-long negotiations leading to the settlement conference.

54.    The Trustee was also present at the November 25, 2024 settlement conference and was actively involved in the negotiations and communications with Magistrate Judge van Meerveld regarding the same.

55.    The settlement in principal between the Trustee and the Hedron Parties did not resolve the Underwriters' Subrogation Claims. The Hedron Parties conditioned their tender of the Settlement Funds to the Trustee on either the Trustee obtaining a permanent injunction barring the Underwriters' assertion of the Underwriters' Subrogation Claims against the Hedron Parties and the dismissal of the Underwriters' Subrogation Claims with prejudice in the Hedron Litigation or the Underwriters granting a comprehensive release to the Hedron Parties of the Underwriters' Subrogation Claims. Thus, as noted above, the Trustee determined that it was not reasonable to limit the settlement to the issues solely among the Trustee and the Hedron Parties.

17

56. The Trustee, the Hedron Parties, and the Underwriters engaged in lengthy and vigorous negotiations on January 15 and January 21, 2025. Those negotiations ultimately produced an agreement on the allocation to Underwriters or a portion of Settlement Funds.

57. The Trustee agreed to the terms of the Settlement Agreement, only after careful consideration of all of the available evidence, evaluation of the strengths and weaknesses of claims, analysis of the risks, costs, and benefits associated with continued litigation, and prolonged negotiation with the Hedron Parties and the Underwriters to ensure the most favorable and equitable agreement possible in the absence of formal trials.

58. The Trustee is thus confident that each of the factors to be considered by this Court to determine a fair and equitable settlement are satisfied and are articulated herein, *see In re Age Refin. Inc.*, 801 F.3d at 540, and the Trustee respectfully requests that the Court approve the form and substance of the proposed Settlement Agreement and authorize the Trustee to execute the same.

**E. The allocation to the Underwriters is reasonable and appropriate.**

59. The Trustee does not concede that Underwriters' Subrogation Claims are valid and enforceable or that Underwriters' Subrogation Claims may be asserted unless and until the Trustee recovers all damage suffered by the Debtors which were caused by the Hedron Parties.

60. Nonetheless, the Trustee recognizes that the settlement with the Hedron Parties cannot be consummated, and he will not recover the Settlement Funds, until the Hedron Parties secure a release of the Underwriters' Subrogation Claims or a permanent injunction barring the assertion of the Underwriters' Subrogation Claims against the Hedron Parties.

61.     The Trustee has concluded, based on his reasonable business judgment, that an allocation of $2,833,334 from the Settlement Funds is the most certain, timely, and cost-effective means to secure the release required by the Hedron Parties.

**F. The Settlement Complies with Bankruptcy Code Sections 363(b) and (h).**

62.     The Trustee submits that the Settlement Agreement is the product of sound business judgment as it furthers the interests of the Debtors' Estates.[16] As detailed above, the Trustee is opting to remove the expense, uncertainties and inconvenience associated with prosecuting the Cox Hedron Claims and challenging the Underwriters' Subrogation Claims (which ultimately must be borne by the creditors) by entering into the Settlement Agreement for purposes of strengthening the Debtors' Estates' ability to maximize recovery and provide certainty and finality in the most cost-efficient manner.

63.     Therefore, multiple articulated business justifications exist for entering into the Settlement Agreement and as such, comply with the requirements of 11 U.S.C. § 363(b).

**II.    Final Approval of Fishman Haygood Contingency Fee Entitlement as to the Hedron Litigation**

64.     Fishman Haygood is entitled to (i) reimbursement of "all out-of-pocket expenses incurred in connection with all litigation services and all other matters in which it is engaged by the Trustee" and (ii) in the event of a "Recovery" where litigation is pending, a contingency fee equal to thirty-five percent (35%) of the Recovery.

---

[16] *See In re Global Crossing Ltd.,* 295 B.R. 726, 746-47 (Bankr. S.D.N.Y. 2003) (approving, as exercise of reasonable business judgment under section 363(b), decision by debtors to execute mutual releases with third party in connection with asset sale agreement).

65.     Professionals have the option to be compensated under either §§ 328(a) or 330(a).[17] Section 328(a) applies when the court approves a fee as a part of the employment application at the outset of the engagement, while § 330(a) applies when the court has yet to do so.[18]

66.     Under § 328(a), professional fee agreements previously approved by the court can only be reduced if the contract terms were "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."[19] The objecting party must show more than just that the subsequent developments were "unforeseen."[20]

67.     As Fishman Haygood's employment was "authorized pursuant to sections 327(e) and 328 of the Bankruptcy Code," it is entitled to the earned contingency fee unless an objecting party proves that the fee is "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."[21] The Trustee suggests that the Hedron Settlement and resulting contingency fee do not involve any circumstances that show the fee to be improvident, much less incapable of anticipation, not merely unanticipated.  Further, the Trustee is satisfied that Fishman Haygood has diligently, competently, efficiently, and as demonstrated by the results, successfully represented the Trustee in the Hedron Litigation, thus earning the Contingency Fee Entitlement.

68.     As the Hedron Settlement arises from the pending Hedron Litigation, Fishman Haygood is entitled to thirty-five percent (35%) of $11 million, *to wit*: $3,850,000.  Fishman

---

[17] *In re Barron*, 325 F.3d 690, 693 (5th Cir. 2003).

[18] *In re Asarco, L.L.C.*, 702 F.3d 250, 260 (5th Cir. 2012).

[19] Bankruptcy Code § 328(a).

[20] *In re Barron* 225 F.3d 583, 586 (5th Cir. 2000); *see also In re ASARCO, L.L.C.*, 702 F.3d at 258 ("[T]he intervening circumstances must have been 'incapable of anticipation, not merely unanticipated.'") (*quoting Barron*, 325 F.3d at 693).

[21] Bankruptcy Code § 328(a).

Haygood has, however, agreed with the Trustee to a reduction of $350,000 of the Contingency Fee Entitlement resulting in Contingency Fee Entitlement of $3.5 million.

69.     Attached hereto as **Exhibit "A"** is a ledger showing all of Fishman Haygood's expenses to date on behalf of the Trustee. These expenses were actual and necessary and are reasonable under the circumstances, and have been approved by the Trustee.

70.     The Trustee seeks Court approval of Fishman Haygood's Contingency Fee Entitlement and reimbursement of expenses, which amounts will be distributed, in accordance with the terms of the Settlement Order.

### III.    Approval of the Distribution of a portion of the Settlement Funds to the DIP Lenders

71.     As noted, *supra*, the DIP Lenders assert valid and enforceable liens against, *inter alia*, the proceeds of the Cox Hedron Claims, *to wit*: the Settlement Funds.

72.     The DIP Lenders have agreed to: (a) release such liens, with such liens to attach to the Settlement Funds (after certain distributions); (b) approve the distributions to the Underwriters of the Subrogation Funds; (c) approve the distributions to Fishman Haygood; and (d) approve the retention, free and clear of liens, claims and encumbrances of $1.3 million of the Settlement Funds by the Debtors' Estates.

73.     As part and parcel to the DIP Lenders' agreements, the balance of the Settlement Funds, following the various required distributions therefrom, will be paid by the Trustee to the DIP Lenders, in accordance with the terms of the Settlement Order.

### Notice

74.     Notice of this Motion will be provided to any party entitled to notice pursuant to Bankruptcy Rule 2002 and any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d).

## Conclusion

**WHEREFORE**, the Trustee respectfully requests that this Court grant the foregoing Motion and enter the Settlement Order (i) approving the Trustee's entry into the Settlement Agreement pursuant to Bankruptcy Code § 363 and Bankruptcy Rule 9019 on behalf of the Debtors and the Cox Affiliates; (ii) authorizing the Trustee to dismiss, with prejudice, the Adversary Proceeding and the Debtors' claims in the Hedron Litigation; (iii) authorizing the Trustee to fully perform his various obligations under the Settlement Agreement including, without limitation, granting  various releases to certain settling parties and dismissing certain claims asserted by the Trustee in the Adversary Proceeding and in the Hedron Litigation; (iv) paying certain sums to: (a) the Underwriters, (b) Fishman Haygood, and (c) the DIP Lenders, and (d) the retention of $1.3 million of the Settlement Funds by the Debtors' Estates, free and clear of all liens, claims and encumbrances, including those of the DIP Lenders; and (vi) approving in full the Trustee's payment of Fishman Haygood's reimbursable expenses and Contingency Fee Entitlement. The Trustee further asks for any and all further relief the Court deems just and equitable.

Dated:  April 2, 2025                    Respectfully submitted,

                                                **FISHMAN HAYGOOD, L.L.P.**


                                By:      */s/Brent B. Barriere*
                                            Brent B. Barriere, TX No. 24034091,
                                            *Admitted to Southern District of Texas*
                                            *(Federal No. 2120021)*
                                            201 St. Charles Avenue, 46th Floor
                                            New Orleans, Louisiana 70170-4600
                                            Tel: (504) 586-5252
                                            Fax: (504) 586-5250
                                            Email: bbarriere@fishmanhaygood.com

                                            ***Special Counsel for Michael D. Warner,***
                                            ***Chapter 7 Trustee***

                                *-and-*

**STEWART ROBBINS BROWN**
**& ALTAZAN, LLC**

By:    */s/ Paul Douglas Stewart, Jr.*
        Paul Douglas Stewart, Jr. (La. Bar # 24661)
        *Admitted to Southern District of Texas*
        *(SDTX Federal No. 432642)*
        dstewart@stewartrobbins.com
        William S. Robbins (Tx. Bar # 24100894)
        wrobbins@stewartrobbins.com
        301 Main Street, Suite 1640
        Baton Rouge, LA 70801-0016
        Telephone: (225) 231-9998
        Facsimile: (225) 709-9467

        ***General Counsel for Michael D. Warner,***
        ***Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2 day of April 2025, a true and correct copy of the above and foregoing pleading will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.

*/s/ Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr.