**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re** | **Chapter 7** |
| **MLCJR LLC, *et al.*,**[1] | **Case No. 23-90324** |
| **Debtors** | **(Jointly Administered)** |

**[PROPOSED] ORDER PURSUANT TO BANKRUPTCY CODE SECTION 363 AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT WITH THE HEDRON PARTIES & UNDERWRITERS; AUTHORIZING THE DISTRIBUTION OF THE PROCEEDS FROM THE SETTLEMENT AND THE RETENTION OF FUNDS BY THE ESTATE FREE AND CLEAR OF CLAIMS AND ENCUMBRANCES; APPROVAL OF CONTINGENCY FEE AND EXPENSES OF FISHMAN HAYGOOD LLP ON A FINAL BASIS; AND FOR RELATED RELIEF**

(Related Docket No. _____)

Before the Court is the *Trustee's Motion Pursuant to Bankruptcy Code Section 363 and Bankruptcy Rule 9019 for Approval of Settlement with the Hedron Parties & Underwriters; Authorizing the Distribution of the Proceeds from the Settlement and the Retention of Funds by the Estate Free and Clear of all Liens, Claims and Encumbrances; Approval of Contingency Fee and Expenses of Fishman Haygood LLP on a Final Basis; and for Related Relief* [Docket No. _____] (the "**Motion**") filed by Michael D. Warner, appearing solely in his capacity as the duly elected and qualified Chapter 7 Trustee (the "**Trustee**") for the administratively consolidated estates of Debtors MLCJR, LLC, Cox Oil Offshore, L.L.C., Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, and M21K, LLC (collectively, the "**Debtors**" and, the "**Debtors' Estates**") and as the authorized member of EPL Pipeline,

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).

L.L.C., Energy XXI Pipeline, LLC, and Energy XXI Pipeline II, LLC ("**Cox Affiliates**") seeking a final order (the "**Settlement Order**") (i) approving the proposed settlement by the Trustee, the Underwriters,[2] and the Hedron Parties under Bankruptcy Rule 9019 and Bankruptcy Code Section 363 (the "**Settlement Agreement**"), a copy of which attached hereto and made a part hereof as **Exhibit "1"**; (ii) authorizing the Trustee to dismiss, with prejudice, the litigation styled *Michael D. Warner, solely in his official capacity as Chapter 7 Trustee of Cox Operating, LLC, MLCJR, LLC, Cox Oil Offshore, LLC, Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil and Gas, LLC and M21K, LLC v. Miller Insurance Services, et al.,* Adversary Proceeding No. 24-03266 (hereinafter, the "**Adversary Proceeding**"); (iii) authorizing the Trustee to fully perform his various obligations under the Settlement Agreement including, without limitation, granting releases to certain settling parties and dismissing claims asserted by the Trustee in the Adversary Proceeding and in *In re Hedron Holdings, LLC, as Owner, and Triton Diving Services, LLC, as Bareboat Charterer and Owner Pro Hac Vice of D/B Epic Hedron Petitioning for Exoneration from and/or Limitation of Liability,* Case No. 22-205 c/w 21-2295 (the "**Hedron Litigation**") with prejudice and with each party to bear its own costs; and (iv) paying certain sums to (a) the Underwriters, (b) Fishman Haygood LLP, and (c) Amarillo National Bank ("**ANB**"), in its capacity as administrative agent and collateral agent (the "**DIP Agent**"), acting at the direction of itself and BP Energy Company (together with ANB, the "**DIP Lenders**"); (v) authorizing the retention of $1.3 million of the Settlement Funds by the Debtors' Estates, free and clear of all liens, claims and encumbrances, including those of the DIP Lenders; and (vi) approving in full the Trustee's

---

[2] Capitalized terms that are not defined in this Order are defined by specific reference to the Settlement Agreement and/or the Motion.

payment of a final award to Fishman Haygood for its reimbursable expenses and Contingency Fee Entitlement relating to the Cox Hedron Claims.

This Court, having jurisdiction and venue to consider the Motion, and with due and proper notice of the Motion having been provided to all creditors and other parties in interest; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is fair, reasonable, and in the best interests of the Debtors, and the Debtors' Estates, and creditors; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefore:

### THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[3]

A.     **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334. The Motion is a core proceeding under 28 U.S.C. § 157(b) and (o). Venue of these chapter 7 cases and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     **Statutory Predicates**.  The statutory and other legal bases for the relief provided herein are section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") Rule 9019. The consummation of the transactions contemplated by the Motion is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Trustee has

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

complied with all of the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules, in respect of such transactions.

C.      **Final Order**. This Settlement Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Settlement Order, waives any stay, and expressly directs entry of this Settlement Order.

D.      **Notice of Hearing on Motion**.  As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion and relief contemplated thereby has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and the Bankruptcy Local Rules. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion is or shall be required. The disclosures made by the Trustee concerning the Motion were good, complete, and adequate. The requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

E.      **Compromise in the Best Interest of the Debtors' Estates.**  Good and sufficient reasons for approval of the Trustee's proposed settlement with the Hedron Parties and the Underwriters, and the transactions to be consummated in connection therewith have been articulated by the Trustee, and the relief requested in the Motion is in the best interests of the Debtors, the Debtors' Estates, their creditors and other parties in interest. The Settlement Funds and Subrogation Funds fall well within the range of reasonableness for the settlement and amicable resolution of the resolved claims, demands and causes of action as fully set forth in the Settlement

Agreement.  The Settlement Agreement satisfies the factors set forth in *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968), *Official Comm. of Unsecured Creditors v. Cajun Electric Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355-56 (5th Cir. 1997), and their progeny. The Trustee has demonstrated both (a) good, sufficient, and sound business purposes and justifications and (b) compelling circumstances for the Settlement Agreement outside of the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Settlement Agreement with the Hedron Parties and the Underwriters is necessary and appropriate to maximize the value of the Debtors' Estates. The Trustee's decision to enter into the Settlement Agreement with the Hedron Parties and the Underwriters constitutes a proper exercise of the Trustee's fiduciary duties.

### IT IS HEREBY ORDERED THAT:

1.      The Motion is **GRANTED** and **APPROVED** as provided herein.

2.      All objections to the Motion that have not been withdrawn, waived, or settled are hereby overruled.

3.      The Settlement Agreement is approved in all respects and is specifically incorporated into and made a part of this Settlement Order.  To the extent of a conflict between this Settlement Order and the Settlement Agreement, this Order shall control.

4.      The Trustee is authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to immediately continue and fully implement the Settlement Agreement in accordance with the terms, conditions, and agreements set forth therein, all of which are hereby approved.

5.      The DIP Lenders hereby release any and all of their liens, claims, and encumbrances in and to the Cox Hedron Claims, with such liens, claims, and encumbrances being transferred in full to the Settlement Funds.

6.      The DIP Lenders hereby consent to the following distributions set forth in the Settlement Agreement by the Trustee from the Settlement Funds free and clear of any and all of the DIP Lenders' claims, interests and liens, including without limitation the DIP Liens: (i) the Subrogation Fund to the Underwriters in the amount of $2,833,334; (ii) reimbursement of Fishman Haygood for costs and expense in the amount of $50,000 and the Contingency Fee Entitlement in the amount of $3,500,000; and (iii) a carveout for the Debtors' Estates in the sum of $1,300,000. The remainder of the Settlement Funds in the amount of $3,316,666 shall be paid to the DIP Lenders.

7.      Without limiting the generality of the foregoing, the Trustee's payments required under the Settlement Agreement are approved in accordance with the timing and conditions set forth in the Settlement Agreement:

   a.   to the Underwriters, through their counsel, the Subrogation Funds in the sum of $2,833,334; and

   b.   to Fishman Haygood the sum of (a) $50,000 for reimbursement of expenses and (b) $3,500,000 in full and complete satisfaction of its Contingency Fee Entitlement in connection with the Hedron Litigation.

8.      Without limiting the generality of the foregoing, it is further Ordered that, within five (5) business days following the Trustee's receipt of the Settlement Funds and the occurrence of a Final Order (as defined in the Settlement Agreement), the Trustee shall pay to the DIP Agent,

on behalf of the DIP Lenders, the sum of $3,316,666 in full and complete satisfaction of the DIP Lenders' security interest in,  to, and upon the Settlement Funds.

9.     Without limiting the generality of the foregoing, it is further Ordered that, following the Trustee's receipt of the Settlement Funds, the Trustee shall grant the releases set forth in the Settlement Agreement in accordance with the timing and conditions set forth therein.

10.    Without limiting the generality of the foregoing, it is further Ordered that, $1.3 million of the Settlement Funds shall be retained by the Trustee on behalf of the Debtors' Estates, free and clear of all liens, claims and encumbrances, including those of the DIP Lenders.

11.    Fishman Haygood is hereby made a final award in connection with the Hedron Litigation of its: (i) Contingency Fee Entitlement, in the sum of $3,500,000; and (ii) expenses in the sum of $50,000, under Bankruptcy Code sections 328(a) and 330.

12.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Settlement Order and the Settlement Agreement.

Signed:  _____

_____
**THE HONORABLE CHRISTOPHER LOPEZ**
**UNITED STATES BANKRUPTCY JUDGE**

**AGREED AS TO FORM AND CONTENT:**

Dated:  April 2, 2025                              Respectfully submitted,

                                                  **STEWART ROBBINS BROWN & ALTAZAN, LLC**


                          By:      */s/Paul Douglas Stewart, Jr.*
                                   Paul Douglas Stewart, Jr. (La. Bar # 24661)
                                   *Admitted to Southern District of Texas*
                                   *(SDTX Federal No. 432642)*
                                   dstewart@stewartrobbins.com
                                   William S. Robbins (Tx. Bar # 24100894)
                                   wrobbins@stewartrobbins.com
                                   301 Main Street, Suite 1640
                                   Baton Rouge, LA 70801-0016
                                   Telephone: (225) 231-9998
                                   Facsimile: (225) 709-9467

                                   ***Counsel for Michael D. Warner,***
                                   ***Chapter 7 Trustee***


Dated:  April 2, 2025                              **KELLY HART PITRE**


                          By:      /s/ Louis M. Phillips
                                   Louis M. Phillips (LA #10505)
                                   One American Place
                                   301 Main Street, Suite 1600
                                   Baton Rouge, LA 70801-1916
                                   Telephone: (225) 381-9643
                                   Facsimile: (225) 336-9763
                                   Email: louis.phillips@kellyhart.com

                                   ***Counsel to Amarillo National Bank,***
                                   ***in its capacity as administrative agent***
                                   ***and collateral agent, acting at the***
                                   ***direction of itself and BP Energy Company***

**EXHIBIT 1 – SETTLEMENT AGREEMENT**

**TO:**

**ORDER PURSUANT TO BANKRUPTCY CODE SECTION 363 AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT WITHTHE HEDRON PARTIES & UNDERWRITERS; AUTHORIZING THE DISTRIBUTION OF THE PROCEEDS FROM THE SETTLEMENT AND THE RETENTION OF FUNDS BY THE ESTATE FREE AND CLEAR OF CLAIMS AND ENCUMBRANCES; APPROVAL OF CONTINGENCY FEE AND EXPENSES OF FISHMAN HAYGOOD LLP ON A FINAL BASIS; AND FOR RELATED RELIEF**

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is executed by the Parties[1] as of the date opposite each Parties' signature hereto. The Effective Date of this Agreement is as provided herein.

## I.
## DEFINED TERMS

1.     "**Adversary Proceeding**" means that certain Adversary Proceeding filed on or about December 11, 2024, in the Bankruptcy Court, by the Trustee against, *inter alia*, the Underwriters, and styled *Michael D. Warner, Solely in his Official Capacity as Chapter 7 Trustee of Cox Operating, L.L.C., etc. et al., v. Miller Insurance Services, LLP, et al.,* and assigned Adversary Proceeding number 24-03266.

2.     "**Bankruptcy Cases**" means the Chapter 11 bankruptcy cases commenced by the Debtors upon the filing of the voluntary petitions under the Bankruptcy Code, which cases were consolidated for joint administration under the caption *In Re: MLCJR LLC, et al.,* Case No. 23-90324 (CML), by the Bankruptcy Court and converted on February 28, 2024 to cases under Chapter 7 of the Bankruptcy Code.

3.     "**Bankruptcy Code**" means Title 11 of the United States Code.

4.     "**Bankruptcy Court**" means, as appropriate, the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or the United States District Court for the Southern District of Texas, Houston Division.

5.     "**Bankruptcy Rules**" means collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and made applicable to the Bankruptcy Cases or ancillary proceedings, and the Bankruptcy Local Rules of the Bankruptcy Court, as applicable to the Bankruptcy Cases or ancillary proceedings, as the case may be.

6.     "**Business Day**" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or a day on which banking institutions in Houston, Texas are authorized by law or other governmental action to close.

7.     "**Cox Claimants**" means, collectively, Cox Operating, L.L.C., Energy XXI GOM, LLC, and EPL Oil & Gas, LLC, which entities asserted claims in the Hedron Litigation and are Debtors in the Bankruptcy Cases.

---

[1] Capitalized terms used in this Agreement are as defined in Section I and in other provisions herein.

8.      "**Cox Affiliates**" means, collectively and individually, EPL Pipeline, L.L.C., Energy XXI Pipeline, LLC, and Energy XXI Pipeline II, LLC.

9.      "**Debtors**" means, collectively: (a) MLCJR, LLC; (b) Cox Oil Offshore, L.L.C; (c) Cox Operating, L.L.C.; (d) Energy XXI GOM, LLC; (e) Energy XXI Gulf Coast, LLC; (f) EPL Oil & Gas, LLC; and (g) M21K, LLC.

10.     "**Debtors' Secured Lenders**" means, collectively, (i) BP Energy Company ("**bpec**") and (ii) Amarillo National Bank ("**ANB**," and together with bpec, the "**DIP Lenders**"), and ANB, as administrative agent and collateral agent (in such capacities, the "**DIP Agent**") the sole known secured lenders asserting claims in the Bankruptcy Cases affecting the Settlement Funds.

11.     "**Effective Date**" means the date on which the Settlement Order becomes a Final Order, provided that such date is a Business Day, and if not a Business Day, then the Effective Date shall be the first Business Day after such actual date.

12.     "**Estates**" means, collectively, the Chapter 7 Estates of the Debtors.

13.     "**Final Order**" means, as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which is final and no longer subject to appeal or writ of certiorari.

14.     "**Hedron**" means the 394 foot long, Vanuatu-flagged derrick barge *Epic Hedron* (Official Number 2056 / MMSI Number 576542000), its tackle, furniture, apparel, appurtenances, etc.

15.     "**Hedron Litigation**" means and refers to that certain litigation pending in the United States District Court, for the Eastern District of Louisiana (the "**District Court**"), as Civil Action No. 22-205 C/W 21-2295, Section "O", and styled *In Re Hedron Holdings, LLC, as owner, and Triton Diving Services, LLC as Bareboat Charterer and Owner Pro Hac Vice of D/B Epic Hedron Petitioning for Exoneration from and/or Limitation of Liability.*

16.     "**Hedron Parties**" means, collectively and individually, the Hedron, Hedron Holdings, LLC, Triton Diving Services, LLC, Triton Hedron, LLC, and Navarro Hedron, LLC, together with their respective prior and current members, owners, operators, managers charterers, agents, representatives, crew, employees, directors, officers, managers, successors, assigns, parent companies, subsidiary companies, affiliated companies, Hedron Insurers, insurance brokers, attorneys and all persons acting on behalf of them.

17.     "**Hedron Insurers**" means any person or entity which subscribed to any policy of insurance which provides coverage to the Hedron and/or the Hedron Parties, and which policy of

2

insurance is implicated in the Hedron Litigation. Hedron Insurers does not include Underwriters, as hereinafter defined, in their capacity as Underwriters.

18.    "**Hurricane Ida Insurance Claims**" means and refers to all claims, demands, causes of action, and the like, asserted by, or that can be asserted by, the Trustee in the Louisiana Suit, but expressly do not include any claims and/or causes of action encompassed by the Cox Hedron Claims.

19.    "**Louisiana Suit**" means and refers to that certain litigation originally filed in the Civil District Court for the Parish of Orleans, State of Louisiana, and styled *Michael D. Warner in his Official Capacity as the Chapter 7 Trustee of Cox Operating, L.L.C., etc. et al., v Miller Insurance Services, LLP, etc. et al.*, Case No. 2024-10338, and subsequently removed to the United States District Court, for the Eastern District of Louisiana, and assigned Case No. 2:24-cv-02864, and subsequently remanded back to the Civil District Court for the Parish of Orleans, State of Louisiana, pursuant to a January 22, 2025 Order and Reasons by Judge Carl Barbier, in which litigation the Trustee asserts, *inter alia*, that the Underwriters have failed and refused to perform pursuant to the terms of the Policy and in which Underwriters deny all claims made by the Trustee.

20.    "**Parties**" means and refers collectively to: (a) the Trustee; (b) the Hedron Parties; and (c) the Underwriters.  Each of the foregoing is hereinafter a "**Party**."

21.    "**Petition Date**" means and refers to May 14, 2023, the date on which the Debtors filed voluntarily Petitions for Relief under Chapter 11 of the Bankruptcy Code.

22.    "**Policy**" means and refers to that insurance policy number B0621EMSCO000121 issued to Cox Operating, L.L.C., Cox Oil, LLC, Cox Oil Offshore, LLC, MLCJR, LLC, Energy XXI Gulf Coast, Inc., and their subsidiaries and affiliates, among others, and subscribed to by each of the Underwriters.

23.    "**Settlement Order**" means that certain Order of the Bankruptcy Court, approving this Agreement, that is reasonably acceptable in form and substance to the Parties, and approved by the Debtors' Secured Lenders as set forth in Section III.2.

24.    "**Trustee**" means and refers to Michael D. Warner, the duly elected, qualified and acting Chapter 7 Trustee of the Bankruptcy Cases, his professionals, and any other person, entity, or estate that may claim through or under the Trustee, the Debtors, and/or the Bankruptcy Cases.

25.    "**Trustee Parties**" means, collectively, the Trustee, the Cox Claimants, the Cox Affiliates, and the Debtors.

3

3993538v1

26.     "**Underwriters**" means those insurers and underwriters at Lloyd's of London and otherwise subscribing to the Policy—including  but not limited to: Lloyd's Syndicate No. 457 MRS; Swiss Re International S.E.; Hudson Insurance Company/Hilltop Specialty Insurance Company; Lloyd's Syndicate TAL 1183; Lloyd's Syndicate AUL 1274; Allianz Global Corporate Specialty SE; AIG US, Inc.; Liberty Mutual Insurance Europe SE; Houston Casualty Co.; Lloyd's Syndicate ASC 1414; Hamilton Insurance DAC; Lloyd's Syndicate AES 1225; Kersey Specialty Limited (now Tiomanta Specialty Limited); Lloyd's Syndicate AMA 1200; HDI Global Specialty SE, Hannover Branch; Lloyd's Syndicate CVS 1919; Lloyd's Syndicate DUW 4818; Endurance Worldwide Insurance Ltd.; Starstone Insurance Company; Clearwater Insurance Company; and WR Berkely Corporation/StarNet Insurance Company, Fidelis Underwriting Ltd., Antares Managing Agency Limited for and on behalf of the underwriting members of Antares Syndicate 1274 at Lloyd's for the 2021 underwriting year of account—and each of their respective current or former trustees, directors, officers, managers, members, partners (including limited and general partners), employees, beneficiaries, direct and indirect shareholders and other equity holders, agents, participants, direct and indirect subsidiaries and parents, affiliates (including affiliated and/or controlled funds and other investment vehicles), successors, predecessors, designees, and assigns (whether by operation of law or otherwise).

## II.
## RECITALS

1.     **WHEREAS**, on or about August 29, 2021, Hurricane Ida made landfall on the Gulf Coast of Louisiana.

2.     **WHEREAS**, just before, during, or following Hurricane Ida's landfall, the Hedron became unmoored and adrift (the "**Hedron Incident**").

3.     **WHEREAS**, after receiving multiple claims of damage and injuries as a result of the Hedron Incident, on January 28, 2022, Hedron Holdings, LLC, and Triton Diving Services, LLC, as the owners and/or operators of the Hedron (the "**Limitation Petitioners**"), filed a Verified Complaint for Exoneration from and/or Limitation of Liability in the Hedron Litigation, wherein they denied negligence or fault related to any alleged damage caused by the Hedron Incident and sought exoneration and/or limitation of liability pursuant to 46 U.S.C. § 30501, *et seq*., Rule 9(h) of the Federal Rules of Civil Procedure, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.     **WHEREAS**, in June of 2022, the Cox Claimants filed their original and First Supplemental and Amended Answer to Complaint in Limitation and Amended Claim against the Limitation Petitioners in the Hedron Litigation, wherein they alleged, *inter alia*, that due to the fault of the Limitation Petitioners prior to and/or during the Hedron Incident, one or more of the Hedron's anchors, tackle, and other appurtenances dragged across, snagged and struck certain property of the Cox Claimants, for which coverage and/or payments under the Policy was not provided, causing property damage, lost and/or deferred production, and other damages as further specified in the pleadings in the Hedron Litigation (the "**Cox Hedron Claims**").

4

5.      **WHEREAS**, on June 28, 2022, Underwriters moved to intervene or, alternatively, to file an answer and claim in the Hedron Litigation as partial subrogees of the Cox Claimants pursuant to the Policy, which motion was subsequently granted without objection or opposition. On September 16, 2022, the Underwriters filed their Answer to Complaint in Limitation and Claim of Certain Underwriters at Lloyd's London and Certain Insurance Companies, wherein the Underwriters asserted that: "[a]s a result of the [Hedron Incident], the Cox Claimants submitted claims for the pipeline damage to the Underwriters under [the Policy]"; "[t]he Underwriters have paid or are in the process of paying to the Cox Claimants the insured pipeline damages"; "[b]ased upon their payments under the [P]olicy, the Underwriters are partially subrogated to the loss and to the damages asserted in this action by the Cox Claimants, and as a result, the Underwriters are entitled to recover their subrogated damages from the [Limitation Petitioners]" (the **"Underwriters' Subrogation Claims"**). The Underwriters' Subrogation Claims only relate to the damages Underwriters maintain was caused by the Hedron as well as its anchors, tackle, and other appurtenances to the Cox Claimants' insured property under the Policy and all payments made in respect thereof. The Trustee has disputed Underwriters' Subrogation Claims.

6.      **WHEREAS**, on the Petition Date each of the Debtors filed voluntary Petitions for relief under Chapter 11 of the Bankruptcy Code. The Bankruptcy Cases are jointly administered pursuant to an Order of the Bankruptcy Court under Case Number 23-90324. [Docket No. 103].[2] On February 28, 2024, the Bankruptcy Court entered its Order converting the Bankruptcy Cases from Chapter 11 to Chapter 7 of the Bankruptcy Code [Docket No. 1720]. On May 8, 2024, the Trustee became the duly elected, qualified and acting Trustee of the Bankruptcy Cases [Docket No. 1996].

7.      **WHEREAS,** the Trustee has authority over the Bankruptcy Cases and is qualified to act on behalf of the Trustee Parties.

8.      **WHEREAS**, as a result of, *inter alia*, the assertion of the Underwriters' Subrogation Claims, on December 11, 2024, the Trustee filed the Adversary Proceeding, in which the Trustee seeks, *inter alia*, a determination of the validity of the Underwriters' Subrogation Claims. On January 6, 2025, the Underwriters filed their Motion to Dismiss the Adversary Proceeding. [Adversary Proceeding, Docket No. 6].

9.      **WHEREAS**, through a series of negotiations and mediations, the Parties have agreed, solely to avoid the expense, inconvenience, and uncertainty associated with litigation, and without any Party admitting liability, fault, or wrongdoing, to enter into this Agreement to fully and finally resolve, compromise, and settle all the claims asserted by or on behalf of the Trustee Parties and Underwriters in the Hedron Litigation and related to the Hedron Incident.

10.     **WHEREAS**, through a series of negotiations and mediations, and in order to settle the claims asserted in the Hedron Litigation and related to the Hedron Incident, the Trustee has agreed to dismiss the Adversary Proceeding.

---

[2] Unless otherwise indicated, "Docket No." refers to Docket Numbers in Bankruptcy Case Number 23-90324.

## III.
## BANKRUPTCY COURT APPROVAL & OTHER AUTHORITY MATTERS

1.      The effectiveness of this Agreement and the Parties' obligations hereunder are conditioned in all respects on the approval of this Agreement by the Bankruptcy Court, in the form of the Settlement Order. The Parties agree to use reasonable efforts to have this Agreement expeditiously approved by the Bankruptcy Court by cooperating in the preparation and prosecution of a mutually agreeable motion pursuant to Rule 9019 of the Bankruptcy Rules (the "**9019 Motion**"). The Trustee shall file the 9019 Motion no later than the 5th Business Day after the execution of this Agreement by all Parties.

2.      The Debtors' Secured Lenders' approval of this Agreement is a condition precedent to the entry of the Settlement Order and the Effective Date. Such approval shall be in the form of the Settlement Order approved by the Debtors' Secured Lenders which will provide, *inter alia*: (a) the Debtors' Secured Lenders' release of all liens, claims and encumbrances on the Cox Hedron Claims; (b) approval of the distribution by the Trustee of the Subrogation Funds to the Underwriters from the Settlement Funds (as such terms are defined below); (c) an agreed upon carve out from the balance of the Settlement Funds to the Bankruptcy Cases; and (d) the remainder of the Settlement Funds (after the distributions provided for in (b) and (c), above) to be distributed to the Debtors' Secured Lenders and (e) the Debtors' Secured Lenders' release of all liens, claims and encumbrances on the Subrogation Funds.

3.      If this Agreement is not approved by the Bankruptcy Court, in the form and substance of the Settlement Order approved by the Parties, for any reason, this Agreement will be immediately null and void and of no further force and effect, and in such event the Recitals contained in Section II of this Agreement shall not be deemed binding on the Parties and shall not be used by or against any Party.

## IV.
## SETTLEMENT & MATTERS SETTLED

1.      All of the provisions of this Agreement, including the Recitals contained in Section II of this Agreement, are integral to and made a part of the entire Agreement.

2.      No later than the 10th Business Day after the Effective Date, the Hedron Parties Shall Pay to the Trustee, *via* a single wire payment to the designated Trust Account of the Trustee,[3] the sum of $11,000,000, in indefeasible funds (the "**Settlement Funds**"). The Settlement Funds shall be held in Trust, by the Trustee, and the Trustee shall immediately deposit the sum of $2,833,334 in indefeasible funds (the "**Subrogation Funds**") into a separate account held by the Trustee, designated as Underwriters' Distribution Account, until the Trustee has concurrently completed the requirements of Section IV(3), below.

---

[3] The Trustee shall provide the Hedron Parties with wire instructions and contact information with respect thereto, no later than the 2nd Business Day following the Effective Date.

3. No later than the 5th Business Day following the Trustee's receipt of the Settlement Funds, the Trustee:

    a. Shall Pay to the Underwriters from the Settlement Funds, *via* a single wire payment to the Trust Account of Underwriters' counsel, Hall Maines Lugrin,[4] the Subrogation Funds in indefeasible funds. If a portion of the Subrogation Funds is not timely paid, beginning on the 5th Business Day following the Trustee's receipt of written notice from Underwriters of non-payment, interest shall accrue in favor of Underwriters and against the Trustee Parties on the unpaid sums at the rate of 10% per annum.

    b. Shall file in the Bankruptcy Court a Notice of Dismissal, with prejudice, of the Adversary Proceeding; and

    c. Shall file into the record of the District Court in the Hedron Litigation, a Motion to Dismiss, with prejudice, the Cox Hedron Claims.

4. No later than the 5th Business Day following the Underwriter's receipt of the Subrogation Funds, the Underwriters shall file in the docket of the District Court in the Hedron Litigation, a Motion to Dismiss, with prejudice, the Underwriters' Subrogation Claims.

5. For purposes of this Section IV, the phrase "**Shall Pay**" means that the funds are to be indefeasibly received by the recipient on the articulated Business Day.

## V.
## RELEASES

1.    **Certain Releases and Indemnities:**

    a. **Trustee Parties to Hedron Parties**: In consideration for the Settlement Funds, and other good and valuable consideration set forth herein, and effective upon the Trustee's receipt of the Settlement Funds, the Trustee Parties hereby forever, finally, fully, unconditionally, and completely release, relieve, acquit, discharge, remise, and exonerate the Hedron Parties from the Cox Hedron Claims and any and all claims, demands and causes of action, of any type or description, known or unknown, that any one or more of the Trustee Parties, individually or collectively, have or may have against the Hedron Parties arising out of or any way relating to the Hedron Incident or which have been asserted or could have been asserted in the Hedron Litigation. The release of the Hedron Insurers shall be expressly limited to claims which have been or could have been asserted in the Hedron Litigation or otherwise arise out of the Hedron Incident. The Trustee Parties' release of claims against any Hedron Insurers in their capacities as Underwriters is limited to that expressly provided in Section V(1)(b), below. The release pursuant to this Section V(1)(a) by the Trustee Parties shall not include any claims, offsets, set offs, recoupment claims and/or defenses related to or arising out of any and all claims of the Hedron Parties,

---

[4] Underwriters shall provide the Trustee with wire instructions and contact information with respect thereto, no later than the 2nd Business Day following the Effective Date.

whether asserted by way of proof of claim or otherwise, asserted in the Bankruptcy Cases prior to executing this Agreement that are unrelated to the Hedron Incident or the Hedron Litigation.

b.      **Trustee Parties to Underwriters**: In consideration for Underwriters' release of its Subrogation Claims, and other good and valuable consideration set forth herein, and effective upon Underwriters' release of the Hedron Parties as set forth in Section V(1)(d) and Underwriters' release of the Trustee Parties as set forth in Section V(1)(e), the Trustee Parties hereby forever, finally, fully, unconditionally, and completely release, relieve, acquit, discharge, remise, and exonerate the Underwriters from any and all claims, demands and causes of action, of any type or description, known or unknown, that any one or more or all of the Trustee Parties, individually or collectively, have or may have against the Underwriters arising out of or in any way relating to Underwriters' Subrogation Claims and/or the Cox Hedron Claims, and waive and relinquish any and all claims to recover from Underwriters the Subrogation Funds. The Trustee Parties are not releasing, and fully reserve, any and all rights to any and all claims against the Underwriters not expressly released herein, including with respect to the Policy and the claims asserted or that could and/or can be asserted in the Louisiana Suit, including the Hurricane Ida Insurance Claims.

c.      **Hedron Parties to Trustee Parties & Underwriters**: In exchange for the good and valuable consideration set forth herein, and effective upon the Trustee's receipt of the Settlement Funds, the Hedron Parties forever, finally, fully, unconditionally, and completely release, relieve, acquit, discharge, remise, and exonerate each of the Trustee Parties and each of the Underwriters from any and all claims, demands and causes of action, of any type or description, known or unknown, that any one or more of the Hedron Parties, individually or collectively, have or may have against the Trustee Parties or the Underwriters arising out of or any way relating to the Hedron Incident or which have been asserted or could have been asserted in the Hedron Litigation. This release by the Hedron Parties shall not include claims asserted by the Hedron Parties in the Bankruptcy Cases prior to executing this Agreement that are unrelated to the Hedron Incident or the Hedron Litigation, whether asserted by way of proof of claim or otherwise, nor shall this release by the Hedron Parties include any debts or receivables listed by the Cox Claimants and/or the Cox Affiliates owing or potentially owing to any of the Hedron Parties.

d.      **Underwriters to Hedron Parties**: In consideration for the Subrogation Funds, and other good and valuable consideration set forth herein, and effective upon the Underwriters' receipt of the Subrogation Funds, the Underwriters forever, finally, fully, unconditionally, and completely release, relieve, acquit, discharge, remise, and exonerate the Hedron Parties from the Underwriters' Subrogation Claims any and all claims, demands and causes of action, of any type or description, known or unknown, that any one or more of the Underwriters, individually or collectively, have or may have against the Hedron Parties arising out of or any way relating to the Hedron Incident or which have been asserted or could have been asserted in the Hedron Litigation.

e.      **Underwriters to Trustee Parties**: In consideration for the Subrogation Funds and the dismissal of the Adversary Proceeding, and other good and valuable consideration set

8

forth herein, and effective upon the Underwriters' receipt of the Subrogation Funds, the Underwriters forever, finally, fully, unconditionally, and completely release, relieve, acquit, discharge, remise, and exonerate the Trustee Parties from any and all claims, demands and causes of action, of any type or description, known or unknown, that any one or more of the Underwriters, individually or collectively, have or may have against the Trustee Parties arising out of or in any way relating to the Cox Hedron Claims, or which have been asserted or could have been asserted in the Hedron Litigation, including but not limited to any claimed interest the Underwriters can or could have asserted to the Settlement Funds, exclusive of the Subrogation Funds. Notwithstanding anything to the contrary in this subsection and/or Agreement, Underwriters are not releasing any claims and/or defenses available to them under the Policy and/or prevailing and/or governing laws which may be asserted in the Louisiana Suit.

    f.    **Underwriters agree to defend, indemnify and hold harmless each and all of the Hedron Parties, as well as any person or entity that may be liable by, through or under the Hedron Parties, regardless of the fault in whole or in part of the Hedron Parties, from any and all demands, claims, losses, liens and suits which may ever be asserted by anyone claiming by, through, or under the Underwriters arising out of or related to the Hedron Incident. Further, it is expressly provided that any indemnity agreement contemplated by this document shall only extend to those claims arising by, through or under the Underwriters, and not otherwise.**

2.    **Not Released**.

    a.    Notwithstanding the foregoing releases, or anything in this Agreement to the contrary, no Party or released Party (by virtue of the defined terms used herein) shall be released from: (a) any obligation, or claim required or allowed under this Agreement, (b) any claim arising from or in connection with any inaccurate representation or warranty made in this Agreement; or (c) any default under this Agreement.

    b.    For clarity, the claims and/or causes of action, that have been, or can be asserted in the Louisiana Suit, and all defenses thereto, are hereby preserved and not addressed by this Agreement, are not released by the provisions of Section V, hereof, and are not affected and/or precluded by the dismissal of claims asserted by the Trustee Parties and/or Underwriters in the Adversary Proceeding and/or the Hedron Litigation.

3.    **Covenant Not to Sue. Subject to the occurrence of the Effective Date**:

    a.    The Trustee covenants and agrees that he and the Trustee Parties will not institute or prosecute any action, suit, or proceeding, in law, in equity or otherwise, against any of the Hedron Parties, to recover, enforce, or collect any Cox Hedron Claims, and will not (i) induce, encourage or direct any other party to do so or (ii) act in concert with or assist (financially or otherwise) any other party in doing so; and

    b.    Each of the Underwriters covenants and agrees that it will not institute or prosecute any action, suit, or proceeding, in law, in equity or otherwise, against any of the Hedron

9

Parties, or the Trustee Parties to recover, enforce, or collect any Cox Hedron Claims, the Trustee's receipt of the Settlement Funds (except to the extent of the Subrogation Funds) and/or Underwriters' Subrogation Claims and will not (i) induce, encourage or direct any other party to do so or (ii) act in concert with or assist (financially or otherwise) any other party in doing so.

4.      **No Admission of Liability**. Each Party understands and acknowledges that this Agreement constitutes a compromise and settlement of disputed claims. Accordingly, no action taken by a Party, either previously or in connection with this Agreement, shall be deemed or construed to be (i) an admission of the truth or falsity of any claims heretofore made or (ii) an acknowledgment or admission of any fault or liability whatsoever.

## VI.
## REPRESENTATIONS & WARRANTIES

1.      Each Party represents that it has had the opportunity to consult with an attorney and has carefully read and understands the scope and effect of each provision of this Agreement.

2.      The Underwriters and the Hedron Parties represent and warrant that they have the full capacity and authority to act on their own behalf and on behalf of all who might claim through them to execute and deliver this Agreement and to bind themselves and those who might claim through them to the terms hereof.

3.      The Trustee represents and warrants that:

a.      The Trustee is the sole party authorized to assert, to prosecute, and to release the claims by or on behalf of the Cox Claimants, the Debtors, and the Cox Affiliates against the Hedron Parties that are being released herein;

b.      Upon the Effective Date, the Trustee shall have the sole capacity and authority to act on behalf of the Cox Claimants, the Debtors, and the Cox Affiliates and to execute and deliver this Agreement and to bind himself, the Cox Claimants, the Debtors, and the Cox Affiliates;

c.      That no Cox Hedron Claims have been assigned or encumbered by the Trustee, and/or to the Trustee's knowledge, by the Cox Claimants, the Debtors, and/or the Cox Affiliates. Notwithstanding the foregoing, pursuant to various Orders of the Bankruptcy Court, the Cox Hedron Claims are subject to the liens, claims, and encumbrances of the Debtors' Secured Lenders, provided however, that the Debtors' Secured Lenders' consent to this Agreement through the Settlement Order is a condition hereof.

d.      The Trustee has no intention to, and will not in the future, file any additional claim against the Hedron Parties arising out of or relating to the Hedron Incident on his own behalf or on behalf of the Cox Claimants, the Debtors, and the Cox Affiliates, and the Trustee is not aware of any such claim.

10

4.      The Underwriters represent and warrant that none of the Underwriters' Subrogation Claims have been assigned or encumbered by the Underwriters. The Underwriters and the Hedron Parties represent and warrant that they have not, prior the date of their respective executions of this Agreement, and will not at any time thereafter, enter into an agreement, understanding, arrangement, or the like pursuant to which any property of any type or description is exchanged in consideration of the Underwriters' Subrogation Claims other than that set forth in this Agreement. However, Underwriters and Hedron Parties expressly reserve all rights to enter into an agreement, understanding, arrangement, or the like to resolve Underwriters Subrogation Claims in the event this Agreement is not approved by the Settlement Order becoming a Final Order of the Bankruptcy Court.

## VII.
## MISCELLANEOUS PROVISIONS

1.      **No Waiver.** The failure of any Party to enforce, at the time, any provision of this Agreement will not be construed to be a waiver of such provision, or in any way affect the validity of this Agreement, or any part thereof, or the right thereafter to enforce any provision of this Agreement. No waiver of any breach of this Agreement will be construed to be a waiver of any other breach.

2.      **Costs**. Each Party shall bear its own costs, attorneys' fees, and expenses incurred in connection with this Agreement, the Adversary Proceeding, and the Hedron Litigation.

3.      **Attorneys' Fees**. The Parties acknowledge and agree that, should any Party deem it necessary by any breach of this Agreement by any other Party to institute legal proceedings to enforce or interpret any of the provisions of this Agreement, that the prevailing Party in such litigation shall be paid its reasonable attorneys' fees and expenses, including fees on appeal, as well as court costs.

4.      **Entire Agreement.** This Agreement represents the entire agreement and understanding between the Parties concerning the subject matter hereof, and supersedes and replaces any prior agreements, representations, statements, or understandings concerning such matters. This Agreement may not be modified, amended, or terminated orally. No modification, amendment, or termination, or any waiver of any provision herein, will be binding unless it is in writing and signed by the Party against whom such modification, amendment, or waiver is sought to be enforced.

5.      **Governing Law; Venue.** This Agreement will be governed by U.S. General Maritime Law and the Bankruptcy Code, as applicable. To the extent U.S. General Maritime Law and/or the Bankruptcy Code does not apply, the Agreement will be governed by the law of the State of Louisiana. The Bankruptcy Court will be the exclusive venue for any dispute arising out of this Agreement.

6.      **Drafting.** This Agreement is a product of negotiations among the Parties. It was and is deemed to have been drafted by all of the Parties. Accordingly, the Agreement will not be construed against any Party or Parties as the drafter(s) of this Agreement.

11

7.     **Beneficiaries.** This Agreement inures to the benefit of the Parties and their successors and assigns. There are no third-party beneficiaries of this Agreement.

8.     **Counterparts.** This Agreement may be executed in multiple counterparts, each of which will have the same force and effect as an original, and all of which together will constitute one and the same agreement and an effective, binding agreement on the part of each of the undersigned, on the Effective Date. Signatures of the Parties transmitted by either e-mail in PDF format or by facsimile will be deemed to be their original signatures for all purposes.

9.     **Headings**.   The section headings, paragraph headings and sub-paragraph headings are solely for the convenience of the Parties and not intended to be or should be deemed terms of this Agreement.

10.    **Effectiveness.** The effectiveness of this Agreement and the Parties' obligations hereunder are conditioned in all respects on the occurrence of the Effective Date. If the Effective Date does not occur, for any reason, this Agreement will be immediately null and void and of no further force and effect. Upon the occurrence of the Effective Date: (i) this Agreement will be effective immediately; and (ii) the Parties may immediately take all actions necessary to implement this Agreement in accordance with the Settlement Order.

[The balance of this page is intentionally blank.]

12

**IN WITNESS WHEREOF,** the Trustee, the Hedron Parties, and the Underwriters have executed this Agreement on the dates set forth below.

**MICHAEL D. WARNER, acting solely in his official capacity as Chapter 7 Trustee of MLCJR, LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, M21K, LLC, and as Authorized Member of EPL Pipeline, L.L.C., Energy XXI Pipeline, LLC, and Energy XXI Pipeline II, LLC**

By: _____

Name: _MICHAEL D. WARNER_

Title: _TRUSTEE, IN His official Capcity Only_

Date: _MARCH 31, 2025_

**HEDRON PARTIES**

By: _____

Name: _____

Title: _____

Date: _____

**UNDERWRITERS**

By: _____

Name: _____

Title: _____

Date: _____

**Kersey Specialty Limited (now Tiomanta Specialty Limited)**

By: _____

Name: _____

Title: _____

Date: _____

**Fidelis Underwriting Ltd.**

By: _____

Name: _____

Title: _____

Date: _____

13

3993538v1

**IN WITNESS WHEREOF,** the Trustee, the Hedron Parties, and the Underwriters have executed this Agreement on the dates set forth below.

**MICHAEL D. WARNER, acting solely in his official capacity as Chapter 7 Trustee of MLCJR, LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, M21K, LLC, and as Authorized Member of EPL Pipeline, L.L.C., Energy XXI Pipeline, LLC, and Energy XXI Pipeline II, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**HEDRON PARTIES**

By: _____

Name: _T. Patrick O'Leary_

Title: _Attorney in Fact_

Date: _March 28, 2025_

**UNDERWRITERS**

By: _____

Name: _J. CLIFTON HALL III_

Title: _ATTORNEY_

Date: _April 2, 2025_

**Fidelis Underwriting Ltd.**

By: _____

Name: _____

Title: _____

Date: _____

**Kersey Specialty Limited (now Tiomanta Specialty Limited)**

By: _____

Name: _THOMAS CHARLES LAWSON_

Title: _DIRECTOR_

Date: _02/04/2025_

13

3993538v1

**IN WITNESS WHEREOF,** the Trustee, the Hedron Parties, and the Underwriters have executed this Agreement on the dates set forth below.

**MICHAEL D. WARNER, acting solely in his official capacity as Chapter 7 Trustee of MLCJR, LLC, Cox Oil Offshore, L.L.C, Cox Operating, L.L.C., Energy XXI GOM, LLC, Energy XXI Gulf Coast, LLC, EPL Oil & Gas, LLC, M21K, LLC, and as Authorized Member of EPL Pipeline, L.L.C., Energy XXI Pipeline, LLC, and Energy XXI Pipeline II, LLC**

By: _____

Name: _____

Title: _____

Date: _____

**HEDRON PARTIES**

By: _____

Name: T. Patrick O'Leary

Title: Attorney in Fact

Date: March 28, 2025

**UNDERWRITERS**

By: _____

Name: _____

Title: _____

Date: _____

**Kersey Specialty Limited (now Tiomanta Specialty Limited)**

By: _____

Name: _____

Title: _____

Date: _____

**Fidelis Underwriting Ltd.**

By: James Collinson

Name: James Collinson

Title: FUL Head of Claims

Date: 02-Apr-2025

13