UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| MLCJR LLC, et al.,[1] | CASE NO. 23-90324 (CML) (Jointly Administered) |
| DEBTORS. | |
| MICHAEL D. WARNER, solely in his official capacity as Chapter 7 Trustee of MLCJR, LLC; Cox Oil Offshore, L.L.C.; Cox Operating, L.L.C.; Energy XXI GOM, LLC; Energy XXI Gulf Coast, LLC; EPL Oil & Gas, LLC; and M21K, LLC, | ADVERSARY PROCEEDING NO. _____ |
| Plaintiff, | |
| VERSUS | |
| STONE PIGMAN WALTHER WITTMAN L.L.C., | |
| Defendant. | |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

**NOW INTO COURT**, through undersigned counsel, comes Michael D. Warner, acting solely in his official capacity as the Chapter 7 Trustee of the Debtors (the "Trustee"), and files this complaint, in the capacity as the Plaintiff (this "Complaint") to avoid and recover certain transfers against Stone Pigman Walther Wittman L.L.C. (the "Defendant") and alleges as follows:

**JURISDICTION AND VENUE**

1.      This Complaint and associated adversary proceeding (the "Adversary Proceeding") is brought by the Trustee pursuant to Fed. R. Bankr. P. 7001: (i) for the avoidance of preferential

---

[1] The "Debtors" in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR, LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).

4001452v2

transfers that occurred during the 90-day period prior to the Petition Date (as defined below) pursuant to section 547 title 11 of the United States Code (the "Bankruptcy Code"); (ii) to recover property of Debtors' Estates (as defined below) pursuant to section 550 of the Bankruptcy Code; and (iii) to disallow claims of the Defendant pursuant to section 502 of the Bankruptcy Code.

2. This Court (the "Court") has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and the standing General Order of Reference to the Bankruptcy Court (General Order 2012-6) in the Southern District of Texas, entered by the United States District Court for the Southern District of Texas, pursuant to 28 U.S.C. § 157(a). This action is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue of this Adversary Proceeding in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4. Michael D. Warner is the duly elected, qualified and acting Chapter 7 Trustee of the estates of the Debtors (the "Debtors' Estates"). The Trustee brings this Adversary Proceeding pursuant to the powers granted to him by, *inter alia*, the Bankruptcy Code.

5. The Defendant is, upon information and belief, a limited liability company organized under the laws of the State of Louisiana with its principal place of business in Orleans Parish, Louisiana. The Defendant has generally appeared in this Court.

## PROCEDURAL BACKGROUND

6. On May 12, 2023 (the "Involuntary Petition Date"), certain trade creditors of the Debtors filed an involuntary petition (the "Involuntary Petition") under chapter 7 of the Bankruptcy Code against Cox Operating, L.L.C. ("Cox Operating") in the Eastern District of Louisiana (the "Eastern District Bankruptcy Court"). The Involuntary Petition was transferred to

this Court by Order of the Eastern District Bankruptcy Court, on May 25, 2023 [Case No. 23-10734, Bankr. E.D. La., ECF No. 73].

7. On May 14, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for reorganization under the Bankruptcy Code before this Court (collectively, the "Voluntary Petitions").[2]

8. The chapter 11 cases of the Debtors were consolidated for joint administration under the caption, *In Re: MLCJR LLC, et al.*, Case No. 23-90324 (CML) by the Court (collectively, the "Jointly Administered Cases" and the "Main Case"). Docket No. 103.[3]

9. On February 28, 2024, the Jointly Administered Cases were all converted to cases under chapter 7 of the Bankruptcy Code. Docket No. 1720. Thereafter, Michael D. Warner was elected and qualified as the Chapter 7 Trustee of each of the Jointly Administered Cases. As of May 8, 2024, Mr. Warner became the Chapter 7 Trustee of each of the Debtors' Estates, Docket Nos. 1919 and 1996, and he remains Trustee as of the date hereof.

## FACTUAL BACKGROUND

10. Cox Oil LLC, a non-Debtor affiliate of the Debtors, engaged the Defendant to serve as legal counsel through an engagement letter dated January 28, 2020 (the "Engagement Letter"). In addition to Cox Oil LLC, the Engagement Letter provided that the Defendant would perform services for several other entities and affiliates, including the Debtors and a larger number of affiliated and related non-Debtor entities, persons and a trust (collectively, without the Debtors, the "Affiliate Entities").

---

[2] The Involuntary Petition and associated case were dismissed by agreed order entered by this Court and the Petition Date was acknowledged and set therein. See Docket No. 526 ("The Involuntary Case (Case No. 23-10734) is hereby dismissed with prejudice based on, and with the consent of, Cox Operating and all the Petitioning Creditors. For the avoidance of doubt, the "Petition Date" for Cox Operating is May 14, 2023, for all purposes in the Chapter 11 Case of Cox Operating.").

[3] References hereinafter to "Docket No. __" are references to the Main Case.

11. The Defendant continued performing legal services for the Debtors and the Affiliate Entities, including services specifically focused on preparing for the Debtors' filings of the Voluntary Petitions, until the days leading up to the Petition Date, and subsequent thereto.[4]

12. Within the ninety (90) days immediately preceding the Petition Date, that is between February 13, 2023, and the Petition Date (the "Preference Period"), the Debtors continued to operate their business affairs, albeit in preparation for the filing of the Voluntary Petitions, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to certain entities, including the Defendant.

13. During the Preference Period, Cox Operating made payments or transfers (the "Transfers")[5] to the Defendant in the aggregate amount of at least **$2,289,071.81** as follows:

| Transfer Number | Transfer Amount | Check No. | Transfer Date |
|---|---|---|---|
| 1 | $ 136,078.79 | 38984 | 3/9/2023 |
| 2 | $ 213,961.57 | 39072 | 3/13/2023 |
| 3 | $ 216,355.80 | 39324 | 3/31/2023 |
| 4 | $ 251,119.55 | WIRE | 5/1/2023 |
| 5 | $ 1,471,556.10 | WIRE | 5/12/2023 |
| *Total:* | $ 2,289,071.81 | | |

14. Notably, the pre-Petition Date invoices issued by the Defendant to Cox Operating, run through, and the last and largest Transfer occurred on May 12, 2023, the Involuntary Petition Date. Upon information and belief, the Voluntary Petitions filed in this Court were delayed in order to permit the final payments (via wire transfer) to be made to the Defendant.

---

[4] The Debtors stated to the Eastern District Bankruptcy Court that *On May 14, 2023 (the "Voluntary Petition Date"), the Debtors commenced their chapter 11 cases. The Debtors have been preparing these cases for approximately two months…"* [Case No. 23-10734, Bankr. E.D. La., ECF No. 15].

[5] The Trustee asserts that the Transfers were made by Cox Operating; and as provided in paragraph 23, the Trustee reserves the right to assert claims for additional Transfers made by any of the Debtors to the Defendants.

4

4001452v2

15. The last two Transfers, identified in the Table at paragraph 13, which occurred immediately preceding the Involuntary Petition (and, thus the Petition Date), were made by wire, in contrast to earlier payments by Cox Operating to the Defendant being made by check.

16. The Defendant was later retained as special counsel for the Debtors' Estates in the Jointly Administered Cases Docket No. 606, and the Defendant filed several monthly fee statements and a final fee application, which was approved by this Court, Docket No. 1881.

17. Throughout the Preference Period, the Defendant should have known or did know that it was highly likely that the Debtors or their affiliates would seek relief under chapter 11 of the Bankruptcy Code. During the days immediately prior to the Involuntary Petition Date (and thus, the Petition Date), when the largest Transfers were received, the Defendant must have known of the imminent filings of the Voluntary Petitions and likely participated in the Debtors' and their professionals' preparation for the Voluntary Petitions.

18. Prior to filing this Complaint, and as part of the due diligence requirements under the statutes applicable to this Adversary Proceeding, the Trustee undertook a review of the information and data underlying this Adversary Proceeding, which included reviewing accounts payable information of Cox Operating and billing statements received from the Defendant related to the Preference Period to confirm, to the Trustee's reasonable ability and upon information and belief, the existence of antecedent debt and payment date data, of other certain miscellaneous items and information that may have made the pursuit of avoidable transfers unviable. More specifically, the Trustee is aware that the Defendant's time records, identified in an invoice to Cox Operating, dated May 13, 2023, with a time entry for services performed on May 8, 2023, which confirms that the Defendant was aware of the impending filings of the Voluntary Petitions. Such time entry provided: "Preparing notice of bankruptcy filing."

19. Additionally, on or about February 27, 2025, the Trustee, through counsel sent a demand letter (the "Demand Letter") to the Defendant, seeking a return of the Preference Period Transfers, which aggregate to $2,289,071.81. The Demand Letter also solicited any affirmative defenses to the avoidance of the Preference Period Transfers and recovery by the Trustee that the Defendant believed it could present to the Trustee so the Trustee could review the same.

20. On March 13, 2025, the Defendant responded to the Demand Letter (the "Defendant's Response"). The Defendant's Response contained bare assertions that it could assert defenses under section 547(c)(2) and (4) of the Bankruptcy Code (ordinary course of business transfers and providing subsequent new value), all without specificity; and also asserted post-Petition Date unpaid new value, which, the Trustee asserts are not applicable to shield the Preference Period Transfers at issue. The Trustee reserves all rights to challenge any assertion of unpaid post-Petition Date claims, including claims asserted as Administrative Chapter 11 Claims.

21. On April 14, 2025, the Trustee responded to the Defendant's Response, requesting further support for asserted defenses. The Defendant responded, but such response contained no further substantive defenses or evidence for the defenses asserted in the Defendant's Response.

22. The Trustee also performed additional diligence evaluation of the reasonably known defenses under section 547(c) of the Bankruptcy Code after a review of the Defendant's invoices and the payment date data, including the Defendant's time sheets for the services performed during the Preference Period. The defenses under Section 547(c) of the Bankruptcy Code are affirmative defenses for which the Defendant bears the burden of truth under section 547(g) of the Bankruptcy Code.

23. During the course of this Adversary Proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made by any of the Debtors to the Defendant during

6

4001452v2

the Preference Period or that may be avoidable under other provisions of the Bankruptcy Code.[6] It is the Trustee's intention to avoid and recover all avoidable transfers of property made by the Debtors, as well as interests of the Debtors in property, to or for the benefit of the Defendant or any other transferee. The Trustee reserves the right to amend this Complaint to include, *inter alia*, the following: (a) further information regarding the Transfer(s); (b) additional transfers; (c) modifications of and/or revision to Defendant's name; (d) additional defendants; (e) additional Debtor Estates; and/or (f) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to the Trustee at any time during this Adversary Proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the date of filing of this Complaint.

## COUNT I
## AVOIDANCE OF PREFERENTIAL TRANSFERS PURSUANT TO SECTION 547 OF THE BANKRUPTCY CODE

24. The Trustee repeats and realleges the allegations contained in Paragraphs 1 through 23 above as if fully set forth herein.

25. During the Preference Period, Cox Operating made the Preference Period Transfers to, or for the benefit of, the Defendant in the aggregate amount of $2,289,071.81.

26. During the Preference Period, the Defendant was a creditor of Cox Operating within the meaning of section 547(b)(1) of the Bankruptcy Code at the time of each Transfer by virtue of supplying goods and/or services for which Cox Operating was obligated to pay.[7]

27. The Transfers were transfers of an interest in Cox Operating's property.

---

[6] While the Transfers identified in the Table at paragraph 13, addresses transfers by Cox Operating, the Trustee continues to review the Debtors' books and records, and may uncover other transfers, either by such review or through discovery, made by Cox Operating and/or the other Debtors to or for the benefit of the Defendant.

[7] As noted throughout this Complaint, the Transfers were made by Cox Operating; however, the same may have been made by Cox Operating on its own behalf or on behalf of other Debtors and was property of Cox Operating and/or other Debtors. The Trustee reserves its right to address the same.

4001452v2

28. According to the Debtors' books and records, the Transfers were made to, or for the benefit of, the Defendant because the Preference Period Transfers either reduced or fully satisfied a debt or debts then owed by Cox Operating.

29. The Transfers were made for or on account of antecedent debts owed by the Debtors.

30. The Transfers were made while Cox Operating was insolvent. The Trustee is entitled to the presumption of insolvency for the Preference Period Transfers made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

31. Cox Operating's general unsecured creditors will receive less than full value on account of their allowed claims against Cox Operating's Estates.

32. The Transfers were made on or within ninety (90) days prior to the Petition Date.

33. The Transfers enabled the Defendant to receive more than it would receive if (a) Cox Operating's case was a case under chapter 7 of the Bankruptcy Code, (b) the Transfers had not been made, and (c) the Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

34. By reason of the foregoing, each Transfer should be avoided and set aside as a preferential transfer pursuant to section 547(b) of the Bankruptcy Code.

### COUNT II
### RECOVERY OF AVOIDED TRANSFERS PURSUANT TO SECTION 550 OF THE BANRUPTCY CODE

35. The Trustee repeats and re-alleges each and every allegation contained in paragraphs 1 through 34 above as if fully set forth herein.

36. The Trustee is entitled to avoid the Transfers pursuant to sections 547(b) of the Bankruptcy Code.

4001452v2

37. The Defendant was the initial transferee of the Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Transfers were made.

38. Pursuant to section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover from the Defendant an amount to be determined at trial that is not less than the total amount of the Transfers, plus interest thereon to the date of indefeasible recovery by the Trustee and the costs of the Adversary Proceeding.

### COUNT III
### DISALLOWANCE OF CLAIMS PURSUANT TO SECTION 502(d) OF THE BANKRUPTCY CODE

39. The Trustee repeats and re-alleges each and every allegation contained in paragraphs 1 through 38 above as if fully set forth herein.

40. The Defendant is an entity from which property is recoverable under section 550 of the Bankruptcy Code and/or the Defendant is a transferee of the avoidable Transfers recoverable under section 547 of the Bankruptcy Code.

41. The Defendant has not paid to the Trustee the amount of the Transfers, or turned over such property to the Trustee, for which the Defendant is liable under section 550 of the Bankruptcy Code.

42. Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of the Defendant and/or its assignee, against Cox Operating's Estate, and the other Debtors' Estates, must be disallowed until such time as the Defendant pays to the Trustee all amounts sought herein.

**WHEREFORE,** for the foregoing reasons, the Trustee respectfully requests that this Court enter judgment against the Defendant:

a) avoiding all Transfers pursuant to section 547(b) of the Bankruptcy Code;

b) pursuant to section 550(a) of the Bankruptcy Code, directing the Defendant to pay to the Trustee an amount to be determined at trial that is not less than the full amount of the Transfers, plus interest and costs of this Adversary Proceeding;

4001452v2

c)     disallowing any claim of the Defendant pursuant to section 502(d) of the Bankruptcy Code, against any of the Debtors;

d)     awarding pre-judgment interest at the maximum legal rate running from the date of the Trustee's Demand Letter to return all Transfers to the date of judgment with respect to this Adversary Proceeding (the "<u>Judgment</u>") herein, together with the costs and expenses of this Adversary Proceeding including, without limitation, attorneys' fees;

e)     awarding post-judgment interest at the maximum legal rate running from the date of the Judgment until the date the Judgment is paid in full, plus costs and attorneys' fees;

f)     requiring the Defendant to pay forthwith the amount of the Judgment; and

g)     granting the Trustee such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Tristan Manthey*
Tristan Manthey, TX. Bar No. 24042731
  (SDTX No. 438312)
Cherie D. Nobles (La. Bar No. 30476, *pro hac vice to be filed*)
Joseph A. Caneco (La. Bar No. 40721, *pro hac vice to be filed*)
**FISHMAN HAYGOOD LLP**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Tel: (504) 586-5252
Fax: (504) 586-5250
Email: tmanthey@fishmanhaygood.com
cnobles@fishmanhaygood.com
jcaneco@fishmanhaygood.com

*And*

*/s/ Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr. (La. Bar # 24661)
*Admitted to Southern District of Texas*
*(SDTX Federal No. 432642)*
**STEWART ROBBIN BROWN & ALTAZAN LLC**
301 Main Street, Suite 1640
Baton Rouge, LA 70801
Tel: (225) 231-9998
Fax: (225) 709-9467
Email: dstewart@stewartrobbins.com
***Counsel for Michael D. Warner, as Chapter 7 Trustee of Cox Operating's Estate***

10

4001452v2