UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MLCJR LLC, *et al.*,[1] | ) | Case No. 23-90324 (CML) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**TRUSTEE'S THIRD MOTION TO ABANDON
CERTAIN ASSETS OF THE ESTATES**

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Michael D. Warner (the "**Trustee**"), solely in his capacity as chapter 7 trustee for the above-captioned administratively consolidated estates (the "**Estates**"), respectfully files this *Trustee's Third Motion to Abandon Certain Assets of the Estates* (this "**Third Abandonment Motion**") seeking the entry of an order substantially similar to the "**Proposed Order**" attached

---

[1] The debtors in these cases (collectively, the "**Debtors**"), along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. ("**Cox Operating**") (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595) ("**Energy XXI**"); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

0

hereto, providing for the Trustee's abandonment of various assets, as identified below, of the Estates determined to be of inconsequential value and assets upon which the DIP Lenders (as defined below) hold liens and encumbrances significantly in excess of the values of such assets. In support of the Motion, the Trustee files the *Declaration of Michael D. Warner*, attached hereto as **Exhibit A**, and the Trustee avers the following:

## I.
## JURISDICTION

1. This United States Bankruptcy Court (the "**Court**") has jurisdiction to consider this Motion pursuant to 28 U.S.C. Sections 157 and 1334.

2. This Third Abandonment Motion is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2)(A) and (O). Since this is a core proceeding, the Court has constitutional authority to enter final orders regarding the Motion. Further, to the extent the Court determines that it does not have authority to enter a final order on all or a portion of the Motion, the Trustee requests that the Court issue a report and recommendation for a final order to the United States District Court for the Southern District of Texas, Houston Division.

3. Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409.

4. The statutory predicates for the relief sought in this Motion include Title 11 United States Code (the "**Bankruptcy Code**"), Section 554 and the Federal Rule of Bankruptcy Procedures (the "**Bankruptcy Rules**") Rules 6007.

## II.
## GENERAL BACKGROUND

5. On May 14, 2023 (the "**Petition Date**"), the Debtors filed voluntary chapter 11 petitions, initiating the "**Bankruptcy Cases.**"

1

6. On May 16, 2023, the Bankruptcy Cases were consolidated for procedural purposes only and have since been jointly administered by the Court under Case Number 23-90324.

7. Following two interim orders,[2] the Court, on June 13, 2023, entered an order (the "**Final DIP Order**")[3] approving the Debtors' entry into the DIP Facility among (i) Debtor MLCJR LLC, as Borrower, (ii) BP Energy Company ("**BPEC**"), and (iii) Amarillo National Bank ("**ANB**," and together with BPEC, the "**DIP Lenders**"). The Final DIP Order granted to the DIP Lenders a first priority priming lien over substantially all of the Debtors' assets.

8. Following the DIP Lenders' notice of termination of the Debtors' use of cash collateral[4] and pursuant to the Final DIP Order,[5] ANB, as DIP Agent, filed the *Emergency Motion For Relief From the Automatic Stay To Enforce Rights under the DIP Documents* (the "**Automatic Stay Motion**").[6] In the Automatic Stay Motion, the DIP Lenders sought relief from the automatic stay "to exercise its non-bankruptcy rights and remedies under the DIP documents and applicable law and to pursue any related relief on behalf of the DIP Lenders, including without limitation, to

---

[2] Doc. Nos. 116, 171, 214.

[3] *See Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* [Doc. No. 434].

Among other things, the Final DIP Order: (i) recognized that the Debtors were jointly and severally liable for their obligations in connection with the DIP Facility (as defined in the Final Financing Order) "in a principal amount not to exceed $345,191,752.00," inclusive of a "New Money Facility" of $75,000,000.00; (ii) granted certain liens in all unencumbered property (the "**DIP Liens**") but excluding the proceeds of (a) most avoidance actions and (b) fifty (50%) percent of the net proceeds of any claims against the Debtors' directors and officers; (iii) granted a "lien upon all tangible and intangible pre- and post-petition property of each Debtor that is junior and subordinate to (a) valid, perfected and non-avoidable liens (as defined in Section 101(37) of the Bankruptcy Code) in existence as of the Petition Date (other than the Primed Liens) on or in such property or (b) valid and non-avoidable liens (other than Primed Liens) in existence as of the Petition Date that are deemed perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code on or in such property (clauses (i) and (ii) together, the "**Permitted Prior Liens**").

[4] Doc. No. 1384.

[5] Doc. No. 434 ¶ 14(d).

[6] Doc. No. 1386.

exercise rights under account control agreements with the Debtors and apply Cash Collateral in excess of certain reserves to satisfy a portion of the Outstanding DIP Obligations."[7]

9. On January 29, 2024, the Court entered that certain *Order Regarding DIP Agent's Emergency Motion for Relief from the Automatic Stay To Enforce Rights Under the DIP Documents and Use of Cash Collateral* (the "**Stay Order**").[8] While the Stay Order did not grant the full scope of relief requested in the Automatic Stay Motion, it did modify the automatic stay to a limited extent, authorizing the DIP Lenders to enforce their rights with respect to certain collateral of the Debtors.[9]

10. On February 26, 2024, the Debtors filed, and this Court approved, the *Stipulation and Second Order Regarding DIP Agent's Emergency Motion for Relief from the Automatic Stay to Enforce Rights under the DIP Documents and Use of Cash Collateral* (the "**DIP Stipulation**").[10] The DIP Stipulation further modified the automatic stay to permit the DIP Lenders to enforce their rights with respect to additional collateral of the Debtors. (For purposes of this Third Abandonment Motion, the Final DIP Order, the Stay Order and the DIP Stipulation, are collectively referred to herein as the "**DIP Lenders' Relief Orders**").

11. On February 28, 2024 (the "**Conversion Date**"), the Court converted the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code.[11]

---

[7] *Id*. at ¶ 17.

[8] Doc. No. 1472 ¶ 4.

[9] *Id*. at ¶ 4.

[10] Doc. Nos. 1711 and 1714.

[11] Doc. No. 1720.

3

12. On February 29, 2024, Randy W. Williams became the interim chapter 7 trustee for each of the Estates (the "**Interim Trustee**").

13. On May 6, 2024, the Court approved Michael D. Warner's election as permanent chapter 7 trustee for each of the Estates, subject to his ability to qualify under section 322(a) of the Bankruptcy Code.[12] On May 8, 2024, Michael D. Warner filed his *Notice of Bond and Acceptance of Election*.[13] As such, Michael D. Warner is the duly elected, qualified and acting chapter 7 trustee for each of the Estates.

### III.
### TRUSTEE'S PREVIOUS ABANDONMENT MOTIONS[14]

14. On September 19, 2024, the Trustee filed the *Trustee's Motion to (I) Abandon certain Federal and State Oil and Gass Leases, Rights-of-Use and Easements, and Rights-of-Way and any Interests related thereto under 11 U.S.C. Section 554, etc.*[15] The forgoing Motion was amended on November 13, 2024 (the "**First Abandonment Motion**").[16]

15. Following various hearings and negotiations, the relief sought by the Trustee pursuant to the First Abandonment Motion was modified and presented to the Court, and resulted in the Court's entry on December 16, 2024, of its *Order Authorizing (I) Abandonment of Certain Oil and Gas Leases, Rights-of-Use and Easement, and Rights-of-Way and Any Interests Related Thereto Under 11 U.S.C. § 554 (II) Rejection of Any Related Existing Executory Contract Under*

---

[12] Doc. No. 1919.

[13] Doc. No. 1996.

[14] The following does not address the Trustee's or the Interim Trustee's abandonment motions and efforts with respect to business records and related computer equipment, as the same is not relevant for the following discussion, save to the extent address herein.

[15] Doc. No. 2216.

[16] Doc. No. 2290.

4

*11 U.S.C. § 365, and (III) The Trustee's Compromise Under 11 U.S.C. § 363 and Bankruptcy Rule 9019 with the United States Department of the Interior*[17] (the "**First Abandonment Order**").

16. The First Abandonment Order authorized the Trustee to abandon, pursuant to Bankruptcy Code Section 554, any or all of the Abandoned Interests (as that term is defined in the First Abandonment Order)[18] by filing one or more notice(s) of abandonment with the Court.

    a. On January 8, 2025, the Trustee filed his first *Notice of Abandonment As Authorized By Prior Court Order*[19] with respect to certain Abandoned Interests.

    b. On July 8, 2025, the Trustee filed his second *Notice of Abandonment As Authorized By Prior Court Order*[20] with respect to certain Abandoned Interests.

17. On March 20, 2025, the Trustee, the United States of America,[21] GOM Shelf LLC, McMoRan Oil & Gas LLC, and Natural Resources Worldwide LLC entered into that certain *Joint Stipulation and Agreed Order*[22] (the "**Second Abandonment Order**") pursuant to which, *inter alia*, the Trustee abandoned the Estates' interest, if any, in certain Unassigned Federal Leases.[23]

---

[17] Doc. No. 2322.

[18] The **Abandoned Interests** include certain of the Estates' federal and state (i) oil and gas leases, (ii) rights-of-use and easements, and (iii) rights-of-way, including, without limitation, any infrastructure, wells, fixtures, and/or equipment located on, adjacent to, used or maintained in conjunctions with, or at the Abandoned Interests, identified on the schedule attached to the First Abandonment Order as Exhibit 1.

[19] Doc. No. 2340.

[20] Doc. No. 2479.

[21] "United States" includes without limitation the United States Department of the Interior, which includes without limitation the Bureau of Ocean Energy Management, the Bureau of Safety and Environmental Enforcement, and the Office of Natural Resources Revenue.

[22] Doc. No. 2408.

[23] A list of the Unassigned Federal Leases is attached to the Joint Stipulation as Exhibit 1.

## IV.
## TRUSTEE'S CURRENT ASSETS TO BE ABANDONED

18. Through this Third Abandonment Motion the Trustee seeks to abandon certain assets to the extent not addressed by either the First Abandonment Order or the Second Abandonment Order:

   a. All crude oil and other hydrocarbons, whether produced from, allocated to, or otherwise attributable to any asset in which the Estates hold, or may hold, any legal or equitable interest, whether or not previously abandoned, including without limitation all hydrocarbons held as inventory, whether held/stored in storage, stock tanks, or processing plants, as well as all hydrocarbons located in, or flowing through, any gathering lines or pipelines (collectively, the "**Hydrocarbons**");

   b. All equipment, platforms, gathering systems, pipelines, machinery, fixtures, improvements, and other real, personal, and mixed property, operational or nonoperational, that is or was used or held for use in connection with any asset in which the Estates hold, or may hold, any legal or equitable interest, whether or not previously abandoned, including without limitation vapor recovery units (the "**Equipment**");

   c. All accounts, claims, causes of action, and receivables in which the Estates hold, or may hold, any legal or equitable interest (the "**Accounts**").

   d. Without limiting the foregoing, all Hydrocarbons, Equipment, Accounts, and other property:

      i. on the West Delta Facility identified as belonging to or associated with Venice Energy Services Company, LLC;
      ii. located at or associated with the Harvest Midstream Company tank in Erath, Louisiana; and
      iii. all Hydrocarbons identified as missing from pipelines by W&T Offshore, Inc, including but not limited to the approximately 16,000+ barrels missing from WD73A.

19. Prior to the Petition Date, the Trustee understands, that the Debtors provided various professionals with pre-Petition Date retainers to be used as agreed and as subsequently provided in, inter alia, the Final DIP Order (hereinafter "**Professional Retainers**"). The Trustee further understands that as of the date of this Third Abandonment Motion, approximately $200,000

6

is held by Alverez & Marsal North America, LLC ("**A&M**"), as a Professional Retainer. The Trustee is unaware of other Professional Retainers being held and not applied.

20. Pursuant to, *inter alia*, the Final DIP Order, prior to the Conversion Date the Debtors implemented a structure providing for funds to be set-aside for the payment of Court approved professional fees ("**Professional Fee Payments**") for professionals retained by Orders of the Court (the "**Carve-Out Escrow**"). The Trustee understands that as of the date of this Third Abandonment Motion, A&M, as the *escrow holder* of the Carve-Out Escrow, is holding funds pursuant to the Carve Out Escrow (the "**Held Carve-Out Funds**") for various professionals.

21. By this Third Abandonment Motion the Trustee seeks to abandon the Estates' interests, if any, including rights, claims and interests, in and to the Professional Retainers, the Professional Fee Payments, previously paid or to be paid, the Carve-Out Escrow, and the Held Carve-Out Funds.

22. Prior to the date of this Third Abandonment Motion, the Trustee sought and obtained various Orders of the Court authorizing the destruction and abandonment of, *inter alia*, various business records and related computer equipment of the Debtors.[24]

23. By this Third Abandonment Motion the Trustee seeks to abandon all of the Estates' records currently stored with Access Information Management Corporation (d/b/a Access) and/or Access Information Management of Georgia, LLC (d/b/a Access) (together, "**Access**") at their facility located in Houston, Texas, including, but not limited to, the (i) 3,521 boxes of records which the Trustee understands to generally contain Energy XXI's office files from former employees, acquisition-related data, and accounting records; and (ii) 1,642 boxes of records which

---

[24] See, *Trustee's Motion for Entry of An Order to Abandon Documents and Data and Dismantle and Destroy Certain Equipment* [Doc. No. 2293] and subsequent *Order Granting Trustee's Motion for Entry of An Order to Abandon. Documents and Data and Dismantle and Destroy Certain Equipment* [Doc. No. 2334].

the Trustee understands to generally contain geological information primarily pertaining to drilling cuttings, sidewall cores, core slabs, and related analysis materials (collectively, the "**Access Records**"). It is the Trustee's understanding that the Debtors placed and stored the Access Records with Access prior to the Petition Date. Moreover, the Access Records have not been augmented nor accessed by the Trustee, and neither the Trustee nor, to the Trustee's knowledge, the Interim Trustee, has a post-conversion agreement in place with Access for the storage of the Access Records.

24. The relief requested in this Motion relates only to the abandonment of the Access Records, and is not intended to address the amount, basis for, validity, or priority of any potential administrative claims related to the Access Records, whether or not presently asserted. Nothing herein should be deemed an admission as to any such claims or a waiver of the Estates' right to dispute any such claims. While the Trustee has investigated the storage and destruction costs associated with the Access Records, nothing herein should be construed as the Trustee's agreement that such costs are the obligation(s) of the Estates.[25]

25. To the extent not previously abandoned by either the First Abandonment Order or the Second Abandonment Order, or identified hereinabove, the Trustee seeks to abandon any and all DIP Collateral, as the same is defined in any of the DIP Lenders' Relief Orders (hereinafter the "**Remaining DIP Collateral**").

---

[25] Nothing herein should be construed as the Trustee's agreement that such costs are the obligation(s) of the Estates. For purposes of complete transparency, the Trustee intends to abandon, not destroy the Access Records, as they are burdensome to the Estates or of inconsequential value and benefit to the Estates.

## V.
## REQUESTED RELIEF

### a. Abandonment under Bankruptcy Code Section 554(a)

26. By this Third Abandonment Motion and pursuant to Section 554(a) of the Bankruptcy Code, and Bankruptcy Rule 6007, the Trustee seeks an Order of the Court, in the Form of the Proposed Order, abandoning the following (collectively, the "**Abandoned Assets**"):

   a. The Hydrocarbons;

   b. The Equipment;

   c. The Accounts;

   d. The Professional Fee Payments, the Carve-Out Escrow, and the Held Carve-Out Funds;

   e. The Access Records; and

   f. The Remaining DIP Collateral.

27. The Trustee has concluded, in his sound business judgment, that abandonment of the Abandoned Assets is in the best interests of the Estates, their creditors, and all parties-in-interest. The Trustee's business judgement has included the following considerations.

28. First, the DIP Lenders have previously been granted partial relief from the Automatic Stay to, inter alia, foreclosure upon, protect, manage, and control the relevant collateral.[26] Abandonment will further facilitate the DIP Lenders' ability to foreclose or otherwise protect their interests in the Remaining DIP Collateral.

29. Second, the Abandoned Assets are encumbered beyond any value such assets have, as the DIP Lenders hold a first lien, with an estimated current balance in excess of $200 Million;

---

[26] See, Doc. Nos. 1472 and 1714.

30. Third, the Trustee is unable to surcharge the Abandoned Assets, or any of the Remining DIP Collateral, by virtue of the DIP Lenders' Stay Orders, and has been unable to otherwise negotiate a carve-out with the DIP Lender;[27] and

31. Fourth, maintaining the Abandoned Assets would impose unnecessary costs and burdens on the Estates, as well as the counterparties to such interests.

32. Notwithstanding any other language contained in this Third Abandonment Motion, the following are hereby carved out and excluded from the definition of Abandoned Assets, and the Trustee and the Estates expressly reserve all rights, title, and interest in and to:

   a. any claims, rights, causes of action, or insurance claims that generally relate to property of the Debtors that sustained damages or otherwise fell within the potential impact from Hurricane Ida in 2021, including without limitation, claims asserted or could be asserted in the Louisiana Suit;[28]

   b. all actual or potential avoidance, recovery, subordination or other claims, or remedies of the Trustee against all entities, including: (a) any claims for the recovery of transfers of cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable exclusively pursuant to sections 502, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code, or otherwise

---

[27] Pursuant to the Final DIP Order, the Debtors' waived their right to surcharge the Prepetition Collateral and the DIP Collateral pursuant to section 506(c) of the Bankruptcy Code and their right under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; therefore, no such surcharge rights remain available to the Trustee. Further, the Trustee has engaged in negotiations with the DIP Secured Parties (as defined in the Final DIP Order) to obtain a carve-out from the DIP Liens for the Sale(s) (the "**Carve-Out**") of the Related Assets and the Additional Interests, which would allow the Estates to retain a portion of the proceeds generated from any Sale(s). At this time, however, the Trustee and the DIP Secured Parties have not yet reached an agreement on a Carve-Out.

[28] On November 12, 2024, in connection with claims asserted prior to the Petition Date, and subsequent thereto, by the Debtors and/or the Trustee with respect to damage caused by Hurricane Ida to the Debtors' insured property, the Trustee filed certain litigation in the Civil District Court for the Parish of Orleans, State of Louisiana, and styled *Michael D. Warner in his Official Capacity as the Chapter 7 Trustee of Cox Operating, L.L.C., etc. et al., v Miller Insurance Services, LLP, etc. et al.*, Case No. 2024-10338 (the "**Louisiana Suit**").

applicable non-bankruptcy law; (b) any claims or estate causes of action for subordination under section 510 of the Bankruptcy Code or under other applicable laws; and (c) any claims or estate causes of action that arise under chapter 5 of the Bankruptcy Code;

c. all actual and potential claims or causes of action relating to the Talos Claims;[29]

d. all proceeds held in an Estate bank account by the Trustee as of the date of this Order;

e. all actual or potential claims arising out of that certain *Order (A) Authorizing the Payment of Certain Essential Vendor Obligations, (II) Marketing Expenses, and (III) Outstanding Orders, and (B) Granting Related Relief* [Dkt. No. 112], including without limitation breaches of trade agreements or any postpetition payment of prepetition or postpetition obligations;

f. all actual and potential claims or causes of action relating to commercial tort claims and related claims under applicable law including without limitation (i) breach of fiduciary duty, (ii) aiding and abetting, (iii) civil conspiracy, (iv) alter ego or veil piercing, (v) single business enterprise, (vi) ownership of property, (vii) improper equity distributions, and (viii) nullification, against the Debtors' directors and officers, other statutory or non-statutory insiders, or any other party, including without limitation the claims asserted, or that can be asserted, against all parties named or could be named in that certain litigation styled *Michael D. Warner v.*

---

[29] On July 15, 2024, Talos Energy Ventures, LLC and Talos Production LLC (collectively, "**Talos**") filed the Motion of Talos Energy Ventures, LLC and Talos Production LLC for Relief from the Automatic Stay, to the Extent Applicable, to Permit Recoupment and/or Exercise of Setoff Rights [Docket No. 2153] seeking to exercise setoff or recoupment as to certain proceeds. The Trustee and the DIP Lenders have disputed this amount and asserted claims against Talos (the "**Talos Claims**"), which the Trustee anticipates will soon be made subject of a stipulation filed with the Court to resolve such claims.

*Brad E. Cox, et al*, Civil Action and Adversary Proceeding No. 25-943, pending in the United States District Court for the Eastern District of Louisiana;

g.  all actual and potential claims, causes of action, or defenses, relating to the Debtors' or Trustee's transactions with Natural Resources Worldwide LLC; and

h.  any and all property interests that may be the subject of a stipulation and agreed order between the Trustee and the DIP Lenders entered prior to the entry of this Order.

## VI.
## CONCLUSION

**WHEREFORE**, the Trustee respectfully requests entry of an order substantially in the form of the Proposed Order attached hereto as follows:

a.  Authorizing the Trustee to abandon the Abandoned Assets as burdensome to the Estates or of inconsequential value or benefit to the Estates;

b.  Finding that notice of this Third Abandonment Motion has been properly served in accordance with Bankruptcy Rule 6007(a), and that all parties in interest have had at least fourteen (14) days from the date of service to file and serve any objection to the relief requested herein; and

c.  Granting such other and further relief as the Court deems just and proper.

[*Signatures appear on following page.*]

Respectfully submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By: /s/ *Paul Douglas Stewart, Jr.*
Paul Douglas Stewart, Jr. (La. Bar # 24661)
*Admitted to Southern District of Texas*
*(SDTX Federal No. 432642)*
dstewart@stewartrobbins.com
William S. Robbins (Tx. Bar # 24100894)
wrobbins@stewartrobbins.com
Brandon A. Brown (Tx. Bar # 24104237)
bbrown@stewartrobbins.com
Brooke W. Altazan (Tx. Bar # 24101002)
baltazan@stewartrobbins.com
301 Main Street, Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

***Counsel for Michael D. Warner, Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, a true and correct copy of the above and foregoing pleading was electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District, including the United States Trustee and counsel for the Debtors.

/s/ Paul Douglas Stewart, Jr.
Paul Douglas Stewart, Jr.

13