## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 23-90324 (CML) |
| | ) | |
| **MLCJR LLC, et al.,**[1] | ) | CHAPTER 7 JOINTLY |
| | ) | |
| **DEBTORS.** | ) | ADMINISTERED |
| | ) | |

## MOTION (I) TO MODIFY THE AUTOMATIC STAY WITH RESPECT TO ARGONAUT INSURANCE COMPANY AND (II) TO ABANDON ANY RIGHTS IN OR TO ARGONAUT INSURANCE COMPANY'S COLLATERAL

**This is a motion for relief from the automatic stay. If it is granted, the movant may act outside of the bankruptcy process. If you do not want the stay lifted, immediately contact the moving party to settle. If you cannot settle, you must file a response and send a copy to the moving party at least 7 days before the hearing. If you cannot settle, you must attend the hearing. Evidence may be offered at the hearing and the court may rule.**

**Represented parties should act through their attorney.**

**There will be a hearing on this matter on February 10, 2026 at 10:00 am in Courtroom 402, 4th floor, Bob Casey United States Courthouse, 515 Rusk Avenue, Houston, TX 77002.**

**COMES NOW** Argonaut Insurance Company ("***Argonaut***"), by and through its undersigned counsel, and hereby files this motion (the "***Motion***") for an order substantially in the form of the proposed order attached as **Exhibit A** modifying the automatic stay and directing abandonment with respect to Argonaut and the Argonaut Collateral (as defined below) pursuant to 11 U.S.C. §§ 362(d) and 554(a) and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure. In support of the Motion, Argonaut respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978). The Debtors' address is 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

## PRELIMINARY STATEMENT

1.      Through this Motion, Argonaut seeks relief from the automatic stay and abandonment with respect to the Argonaut Collateral (as defined below) in the amount of approximately $1.5MM for which it holds a first priority perfected security interest against its Current Bond Losses (as defined below) in excess of $65MM and Expected Bond Losses (as defined below) of approximately $167MM.

## JURISDICTION AND VENUE

2.      This United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and General Order 2012-6 from the United States District Court for the Southern District of Texas.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

4.      Venue for this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.      Prior to the filing of the above-captioned bankruptcy cases, Argonaut issued certain surety bonds naming certain of the Debtors as principals (the "***Principals***") to assure such Principals' decommissioning obligations to certain obligees (the "***Bonds***"). A schedule of the Bonds is attached as **Exhibit B**.  The aggregate penal limit of the Bonds is approximately $167MM.

6.      As an inducement for and in consideration of Argonaut executing the Bonds, certain of the Debtors and non-debtor affiliates executed two general indemnity agreements as indemnitors, pursuant to which those Debtors agreed, among other things, to indemnify and hold harmless Argonaut from and against claims, demands, or losses under the Bonds.  Specifically,

MLCJR, LLC; Cox Oil Offshore, L.L.C.; Cox Operating, L.L.C.; CEXXI, Inc.; Energy XXI Gulf Coast, Inc.; Energy XXI GOM, LLC; M21K, LLC; and EPL Oil & Gas, Inc. executed that certain *General Indemnity Agreement* as indemnitors, and MLCJR, LLC; Cox Oil Offshore, L.L.C.; Cox Operating, L.L.C.; CEXXI, LLC; Energy XXI Gulf Coast, LLC; Energy XXI GOM, LLC; M21K, LLC; EPL Oil & Gas, LLC; and Lochridge P&A, LLC subsequently executed that certain *General Indemnity Agreement* as indemnitors (collectively, and respectively, the "***Indemnity Agreements***" and the "***Indemnitors***"). True and correct copies of the Indemnity Agreements are attached as **Exhibit C**.

7.    To secure the Principals'/Indemnitors' obligations to Argonaut under the Bonds and the Indemnity Agreements, along with certain other liens and collateral, debtor EPL Oil & Gas LLC executed that certain *Collateral Security Agreement* and that certain *Account Control Agreement* granting Argonaut a perfected, first priority security interest in deposit accounts held at Texas Capital Bank bearing account nos. *1134 and *4388 (the "***TCB Accounts***"), the cash and/or other collateral held in the TCB Accounts, and any interest, dividends, or other proceeds associated with the TCB Accounts (collectively, the "***Argonaut Collateral***"). True and correct copies of the *Collateral Security Agreement* and the *Account Control Agreement* are respectively attached as **Exhibit D** and **Exhibit E**.

8.    Argonaut timely filed various proofs of claim outlining the relationships, agreements, and facts above against the applicable Principals/Indemnitors on July 19, 2023 [Claims No. 147, 148, 149, 150, 151, 152, and 154], as amended on October 16, 2023 [Claims No. 790, 791, 792, 793, 794, 795, and 796].

9.    The Argonaut Collateral has a current value of approximately $1.5MM.

10.    The Debtors' chapter 11 bankruptcy cases commenced on or around May 14,

3

2023, pending before this Court and jointly administered under the lead case no. 23-90324 (CML) (the "***Cases***").

11.     This Court converted the Cases from chapter 11 cases to chapter 7 cases on February 28, 2024, through entry of that certain *Order (I) Converting Chapter 11 Cases to Cases under Chapter 7; (II) Shortening Notice Related Thereto; and (III) Granting Related Relief* [Dkt. No. 1720].

12.     On February 29, 2024, Randy W. Williams became the interim chapter 7 trustee for each of the Debtors' estates.  However, on May 6, 2024, the Court approved Michael D. Warner's (the "***Trustee***") election as the permanent chapter 7 trustee for each of the Debtors' estates.  The Trustee accepted his election as permanent chapter 7 trustee on May 8, 2024.  The Trustee is operating as trustee and continues to administer the Debtors' estates under chapter 7.

13.     Argonaut has received multiple claims under the Bonds, totaling in excess of $80MM, and expects more in bond claims totaling at least approximately $87MM (respectively, the "***Current Bond Claims***" and the "***Expected Bond Claims***").

14.     Argonaut has currently incurred losses under the Bonds in excess of $65MM and expects total losses to be at least approximately $167MM (respectively, the "***Current Bond Losses***" and the "***Expected Bond Losses***").

## ARGUMENT AND REQUESTED RELIEF

15.     Under 11 U.S.C. § 362(d):

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [11 U.S.C. § 362(a)], such as by terminating, annulling, modifying, or conditioning such stay . . . for cause . . . [or,] with respect to a stay of an act against property under [11 U.S.C. § 362(a)], if . . . the debtor does not have an equity in such property . . . and such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1) and (2).

16.     "Cause" is not defined in the Bankruptcy Code. *In re Mantachie Apt. Homes,*

*LLC*, 488 B.R. 325, 331 (Bankr. N.D. Miss. 2013). Rather, "[w]hether cause exists to grant relief

from the [automatic] stay is determined on a case-by-case basis, based on the totality of the

circumstances." *Id.*

17.     "'Equity' as used in section 362(d) portends the difference between the value of

the subject property and the encumbrances against it." *In re Sutton*, 904 F.2d 327, 329 (5th Cir.

1990).

18.     Here, Argonaut holds a perfected, first priority security interest in and to the

Argonaut Collateral, and Argonaut therefore is entitled to reimburse itself from the Argonaut

Collateral with respect to Argonaut's Current Bond Losses.

19.     The Argonaut Collateral has a current value of approximately $1.5MM, and the

Argonaut Collateral secures Argonaut's losses under the Indemnity Agreements and for claims

on the Bonds, for which Argonaut's Current Bond Claims total in excess of $80MM, Expected

Bond Claims total at least approximately $87MM, Current Bond Losses total in excess of

$65MM, and Expected Bond Losses total at least approximately $167MM.

20.     With these figures in mind, the estates clearly have no equity in the Argonaut

Collateral. Moreover, as the Cases are now proceeding under chapter 7, the Argonaut Collateral

cannot be necessary for an effective *reorganization*.

21.     On these facts, cause also exists to grant relief from the automatic stay in that the

Trustee has no right to use the Argonaut Collateral for distributions to unsecured creditors, nor is

there any reason to delay Argonaut from exercising its rights in and to the Argonaut Collateral.

22.     Consequently, the standards for granting relief from the automatic stay under 11

U.S.C. § 362(d) have been satisfied.

23.     Further no cause exists for staying any order granting Argonaut relief from the automatic stay, and the 14-day stay under Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure should therefore be waived.

24.     Under 11 U.S.C. § 554(b), "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(b).

25.     Given the estates' equity position, the Argonaut Collateral clearly "is of inconsequential value and benefit to the estate," and the standards for abandonment under 11 U.S.C. § 554(b) consequently have been satisfied.

26.     Accordingly, modification of the automatic stay and abandonment with respect to Argonaut and the Argonaut Collateral are both warranted.

27.     Argonaut has been in contact with the Trustee, and the Trustee does not oppose the relief sought in the Motion.

*[REST OF PAGE INTENTIONALLY LEFT BLANK]*

**WHEREFORE**, the Argonaut respectfully requests this Court (a) grant this Motion, (b) enter an order substantially in the form of the proposed order attached as **Exhibit A**, (c) lift and modify the automatic stay with respect to Argonaut and the Argonaut Collateral, (d) direct the trustee to abandon the Argonaut Collateral, (e) waive the 14-day stay under Rule 4001(a)(4) of the Federal Rules of Bankruptcy Procedure, and (f) grant such other and further relief as this Court deems necessary and proper.

Respectfully submitted,

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*

Michael E. Collins   (TX Bar No. 24029006)
Scott C. Williams    (SDTX Fed. ID No. 3089153)
S. Marc Buchman    (SDTX Fed. ID No. 3925987)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Tel.:   615.742.0030
Fax:   629.500.1137
mcollins@manierherod.com
swilliams@manierherod.com
mbuchman@manierherod.com

*Counsel to Argonaut Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2026, a true and correct copy of the foregoing pleading was served by the Court's CM/ECF System on all parties who are registered to receive electronic filings in the case, including the trustee and counsel to the trustee.

*/s/ Michael E. Collins*
Michael E. Collins

4927-4483-5720, v. 1

# EXHIBIT A
## PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 23-90324 (CML) |
| | ) | |
| MLCJR LLC, et al.,[1] | ) | CHAPTER 7 JOINTLY |
| | ) | |
| DEBTORS. | ) | ADMINISTERED |
| | ) | |

**ORDER GRANTING THE MOTION (I) TO MODIFY THE AUTOMATIC STAY WITH**
**RESPECT TO ARGONAUT INSURANCE COMPANY AND (II) TO ABANDON ANY**
**RIGHTS IN OR TO ARGONAUT INSURANCE COMPANY'S COLLATERAL**

**UPON CONSIDERATION** of the *Motion (I) to Modify the Automatic Stay with Respect to Argonaut Insurance company and (II) to Abandon Any Rights in or to Argonaut Insurance Company's Collateral* (the "***Motion***"), and it appearing to this Court[2] that (a) it has jurisdiction to determine the motion, (b) venue is proper, (c) Argonaut provided proper notice and time for objections for the Motion, (d) the representations, argument, evidence, and record establish the standards under 11 U.S.C. §§ 362(d) and 554(b) and Rule 4001(d) of the Federal Rules of Bankruptcy Procedure have been satisfied, and (e) good cause therefore exists for granting the Motion:

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.      The Motion is hereby granted as set forth herein.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).  The Debtors' address is 4514 Cole Ave., Suite 1175, Dallas, Texas 75205.

[2] Any capitalized term used but otherwise not defined herein shall have the meaning ascribed to it (a) in the Motion, in the Bankruptcy Code or Federal Rules of Civil Procedure if not defined in the Motion, or (c) within the context as used herein.

4917-6543-1575, v. 2

2.     The automatic stay imposed by 11 U.S.C. § 362(a) shall be modified pursuant to 11 U.S.C. § 362(d) to allow Argonaut to exercise its rights in and to the Argonaut Collateral.

3.     Argonaut is authorized to exercise any and all rights in and to the Argonaut Collateral and to draw on the Argonaut Collateral up to the amount of Argonaut's current accrued losses.

4.     Pursuant to 11 U.S.C. § 554(b), the trustee is directed to abandon the Argonaut Collateral, and the Argonaut Collateral is hereby deemed abandoned.

5.     The terms of this Order shall immediately be in full force and effect upon entry of this Order, and the 14-day stay under Rule 4001(a)(4) is hereby waived.

6.     Nothing herein shall alter, limit, release, or modify any other liens held by Argonaut with respect to the Bonds and Indemnity Agreements nor shall have any effect whatsoever on adversary proceeding no. 24-3131, *Amarillo National Bank v. Accu-Line Wireline Services, LLC et al.*, currently pending before this Court (the "***Adversary Proceeding***"), which liens shall be determined in the Adversary Proceeding pursuant to (a) that certain *Final Order (I) Authorizing Debtors (A) to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(d)(1) and 364(e) and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)*" [Dkt. No. 434], (b) that certain *Order (I) Converting Chapter 11 Cases to Cases under Chapter 7; (II) Shortening Notice Related Thereto; and (III) Granting Related Relief* [Dkt. No. 1720], and (c) that certain *Amended Stipulation and Agreed Order by and among the DIP Secured Parties, the Prepetition Secured Parties, and certain Lien Creditors Regarding Sale Proceeds Reserves and Lien Determination Process* [Dkt. No. 1826].

7.      This Court shall retain exclusive jurisdiction over any matter arising from or related to the interpretation, implementation, and enforcement of this Order.

Signed: _____, 2026.

_____
Christopher M. Lopez
United States Bankruptcy Judge

Submitted for Entry by:

**MANIER & HEROD, P.C.**

*/s/ Michael E. Collins*
_____
Michael E. Collins   (TX Bar No. 24029006)
Scott C. Williams    (SDTX Fed. ID No. 3089153)
S. Marc Buchman    (SDTX Fed. ID No. 3925987)
1201 Demonbreun Street, Suite 900
Nashville, Tennessee 37203
Tel.:    615.742.0030
Fax:    629.500.1137
mcollins@manierherod.com
swilliams@manierherod.com
mbuchman@manierherod.com

*Counsel to Argonaut Insurance Company*

4917-6543-1575, v. 2

# EXHIBIT B
## SCHEDULE OF BONDS

| Bond Number | Principal Name | Obligee Name | Bond Amount |
|---|---|---|---|
| SUR0020728 | Energy XXI GOM, LLC | Exxon Mobil Corporation | $9,100,000.00 |
| SUR0015093 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $2,900,000.00 |
| SUR0015088 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $600,000.00 |
| SUR0015089 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $1,200,000.00 |
| SUR0015087 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $3,600,000.00 |
| SUR0015083 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $3,475,000.00 |
| SUR0015086 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $3,100,000.00 |
| SUR0015084 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $2,900,000.00 |
| SUR0015091 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $800,000.00 |

| Bond Number | Principal Name | Obligee Name | Bond Amount |
|---|---|---|---|
| SUR0015090 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $2,100,000.00 |
| SUR0015095 | M21K, LLC, successor-by-name-change to Natural Gas Partner's Assets, LLC | U. S. Department of the Interior, BOEM | $300,000.00 |
| SUR0073279 | Cox Oil Offshore, L.L.C. | U. S. Department of the Interior, BOEM | $150,000.00 |
| SUR0073285 | Cox Oil Offshore, L.L.C. | U. S. Department of the Interior, BOEM | $1,060,303.00 |
| SUR0073283 | Cox Oil Offshore, L.L.C. | U. S. Department of the Interior, BOEM | $893,063.00 |
| SUR0073284 | Cox Oil Offshore, L.L.C. | U. S. Department of the Interior, BOEM | $920,418.00 |
| SUR0073282 | Cox Oil Offshore, L.L.C. | U. S. Department of the Interior, BOEM | $846,112.00 |
| SUR0032472 | Energy XXI GOM, LLC | U.S. Dept. of the Interior, Bureau of Ocean Energy Management | $38,565,000.00 |
| SUR0073320 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $2,601,491.00 |
| SUR0073319 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $2,815,964.00 |
| SUR0073318 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $5,356,543.00 |
| SUR0073317 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $656,016.00 |
| SUR0073316 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $7,955,975.00 |
| SUR0073314 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $483,547.00 |

| Bond Number | Principal Name | Obligee Name | Bond Amount |
|---|---|---|---|
| SUR0073321 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $494,100.00 |
| SUR0073315 | EPL Oil & Gas, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $4,601,231.00 |
| SUR0073273 | Energy XXI GOM, LLC | U.S. Department of the Interior, Bureau of Ocean Energy Management | $150,000.00 |
| SUR0073324 | MLCJR, LLC | Exxon Mobil Corporation | $50,000,000.00 |
| SUR0013251 | EPL Oil & Gas, Inc. | Chevron U.S.A. Inc. | $5,182,000.00 |
| SUR0000513 | EPL Oil & Gas, Inc., successor-by-merger to Hilcorp Energy GOM, LLC | Union Oil Company of California | $5,000,000.00 |
| SUR0020741 | Energy XXI Onshore, Inc. | Board of Commissioners for the Atchafalaya Basin Levee District | $20,000.00 |
| SUR0001687 | EPL Oil & Gas, Inc. | ConocoPhillips Company | $4,560,000.00 |
| SUR0035018 | M21K, LLC | U.S. Dept. of the Interior, Bureau of Ocean Energy Management | $4,947,921.00 |
| SUR0025081 | M21K, LLC | U. S. Department of the Interior, BOEM | $2,335,000.00 |
| SUR0025076 | M21K, LLC | U. S. Department of the Interior, BOEM | $1,295,000.00 |
| | | **Total:** | **$166,792,135.00** |

3

# EXHIBIT C
## INDEMNITY AGREEMENTS



**ARGONAUT INSURANCE COMPANY**
**GENERAL INDEMNITY AGREEMENT**

This General Indemnity Agreement (hereinafter "Agreement") is made and entered into by the undersigned, hereinafter referred to individually and/or collectively, as "Indemnitors", for the benefit of Argonaut Insurance Company and for itself, its subsidiaries, affiliates, parents, co-sureties, fronting companies and/or reinsurers and their successors and assigns, whether in existence now or formed hereafter, individually and collectively, as "Surety", for the purpose of indemnifying the Surety for any Bonds (as hereinafter defined) from any and all Losses (as hereinafter defined).

**Definitions**
The term "Bond(s)" shall mean any and all bonds including but not limited to surety bonds, undertakings, guarantees, or any contractual obligations, previously or hereafter executed, issued, procured, or undertaken by the Surety, whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, and any renewals or extensions thereof issued by Surety, or issued by another at the request of Surety, on behalf of Indemnitors, whether issued prior to or subsequent to the effective date of this Agreement.

The term "Indemnitors" shall mean an individual, corporation, partnership, Limited Liability Company (hereinafter called LLC), Limited Liability Partnership (hereinafter called LLP), joint venture, trust, estate or other legal entity, whether individually or jointly with others, who sign this Agreement or whose authorized representatives sign this Agreement or any other agreement that incorporates by reference the terms of this Agreement, whether the Indemnitors are individuals or entities. The Indemnitors warrant and represent that they have a material and beneficial interest in Surety's issuance of Bonds on behalf of the Indemnitors, and acknowledge that Surety would not issue such Bonds without each Indemnitors' agreement to reimburse Surety for all Losses arising under the Bonds.

The term "Losses" shall mean any and all (a.) sums paid by Surety to claimants under the Bonds, (b.) sums required to be paid to claimants by Surety but not yet, in fact, paid by Surety, by reason of execution of such Bonds, (c.) all costs and expenses incurred in connection with investigating, paying or litigating any claim under the Bonds, including but not limited to legal fees and expenses, technical and expert witness fees and expenses, (d.) all costs and expenses incurred in connection with enforcing the obligations of the Indemnitors under this Agreement including, but not limited to interest, legal fees and expenses, (e.) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds and/or (f.) all other amounts payable to Surety according to the terms and conditions of this Agreement.

As an inducement to the Surety and in consideration of the Surety's execution or procurement of the Bond(s), the Surety's refraining from canceling one or more Bond(s), and/or the Surety's assumption of one or more Bond(s) and for other good and valuable consideration, the receipt and sufficiency of which the Indemnitors hereby acknowledge, the Indemnitors hereby agree, for themselves, successors, and assigns, jointly and severally, as follows:

1.  **Premium.** To pay all initial and renewal premiums for each Bond, as they fall due, until Surety has been provided with competent legal evidence, in its sole discretion, that the Surety has been fully released of liability under such Bond.

2.  **Indemnity.** To indemnify, hold harmless and exonerate Surety from and against any and all Losses, as well as any other expense that the Surety may incur or sustain as a result of or in connection with the furnishing, execution, renewal, continuation, or substitution of any Bond(s). Expenses include, but are not limited to: (a) the cost incurred by reason of making an independent investigation in connection with any Bond(s) or this Agreement; (b) the cost of procuring or attempting to procure the Surety's release from liability or a settlement under any Bond(s) upon or in anticipation of Losses, including the defense of any action brought in connection therewith; and (c) the cost incurred in bringing suit to enforce this Agreement against any of the Indemnitors. Payments of amounts due the Surety hereunder, including interest, shall be made immediately upon the Surety's demand. In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall be deemed to include any and all payments, Losses, attorneys' fees, and other expenses except those made with deliberate and willful malfeasance.

3.  **Application.** This agreement shall apply to any and all Bond(s) furnished for or on behalf of any or all of the following as follows:
    (a)  One, some or all of the Indemnitors;
    (b)  Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;
    (c)  Any present or future affiliate and/or subsidiary of Indemnitors;
    (d)  Any third party at the request of Indemnitors, their subsidiaries and/or affiliates

4.  **Collateral Security.** The Indemnitors acknowledge that the Bonds issued on their behalf are to be secured by collateral upon demand. In lieu of fully collateralizing the Bonds prior to their issuance and in consideration for the execution and/or delivery of one or more Bonds, the Indemnitors agree to deposit with the Surety, upon demand, an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to discharge any Losses or to protect it from any potential or anticipated Losses. If for any reason the Surety deems it necessary to increase the amount of any such deposit to cover any possible additional liability or loss, the Indemnitors shall deposit with the Surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such increase. The Indemnitors acknowledge that the Surety would not issue any Bonds without the agreement of the Indemnitors to post collateral upon demand. Accordingly, the Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement.

5.  **Surety Reserve.** The Surety may, in its sole discretion, establish a reserve to cover any actual or anticipated, liability, claim, suit, judgment, or Losses under any Bond. In such event, the Indemnitors will, immediately upon demand, deposit with the Surety a sum of money equal to such reserve, and any subsequent increase thereof, to be held by the Surety as collateral security on the Bond(s). Such funds will be used by the Surety to pay Losses or may be held by the Surety as collateral against potential future Losses. The Indemnitors hereby grant to the Surety a security interest in all money and other property now or hereafter delivered by such Indemnitors to the Surety for deposit in such reserve, and all income (if any) thereon. Any funds remaining after the Indemnitors' settlement or payment of all Losses will be returned to the Indemnitors within fifteen (15) days from the date of the Indemnitors' settlement or payment of the Losses.

6.  **Access to Books and Records.** In the event the Surety receives a claim under any Bond or establishes, in its sole discretion, a reserve in anticipation of incurring Losses, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

7. **Non-Impairment of Indemnitors' Obligations.** The obligations of the Indemnitors under this Agreement shall not be impaired by and Surety shall incur no liability on account of: (a) Surety's failure or refusal to furnish Bond(s), including final Bond(s) where Surety has furnished a bid Bond; (b) Surety's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond; (c) the taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond; (d) the release by Surety, on terms satisfactory to it, of any Indemnitors; and/or (e) the Surety's cancellation of any Bond(s).

8. **Surety Priority.** The Indemnitors shall not seek indemnity, contribution or collection of any other outstanding obligation against any other Indemnitors or their property until the obligations of the Indemnitors to Surety under this Agreement have been satisfied in full.

9. **Confidentiality.** The Indemnitors acknowledge that the Surety may share copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors with governmental regulators, auditors, co-sureties, fronting companies, and/or reinsurers.

10. **Default.** The Indemnitors shall be in default of this Agreement if: (a) Indemnitors shall become a party in any insolvency, receivership, liquidation, or bankruptcy; (b) Any indemnitor makes representation to the Surety by or on behalf of any of the Indemnitors that prove to have been misleading or materially false when made; (c) Indemnitors fail to provide collateral in response to a proper request made by the Surety; (d) Any Indemnitors is convicted of a felony; (e) Any Indemnitor, if an individual, dies, disappears or absconds, and/or (f) Indemnitors breach any other provision of this Agreement.

11. **Indemnitors representations.** The Indemnitors represent and warrant to the Surety that they have a substantial, material, and/or beneficial interest in the obtaining of Bond(s) by any of the Indemnitors and in the transaction(s) for which any of the other Indemnitors have applied or will apply to the Surety for Bond(s) pursuant to this Agreement. Indemnitors represent and warrant that they have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further represent and warrant that their execution, delivery and performance of this Agreement does not and will not conflict with, constitute a default under, or result in a breach or violation of any of their respective organizational documents, any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority, or any other agreement binding upon Indemnitors.

12. **Surety's Rights to Release of Bonds and Indemnitors' Waiver.** The Surety may, in its sole discretion, determine one or more of the following: (a) the Indemnitors financial condition has been or is believed to be deteriorating; or (b) there has been or is believed to be some other change that adversely impacts the Surety's risk under the Bond(s). In such an event, within thirty (30) days of receipt of the Surety's written demand, the Indemnitors shall procure the full and complete release of the Bond(s) by providing competent written evidence of release satisfactory to the Surety, in its sole discretion. If Indemnitors fail to provide the aforementioned release Indemnitors shall, within an additional seven (7) days, provide the Surety with collateral in the amount of 100% of all unreleased liability under the Bond(s). The liability shall be determined at the time of the Surety's written demand. Collateral will be in the form of (a) an irrevocable letter of credit in form, content, and issued by a financial institution acceptable to the Surety; (b) a pledged money market account, in the form, content, and issued by a financial institution acceptable to the Surety; and/or (c) other collateral in form, content, and substance acceptable to the Surety, in its sole discretion. Collateral previously provided to the Surety may be utilized to establish compliance with this provision. If the liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

   The Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement to provide collateral under this Agreement (individually and collectively, the "Collateral Requirement"). The Indemnitors stipulate and agree that the Surety will suffer irreparable harm and will not have an adequate remedy at law should Indemnitors fail to perform the Collateral Requirement and further agree as a result that the Surety is entitled to specific performance of the Collateral Requirement. The Surety's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Surety's sole discretion. Indemnitors further agree that this Collateral Requirement shall not limit or be deemed a waiver of the Surety's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral, or to take any other actions the Surety deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Losses under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Surety's enforcement of this provision. Collateral to be provided to the Surety shall be sent by delivery only for overnight packages: Attn: Treasurer, Argo Surety, 175 E. Houston St., Suite 1300, San Antonio, TX 78205.

13. **Claim Settlement.** The Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against the Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

14. **Demand Bonds.** The obligee or beneficiary under certain Bond(s) may make a demand for payment ("Demand") against the Bond(s). When such Demand is made the Surety must pay the amount of the Demand not to exceed the penal sum of the Bond(s), as well as all the necessary fees, within the time period required by the Demand. Under such Bond(s), the Surety, with the knowledge and consent of the Indemnitors has expressly waived all defenses to making such payment. If the Indemnitors receive notice from the Surety that a Demand has been made against the Bond(s) by the obligee or beneficiary, at least five (5) business days before payment of such Demand is due to the obligee, Indemnitors shall pay the Surety the full amount of the Demand, which amount shall not exceed the penal sum of the Bond as well as all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by the Surety. The Indemnitors waive to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to the Surety as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including attorneys' fees, incurred by the Surety in enforcing this Agreement, together with interest on unpaid amounts due the Surety. Indemnitors stipulate and agree that the Surety will suffer immediate, irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore the Surety shall be entitled to specific performance of this obligation.

15. **Interest.** Any amount due to Surety under any provision of this Agreement shall accrue interest from the date of the Surety's demand at 130% of the prime rate of interest in effect on December 31st of the previous calendar year as published in the Wall Street Journal.

16. **Continuing Obligation.** This Agreement is a continuing obligation of the Indemnitors, and no Indemnitors shall have the right to terminate its obligations for any Bond(s) issued during the term hereof. The Indemnitors may terminate this Agreement as to future Bond(s) by notice to the Surety, but such termination as to the Indemnitors shall in no way affect the obligation of any other Indemnitors who have not given such notice. In order to terminate liability as to future Bond(s), Indemnitors must notify the Surety of such termination and state in such notice the effective date (not less than thirty days after receipt thereof by the Surety) of termination of such Indemnitors liability for future Bond(s). After the effective date of such termination, the Indemnitors giving notice of termination shall nonetheless be liable hereunder for Bond(s) executed or authorized before such date and renewal, substitutions, and extensions thereof.

17. **Survival of Indemnity.** The Indemnitors understand and agree that their obligations under this Agreement remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

18. **Severability.** If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted. This agreement is in addition to and not in lieu of any other agreement relating to the obligations described herein.

19. **Execution.** This Agreement may be executed in multiple counterparts, and by the Indemnitors on separate counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument. Delivery by telecopy or email of a signed counterpart of this Agreement shall be effective as physical delivery.

20. **Photocopies.** A duplicate or facsimile copy or electronic reproduction of the original of this Agreement shall have the same force and effect as the original.

21. **Non-waiver of Surety Rights.** Nothing herein contained shall be construed to waive or abridge any right or remedy which the Surety might have if this Agreement was not executed. The Surety's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

22. **Access to Indemnitors' Information.** Indemnitors hereby expressly authorize the Surety to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Surety will, upon request, provide notice whether or not a consumer report has been requested by Surety, and if so, the name and address of consumer reporting agency furnishing the report.

23. **Separate Suits.** Separate suits may be brought hereunder as causes of action accrue, and suit may be brought against any and all of the Indemnitors; and any suit or suits upon one or more causes of action, or against one or more of the Indemnitors, shall not prejudice or bar subsequent suits against any other Indemnitors on the same or any other causes of action, whether theretofore or thereafter accruing.

24. **Notices.** All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if delivered against receipt therefore or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed to the Surety, to: Attn: Argo Surety: P.O. Box 469011, San Antonio, TX 78246. By overnight delivery: 13100 Wortham Center Drive, Suite 290, Houston, TX  77065.  Such name and address may be changed by written notice given as provided in this Section.

25. **Choice of Law.** This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to its choice of law principles.

26. **Choice of Forum.** In any legal proceeding brought by or against the Surety that in any way relates to this Agreement, each Indemnitor for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of the Surety, of the courts in any state in which any Indemnitor resides, has property, or in which any Contract is performed, Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

27. **Collateral and Letters of Credit.** If Surety has or obtains collateral or letters of credit, Surety shall not have any obligations to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Surety with respect to each and every Bond. Any collateral or letters of credit provided to Surety by any Indemnitors or any third party, or the proceeds thereof, may be applied to any Losses. The Surety shall not pay interest on any collateral it holds.

28. **Security Interest.** The Surety may execute or procure Bond(s) that guarantee the Indemnitors' obligations or performance under one or more contracts (each a "Bonded Contract").  The Indemnitors shall be considered in default of a Bonded Contract if any of the following occur:  (a) a declaration of default by any Bonded Contract owner; (b) an actual breach or abandonment of the Bonded Contract; and/or (c) an improper diversion of Bonded Contract funds or Indemnitors' assets to the detriment of the Bonded Contract obligations.

   In the event of a default under a Bonded Contract, Indemnitors grant to Surety a security interest in all equipment, machinery, inventory, materials, and all proceeds and products in connection with any Bonded Contract. This Agreement shall for all purposes constitute a Security Agreement and Financing Statement for the benefit of Surety in accordance with the Uniform Commercial Code ("UCC") and all similar statutes.  In the event there is an act of default under any Bonded Contract, Indemnitors hereby irrevocably authorize Surety, without notice to any of the Indemnitors, to perfect the security interest granted herein by filing  a UCC-1 and/or this Agreement or a copy or other reproduction of this Agreement.  Surety may add schedules or other documents to this Agreement as necessary to perfect its rights.  The failure to file or record this Agreement or any financing statement shall not release or excuse any of the obligations of Indemnitors under this Agreement.  The Surety's exercise of any of its rights as a secured creditor under this Agreement shall not be a waiver of any of the Surety's legal or equitable rights or remedies, including the Surety's right of subrogation.

29. **Change in Control.** The Indemnitors agree to provide the Surety with, at least, forty-five (45) days prior written notice of a Change in Control (defined below). Upon receipt of such notice, the Surety shall advise the Indemnitors, in writing of Surety's election to (i) approve such Change in Control or (ii) demand that the Indemnitors' procure the discharge of the Surety from any Bonds and all liability by reason thereof. If the Indemnitors fail to give the Surety timely notice of a Change in Control or if the Surety does not approve the written demand, the Indemnitors shall deposit a sum of money or collateral, of a type and value satisfactory to the Surety, equal to the aggregate penal sum of the then outstanding Bonds, as determined by the Surety in its sole discretion. The Indemnitors hereby acknowledge that if they or any one of them breaches the obligations set forth in this paragraph, the Surety will not have an adequate remedy at law, will suffer irreparable harm and shall be entitled to injunctive relief, enforcing the terms of this paragraph, as well as a final decree, order or judgment granting Surety specific performance of the terms of this Agreement.

   "Change in Control" shall mean: (a) the transfer, merger or consolidation (in one or more transactions) of all or substantially all of the assets of any non-individual bond principal or Indemnitor; (b) the acquisition (in one  or more transactions)  by any person or group, directly or indirectly, of fifty (50%) percent or more of the beneficial ownership or control of any bond principal or Indemnitor; or (c) the acquisition by any bond principal or Indemnitor, directly or indirectly, of fifty (50%) percent  or more of the beneficial ownership or control in any joint venture, subsidiary, division, affiliate, limited partnership, limited liability partnership, limited liability company or other entity through the issuance of ten (10%) percent or more of the voting power of the total outstanding voting stock of any bond principal or Indemnitor.

30. **Attorney-in-Fact.** The Indemnitors do hereby irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Indemnitors, with full right and authority to execute on behalf of, and sign the name of, the Indemnitors to any voucher, release, satisfaction, check, bill of sale or all or any property assigned by this Agreement to the Surety, or any other document necessary or desired to carry into effect the purpose of this Agreement. The Indemnitors hereby ratify and confirm all that such attorney-in-fact or Surety may do for the purposes set forth in this Agreement. The Indemnitors specifically agree to protect, indemnify and save and hold harmless Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise due to the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which the Indemnitors have or might hereafter have against Surety or its attorney-in-fact on account of anything done in enforcing the terms of this Agreement.

31. **Other Indemnity.** This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Surety, whether now existing or entered into hereafter.

32. **Amendment.** The rights and remedies afforded to Surety by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Surety.

33.   **Special Provisions:** Without limitation, this Agreement shall also cover the following surety bonds, which shall be Bonds as defined in this Agreement:

| Bond number: | Principal: |
|---|---|
| SUR0032475 | Energy XXI USA, Inc. |
| SUR0032483 | Energy XXI USA, Inc. |
| SUR0032484 | Energy XXI USA, Inc. |

The Indemnitors shall defend, indemnify and exonerate Surety for these Bonds.

34. EACH OF THE INDEMNITORS REPRESENT TO THE SURETY THAT SUCH INDEMNITORS  HAVE CAREFULLY READ THIS ENTIRE AGREEMENT, AND THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATIONS SET FORTH HEREIN. IN TESTIMONY HEREOF WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW. THE SURETY'S ACCEPTANCE OF THIS AGREEMENT SHALL BE PRESUMED AND IS DEEMED EFFECTIVE BY ITS RECEIPT OF THIS AGREEMENT, ITS RELIANCE HEREON, OR BY ITS EXECUTION OF ANY BOND FOR THE INDEMNITORS OR ANY OF THEM, WITH OR WITHOUT THE SURETY'S SIGNATURE BEING AFFIXED THERETO.

---

IF INDEMNITOR IS A CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP, SIGN BELOW:

Instructions:
1. If the entity is: 1) a corporation, the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC. 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign.
2. Please provide the entity's federal tax identification number on the line provided.
3. **Two signatures are required for all entities and all signatures must be notarized and dated.**

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Date of this Agreement Regardless of Date of Signing: <u>October 19, 2018</u>

MLCJR, LLC
_____
Indemnitor Name

_____          _____
Signature of Authorized Official          Seal          Signature of Authorized Official          Seal

Tang L. Sander     Manager          Vincent DeVito, EVP
_____          _____
Print or Type Name and Title          Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF <u>Texas</u>          County of <u>Harris</u>

On this <u>31st</u> day of <u>October</u>, <u>2018</u>, before me personally appeared <u>Craig L. Sanders</u>, known or proven to me to be the <u>manager</u> of the entity executing the foregoing instrument ("Entity") and <u>Vincent DeVito</u>, known or proven to me to be the <u>EVP</u> of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on

oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*BeRodarte*

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID #: 13009321-8

Notary Public residing at. *Houston, Harris County Texas*
Commission expires_ *01/29/2019*_____)

---

Cox Oil Offshore, L.L.C.
Indemnitor Name

Signature of Authorized Official                    Seal

*Craig L. Sanders*   *CEO*
Print or Type Name and Title

Signature of Authorized Official          *EVP*          Seal

*Vincent DeVito, EVP*
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF_ *Texas*_____        County of_ *Harris*_____

On this *31st* day of *October*_____, *2018*, before me personally appeared *Craig L. Sanders*_____, known or proven to me to be the_ *CEO*_____ of the entity executing the foregoing instrument ("Entity") and *Vincent Devito*_____, known or proven to me to be the_ *EVP*_____ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*BeRodarte*

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID # 13009321-8

Notary Public residing at. *Houston, Harris County, Texas*
(Commission expires_ *01/29/2019*_____)

---

Cox Operating, L.L.C.
Indemnitor Name

Signature of Authorized Official                    Seal

*Craig L. Sanders*   *CEO*
Print or Type Name and Title

Signature of Authorized Official                    Seal

*Vincent DeVito, EVP*
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF_ *Texas*_____        County of_ *Harris*_____

On this *31st* day of *October*_____, *2018*, before me personally appeared *Craig L. Sanders*_____, known or proven to me to be the_ *CEO*_____ of the entity executing the foregoing instrument ("Entity") and *Vincent Devito*_____, known or proven to me to be the_ *EVP*_____ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

*BeRodarte*

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID # 13009321-8

Notary Public residing at. *Houston, Harris County, Texas*
(Commission expires_ *01/29/2019*_____)

CEXXI, Inc.

Indemnitor Name

_____
Signature of Authorized Official            Seal

Craig L. Sanders   CEO
Print or Type Name and Title

_____
Signature of Authorized Official            Seal

Vincent DeVito , EVP
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Texas
County of Harris

On this 31st day of October , 2018 , before me personally appeared Craig L. Sanders , known or proven to me to be the CEO of the entity executing the foregoing instrument ("Entity") and Vincent Devito , known or proven to me to be the EVP of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Be Rodarte

Notary Public residing at Houston, Harris County, Texas
(Commission expires 01/29/2019 )

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID #13009321-8

---

Energy XXI Gulf Coast, Inc.

Indemnitor Name

_____
Signature of Authorized Official            Seal

Craig L. Sanders   CEO
Print or Type Name and Title

_____
Signature of Authorized Official            Seal

Vincent DeVito , EVP
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF Texas
County of Harris

On this 31st day of October , 2018 , before me personally appeared Craig L. Sanders , known or proven to me to be the CEO of the entity executing the foregoing instrument ("Entity") and Vincent Devito , known or proven to me to be the EVP of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

Be Rodarte

Notary Public residing at Houston, Harris County, Texas
(Commission expires 01/29/2019 )

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID #13009321-8

Energy XXI GOM, LLC
_____
Indemnitor Name

_____        _____
Signature of Authorized Official        Seal        Signature of Authorized Official        Seal

_Craig L. Sanders_  _Manager_        _Vincent De Vito_ , _EVP_
Print or Type Name and Title        Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF ___Texas___        County of ___Harris___

On this _31st_ day of _October_ , _2018_ , before me personally appeared _Craig L. Sanders_ , known or proven to me to be the _manager_ of the entity executing the foregoing instrument ("Entity") and _Vincent Devito_ , known or proven to me to be the _EVP_ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_B. Rodarte_

Notary Public residing at _Houston, Harris County, Texas_
(Commission expires _01/27/2019_ )

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID # 130093218

M21K, LLC
_____
Indemnitor Name

_____        _____
Signature of Authorized Official        Seal        Signature of Authorized Official        Seal

_Craig L. Sanders_  _Manager_        _Vincent DeVito_ , _EVP_
Print or Type Name and Title        Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF ___Texas___        County of ___Harris___

On this _31st_ day of _October_ , _2018_ , before me personally appeared _Craig L. Sanders_ , known or proven to me to be the _manager_ of the entity executing the foregoing instrument ("Entity") and _Vincent Devito_ , known or proven to me to be the _EVP_ of the Entity, and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_B. Rodarte_

Notary Public residing at _Houston, Harris County, Texas_
(Commission expires _01/27/2019_ )

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID # 130093218

EPL Oil & Gas, Inc.
_____
Indemnitor Name

_____
Signature of Authorized Official          Seal

_____
Print or Type Name and Title

███████████████████████████

_____
Signature of Authorized Official          Seal

Vincent DeVito, EVP
_____
Print or Type Name and Title

ACKNOWLEDGEMENT
STATE OF __Texas_____          County of __Harris_____

On this 31ˢᵗ day of October , 2016 , before me personally appeared __Craig L. Sanders__ , known or proven to
me to be the __CEO__ of the entity executing the foregoing instrument ("Entity") and
__Vincent Devito__ , known or proven to me to be the __EVP__ of the Entity,
and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on
oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN
WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

_____
Notary Public residing at. Houston Harris County, Texas
(Commission expires__01/27/2019_____)

BERENICE RODARTE
Notary Public, State of Texas
My Commission Expires
January 27, 2019

Notary ID # 13009321.8

# ARGONAUT INSURANCE COMPANY
## GENERAL INDEMNITY AGREEMENT

This General Agreement of Indemnity (this "Agreement") is made and entered into by the undersigned (individually and collectively, the "INDEMNITORS") for the benefit of Argonaut Insurance Company, and its direct and indirect subsidiaries, parent companies, and affiliates, whether in existence now or formed or acquired hereafter, the co-sureties, fronting companies, and companies which any of the foregoing entities may procure to issue or deliverany Bonds, the reinsurers of each of the foregoing entities, and the successors and assigns of each of the foregoing entities (individually and collectively, the "SURETY"), for the purposes of, among other things, indemnifying, exonerating, and saving harmless the SURETY from and against any and all liability, claims, demands, losses, costs, damages, and expenses in connection with any and all surety bonds, undertakings, guarantees, and/or contractual obligations previously, hereupon or hereafter executed, issued, procured, delivered, or undertaken by the SURETY, whether directly or as a result of any asset purchase, merger, acquisition, or similar transaction, including any renewals, modifications, and/or extensions thereof, for, on behalf of, or at the request of: any of the INDEMNITORS, whether individually or jointly with others; any current or hereafter created or acquired subsidiary, joint venture, and/or other legal entity in which any of the INDEMNITORS has a substantial, material, or beneficial interest; and/or any other party at the request of any of the INDEMNITORS, (individually and collectively, the "Bonds").

NOW THEREFORE, as an inducement to the SURETY executing, renewing, modifying, extending, or delivering one or more Bonds, the SURETY procuring the execution, renewal, modification, extension, or delivery of one or more Bonds, the SURETY refraining from canceling one or more Bonds, and/or the SURETY'S assumption of one or more Bonds, and for other good and valuable consideration, the INDEMNITORS agree with the SURETY as follows:

1. **PREMIUMS AND COLLATERAL FOR SURETYSHIP** - The INDEMNITORS shall pay or cause to be paid to the SURETY both the agreed premium and, upon written request by the SURETY at any time, collateral security for its suretyship until the INDEMNITORS shall furnish to the SURETY competent written evidence, satisfactory to the SURETY, of the termination of any past, present and future liability under any Bonds. The INDEMNITORS expressly waive any right to interest which may be earned on the collateral security and further consents that the collateral security provided in consideration of suretyship may be held by the SURETY in any investment or depository that the SURETY in its sole discretion deems advisable and prudent. The SURETY'S election not to demand collateral now or at any time shall not operate as a waiver of the right to demand and receive such collateral at any time before liability has terminated under any Bonds. Any and all collateral security now or in the future held by, or under the control of the SURETY shall secure all obligations of the INDEMNITORS to the SURETY arising, at any time, under the Bonds and the Agreement.

2. **INDEMNITY AND COLLATERAL FOR CLAIMS-The** INDEMNITORS shall indemnify, exonerate, and save harmlessthe SURETY from and against any and all liability, claims, demands, losses, costs, damages, and expenses, including, without limitation, any and all attorneys' and/or consultants' fees, expenses, costs, and disbursements, incurred by the SURETY under, in connection with, relating to, or as a result of having executed or procured any Bonds or in connection with, arising out of, or relating to any claim, action, or proceeding between the SURETY and the INDEMNITORS, or between the SURETY andany third party, in connection with, arising out of, or relating to any Bonds or the SURETY'S payment of or its liability or potential liability to pay any claims, irrespective of whether the claims are made against the SURETY as a joint or several obligor and whether the INDEMNITORS are then liable to make such payment, and to place the SURETY in funds to meet all of its liability or potential liability under any Bonds, immediately upon request and before the SURETY may be required to make any payment thereunder. A copy of the claim, demand, voucher, or evidence of the payment by the SURETY of any liability, claims, demands, losses, costs, damages, and expenses shall be prima facie evidence of the fact and amount of INDEMNITORS' liability to the SURETY under this Agreement. Any demand upon the SURETY by any obligee or beneficiary under any Bonds shall be sufficient to conclude that a liability exists and the INDEMNITORS shall then place the SURETY with sufficient funds in a form and amount deemed acceptable in the SURETY'S sole discretion, as collateral security to cover the liability.

3. **OTHER INDEMNITY** -- The INDEMNITORS shall continue to remain bound under the terms of this Agreement even though the SURETY may have heretofore or hereafter, with or without notice to or knowledge of the INDEMNITORS, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of any Bonds, from the INDEMNITORS or others. The rights, powers and remedies given the SURETY under this Agreement shall be and are in addition to and not in lieu of, any and all other rights, powers and remedies which the SURETY may have or acquire against the INDEMNITORS or others, whether by the terms of any agreement or by operation of law or otherwise.

4. **INVALIDITY** - In case any of the INDEMNITORS fail to execute this Agreement, or in case the execution hereof by any of the INDEMNITORS be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the INDEMNITORS executing the same, but each and every INDEMNITOR so executing shall be and remain full bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed.

5. **SURETIES** -All of the terms, provisions and conditions of this Agreement shall be extended to and for the benefit not onlyof the SURETY, either as a direct writing company or as a co-surety or reinsurer, but also for the benefit of any surety or insurance company or companies with which the SURETY may participate as a co-surety or reinsurer and also for the benefit of any other company which may execute any Bonds at the request of the SURETY.

6. **SETTLEMENT** - SURETY shall have the sole and exclusive right to decide and determine whether any claim, liability, suit, or judgment made or brought against SURETY on any Bonds shall or shall not be paid, compromised, resisted, defended, tried, or appealed, and SURETY'S decision thereon shall be final and binding upon the INDEMNITORS.

7. **DECLINE EXECUTION** - Unless otherwise specifically agreed in writing, the SURETY may decline to execute any bond and the INDEMNITORS shall make no claim to the contrary.

8. **CHANGES, WAIVER OF NOTICE** - Assent by the SURETY to changes in and Bonds or in the contracts or obligations covered by any Bonds or refusal to assent shall not release or in any way affect the obligations of the INDEMNITORS. The INDEMNITORS waive notice of the execution of Bonds, acceptance of this Agreement, DEFAULT or other acts giving riseto a bond claim or liability of the SURETY under Bonds.

9. **TERMINATION** -This Agreement may be terminated by any of the INDEMNITORS upon twenty days' written notice sent by registered mail to the SURETY at its surety home office at 13100 Wortham Center Drive, Suite 290, Houston, Texas 77065, Attention, President, Argo Surety, or to any other address may be provided by the SURETY at any time in writing, but any such notice of termination shall not operate to modify, bar, or discharge the INDEMNITOR as to the Bonds that may have been executedor authorized before the date on which such termination

notice becomes effective or as to any renewals, modifications, or extensions of such Bonds.

10. **SEVERABILITY** - If any provision or provisions of this Agreement be declared void or unenforceable under any law governing its construction or enforcement, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such provision or provisions were omitted.

11. **SPECIFIC PERFORMANCE** - The INDEMNITORS hereby represent and acknowledge that if any INDEMNITOR breaches its obligations set forth in paragraphs 1 or 2 of this Agreement, the SURETY will have no adequate remedy at law, will suffer irreparable harm, and shall be entitled to injunctive relief enforcing the terms of such paragraph, as well as a finaldecree, order or judgment granting SURETY specific performance of the terms of such paragraph.

12. **CHOICE OF LAW/FORUM** - It is mutually agreed that this Agreement is deemed made in the State of Texas, without giving effect to any conflicts of laws principles of that State or any other jurisdiction and regardless of the order in which the signatures of the parties shall have been affixed, and shall be interpreted, and the rights and liabilities of the parties determined in accordance with the laws of the State of Texas. The Indemnitors renounce any defenses available to them under the laws of Bermuda, Brazil or any jurisdiction other than Texas INDEMNITORS agree that all actions or proceedings arising directlyor indirectly from this Agreement shall be litigated only in courts having status within the State of Texas, and consents to the personal jurisdiction and venue of any local, state or Federal Court located therein. Provided that nothing in this provision shall restrict the ability of the Indemnitors or the Surety from domesticating a Judgment obtained in Texas in a court outside of Texas for purposes of collecting the Judgment.

13. **JOINT AND SEVERAL** - Each of the undersigned INDEMNITORS, its successors and assigns, is jointly and severallybound by the foregoing conditions of this Agreement.

14. **FACSIMILE** - This Agreement bearing the signature of the INDEMNITORS shall be valid, effective and enforceable whether received by the SURETY as an original, digital, or scanned image, or as a facsimile transmission.

IN WITNESS WHEREOF, INDEMNITORS have duly signed and sealed this Agreement this _20th_ day of _June_, 2022.

**IF INDEMNITOR IS A CORPORATION, LIMITED LIABLITY COMPANY OR PARTNERSHIP, SIGN BELOW:**

Instructions: If the entity is: 1) a corporation, the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC, 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign. Two signatures are required for all entities and all signatures must be notarized and dated. Please provide the entity's federal tax identification number on the line provided.

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized official of the business entity Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Dated: _20th June, 2022_

**MLCJR, LLC**

_____
Indemnitor Name

_____      Seal
Signature of Authorized Official

Craig L. Sanders, Manager
_____
Print or Type Name and Title

_____      Seal
Signature of Authorized Official

Vincent DeVito, EVP
_____
Print or Type Name and Title

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this _20th_ day of _June_, 20_22_, before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ CEO LLC _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
-ary ID 128469790

State of Texas

County of Dallas

On this 20TH day of JUNE, 20 22, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ EVP _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

**Cox Oil Offshore, L.L.C.**

Indemnitor Name

_____   Seal
Signature of Authorized Official

Craig L. Sanders, CEO

Print or Type Name and Title

_____   Seal
Signature of Authorized Official

Vincent DeVito, EVP

Print or Type Name and Title

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20TH day of JUNE, 20 22, before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ CEO _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

State of Texas

County of Dallas

On this 20TH day of JUNE, 20 22, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ EVP _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

ARGO November 2021

**Cox Operating, L.L.C.**

Indemnitor Name

_____

Signature of Authorized Official          Seal

Craig L. Sanders, CEO

_____

Print or Type Name and Title

█████████████

_____

Signature of Authorized Official          Seal

Vincent DeVito, EVP

_____

Print or Type Name and Title

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this ____ day of _____, 20__, before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

State of Texas

County of Dallas

On this ____ day of _____, 20__, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

**OEXXI, LLC**

Indemnitor Name

_____

Signature of Authorized Official          Seal

Craig L. Sanders, CEO

_____

Print or Type Name and Title

█████████████

_____

Signature of Authorized Official          Seal

Vincent DeVito, EVP

_____

Print or Type Name and Title

ARGO November 2021

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20TH day of JUNE , 20 22 , before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the ~~CEO AND~~ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

> **DAVID WITTROCK**
> Notary Public, State of Texas
> Comm. Expires 04-11-2023
> Notary ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

State of Texas

County of Dallas

On this 20TH day of JUNE , 20 22 , before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the EVP of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

> **DAVID WITTROCK**
> Notary Public, State of Texas
> Comm. Expires 04-11-2023
> Notary ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

**Energy XXI Gulf Coast, LLC**

_____
Indemnitor Name

_____          Seal
Signature of Authorized Official

Craig L. Sanders, CEO

_____
Print or Type Name and Title

_____          Seal
Signature of Authorized Official

Vincent DeVito, EVP

_____
Print or Type Name and Title

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20TH day of JUNE , 20 22 , before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the ~~CEO~~ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

> **DAVID WITTROCK**
> Notary Public, State of Texas
> Comm. Expires 04-11-2023
> ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

State of Texas

County of Dallas

On this 20th day of June, 20 22, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ EVP _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

**DAVID WITTROCK**
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

**Energy XXI GOM, LLC**
_____
Indemnitor Name

_____
Signature of Authorized Official                    Seal

Craig L. Sanders, CEO
_____
Print or Type Name and Title

_____
Signature of Authorized Official                    Seal

Vincent DeVito, EVP
_____
Print or Type Name and Title

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20th day of June, 20 22, before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ Manager CEO _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

**DAVID WITTROCK**
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

State of Texas

County of Dallas

On this 20th day of June, 20 22, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ EVP _____ of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

**DAVID WITTROCK**
Notary Public, State of Texas
Comm.

_____
(Signature of Notary Public)
My Commission expires: 4/11/23

**DAVID WITTROCK**
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

**M21K, LLC**

Indemnitor Name

Signature of Authorized Official                          Seal

Craig L. Sanders, CEO

Print or Type Name and Title

Signature of Authorized Official                          Seal

Vincent DeVito, EVP

Print or Type Name and Title

## ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20th day of June, 2022, before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ CEO of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

State of Texas

County of Dallas

On this 20th day of June, 2022, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ EVP of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

**EPL Oil & Gas, LLC**

Indemnitor Name

Signature of Authorized Official                          Seal

Craig L. Sanders, CEO

Print or Type Name and Title

Signature of Authorized Official                          Seal

Vincent DeVito, EVP

Print or Type Name and Title

## ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20th day of June, 2022, before me personally appeared Craig L. Sanders, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ CEO of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

(Signature of Notary Public)
My Commission expires: 4/11/23

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

ARGO November 2021

State of Texas

County of Dallas

On this 20th day of June, 20 22, before me personally appeared Vincent DeVito, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the EVP of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

(Signature of Notary Public)
My Commission expires: 4/21/23

---

**Lochridge P&A, LLC**

Indemnitor Name

Signature of Authorized Official                    Seal

Print or Type Name and Title
Craig L. Sanders CEO

Signature of Authorized Official                    Seal

Print or Type Name and Title
Vincent DeVito EVP & GC

---

ACKNOWLEDGMENT

State of Texas

County of Dallas

On this 20th day of June, 20 22, before me personally appeared CRAIG L. SANDERS, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the _____ CEO of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

(Signature of Notary Public)
My Commission expires: 4/11/23

State of Texas

County of Dallas

On this 20th day of June, 20 22, before me personally appeared VINCENT DEVITO, to me known or proven to be the person represented, who being by me duly sworn, deposes and says that he or she: a) is the EVP of Limited Liability Company Indemnitor (the "LLC"); b) executed the above Agreement on behalf of the LLC as the free and voluntary act and deed of said LLC for the uses and purposes stated therein; and c) that he or she signed his or her name thereto under the express authority of the LLC.

DAVID WITTROCK
Notary Public, State of Texas
Comm. Expires 04-11-2023
Notary ID 128469790

(Signature of Notary Public)
My Commission expires: 4/11/23

# EXHIBIT D
## COLLATERAL SECURITY AGREEMENT

DocuSign Envelope ID: 75BB20AB-7381-43A9-A035-4D74BE526811

 ARGO SURETY

# ARGONAUT INSURANCE COMPANY
## COLLATERAL SECURITY AGREEMENT

This Collateral Security Agreement (the "Agreement") is made on this 13 day of February , 2022 by and between Argonaut Insurance Company ("Argo" or "the Surety") and TMS International L.L.C ("Owner").

1. **General Indemnity Agreement Signed by Owner**. Owner has executed or will execute a General Agreement of Indemnity ("GIA") indemnifying Argo for all Losses arising out of the execution of Bonds as surety for Owner, as more fully explained in the GIA. The term "Losses" shall have the same meaning in this Agreement as in the GIA. The term "Bonds" shall have the same meaning in this Agreement as in the GIA.

2. **General Indemnity Agreement Not Signed by Owner**. Alternatively, Owner wishes to assist persons or entities who have signed a GIA in favor of Argo in obtaining Bonds from Argo but has not itself signed the GIA. Nonetheless, the term "Losses" shall have the same meaning in this Agreement as in the GIA. The term "Bonds" shall have the same meaning in this Agreement as in the GIA.

3. **Relationship of This Agreement to the GIA**. Nothing in this Agreement shall detract from any right afforded to Argo by the GIA. Nothing in this Agreement shall detract from any right afforded to Argo by any other agreement that may exist between or among the parties. Nothing in this Agreement shall detract from any right afforded to Argo by operation of law. Rather, this Agreement states supplemental terms governing collateral (the "Collateral") provided by Owner, or to be provided by Owner, to secure the obligations undertaken in the GIA. If there is a conflict or inconsistency between this Agreement and the GIA, Argo is entitled to apply the provision of the Agreement or GIA most beneficial to Argo, as determined by Argo in its sole discretion. The GIA is attached to this Agreement as Exhibit A.

4. **Grant of Security Interest**. In consideration of Argo executing or considering executing Bonds as surety for Owner or for any signatory to the GIA, and to secure performance of the obligations to Argo stated in the GIA, Owner hereby grants Argo a first priority continuing security interest in the following Collateral:

    a. All securities accounts held by Texas Capital Bank or any successor in interest to Texas Capital Bank , as securities intermediary, bearing Account Nos. █████1134; █████04388 and any accounts formerly bearing such account numbers but to which new account numbers have been assigned.

    b. All securities, financial assets, investment property, cash, or other assets now held or to be held in Account Nos. █████01134; █████04388; and

    c. All proceeds from the Collateral described in paragraphs 4(a) and 4(b) above.

5. **Representations and Acknowledgments.**

    a. Owner represents to Argo that Owner is the legal and beneficial owner of the Collateral.

    b. Owner represents to Argo that Owner has not pledged or otherwise encumbered the Collateral except as set forth in this Agreement.

    c. If Owner is not a signatory to the GIA, Owner represents to Argo that it will benefit from assisting the signatories to the GIA in seeking surety bonds from Argo.

    d. Owner represents to Argo that its liabilities do not exceed its assets, and that its liabilities will not exceed its assets as a result of the grant of the security interest described in paragraph 4 above.

    e. Owner represents to Argo that the individual signing this Agreement on behalf of Owner is fully authorized to do so.

    f. Owner acknowledges that the existence of a security interest in the Collateral does not depend on the filing of a financing statement under the Uniform Commercial Code.

6. **Use by Argo of the Collateral**. In addition to any other rights afforded to Argo by the GIA, by any other agreement that may exist between or among the parties, or by operation of law, Argo shall have the following rights with respect to the Collateral.

    a. Argo shall have the right, at any time and without notice or legal process and in Argo's sole discretion, to deposit, invest, convert, cash, exchange, renew, sell or otherwise use or dispose of any or all of the Collateral in any manner, in such form and on such terms as it deems proper.

    b. Argo shall have the right to use any or all of the Collateral at any time, without notice or legal process and in Argo's sole discretion, in payment or compromise of any premiums, liability, claims, demands, judgments, damages, awards, fees, expenses, disbursement or any other costs recoverable by the Argo under the GIA. But Argo shall be under no obligation to proceed against any or all of the Collateral before proceeding against any signatory to the GIA.

    c. Argo may sell or liquidate any or all of the Collateral at public or private sale to itself or to any other person with or without notice to Owner. If such a sale occurs, Argo shall return to Owner only funds realized after all of the obligations to Argo stated in the GIA, in this Agreement, or otherwise existing have been met. The signatories to the GIA shall remain liable for any deficiency if the proceeds of any collection, realization, sale or disposition of the Collateral are insufficient to pay all amounts to which Argo is entitled.

    d. Argo shall not be liable to Owner for any actions taken by Argo pursuant to this Agreement, or pursuant to the GIA, under the good faith belief that the Surety was liable or potentially liable for any payment made, or that it was necessary or expedient to make any such payment, whether or not such liability, necessity or expediency in fact exists or existed.

DocuSign Envelope ID: 75BB20AB-7381-43A9-A035-4D74BE526811

e.  Argo shall not be liable to Owner for any diminution in value, loss, damage or destruction of or to any or all of the Collateral, no matter how such diminution in value, loss, damage or destruction may occur.

f.  Any additional or substitute security or property subsequently pledged as Collateral by or on behalf of the Indemnitor shall be subject to the terms of this Agreement and the terms of the GIA.

g.  Owner authorizes Argo periodically to confirm the status of any Collateral with the financial institution holding such Collateral.

h.  Argo may exercise all rights and remedies of a secured party under the Uniform Commercial Code as in effect in any applicable jurisdiction. Owner authorizes Argo to file any financing statement or other documents necessary or, in the sole discretion of the Surety, advisable or expedient, to perfect the security interest created by this Agreement and to enable Argo to exercise and enforce its right and remedies with respect to the Collateral.

7.  **Release of Collateral.** Argo has no obligation to release or return any Collateral, or the proceeds of Collateral, until Argo has received a written release in form and substance satisfactory to Argo of Argo's obligations with respect to each and every bond executed by Argo as surety for benefit of Owner or any signatory to the GIA. Thus, for example, if Argo has executed several bonds for the benefit of Owner, receipt by Argo of a release of one bond does not require Argo to release all or any part of the Collateral if releases have not also been received for each and every other remaining bond.

8.  **Prior Collateral Security Agreements.** This Agreement replaces any collateral security agreement previously executed by Owner, but any security interest granted Argo under any collateral security agreement previously executed by Owner shall not be impaired by this new Agreement.

9.  **Ranking of Security Interest.** Argo has a valid and continuing first priority lien on and security interest in the Collateral. Owner will not create or permit to exist any security interests in the Collateral except for the security interest in favor of Argo. Owner will, at its own expense, defend the existence and first ranking of Argo's security interest in the Collateral against the claims and demands of all persons whomsoever.

10. **Choice of Law.** This Agreement shall be interpreted under the substantive law of the State of Texas, without giving effect to the choice of law principles of the State of Texas.

11. **Not Transferable or Assignable.** This Agreement is not assignable or transferable to any party other than Owner without the written consent of an authorized officer of Argo.

12. **Amendment.** The rights and remedies afforded to Argo in this Agreement can only be impaired by a written amendment to this Agreement signed by an authorized officer of the Surety.

13. **Subsequent Execution.** Owner waives any defense that this Agreement was executed after the date of any Bond. Owner shall be bound by this Agreement whether this Agreement was executed before, after, or at the same time as any Bond.

14. **Uniform Electronic Transactions Act.** Owner agrees that this Agreement and any and all Bonds issued by Argo will be subject to the terms of the Uniform Electronic Transactions Act ("UETA"), to the extent that the UETA has been adopted by the State legislature in the relevant jurisdiction, and any and all substantially similar federal or state legislation designed to regulate electronic commerce.

DocuSign Envelope ID: 75BB20AB-7381-43A9-A035-4D74BE526811

**IF OWNER IS A CORPORATION, LIMITED LIABILITY COMPANY OR PARTNERSHIP, SIGN BELOW:**

Instructions:
1. If the entity is: 1) a corporation, the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company, the manager(s) or member(s) should sign on behalf of the LLC, 3) a partnership, the partner(s) should sign on behalf of the partnership, or 4) a trust, all trustees should sign.
2. Please provide the entity's federal tax identification number on the line provided.
3. **Two signatures are required for all entities and all signatures must be notarized and dated.**

Each of the undersigned hereby affirms to the Surety as follows: I am a duly authorized official of the business entity Owner on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such business entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such business entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

Date of this Agreement Regardless of Date of Signing: <u>February 13, 2023</u>

EPL Oil & Gas LLC
_____
**Owner Name**

_____          _____
**Signature of Authorized Official**          **Seal**          **Signature of Authorized Official**          **Seal**

Craig Sanders, CEO
_____          _____
**Print or Type Name and Title**          **Print or Type Name and Title**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

ACKNOWLEDGEMENT
STATE OF_____<u>Texas</u>_____          County of <u>Harris</u>_____

On <u>2/14/2023</u> before me, <u>Craig Sanders</u>_____, personally appeared <u>CEO of EPL OIL & GAS LLC</u>_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of <u>Texas</u> that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

SAMANTHA WADE HINCKLEY
Notary ID #131789439
My Commission Expires
November 7, 2026

Notary Public residing at_<u>Texas</u>_____
(Commission expires_<u>11/7/2026</u>_____)

Accepted and Agreed:
Argonaut Insurance Company

By: _____
Name: Mark Farina
Title: SVP, Global CUO, Surety
An Authorized Representative

# EXHIBIT E
## ACCOUNT CONTROL AGREEMENT

DocuSign Envelope ID: 2A7F6F00-6D6D-4C15-B225-FB6FBB68BD9D

## TEXAS CAPITAL BANK

## ACCOUNT CONTROL AGREEMENT

This Agreement (this "Agreement") is entered into by and among Texas Capital Bank (the "Bank"), Argonaut Insurance Company ("Creditor") and EPL Oil & Gas LLC, ("Client") and shall be effective as of February 14, 2023 (the "Effective Date"). Client and Creditor have entered into a certain security agreement (the "Security Agreement"), pursuant to which Client has granted Creditor a security interest in the deposit account established and covered by this Agreement, as described herein.

WHEREAS, The Bank will establish deposit accounts numbered ▮▮▮▮01134 and ▮▮▮4388, each entitled EPL Oil & Gas LLC, Argonaut Insurance Collateral Account (collectively, the "Account").

WHEREAS, pursuant to the Security Agreement, Client has granted Creditor a security interest in the Account and in all funds deposited into the account in the past and until such time as this Agreement is terminated pursuant to the terms set forth herein (the "Funds").

WHEREAS, Creditor, Client and the Bank are entering into this Agreement to provide for the Control of the Account and of the Funds, and to perfect Creditor's security interest in the Account and the Funds.

NOW THEREFORE, the parties hereby agree as follows:

1.   **The Account.**  Bank hereby represents and warrants to Creditor and Client that (i) the Account has been established in the name and with the account numbers recited above, and (ii) except for the claims and interests of Creditor and Client in the Account, and except for any claim in favor of Bank pursuant to this Agreement, Bank does not know of any claim to or interest in the Account. The parties hereby acknowledge that Client shall not have the right to receive any interest accrued on the Funds. Interest accrued on the Account will be paid by the Bank into the Account and added to the balance thereof on a monthly basis, or otherwise as agreed, in accordance with the instructions set forth pursuant to this Agreement.

2.   **Bank's Duties.**  Beyond Bank's duty to establish and maintain the Account in accordance with this Agreement, applicable deposit account terms and conditions, and any other applicable agreement governing the Account (collectively, the "Account Agreements"), Bank shall not owe any duty, express or implied, to Client or Creditor.

3.   **Control of Account.**

#4517300.3

DocuSign Envelope ID: 2A7F6F00-6D6D-4C15-B225-FB6FBB68BD9D

a.    It is hereby agreed that Creditor shall at all times have exclusive dominion and "control" (as defined in Section 9-104 of the Uniform Commercial Code as adopted in the state of Texas) over the Account and the Funds, and neither the Client nor any of its affiliates shall have any dominion or control over the Account or the Funds. Bank shall not comply with any requests by the Client in connection with the Account, but Bank may accept deposits from the Client into the Account.

b.    As a condition to the financial accommodations extended by Creditor to Client, Creditor requires control over all Funds deposited into the Account. Client hereby (i) transfers to Creditor exclusive dominion and control over the Account and the Funds, and (ii) authorizes Bank to comply with any request of Creditor with regard to the Account, subject to applicable administrative parameters set forth pursuant to this Agreement.

c.    Creditor shall have a security interest in the deposits into and withdrawals from the Account. Bank and Client hereby agree that Client shall have no authority to (i) change the signatory required on the Account; (ii) terminate the Account unless in accordance with the terms of this Agreement, (iii) change any instructions under this Agreement, or (iv) attempt to transfer or withdraw any funds from the Account.

4.    **Priority of Lien.** Bank hereby acknowledges that: (i) Creditor's lien on the Account and the Funds shall have priority over Bank's interest therein, except to the extent of the setoff rights relating to account charges, returned items and other customary fees that Bank may charge to Creditor pursuant to applicable deposit terms and conditions or other Bank agreements applicable to the Account; (ii) it will comply with the instructions it receives from Creditor directing disposition of the Funds in accordance with applicable administrative parameters set forth pursuant to this Agreement, but the Bank will not require the Client's further consent; (iii) Creditor has exclusive dominion and control over the Account; and (iv) Bank will not grant control over the Account to any other party.

5.    **Access to Records.** Creditor and Bank shall provide Client access to Account records, and Bank shall provide copies of all Account statements to both Creditor and Client at the addresses set forth herein.

6.    **Termination.** This Agreement will continue in full force and effect until termination by Bank upon at least thirty (30) days prior written notice to the other parties or terminated by Creditor upon at least three (3) days prior written notice to the other parties. Client shall not have the right or ability to terminate this Agreement. When Creditor's security interest in the Account and the Funds has terminated, Creditor will terminate this Agreement by giving Bank at least three (3) days prior written notice of termination. Upon termination of this Agreement, Bank will close the Account and no further deposits will be made or accepted into the Account. Before termination of this Agreement, Creditor shall provide instructions

#4517300.3

DocuSign Envelope ID: 2A7F6F00-6D6D-4C15-B225-FB6FBB68BD9D

to Bank regarding disposition of the Funds, and Bank shall have no further duty or liability with respect to the Funds (to Creditor, Client or any third party) beyond complying with Creditor's disposition instructions. For the purpose of this paragraph, prior written notice of a termination shall be deemed to have been given two (2) Business Days after deposit in the U.S. mail postage prepaid, addressed as indicated below, or, if earlier, on the date that such written notice is actually received by the noticed party.

7. **Notice.** All notices, including phone notices, monthly statements of account, and copies of all documents that are to be given or sent to any party hereto must be sent:

If to Bank:   Texas Capital Bank
2350 Lakeside Blvd, Ste 800
Richardson, TX 75082
Attn: Christina Matthews
Email: christina.matthews@texascapitalbank.com

If to Creditor: Argonaut Insurance Company
P.O. Box 469011
San Antonio, TX 78246
Attn: Mark Farina

If to Client:   TMS International L.L.C.
2835 East Carson Street
Southside Works
Pittsburgh, PA 15203

8. **Miscellaneous.** This Agreement may be amended only by a written agreement signed by Bank, Client and Creditor. This Agreement is governed by and will be construed according to the laws of the State of Texas. This Agreement supersedes, and makes void, any and all agreements entered into between or among Bank, Client and/or Creditor prior to the date of this Agreement relating to the services contemplated hereby. If any term or provision set forth in this Agreement shall be invalid or unenforceable, the remainder of this Agreement, or the application of such terms or provisions to persons or circumstances, other than those to which it is held invalid or unenforceable, shall be construed in all respects as if such invalid or unenforceable term or provision were omitted. This Agreement may be executed in any number of counterparts, all of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing and delivering one or more counterparts.

9. **Indemnification and Release.** In order to induce Bank to agree to the terms of this Agreement, Client and Creditor jointly and severally agree to release and hold harmless Bank, its directors, officers, employees, successors and assigns from and against any and all loss, liability, cost, damage, and expense, including reasonable

#4517300.3

DocuSign Envelope ID: 2A7F6F00-6D6D-4C15-B225-FB6FBB68BD9D

attorney's fees, arising in any manner out of Bank's acting on any notice, orders or instructions concerning the Account or otherwise acting in good faith under this Agreement, except for such loss, liability, cost, damage, and expense, including reasonable attorney's fees, arising from Bank's gross negligence or willful misconduct. Under no circumstances shall Bank be held liable or responsible for consequential, incidental or special damages.

10.     EACH PARTY HERETO HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY EACH PARTY HERETO, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. ANY PARTY IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY ANY OTHER PARTY.

*[Remainder of page intentionally left blank]*

#4517300.3

DocuSign Envelope ID: 2A7F6F00-6D6D-4C15-B225-FB6FBB68BD9D

AGREED:

By: _____
Name:  Craig Sanders
Title:  CEO


Argonaut Insurance Company

By: _____
Name:  Mark Farina
Title:  Senior Vice President


TEXAS CAPITAL BANK

By: _____
Name:  Steve Ray
Title:  Senior Vice President