## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| **MLCJR LLC, et al.,**[1] | **CASE NO. 23-90324 (CML)** (Jointly Administered) |
| **DEBTORS.** | |
| **MICHAEL D. WARNER, solely in his official capacity as Chapter 7 Trustee of Cox Operating, L.L.C.,** | |
| **Plaintiff,** | **ADVERSARY PROCEEDING** **NO. 25-03349** |
| **VERSUS** | |
| **MAJOR EQUIPMENT & REMEDIATION SERVICES, LLC,** | |
| **Defendant.** | |

### TRUSTEE'S MOTION TO COMPROMISE WITH MAJOR EQUIPMENT & REMEDIATION SERVICES, LLC PURSUANT TO BANKRUPTCY RULE 9019 AND BANKRUPTCY CODE § 363

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT**

---

[1] The debtors in these cases (the "**Debtors**"), along with the last four digits of each Debtor's federal tax identification number, are: MLCJR LLC (the "**MLCJR LLC Estate**") (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOL, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).

Page **1** of **11**

> **THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Michael D. Warner (the "**Trustee**"), solely in his capacity as chapter 7 trustee for the above-captioned administratively consolidated estates (the "**Estates**"), respectfully files this *Trustee's Motion to Compromise with Major Equipment & Remediation Services, LLC Pursuant to Bankruptcy Rule 9019 and Bankruptcy Code § 363* (this "**Motion**") seeking the entry of an order, in substantially similar form to the proposed order attached hereto (the "**Proposed Order**"), approving the compromise between Major Equipment & Remediation Services, LLC ("**Major**") (collectively, the Trustee and Major are referred to herein as the "**Parties**") and the Trustee, pursuant to Bankruptcy Rule 9019 and Bankruptcy Code § 363. In support of the Motion, the Trustee represents as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter constitutes a core proceeding, and this Court has jurisdiction under 11 U.S.C. § 105 and under 28 U.S.C. § 157. Since this is a core proceeding, the Court has constitutional authority to enter final orders regarding the Motion. Further, to the extent the Court determines that it does not have authority to enter a final order on all or a portion of the Motion, the Trustee requests that the Court issue a report and recommendation for a final order to the United States District Court for the Southern District of Texas, Houston Division.

4. The statutory and other legal bases for the relief provided herein are section 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") Rule 9019.

## BACKGROUND

5.      On May 14, 2023 (the "**Petition Date**"), the Debtors filed voluntary chapter 11 petitions, initiating the above-captioned "**Bankruptcy Cases.**"

6.      On May 16, 2023, the Bankruptcy Cases were consolidated for procedural purposes only and have since been jointly administered by the Court under Case Number 23-90324.

7.      On or about July 11, 2023, Major filed a proof of claim into the Claims Registry of the Bankruptcy Cases maintained by the Estates' Court-approved claims agent, Kroll, therein asserting a $937,350.29 general unsecured claim against the MLCJR LLC Estate (the "**Major POC**").  No other proofs of claim have been filed in the Bankruptcy Cases by Major and Major has not asserted a Chapter 11 administrative expense claim against the Estates.

8.      On February 28, 2024, the Court converted the Bankruptcy Cases to a case under Chapter 7 of the Bankruptcy Code.[2]

9.      On February 29, 2024, Randy W. Williams became the interim chapter 7 trustee for each of the Estates.

10.      On May 6, 2024, the Court approved Michael D. Warner's election as permanent chapter 7 trustee for each of the Estates, subject to his ability to qualify under section 322(a) of the Bankruptcy Code.[3] On May 8, 2024, Michael D. Warner filed his *Notice of Bond and Acceptance of Election*.[4] As of May 8, 2024, Michael D. Warner is the duly elected, qualified, and acting Chapter 7 trustee for each of the Estates, and remains Trustee as of this date.

---

[2] Doc. No. 1720.

[3] Doc. No. 1919.

[4] Doc. No. 1996.

11. Subsequent to his appointment, the Trustee began an investigation of the Debtors' affairs, including, but not limited to, potentially avoidable preferential transfers.

12. The Debtors' records indicate that during the ninety (90) days prior to the Petition Date, the Debtors transferred to Major, by wire, bank transfers, or check, the aggregate sum of $521,998.91 (collectively, the "**Transfers**"), which Transfers the Trustee contends are avoidable pursuant to Chapter 5 of the Bankruptcy Code (the "**Avoidance Claims**").

13. Prior to initiating the Adversary Proceeding, the Trustee, through counsel, sent a demand letter to Major outlining the Avoidance Claims and seeking a return of the Transfers pursuant to § 547 of the Bankruptcy Code.

14. On May 14, 2025, the Trustee filed this Adversary Proceeding Number 25-03349 (this "**Adversary Proceeding**") with the Court seeking to avoid and recover the Transfers pursuant to section 547(b) of the Bankruptcy Code and naming Major Equipment & Remediation, LLC as defendant.[5]

15. After good faith negotiations between the Parties, the Trustee determined, in his sound business judgment, that a settlement of the Avoidance Claims is in the best interest of the Estates and their creditors.

**RELIEF REQUESTED**

16. In an effort to avoid costly and time-consuming litigation, the Parties propose to enter into the Settlement Agreement, attached hereto as **Exhibit "A"** (the "**Settlement Agreement**"). Pursuant to the Settlement Agreement, Major will (i) pay the agreed upon amount of $68,221.70 (the "**Settlement Payment**"), and (ii) compromise, settle, release, discharge, and extinguish any and all claims that Major has or could have asserted against the Estates, the Trustee

---

[5] Adversary Case No. 25-03349, Doc. No. 1.

and his agents, as well as all claims which Major could assert against the Estates pursuant to 11 U.S.C. § 502(h) as a result of the Settlement Agreement and payment of the Settlement Payment.[6]

17.     In exchange, the Trustee agrees to compromise, settle, release, discharge, and extinguish any and all claims the Trustee or the Estates has or could have asserted against Major in the Bankruptcy Cases, including the Avoidance Claims and all claims under State, Federal, and common law.

> The Settlement Agreement is in the best interest of the Estates in that it provides for the immediate recovery by the Estates. In short, the Trustee believes that the resolution proposed herein will strengthen the Estates' ability to maximize recovery and will provide certainty and finality in the most cost-efficient manner. It is the Trustee's position that the Transfers should be recovered and preserved for the benefit of the Estates pursuant to Chapter 5 of the Bankruptcy Code, and the Trustee remains confident in his ability to prevail should the matter proceed to trial. However, in exercising his business judgment, the Trustee must consider not only the likelihood that he will ultimately prevail on the merits, but he must also evaluate the cost going forward, the viability of the defenses Major has articulated, and the likelihood of recovery, not to mention the cost associated therewith, should he obtain a favorable judgment. The Trustee acknowledges that further litigation would only increase the legal fees and expenses already incurred and serve to further reduce, if not eliminate altogether, any benefit the Estates would receive from a successful outcome. As with any contested matter, the element of uncertainty must be considered where, as here, facts remain in dispute. Lastly, the Trustee must give weight to the cost to

---

[6] The discussion in this Motion of the Settlement is subject to the terms of the Settlement Agreement, and in the event of a conflict between this Motion and the Settlement Agreement, the Settlement Agreement shall control.

the Estates of collection efforts, should he obtain judgment against Major at trial, and the timeline associated with such efforts.

18.     In accordance with applicable law, this Motion will be noticed for hearing, allowing the Debtors' creditors the opportunity to oppose the Settlement Agreement, should any choose to do so.

19.     Considering the Settlement Agreement and the cost associated with litigating the issues presented, the Trustee asserts that the Settlement Agreement is fair and equitable and in the best interest of the Estates and their creditors and should thus be granted.

## BASIS FOR RELIEF

20.     Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Moreover, § 105(a) of the Bankruptcy Code authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

21.     Courts within the Fifth Circuit have recognized that "[c]ompromises are favored in bankruptcy because they minimize litigation costs and further the parties' interest in expediting the administration of a bankruptcy case."[7]

22.     When a compromise results in the disposition of estate property (e.g., claims against third parties), courts have required the estate to comply with 11 U.S.C. § 363(b),[8] which authorizes a debtor in possession (after notice and a hearing), to use, sell, or lease property of the estate outside

---

[7] *In re Idearc, Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009) (citing *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996)).

[8] *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263-66 (5th Cir. 2010) (requiring the court to scrutinize a proposed compromise of a claim under Bankruptcy Code § 363 and Bankruptcy Rule 6004 where a higher offer was made for that claim); *Peltz v. Gulfcoast Workstation Group (In re Bridge Info. Sys.)*, 293 B.R. 479, 486 (Bankr. E.D. Mo. 2003) (stating that "any compromise of a cause of action that is property of the estate is a transfer of that asset that must comply with § 363(b)(1) to be enforceable").

the ordinary course of business.[9] The debtor in possession or trustee can "satisfy its fiduciary duty to the debtor, creditors and equity holders" under § 363(b) by establishing an articulated business justification.[10]

23.     The Fifth Circuit has recognized that this standard is both "flexible and encourages discretion"[11] and its sufficiency "depends on the case."[12] "[T]he bankruptcy judge 'should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.'"[13]

24.     According to the Supreme Court, this Court must simply make an informed, independent judgment as to whether the Settlement Agreement is fair and equitable.[14] The initial burden to satisfy the "fair and equitable" standard is not high, rather "[t]he [proponent] need only show that his decision falls within the 'range of reasonable litigation alternatives.'"[15] The bankruptcy judge's responsibility "is not to decide the numerous questions of law and fact…but rather to canvass the issues and see whether the settlement 'fall[s] below the lowest point in the

---

[9] *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing 11 U.S.C. § 363(b)).

[10] *ASARCO, Inc. v. Elliot Mgmt.* (*In re Asarco, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) (quoting *Cont'l Air Lines*, 780 F.2d at 1226)). *See also Moore*, 608 F.3d at 263 ("A sale of assets under § 363…is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons.").
[11] *Asarco*, 650 F.3d at 601.

[12] *Cont'l Air Lines*, 780 F.2d at 1226.

[13] *Cont'l Air Lines*, 780 F.2d at 1226 (quoting *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983)). *See also*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1309 (5th Cir. 1985) (considering business judgment in the context of § 365 and stating "'As long [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision…should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code…'" (quoting *Allied Technology, Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982))) (alterations to original).

[14] *Protective Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

[15] *In re Roqumore*, 393 B.R. 474, 480 (Bankr. S.D. Tex. 2008) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983), *cert. denied*, 464 U.S. 822 (1983); *Cook v. Waldron*, Nos. 04-81197, 05-3438, 2006 U.S. Dist. LEXIS 31411 at *10 (S.D. Tex. Apr. 18, 2006); *Nellis v. Shugrue*, 165 B.R. 115 (S.D.N.Y. 1994)) (alterations to original).

range of reasonableness.'"[16] This Court must compare "the terms of the compromise with the likely rewards of litigation"[17] after being "apprised of all the necessary facts for an intelligent, objective, and educated evaluation."[18]

25. The general standard for assessing whether an agreement is "fair and equitable" involves three factors: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise."[19]

i. Probability of Success

26. The Fifth Circuit has instructed that "it would not be a settlement if to obtain approval the [proponent] would have to demonstrate that he could not succeed had the [] claim been pressed."[20] Rather, the proponent need only establish that "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end."[21] Importantly, "it is unnecessary to conduct a minitrial to determine the probable outcome of any claims waived in the settlement."[22]

---

[16] *W.T. Grant*, 699 F.2d at 608, *cert. denied*, 464 U.S. 822 (1983), (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972)). *See also*, *Idearc*, 423 B.R. at 190 (quoting *Nellis*, 165 B.R. at 123).

[17] *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. (In re Cajun Elec. Power Coop.),* 119 F.3d 349, 355 (citing *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortgage Corp.*) 68 F.3d 914, 917 (5th Cir. 1995) (citing *In re Jackson Brewing Co.,* 624 F.2d 599, 602 (5th Cir. 1980))).

[18] *Jackson Brewing*, 624 F.2d at 602.

[19] *Cajun Elec.,* 119 F.3d at 356.

[20] *Florida Trailer and Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (alteration to original).

[21] *Florida Trailer*, 284 F.2d at 573 (citation omitted).

[22] *Cajun Elec.*, 119 F.3d at 356.

27.     While the Trustee believes that he has a strong case for avoiding the Transfers from Major under Bankruptcy Code § 547 on the merits, there are a myriad of defenses that Major will assert in response that will interject a significant risk of non-recovery on the Trustee. The Trustee seeks to avoid incurring substantial legal fees and expenses, as even a favorable outcome would likely yield a reduced recovery for the Estates from the face amount of the Transfers.  The Trustee suggests that the recovery here is well within the range of likely outcomes if the case were litigated.

### ii.     Complexity and Duration

28.     Although the litigation is not expected to be particularly complex, the discovery process and related hearings would nonetheless be costly, burdensome, and needlessly time-consuming. The resulting additional expenses and delay would not serve the best interests of the Estates or their creditors.

### iii.     Other Factors Bearing on the Wisdom of the Compromise

29.     Under this part of the analysis, the Fifth Circuit has instructed that courts consider: (a) "the best interest of the creditors, 'with proper deference to their reasonable views'" and (b) "the extent to which the settlement is truly the product of arms-length negotiations and not of fraud or collusion."[23]

30.     "In evaluating the interests of the creditors, the court must take into account the consideration offered by the settling party and the degree to which the creditors object to determine whether the settlement furthers their best interests."[24]

---

[23] *Id.* (citing *Foster Mortgage*, 68 F.3d at 917-18).
[24] *In re Asarco LLC*, No. 05-21207, 2009 Bankr. LEXIS 5721 at *35 (Bankr. S.D. Tex. June 5, 2009) (citing *Cajun Elec.*, 119 F.3d at 358 (noting that although a numerical majority of the creditors opposed the settlement, the overall interests of the creditors were well served because the settlement ridded the estate of property that was a "major impediment to reorganization").

31.     The Parties desire to enter into the Settlement Agreement after thorough review of all relevant information, considering the risks and costs likely to be associated with any litigation, and as a result of arms-length negotiations.

32.     The Trustee contends that the Settlement Agreement will allow the Trustee to avoid unnecessary expense and delay in resolving the issues pertaining to the Avoidance Claims and the uncertainty of litigation. Moreover, the Trustee submits that the result of litigating the Avoidance Claims, after including the cost of such litigation, would likely be very similar to the results reached through the Settlement Agreement.

**WHEREFORE**, for the reasons outlined herein, the Trustee respectfully requests entry of an order in substantially similar form as the Proposed Order (1) approving the Settlement Agreement; and (2) for such other and further relief as the Court deems just and proper under the circumstances.

**Signature on following page**

Respectfully submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:    */s/ Brooke W. Altazan*
Paul Douglas Stewart, Jr. (La. Bar # 24661)
*Admitted to Southern District of Texas*
*(SDTX Federal No. 432642)*
dstewart@stewartrobbins.com
William S. Robbins (Tx. Bar # 24100894)
wrobbins@stewartrobbins.com
Brandon A. Brown (Tx. Bar # 24104237)
bbrown@stewartrobbins.com
Brooke W. Altazan (Tx. Bar # 24101002)
baltazan@stewartrobbins.com
301 Main Street, Suite 1640
Baton Rouge, LA 70801-0016
Telephone: (225) 231-9998
Facsimile: (225) 709-9467

***Counsel for Michael D. Warner, Chapter 7 Trustee***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on 30 March 2026, this pleading was served via the Court's CM/ECF electronic system on all parties registered to receive such notice.

*/s/ Brooke W. Altazan*
Brooke W. Altazan

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| MLCJR LLC, et al.,[1] | CASE NO. 23-90324 (CML) |
| DEBTORS. | (Jointly Administered) |
| MICHAEL D. WARNER, solely in his official capacity as Chapter 7 Trustee of Cox Operating, L.L.C., | |
| Plaintiff, | ADVERSARY PROCEEDING |
| VERSUS | NO. 25-03349 |
| MAJOR EQUIPMENT & REMEDIATION SERVICES, LLC, | |
| Defendant. | |

SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** ("**Settlement Agreement**") is entered into by and between (A) Michael D. Warner, solely in his capacity as Chapter 7 trustee for the above-captioned administratively consolidated estates (the "**Trustee**" of the "**Estates**"), and (B) Major Equipment & Remediation Services, LLC ("**Major**") (collectively, the Trustee and Major are referred to herein as the "**Parties**" and each, as a "**Party**").

RECITALS:

**WHEREAS,** on May 14, 2023, the Debtors filed voluntary Chapter 11 petitions (the "**Petition Date**") in the United States Bankruptcy Court, for the Southern District of Texas,

---

[1] The "Debtors" in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MLCJR, LLC (0875) (the "**MLCJR Estate**"); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).

Page **1** of **8**

Exhibit A

Houston Division (the "**Court**"). As of May 16, 2023, the Debtors' bankruptcy cases (the "**Bankruptcy Cases**") were consolidated for procedural purposes only and have since been jointly administered by the Court under Case Number 23-90324.

**WHEREAS,** on or about July 11, 2023, Major filed a proof of claim into the Claims Registry of the Bankruptcy Cases maintained by the Estates' Court-approved claims agent, Kroll, therein asserting a $937,350.29 general unsecured claim against the MLCJR LLC Estate (the "**Major POC**"). No other proofs of claim have been filed in the Bankruptcy Cases by Major and Major has not asserted a Chapter 11 administrative expense claim against the Estates.

**WHEREAS,** on February 28, 2024, the Court converted each of the Debtors' Bankruptcy Cases to cases under Chapter 7 of Title 11, United States Code (the "**Bankruptcy Code**") [Dkt. No. 1720].

**WHEREAS,** on May 6, 2024, the Court approved Michael D. Warner's election as permanent Chapter 7 trustee for each of the Estates, subject to his ability to qualify under Section 322(a) of the Bankruptcy Code [Dkt. No. 1919]. On May 8, 2024, Michael D. Warner filed his Notice of Bond and Acceptance of Election [Dkt. No. 1996]. As of May 8, 2024, Michael D. Warner is the duly elected, qualified, and acting Chapter 7 trustee for each of the Estates, and remains as Trustee as of this date.

**WHEREAS,** the Trustee asserts that, during the ninety (90) days prior to the Petition Date, Cox Operating transferred to Major, by wire, bank transfers, or check, the aggregate sum of $521,998.91 (collectively, the "**Transfers**").

**WHEREAS**, on May 14, 2025, the Trustee filed Adversary Proceeding Number 25-03349 (the "**Adversary Proceeding**") against Major in the Court seeking to avoid and recover the Transfers pursuant to Chapter 5 of the Bankruptcy Code (the "**Avoidance Claims**").[2]

**WHEREAS,** this Court granted extensions of time within which the Defendant could file responsive pleadings until October 16, 2025.[3]

**WHEREAS,** Major maintains that it has viable defenses to the Avoidance Claims.

**WHEREAS,** without admitting that the other Party's claims or defenses have merit, the Parties desire to settle the issues relating solely to the Avoidance Claims according to the terms and conditions set out herein.

**IT IS NOW, THEREFORE, STIPULATED AND AGREED** by and between the Parties as follows:

1.      <u>Waiver and Release of Certain Preferential Transfers Claims by Trustee.</u> For and in consideration of this Settlement Agreement, and of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Trustee agrees to compromise, settle, release, discharge, and extinguish any and all claims the Trustee or the Estates has or could have asserted against Major in the Bankruptcy Cases, including the Avoidance Claims and all claims under State, Federal, and common law (the "**Release**"). For the avoidance of doubt, nothing herein shall be deemed a release by the Trustee of any of his rights or obligations, including his statutory right to object to any proof of claim or administrative expense claim filed by Major. Notwithstanding anything to the contrary herein, upon the occurrence of the Revival of Major's Obligation, as defined below, the Release granted pursuant

---

[2] Adversary Case No. 25-03349, Dkt. No. 1.

[3] Adversary Case No. 25-03349, Dkt. Nos. 6, 9, and 12.

Page **3** of **8**

to this paragraph shall be deemed null and void *ab initio* and shall have no legal force or effect whatsoever.

2.     Waiver and Release of Claims by Major. For and in consideration of this Settlement Agreement, and of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Major agrees to compromise, settle, release, discharge, and extinguish any and all claims that Major has or could have asserted against the Estates, the Trustee and his agents, as well as all claims which Major could assert against the Estates pursuant to 11 U.S.C. § 502(h) as a result of this Settlement Agreement and payment of the Settlement Amount.  Major acknowledges and represents that it (i) has filed no other proofs of claim into the Claims Registry of the Bankruptcy Cases other than the Major POC; and (ii) has not asserted a Chapter 11 administrative expense claim against the Estates and waives all rights to file such a claim in the future.

3.     Consideration. In exchange for the aforementioned waiver, Major will remit to the Trustee in indefeasible funds, *via* wire transfer (to an account designated in writing by the Trustee) the sum of **SIXTY EIGHT THOUSAND TWO HUNDRED TWENTY-ONE DOLLARS AND 70/100TH DOLLARS** ($68,221.70) (the "**Settlement Amount**") within fourteen (14) calendar days following entry of the Court's Order approving the settlement described herein pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Approval Order**").

4.     Effective Date. This Settlement Agreement shall be binding and deemed effective when (i) both Parties have executed the same and delivered counterparts of such signatures to the other Party, (ii) the Trustee receives, in indefeasible funds, the Settlement Amount, and (iii) the Court enters the Approval Order.

5. <u>Sufficiency of Consideration and other Settlement Matters</u>. The Parties hereto acknowledge and agree that the promises and obligations set forth herein are supported by sufficient and adequate consideration. The Parties acknowledge and agree that they have thoroughly considered all aspects of this Settlement Agreement, that they have discussed this Settlement Agreement and its implications with their attorneys, that they have carefully read and fully understand all the provisions of this Settlement Agreement and that they are voluntarily entering into this Settlement Agreement. Nothing in this Settlement Agreement shall release any Party from any obligation arising under this Settlement Agreement. This Settlement Agreement reflects and represents the compromise of disputed claims, and this Settlement Agreement is entered into solely to avoid the uncertainty, inconvenience, and expense of litigation.

6. <u>Revival of Major's Obligation</u>. If the Estates repay, restore, or return, in whole or in part, the Settlement Amount, because the payment or transfer, or the incurrence of the obligation so satisfied, or the execution of the Settlement Agreement by Major, is declared to be void, voidable, or otherwise recoverable under any agreement, or state or federal law (collectively, a "**Major's Voidable Transfer**"), including, pursuant to a case under Title 11 of the United States Code for Major, or a state court proceeding, including an assignment for the benefit of creditors, by, against or on behalf of Major (collectively, a "**Major Case**"), or because the Trustee or the Estates elect to do so on the reasonable advice of counsel to the Trustee in connection with an assertion that the payment, transfer, or incurrence of the Settlement Amount, or part thereof, or the execution of the Settlement Agreement, is a Major's Voidable Transfer, then, the liability for the Transfers will automatically and immediately, without further action, be revived, reinstated, and restored and will exist as though the Major's Voidable Transfer had never been made or occurred; and the Trustee or the Estates shall have an allowed claim against Major in a Major Case in the

full amount of the Transfers, which allowed claim will not be disputed by Major in such a Major's Case (the "**Revival of the Major's Obligation**").

7.      Representation and Warranties.  Each person who signs this Settlement Agreement represents and warrants that he or she has the authority and capacity to act on behalf of the Party for whom they are signing and to bind the Party to the terms of this Settlement Agreement.

8.      Parties Bear Own Expenses Related to Litigation and Settlement. The Parties agree that each Party will bear its own attorneys' and other fees, expenses, and disbursements incurred by or on behalf of such Party in connection with this Settlement Agreement, and all matters addressed therein.

9.      Assignment. No Party hereto shall have the right to assign, in whole or in part, its interest in this Settlement Agreement or any of its respective rights or obligations hereunder. Subject to foregoing, this Settlement Agreement shall be binding upon the Parties hereto and their successors and permitted assigns.

10.      Whole Agreement; Effect on Other Agreements. There are no other agreements, arrangements, or understandings between the Parties hereto regarding the subject matter of this Settlement Agreement. This Settlement Agreement supersedes all previous contracts, agreements, and understandings between the Parties respecting the subject matter of this Settlement Agreement. As between the Parties, no oral statements or prior written materials respecting the subject matter hereof shall be of any force and effect.

11.      Language Construction; Headings. The language in all parts of this Settlement Agreement shall be construed, in all cases, according to its plain meaning, and each Party hereto acknowledges that such Party and its counsel have reviewed this Settlement Agreement and have actively participated in its drafting. Accordingly, the Parties agree that the normal rule of

construction, to the effect that any ambiguities are to be resolved against the drafting Party, shall not be applied in the interpretation of this Settlement Agreement. The headings used herein are for reference only and shall not limit or control the meaning or interpretation of any provision hereof. This Settlement Agreement shall be interpreted, construed, and enforced in accordance with the laws of the State of Texas.

12. Severability. The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid, or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity, and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

13. No Third-Party Beneficiaries. Other than as set forth herein, none of the obligations and duties of any Party under this Settlement Agreement shall in any way or in any manner be deemed to create any obligation to, or any rights in, any person or entity not a party to this Settlement Agreement.

14. Modifications or Amendments. This Settlement Agreement shall not be modified, altered, amended, or vacated, except by a writing signed by all Parties or by order of Court. No course of dealing between or among any persons having any interest in this Settlement Agreement shall be deemed effective to modify or amend any part of this Settlement Agreement, or any rights or obligations of any Party under, or by reason of, this Settlement Agreement.

15. Taxes. Each Party shall be responsible for (i) determining its own tax consequences associated with this Settlement Agreement; and (ii) the payment of any taxes that may be due and owing by such Party as a consequence of this Settlement Agreement.

16.     Counterparts. This Settlement Agreement may be executed in any number of counterparts, each and all of which shall be deemed an original and all of which together shall constitute one and the same instrument. The exchange of copies of this Settlement Agreement and executed signature pages hereto by facsimile transmission or electronic mail shall constitute effective execution and delivery of this Settlement Agreement and may be used in lieu of the original Settlement Agreement for all purposes.

IN WITNESS WHEREOF, the Parties have caused this Settlement Agreement to be duly executed and delivered.

FOR AND ON BEHALF OF:

Major Equipment & Remediation Services, LLC

By: _____      Date: 3/10/2026
Print Name: _____ Mallory Monres _____
Title: _____ Finance Director _____

By: _____      Date: 3/11/26
Michael D. Warner, solely in his capacity
as Chapter 7 Trustee for the Estates