**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
|  | ) |  |
| **MLCJR LLC,** *et al.,*[1] | ) | **Case No. 23-90324 (CML)** |
|  | ) |  |
| **Debtors.** | ) | **Jointly Administered** |
|  | ) |  |
|  | ) |  |

**TRUSTEE'S MOTION FOR THE ENTRY OF AN ORDER: (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF HENDERSON AUCTIONS; (II) APPROVING THE SALE OF EQUIPMENT THROUGH PUBLIC AUCTION FREE AND CLEAR OF LIENS, CLAIMS, AND INTERESTS; (III) APPROVING CARVE-OUT AND APPLICATION OF SALE PROCEEDS; AND (IV) GRANTING RELATED RELIEF**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

---

[1]   The debtors in these cases (collectively, the "Debtors"), along with the last four digits of each Debtor's federal tax identification number, are:  MLCJR LLC (0875); Cox Oil Offshore, L.L.C. (7047); Cox Operating, L.L.C. (0939); Energy XXI GOM, LLC (0027); Energy XXI Gulf Coast, LLC (8595); EPL Oil & Gas, LLC (9562); and M21K, LLC (3978).  The Debtors' address is 4514 Cole Ave, Suite 1175, Dallas, Texas 75205.

Michael D. Warner, solely in his official capacity as the duly elected chapter 7 trustee (the "Trustee") for the above captioned administratively consolidated estates (the "Estates"), respectfully submits this motion (this "Motion") seeking entry of an order in substantially similar form to the proposed order attached hereto (the "Proposed Order"):

(i) Authorizing the Trustee to employ and retain Henderson Auctions ("Henderson") under 11 U.S.C. § 327(a) as the Estates' auctioneer pursuant to the terms and conditions contained in that certain *Auction Agreement* (a true and correct copy of which is attached to the Proposed Order as **Exhibit** "**1**", the "Agreement") among the Trustee, on behalf of the Estates, and Henderson;

(ii) Authorizing the Trustee to sell, in one or more sales (individually, a "Sale" and collectively, the "Sales") the Equipment (as defined below) under 11 U.S.C. § 363(b), through the Auction (as defined below) conducted by Henderson;

(iii) Authorizing the Sales of the Equipment free and clear of all liens, claims, and interests under 11 U.S.C. § 363(f);

(iv) Authorizing, for each Sale, the Trustee to execute, in the same or substantially similar form, the *Bill of Sale* attached to the Proposed Order as **Exhibit** "**2**" and all other documents the Trustee determines to be necessary or appropriate to consummate each Sale;

(v) Approving the Carve-Out with the DIP Secured Parties (each as defined below) and the Trustee's proposed disbursement of the proceeds generated from each Sale; and

(vi) Granting any and all related relief the Trustee is otherwise entitled to.

In support thereof, the Trustee submits the *Declaration of Jason M. Bush in Support of the Trustee's Motion for the Entry of an Order: (I) Authorizing the Employment and Retention of Henderson Auctions; (II) Approving the Sale of Equipment Through Public Action Free and Clear of Liens, Claims, and Interests; (III) Approving Carve-Out and Application of Sale Proceeds; and (IV) Granting Related Relief* (the "Bush Declaration," a copy of which is attached hereto as **Exhibit** "**A**") and respectfully avers as follows:

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the Southern District of Texas (this "Court") has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This Motion is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper under 28 U.S.C. § 1408.

2.     The statutory predicates for the relief sought in this Motion include sections 105, 327(a), and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 2014, 2016, 6004, 6005, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 2014-1, 2016-1, 4002-1(e), and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Bankruptcy Rules").

## GENERAL BACKGROUND

3.     On May 14, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.[2] The Court consolidated the Debtors' chapter 11 bankruptcy cases (the "Bankruptcy Cases") for joint administration under the caption, *In Re: MLCJR LLC, et al.*, Case No. 23-90324 (CML) (the "Bankruptcy Case").[3] As of the Petition Date, and according to the *Declaration of Ryan Onohundro, Chief Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* (the "Omohundro Declaration"), the Debtors had interests in approximately 750 producing wells, a majority of which were operated by Debtor Cox Operating, LLC across more than 60 fields.[4]

---

[2]     *See, e.g., In re* MLCJR, LLC, Case No. 23-90324, Doc. No. 1; *In re* M21K, LLC, Case No. 23-90325, Doc. No. 1; *In re* EPL Oil & Gas, LLC, Case No. 23-90326, Doc. No. 1; *In re* Cox Operating, LLC, Case No. 23-90327, Doc. No. 1; *In re* Cox Oil Offshore, LLC, Case No. 23-90328, Doc. No. 1; *In re* Energy XXI Gulf Coast, LLC, Case No. 23-90329, Doc. No. 1; *In re* Energy XXI GOM, LLC, Case No. 23-90330, Doc. No. 1.

[3]     Doc. No. 103. Unless otherwise specified, Doc. Nos. refer to Case No. 23-90324.

[4]     Doc. No. 34.

3

4.      For the next nine months following the Petition Date, the Debtors operated in chapter 11 as debtors-in-possession, selling substantial amounts of property to W&T Offshore, Inc. ("W&T")[5] and Natural Resources Worldwide, LLC;[6] however, on February 28, 2024, the Debtors' Bankruptcy Cases were converted to chapter 7 of the Bankruptcy Code.[7] The following day, the United States Trustee appointed Randy W. Williams to serve as the interim chapter 7 trustee. Thereafter, Michael D. Warner was elected as the chapter 7 trustee of the Bankruptcy Cases and has served as the Trustee since May 8, 2024.

## THE ASSETS TO BE AUCTIONED

5.      Among the assets of the Estates are numerous pipes, tubular inventory and other equipment (collectively, the "Equipment"), which are stored across four (4) sites not belonging to the Estates:

(i)     Patterson Tubular Services ("Patterson") in Morgan City, Louisiana (an inventory of the Equipment stored by Patterson at this site is attached hereto as **Exhibit** "**B**");

(ii)    Inspection Oilfield Services ("IOS") in Houston, Texas (an inventory of the Equipment stored by IOS at this site is attached hereto as **Exhibit** "**C**");

(iii)   NOV XL ("NOV") in Beaumont, Texas (an inventory of the Equipment stored by NOV at this site is attached hereto, *in-globo*, as **Exhibit** "**D**"); and

(iv)    Baker Hughes (and together with NOV, IOS, and Patterson, the "Storage Vendors" and individually, "Storage Vendor") in Broussard, Louisiana (an inventory of the Equipment stored by Baker at this site is attached hereto as **Exhibit** "**E**").

6.      The vast majority of the Equipment has been held in storage for a number of years. As storing the Equipment may continue to generate storage fees, which may partially constitute

---

[5]     *See* Doc. No. 1357.

[6]     *See* Doc. No. 1626.

[7]     *See* Doc. No. 1720.

chapter 7 administrative expenses under 11 U.S.C. § 503(b), it is important for the Estates to liquidate it as expediently and efficiently as permitted under the circumstances. While the Trustee reserves all rights to object, the storage costs for each site, through March 31, 2026, have been asserted to be as follows: (1) Patterson – approximately $15,120.00; (2) IOS – approximately $13,440.00; (3) NOV – approximately $20,800.00; and (4) Baker Hughes – TBD. To curb the accruing costs, the Trustee, in consultation with his professionals, evaluated the potential avenues to liquidate the Equipment under these circumstances.

7. Ultimately, and given the sheer amount of Equipment, its weight, and storage across multiple cities and states, the Trustee has determined, in the exercise of his business judgment, that the most efficient and expedient method to dispose of the Equipment would be through a public, online only auction (the "Auction") where the Equipment is sold to one or more winning bidders (the "Winning Bidder(s)"). To do so, the Trustee believes that the services of its chosen auctioneer, Henderson, will greatly facilitate this goal given Henderson's experience and qualifications in providing its services to its clients. As noted in the Bush Declaration, Henderson Auctions is a trade name of J.A.H. Enterprises, Inc.

8. Under the Agreement the Trustee negotiated, Henderson will advertise, promote, and conduct the Auction. The Estate is not required to advance any direct costs that Henderson incurs in setting up and marketing the Auction; instead, these direct costs will be paid from the proceeds of the Auction. Additionally, Henderson will collect a buyer's premium in the amount of ten percent (10%) of each lot sold that will be paid by the Winning Bidders. The starting bid for the Equipment at each of the four (4) sites will be no less than the asserted balance of the outstanding storage fees due to the Storage Vendor. The Trustee has determined that if the proceeds of the Auction are sufficient, it will accept the asserted storage fees and pay them from

proceeds as set forth herein.  Otherwise, the Trustee reserves all rights to object to the asserted storage fees.

9.      Prior to filing this Motion, Baker Hughes advised the Trustee's counsel that it had disposed of certain of the Equipment that was stored with them. The Trustee is in the midst of investigating the extent of Equipment that Baker Hughes may have disposed of. In the interim, and while the Trustee continues his investigation, the Trustee considers it prudent to seek authority to Auction any Equipment stored with Baker Hughes. The Trustee may decide to go forward with the Auction of the Equipment without including those items Baker Hughes may have disposed of, and reserves the right to auction the disposed items at a later date under the authority of the order sought herein. For the avoidance of doubt, however, the Trustee expressly reserves all rights and remedies the Estates may have against Baker Hughes and nothing contained herein is to be construed as a waiver of these rights and remedies.

## APPLICABLE LIENS

10.     The Trustee believes that the DIP Secured Parties hold first priority liens on the Equipment.  On June 13, 2023, the Court entered that certain *Final Order (I) Authorizing Debtors (A) To Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) To Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection to Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b)* (the "Final Financing Order").[8] Among other things, the Final Financing Order:

    (i)      recognized that the Debtors were jointly and severally liable for their obligations in
             connection with the DIP Facility "in a principal amount not to exceed

---

[8]    Doc. No. 434.

6

$345,191,752.00," inclusive of a New Money Facility of $75,000,000.00 (each as defined in the Final Financing Order);

(ii)    granted certain liens in all unencumbered property (the "DIP Liens") in favor of Amarillo National Bank ("ANB"), BP Energy Company ("bpec," and together with ANB, the "DIP Lenders"), and ANB, in its capacity as administrative agent and collateral agent acting at the direction of the DIP Lenders (the "DIP Agent," and together with the DIP Lenders, the "DIP Secured Parties"), but excluding the proceeds of (a) most avoidance actions and (b) fifty (50%) percent of the net proceeds of any claims against the Debtors' directors and officers;

(iii)    granted a "lien upon all tangible and intangible pre- and post-petition property of each Debtor that is junior and subordinate to [(a)] valid, perfected and non-avoidable liens (as defined in Section 101(37) of the Bankruptcy Code) in existence as of the Petition Date (other than the Primed Liens) on or in such property or [(b)] valid and non-avoidable liens (other than Primed Liens) in existence as of the Petition Date that are deemed perfected subsequent to such commencement as permitted by Section 546(b) of the Bankruptcy Code on or in such property" (clauses (a) and (b) together, the "Permitted Prior Liens").

11.    In anticipation of the conversion of the Bankruptcy Cases to chapter 7 of the Bankruptcy Code, on February 28, 2024, the Debtors filed, and the Court approved, that certain *Stipulation and Second Order Regarding DIP Agent's Emergency Motion for Relief from the Automatic Stay to Enforce Rights under the DIP Documents and Use of Cash Collateral* (the "DIP Stipulation").[9]  In addition to reaffirming and ratifying the Final Financing Order, the DIP Stipulation provided a limited carve out for chapter 7 administration and allocated, *inter alia*, a carve out of up to $2.865 million based on available cash in the Debtor's operating account (the "Operating Reserve"), to "be used to fund the wind-down of the Debtors' remaining oil and gas assets, including maintenance, monitoring, and payroll expenses," plus $1.45 million from the chapter 11 professionals fee concessions under the DIP Stipulation.[10]

---

[9]    Doc. No. 1714.

[10]    Doc. No. 1714.

12.     Following the Bankruptcy Case's conversion to chapter 7 of the Bankruptcy Code, the Court entered that certain *Stipulation and Agreed Order Regarding Carveout and Application of Proceeds* (the "Proceeds Stipulation") among the Trustee and the DIP Secured Parties.[11] Among other things, the Proceeds Stipulation specified that "the DIP [Secured Parties] will credit all proceeds constituting DIP Collateral received by the DIP [Secured Parties] – including both Litigation Assets Proceeds and Non-Litigation Collateral - to the [New Money Facility] first, until such amount is paid in full."[12] Under the Proceeds Stipulation, the percentage of each "Recovery" the Estates are entitled to with respect to "Non-Litigation Collateral" is "to be determined on a case-by-case basis[.]"[13]

13.     Given the Equipment qualifies as Non-Litigation Collateral, the Trustee approached the DIP Secured Parties to negotiate a carve-out for the Estates. After arms-length negotiations, the DIP Secured Parties have agreed to provide the Estates a carve-out of reasonable legal fees, costs, and 13% of the proceeds (the "Carve-Out").[14]

14.     While the Trustee believes the DIP Secured Parties hold first priority liens in the Equipment, in an abundance of caution, the Trustee also conducted state-wide UCC searches for each of the Debtors in their respective jurisdictions, copies of which are attached hereto, *in-globo*, as **Exhibit** "**F**". The Trustee believes that any liens or interests shown on Exhibit "F", solely to the extent the Equipment is among the collateral securing such lien or interest, would be junior to the

---

[11]    Doc. No. 2498.

[12]    Doc. No. 2498 at ¶ 1 (alterations to original).

[13]    Doc. No. 2498 at ¶ 4(d).

[14]    To the extent that the Trustee and the DIP Secured Parties cannot agree as to the legal fees and/or costs, either may seek a determination from this Court.

liens of the DIP Secured Parties.[15]  However, out of an abundance of caution, notice will be given to these parties (the "Potential Lienholders") to the extent they may assert an interest in the Equipment. A schedule of the Potential Lienholders is attached hereto as **Exhibit** "**G**".

### LAW AND ARGUMENT

**I.     The Court Should Authorize the Estate to Employ and Retain Henderson as Auctioneer.**

15.     To facilitate the Trustee's ability to liquidate the Equipment in an efficient and expeditious manner, and maximize the value of the Estate, the Trustee seeks to employ and retain Henderson as the Estate's auctioneer under 11 U.S.C. § 327(a). The Trustee has selected Henderson because of its experience and qualifications in providing auctioneer services to its clients as well as its success in auctioning property in bankruptcy matters.

16.     To the best of the Trustee's knowledge, Henderson, as an auctioneer to be retained under 11 U.S.C. § 327(a), is both disinterested, as defined in 11 U.S.C. § 101(14), and does not hold any interest adverse to the Estates. Henderson will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Henderson will supplement its disclosure to the Court.

17.     11 U.S.C. § 328(a) enables the Trustee, with this Court's approval, to employ Henderson under § 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." Under

---

[15]     Based upon present information and belief, it appears that many of the parties who filed UCC-1 financing statements may not have any outstanding indebtedness owed. For instance, it appears that EIG Management Company, LLC was acting as collateral agent for Flint River VPP II, LLC and EP Northern Investments, LLC [*see* Doc. No. 479, pgs. 42, 91, and 102]; however, based upon the Trustee's review of Kroll's claims registry, none of these entities have filed a proof of claim. Counsel, however, has enrolled on behalf of Flint River VPP II, LLC and EP Northern Investments, LLC. *See* Doc. No. 1042. It is the Trustee's understanding that these entities have been paid in full under a prior *Order* entered by this Court. *See* Doc. No. 1357, ¶ 46. Similarly, and while Frost Bank initially filed Claim No. 128 against Cox Operating, LLC, it was later withdrawn. *See* Doc. No. 957.

9

the Agreement the Trustee negotiated, the Estate is not required to advance any direct costs that Henderson incurs in setting up and marketing the Auction; instead, these direct costs will be paid from the proceeds of the Auction. Additionally, the Agreement contemplates Henderson collecting a buyer's premium in the amount of ten percent (10%) of each lot sold that will be paid by the Winning Bidder(s).

18.     As required by FED. R. BANKR. P. 2014(a),[16] the facts set forth herein and the information in the exhibits attached hereto set forth: (i) the specific facts showing the necessity for Henderson's employment; (ii) the Trustee's reasons for selecting Henderson; (iii) the professional services proposed to be provided by Henderson; (iv) the arrangement between the Trustee and Henderson with respect to compensation; and (v) to the best of the Trustee's knowledge, the extent of Henderson's connections, if any, to the parties in interest in these matters.

19.     As such, this Court should authorize the Trustee's retention and employment of Henderson under 11 U.S.C. § 327(a) of the Bankruptcy Code. Moreover, the Trustee requests the Court approve the terms of Henderson's compensation and reimbursement of direct expenses without further application under 11 U.S.C. § 330.

**II.     The Trustee's Decision to Auction the Equipment is Fair and Consistent with its Reasonable Business Judgment.**

20.     This Motion contemplates that one or more Winning Bidders will purchase the Equipment through the Auction, which will be accomplished under section 363(b) of the

---

[16]     FED. R. BANKR. P. 2014(a) ("The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.").

Bankruptcy Code. Section 363(b) provides that the Trustee, "after notice and a hearing," may "sell. . .other than in the ordinary course of business, property of the estate."[17]

21. The Trustee can "satisfy its fiduciary duty to the debtor, creditors and equity holders" under section 363(b) by establishing an articulated business justification.[18] The United States Court of Appeals for the Fifth Circuit has recognized that this standard is both "flexible and encourages discretion"[19] and its sufficiency "depends on the case."[20] The bankruptcy judge "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."[21] In determining whether to approve a sale under section 363(b), a bankruptcy court can consider:

> (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether a transaction has been proposed and

---

[17] 11 U.S.C. § 363(b)(1); *see also Licensing by Paolo v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997) ("a sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it"); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court[s] can authorize a sale of all a Chapter 11 debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action."); *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct") (citations omitted).

[18] *ASARCO, Inc. v. Elliot Mgmt.* (*In re Asarco, L.L.C.*), 650 F.3d 593, 601 (5th Cir. 2011) (quoting *Cont'l Air Lines*, 780 F.2d 1223, 1226 (5th Cir. 1986)); s*ee also Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010) ("A sale of assets under § 363…is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons."); *In re 240 N. Brand Partners*, 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (citing to *Lionel* for proposition that "debtors who wish to utilize section 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification.").

[19] *Asarco*, 650 F.3d at 601.

[20] *Cont'l Air Lines*, 780 F.2d at 1226.

[21] *Cont'l Air Lines*, 780 F.2d at 1226 (quoting *In re Lionel Corp.*, 722 F.2d at 1071); *see also, e.g.*, *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303, 1309 (5th Cir. 1985) (considering business judgment in the context of § 365 and stating "'As long [the decision] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision . . . should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code'" (quoting *Allied Technology, Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982)) (alterations to original)).

11

negotiated in good faith; (iv) the proportionate value of the asset to the estate as a whole; (v) the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property; and (vi) whether the asset is increasing or decreasing in value.[22]

22.     The Trustee's decision to sell the Equipment to one or more Winning Bidders is based on his sound business judgment to liquidate the Estates' assets. Notably, liquidating the Equipment will cut off further storage costs that could be imposed as administrative expenses against the Estate. Moreover, the Trustee has negotiated a Carve-Out with the DIP Secured Parties which will provide a monetary benefit to the Estate.

23.     Since the Trustee has articulated a valid business reason for the Sales, the business judgment rule acts as a presumption that the Trustee has acted on an informed basis, in good faith, and in the honest belief that the Sales are in the best interests of the Estates.[23]

## III.     The Court Should Authorize the Sales Free and Clear Under 11 U.S.C. § 363(f).

24.     Pursuant to this Motion, the Trustee also requests authorization to sell the Assets free and clear of any liens, claims, encumbrances, or other interests that may be asserted against the Equipment.  While section 363(f) permits the sale of assets "free and clear of any interests," the term "any interest," as used in section 363(f), is not defined anywhere in the Bankruptcy Code;[24] however, such "free and clear" provision permits a sale free and clear of interests beyond

---

[22]  *In re Rosbottom*, 2010 Bankr. LEXIS 4305 *12 (Bankr. W.D. La. Dec. 1, 2010) (citing *Cont'l Air Lines*, 780 F.2d at 1226; *Lionel*, 722 F.2d 1071); *see also, e.g.*, *In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & H.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

[23]  *In re Gulf States Steel*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002) ("The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met.").

[24]  *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252, 259 (3d Cir. 2000).

liens and permits a sale free and clear of claims,[25] contractual rights,[26] and statutory interests.[27]  In addressing the scope of the term "any interest," the Third Circuit in *Folger Adam* observed that while some courts have "narrowly interpreted that phrase to mean only *in rem* interests in property," the trend in modern cases is towards "a broader interpretation which includes other obligations that may flow from ownership of the property."[28]  For instance, the Fourth Circuit in *In re Leckie Smokeless Coal Co.* concluded that § 363(f) is not limited to *in rem* interests.[29]

25.     Since section 363(f) is drafted in the disjunctive, the Trustee is permitted to sell property "free and clear of any interest" if *any* of the following conditions are satisfied:[30]

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

---

[25]   *In re TWA*, 322 F.3d 283, 288 (3d. Cir. 2003).

[26]   *In re Dynamic Tooling Sys., Inc.*, 349 B.R. 847, 854 (Bankr. D. Kan. 2006).

[27]   *Precision Indus. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 543-548 (7th Cir. 2003).

[28]   *Folger*, 209 F.3d at 258 (citing 3 COLLIER ON BANKRUPTCY 363.06[1]).

[29]   *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573, 582 (4th Cir. 1996) ("Yet while the plain meaning of the phrase 'interest in such property' suggests that not all general rights to payment are encompassed by the statute, Congress did not expressly indicate that, by employing such language, it intended to limit the scope of section 363(f) to in rem interests, strictly defined, and we decline to adopt such a restricted reading of the statute here.") (citations omitted).

[30]   *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

13

26.     Additionally, a court may authorize sales of assets free and clear of any liens, claims, or encumbrances under section 105 of the Bankruptcy Code.[31]

27.     The Trustee understands that, based upon the terms of the Final Financing Order,[32] as ratified and reaffirmed by the DIP Stipulation,[33] the DIP Secured Parties hold valid and perfected and first priority liens upon the Equipment. Given the vast majority of the Equipment has been in storage for a number of years and not used in the Debtor's operations, it appears that the Louisiana Oil Well Lien Act would not apply with respect to the Equipment.[34] The Trustee will provide notice of the Motion to the Potential Lienholders to the extent they may claim an interest in the Equipment.

28.     As part of the proposed sale free and clear of liens and claims, a debtor is generally required to provide adequate protection to the holder of any interest in the property.[35]  Here, all liens and claims in and to the Equipment will attach to the proceeds (subject to the Carve-Out and other disbursements) with the same validity, extent, and priority that otherwise exists.  The Trustee submits that these provisions and protections provide adequate protection to any creditor or party with an interest in the Equipment.  Further, the Trustee will provide notice of this Motion to the Potential Lienholders.

---

[31]     *See In re White Motor Credit Corp.*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is within the court's equitable powers when necessary to carry out the provisions of Title 11.").

[32]     *See* Doc. No. 434.

[33]     *See* Doc. No. 1714 ¶ 13.

[34]     *See, e.g.,* LA. REV. STAT. § 9:4863(A)(1)(b) (noting the privilege under LOWLA is established over, among other things, an interest in a "Movable on a well site that is used in operations, other than a movable that is only transiently on the well site for repair, testing, or other temporary use.").

[35]     11 U.S.C. § 363(e).

29.     The Trustee requests that the Court approve the Sale of the Equipment free and clear of any liens, claims and interests whether now known, with any such liens, claims and interests attaching instead to the proceeds of the Sale (subject to any agreed and court-approved Carve-Out).  The Trustee reserves all rights to seek surcharge as to any liens attached to the Sale proceeds.

**IV.     The Court Should Approve the Trustee's Proposed Disbursement of Sale Proceeds.**

30.     As noted above, while the DIP Secured Parties hold valid and perfected liens upon the Equipment, the Trustee has negotiated a Carve-Out with the DIP Secured Parties that will provide value to the Estates for monetizing the Equipment. Therefore, and considering the other disbursements to be made in connection with the Sales, the Trustee proposes disbursing the Sale proceeds as follows: *first*, to the Storage Vendor for outstanding storage fees; *second*, to Henderson for their direct expenses for the Auction; *third*, the Carve-Out for the Estates; and *fourth*, the remainder to the DIP Secured Parties.

**V.     The Sale is Appropriate Under Bankruptcy Rule 6004.**

31.     Bankruptcy Rule 6004(f) permits the Trustee to conduct a public auction pursuant to section 363 of the Bankruptcy Code.  Specifically, Bankruptcy Rule 6004(f) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."[36] Additionally, courts have broad discretion in determining the manner in which assets are sold.[37]

32.     The Trustee submits that conducting the Sales through an Auction is appropriate in light of the facts and circumstances of these Bankruptcy Cases. The Auction is designed to

---

[36]   FED. R. BANKR. P. 6004(f)(1).

[37]   *See, e.g.*, *In re Bakalis*, 220 B.R. 525, 531–32 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through private sale).

maximize the value received for the Equipment and provide a monetary benefit to the Estates. Furthermore, the Sales will facilitate the Trustee's ability to curb the accruing costs to store the Equipment. Therefore, conducting the Sales through an Auction is appropriate under FED. R. BANKR. P. 6004(f)(1).

**VI.    Notice is Sufficient.**

33.    Notice of this Motion has been provided to:

(i)    those parties receiving notice via the Court's Electronic Case Filing system; and

(ii)    by First Class U.S. Mail, postage prepaid, to:

a.    the parties contained in **Exhibit B** to the *Trustee's Emergency Motion to Limit Notice* [Docket No. 1754], as authorized by this Court's *Order Granting Trustee's Emergency Motion to Limit Notice* [Docket No. 1794];

b.    all potential holders of liens, claims, and interests against the Equipment of which the Trustee is aware of according to a review of current available information and listed on **Exhibit** "**H**"; and

c.    the United States Trustee.

**VII.    Relief from Bankruptcy Rule 6004(h) is Appropriate.**

34.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, lease of property . . . is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Since creditors and interested parties will receive notice of the Auction and Sale and have an opportunity to be heard, the Trustee submits that notice is adequate for the Proposed Order to waive the fourteen (14) day waiting period under Bankruptcy Rule 6004(h).

*[Remainder of page intentionally left blank.]*

16

**WHEREFORE**, the Trustee requests entry of an order in substantially similar form as the Proposed Order: (i) authorizing the Trustee to employ and retain Henderson under 11 U.S.C. § 327(a) as the Estates' auctioneer pursuant to the terms and conditions contained in the Agreement among the Trustee, on behalf of the Estates, and Henderson; (ii) authorizing the Trustee to sell, in one or more sales, the Equipment under 11 U.S.C. § 363(b), through the Auction conducted by Henderson; (iii) authorizing the Sales of the Equipment free and clear of all liens, claims, and interests under 11 U.S.C. § 363(f); (iv) authorizing, for each Sale, the Trustee to execute, in the same or substantially similar form, the *Bill of Sale* attached to the Proposed Order as **Exhibit** "**2**" and all other documents the Trustee determines to be necessary or appropriate to consummate each Sale; (v) approving the Carve-Out with the DIP Secured Parties and the Trustee's proposed disbursement of the proceeds generated from each Sale; (vi) authorizing the disbursement of the Sale proceeds as follows: *first*, to the Storage Vendor for outstanding storage fees; *second*, to Henderson for their direct expenses for the Auction; *third*, the Carve-Out for the Estates; and *fourth*, the remainder to the DIP Secured Parties; and (vii) granting any and all related relief the Trustee is otherwise entitled to.

[*Remainder of Page Intentionally Left Blank*]

Dated: April 7, 2026

Respectfully Submitted,

**STEWART ROBBINS BROWN & ALTAZAN, LLC**

By:    */s/ William S. Robbins*
        Paul Douglas Stewart, Jr. (La. Bar # 24661)
        *Admitted to Southern District of Texas*
        (SDTX Federal No. 432642)
        dstewart@stewartrobbins.com
        William S. Robbins (Tx. Bar # 24100894)
        wrobbins@stewartrobbins.com
        Brandon A. Brown (Tx. Bar # 24104237)
        bbrown@stewartrobbins.com
        301 Main Street, Suite 1640
        Baton Rouge, LA 70801-0016
        Telephone: (225) 231-9998
        Facsimile: (225) 709-9467

        ***Counsel for Michael D. Warner, Chapter 7 Trustee***

## CERTIFICATE OF ACCURACY

I HEREBY CERTIFY on this 8th day of April 2026 that the foregoing statements are true and accurate to the best of my knowledge.  This statement is being made pursuant to Local Bankruptcy Rule 9013-1(i).

/s/ *William S. Robbins*
William S. Robbins

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of April 2026, a true and correct copy of the above and foregoing pleading will be electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District.  Additionally, a true and correct copy of the above and foregoing pleading has been sent by First Class U.S. Mail, postage prepaid, to the parties contained in **Exhibit B** to (i) the *Trustee's Emergency Motion to Limit Notice* [Doc. No. 1754], as authorized by this Court's *Order Granting Trustee's Emergency Motion to Limit Notice* [Doc. No. 1794]; (ii) all potential holders of liens, claims, and interests against the Equipment of which the Trustee is aware of according to a review of current available information; and (iii) the United States Trustee.

/s/ *William S. Robbins*
William S. Robbins